# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### FORT PIERCE DIVISION

### Civil Action No. 2:18-CV-14371-ROSENBERG/MAYNARD

ELLEN BERMAN, and DAYANA
GUACH on behalf of themselves and all
others similarly situated,

      Plaintiffs,

         v.

GENERAL MOTORS LLC, a Delaware
limited liability company

      Defendant.

---

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE
PROPOSED CLASS SETTLEMENT, PRELIMINARY CERTIFICATION OF
SETTLEMENT CLASS, AND APPROVAL OF CLASS NOTICE AND
<u>INCORPORATED MEMORANDUM OF LAW</u>**

GREG COLEMAN LAW
Rachel Soffin (FBN 0018054)
Gregory F. Coleman*
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Phone: (865) 247-0080
Facsimile: (865) 522-0049
rachel@gregcolemanlaw.com
greg@gregcolemanlaw.com

WHITFIELD BRYSON & MASON LLP
Daniel K. Bryson*
J. Hunter Bryson*
900 W. Morgan St.
Raleigh, NC 27603
Tel: 919-600-5000
Fax: 919-600-5035

dan@wbmllp.com
hunter@wbmllp.com

AHDOOT & WOLFSON, PC
Robert Ahdoot*
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: 310-474-9111
Fax: 310-4748585
rahdoot@ahdootwolfson.com

(*admitted *pro hac vice*)

*Attorneys for the Plaintiff*

2

## TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................... 2

II.    BACKGROUND ...................................................................................................... 5

III.   MATERIAL TERMS OF THE SETTLEMENT AGREEMENT AND NOTICE PLAN . 6

     A.   The Settlement Class.................................................................................... 6

     B.   Notice of SCAs, Vehicle Inspections, and Repairs.................................................. 7

     C.   Cash Reimbursement of Out-of-Pocket Costs ......................................................... 8

     D.   Class Release ........................................................................................... 9

     E.    Class Representative Service Payments..................................................... 9

     F.   Attorneys' Fees and Expenses .................................................................... 10

     G.   Notice and Administration........................................................................ 10

IV.   THE SETTLEMENT CLASS SHOULD BE CONDITIONALLY CERTIFIED........... 13

     A.   The Rule 23(a) Requirements are Satisfied ............................................... 14

          1.   The Class is so numerous that joinder is impracticable. ................................... 15

          2.   There are questions of law and fact common to the Class. ............................. 16

          3.   Plaintiff's claims are typical of the claims of the Class. ................................. 16

          4.   Plaintiff will fairly and adequately represent the Settlement Class.................. 17

     B.   The Requirements of Rule 23(b)(3) are Satisfied .................................................... 18

     C.   The Class Is Ascertainable........................................................................ 23

V.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ......................... 23

     A.   The Settlement Provides Substantial Relief................................................ 25

     B.   The Settlement Provides Relief to Class Members.................................................. 25

     C.   The Settlement is the Result of Good-Faith Arm's-Length Negotiations Conducted by Well-Informed and Experienced Counsel........................................................ 26

VI.   THE COURT SHOULD APPOINT PLAINTIFF'S COUNSEL AS CLASS COUNSEL UNDER RULE 23(g)................................................................................................. 28

VII.  THE NOTICE PLAN SHOULD BE APPROVED. ...................................................... 29

VIII. CONCLUSION......................................................................................................... 32

1

Plaintiff respectfully moves, under Rule 23 of the Federal Rules of Civil Procedure, for preliminary approval of a proposed Settlement with General Motors LLC, preliminary certification of the Class defined in the Settlement, and approval of proposed notice to the Class.[1]  This Settlement, reached after protracted litigation, discovery, and negotiations in this case and associated cases, will resolve all of Plaintiff's and Settlement Class Members' claims against General Motors LLC in the above-captioned Action and the related litigation, cited below.[2]

## I.   INTRODUCTION

Plaintiff Ellen Berman ("Plaintiff")[3], individually and on behalf of all others similarly-situated, and Defendant General Motors LLC ("Defendant" or "GM") have entered into a Class Action Settlement Agreement (the "Settlement," "Agreement," or "Settlement Agreement") to resolve Plaintiff's claims that Defendant's 2010, 2011, 2012, and 2013 model Chevrolet Equinox and GMC Terrain vehicles equipped with 2.4 liter Ecotec engines are defective and prone to excessive oil consumption and/or piston or engine damage. While Defendant denies these allegations, the Parties have reached an agreement to resolve the litigation. Accordingly, Plaintiff respectfully submits this Memorandum of Law in support in their unopposed Motion for entry of an order that will: (i) certify the Class for purposes of settlement only ("Settlement Class"); (ii) preliminarily approve the Settlement Agreement; (iii) appoint the law firms of Greg Coleman Law PC, Ahdoot & Wolfson, PC, and Whitfield Bryson & Mason LLP as Class Counsel; and (iv)

---

[1] The Settlement Agreement and its Exhibits are attached hereto as Exhibit A.  Capitalized terms not defined herein shall have the same definitions and meanings ascribed to them in the Settlement.
[2] In addition to the instant action, as discussed below, similar purported class actions were previously filed by the undersigned proposed Class Counsel against GM in the United States District Court for the Northern District of California and in the United States District Court for the Northern District of Illinois.
[3] On April 22, 2019, Plaintiff Dayana Guach was voluntarily dismissed without prejudice. (DE 25).

2

approve the form and manner of giving notice of the proposed Settlement and related matters to members of the Settlement Class.

The proposed Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class Members.  It provides substantial and immediate benefits (which are more specifically described below) in the form of: (1) notice that Special Adjustment Coverages (SCA) 14159, 15285 and 16118 remain in effect subject to their express terms, conditions and time and mileage limits, including free diagnosis and piston assembly replacement by authorized GM dealers for Class Vehicles that are diagnosed as currently consuming excessive oil pursuant to GM Technical Service Bulletin No. 13-06-01-003H, and (2) notice to Settlement Class Members who previously paid out-of-pocket for piston assembly replacement in their Class Vehicles that they may submit a Claim Form to the Settlement Administrator prior to the Claim Deadline requesting reimbursement of any and all out-of-pocket expenses covered under the express terms, conditions and time and mileage limits of the SCAs that have not previously been reimbursed by GM, including reasonable rental car charges, (3) issuance of a new SCA for 2013 Class Vehicles manufactured prior to the Production Change within thirty days of the Effective Date of Settlement, wherein Settlement Class Members may present Class Vehicles to authorized GM dealerships for free diagnosis and, if diagnosed as currently consuming excessive oil, receive free piston assembly replacement, subject to express terms, conditions and time and mileage limits of the New SCA, (4) notice to Settlement Class Members who previously paid out-of-pocket for piston assembly replacement in their model year 2013 Class Vehicles due to excessive oil consumption as defined in the New SCA may submit a Claim Form to the Settlement Administrator requesting full reimbursement of any and all out-of-pocket expenses covered under the express terms, conditions and time and mileage limits of the new SCA, including reasonable

3

rental car charges, (5) GM shall pay all Notice and Administration Costs directly to the Settlement Administrator as such costs and expenses are invoiced, and (6) GM shall pay the Fee and Expense Award and all Service Payments.

This Settlement is the product of hard-fought litigation and arm's-length negotiations, which included adjudication of GM's motion to dismiss the Complaint in associated litigation in the United States District Court for the Northern District of California, extensive fact discovery, interrogatories, the exchange and review of documents, GM's inspection of various proposed Class Representatives' Vehicles, the retention of knowledgeable and qualified experts who performed critical analyses regarding the alleged defects and damages, mediation by a former judge, and subsequent months of arm's-length negotiations between experienced class-action counsel for both GM and Plaintiff.  The Settlement resolves the claims of not only this case and this Plaintiff, but the claims as alleged in two other related cases, and was reached on behalf of a nationwide Settlement Class. The benefits of the proposed Settlement must be considered in the context of the risk that protracted ligation in three districts might lead to no recovery, or to a smaller recovery for Plaintiff and/or proposed Settlement Class Members.  Defendant denies any liability and has mounted a vigorous defense at all stages of this litigation, and Plaintiff expects that Defendant would have continued to do so during trial and potentially through appeal.

In evaluating the terms of the Settlement, counsel for the Plaintiff and the putative Class have concluded that the Settlement is in the best interests of Settlement Class Members due to:  (1) the substantial relief afforded to the Settlement Class Members; (2) the risks and uncertainties of complex litigation such as this action; (3) the expense and length of time necessary to prosecute this action through trial and any subsequent appeals; and (4) the desirability of consummating the Settlement to provide prompt and effective relief to the Settlement Class Members.  Considering

4

these factors, as discussed below, Plaintiff and their counsel believe that their fair and reasonable Settlement merits preliminary approval.

## II.   BACKGROUND

On September 10, 2018, Plaintiff filed her Class Action Complaint alleging that certain Class Vehicles contain defective piston rings in their Ecotec 2.4L engines that are prone to premature wear. Plaintiff alleged claims for breach of express and implied warranty, and violation of Florida's Unfair & Deceptive Trade Practices Act.  In addition to the instant Action, related class actions were previously filed by the undersigned proposed Class Counsel against GM in the United States District Court for the Northern District of California (*Hindsman v. General Motors LLC*, No. 17-cv-5337 ("*Hindsman*")) on September 14, 2017, and in the United States District Court for the Northern District of Illinois (*Sanchez v. General Motors LLC*, No. 18-cv-02536 ("*Sanchez*")) on April 19, 2018.  The related class actions involve the same alleged defect as in this Action.

In the three related matters, the Parties have engaged in exhaustive fact discovery in these matters, which included, *inter alia*, initial disclosures, interrogatories, extensive review and analysis of documents produced by GM and others, and inspections of various Class Representatives' Vehicles. In the related action in California, GM moved to dismiss plaintiffs' First Amended Complaint and the Court granted the motion in part and denied it in part.  Plaintiffs subsequently filed a Second Amended Complaint, and GM filed a second motion to dismiss that pleading which was not fully briefed before the parties entered mediation and reached a tentative settlement.  If the Parties had not negotiated the Settlement resolving the claims of all three cases, GM planned to file motions to dismiss in both the Illinois action and the present Action.

On September 20, 2018, after mediation with the Hon. Jay Gandhi (Ret.) of JAMS, the Parties reached a tentative settlement. On December 5, 2019, the parties filed a "Joint Motion to Extended Stay of Proceedings and Joint Status Report Regarding Settlement" (DE 10). The Parties informed the Court that, as a result of the mediation session and additional arm's-length negotiations after the mediation, they had reached a tentative settlement of all issues in all three cases and were formalizing a settlement agreement. The Court granted the motion (DE 11) and extended the stay until February 4, 2019. Similar stays were entered in all three related cases. The Parties continued to work on the settlement agreement and on January 31, 2019 again filed a "Joint Motion to Stay Proceedings" (DE 12) seeking an additional sixty days to finalize the settlement documents. On February 1, 2019 the Court granted the motion (DE 13) extending the stay until April 5, 2019. On April 23, 2019, the Court extended the stay until April 26, 2019 (DE 26).

## III.   MATERIAL TERMS OF THE SETTLEMENT AGREEMENT AND NOTICE PLAN

The Settlement's details are contained in the Agreement signed by the Parties, a copy of which is attached as Ex. A. For purposes of preliminary approval, the following summarizes the Agreement's terms:

### A. The Settlement Class

The Settlement Class is defined as follows:

> All persons within the United States who purchased or leased, at any time before the Preliminary Approval Date, a new retail or used model year 2010, 2011, 2012, or 2013 Chevrolet Equinox or GMC Terrain vehicle equipped with 2.4 liter Ecotec engines, manufactured prior to the Production Change, and who have not executed a prior release of claims related to Class Vehicle oil consumption or resulting piston or engine damage in favor of GM.

Excluded from the Settlement Class are (a) insurers of members of the Settlement Class; (b) any entity purporting to be a subrogee of a member of the Settlement Class; (c) all suppliers,

manufacturers, distributors, shippers, and third-party issuers or providers of extended warranties or service contracts for GM's Class Vehicles; (d) individuals who previously settled and released claims against GM with respect to their Class Vehicles; (e) individuals other than the Settlement Class Representatives who, as of the date of the Settlement Agreement, have legal damage claims pending against GM with respect to their Class Vehicles, and (f) the judge overseeing the proposed settlement and the judge's immediate family.

### B.  Notice of SCAs, Vehicle Inspections, and Repairs

Under the Settlement Agreement, "Special Coverage Adjustments" or "SCAs" mean a program established by GM that offers to pay for all or part of the cost of specified covered repairs after expiration of a given vehicle's GM-issued express warranty, not previously reimbursed by GM via a goodwill adjustment, and not reimbursed by any third-party service contract provider. The Agreement provides that SCAs 14159, 15285, and 16118 covering the 2010, 2011, and 2012 Class Vehicles shall remain in effect, subject to their express terms, conditions, and time and mileage limits, including free diagnosis and piston assembly replacement by authorized GM dealers and for Class Vehicles within SCA time and mileage limits that are diagnosed as currently consuming excessive oil pursuant to GM Technical Service Bulletin No. 13-06-01-003H (*i.e.*, use of more than one quart of oil per 2,000 miles).

SCA 14159 applies to 2010 Class Vehicles and provides free piston assembly replacement for ten (10) years or 120,000 miles, whichever comes first, after initial retail sale or lease.  SCA 15285 applies to 2011 Class Vehicles and provides free piston assembly replacement for seven (7) years and six (6) months or 120,000 miles, whichever comes first, after initial retail sale or lease. Finally, SCA 16118 applies to 2012 Class Vehicles and provides free piston assembly replacement

for seven (7) years and six (6) months or 120,000 miles, whichever comes first, after initial retail sale or lease.

Moreover, under the Agreement, within thirty days of the Effective Date, GM shall issue and notify all of its U.S. dealers and Settlement Class Members who own(ed) or lease(d) a model year 2013 Class Vehicle of a new SCA ('New SCA") covering model year 2013 Class Vehicles manufactured prior to the Production Change and containing terms and limitations substantially the same as the model year 2011 and 2012 SCAs.  Under the New SCA, subject to its express terms, conditions and time and mileage limits, Settlement Class Members may take their Class Vehicles to authorized GM dealerships for free diagnoses and, if diagnosed as currently consuming excessive oil within New SCA time and mileage limits, receive free piston assembly replacement.

### C.  Cash Reimbursement of Out-of-Pocket Costs

As reflected in the Settlement Agreement, in addition to offering free inspections and repairs, the Agreement includes a full cash reimbursement for each Settlement Class Member who previously incurred out-of-pocket costs to replace their Class Vehicles' piston assembly due to excessive oil consumption as defined in the SCAs that were not previously reimbursed by GM, Settlement Class Members' insurers or service contract or extended warranty providers.  To be eligible for reimbursement, such expenses must have been incurred within the SCA's time and mileage limits.  Reimbursable expenses include expenses covered explicitly by the applicable SCAs as well as certain other out-of-pocket expenses, including for the avoidance of doubt reasonable rental car charges supported by documentation showing that such charges were incurred during the period that Class Vehicles were at a dealership or repair shop for piston assembly repairs related to oil consumption, and that such expenses were incurred within SCA time and mileage limits.

8

Thus, Settlement Class Members who previously paid out-of-pocket amounts to repair a covered condition may receive reimbursement of their prior repair costs and associated rental vehicle expenses.   Claims for reimbursement are subject to verification by the Settlement Administrator.

### D.  Class Release

In exchange for the benefits allowed under the Settlement Agreement, upon the Effective Date, Settlement Class Members who did not timely and validly opt out of the Settlement Class will release and discharge the Released Claims against the Released Persons. As part of the Settlement Agreement, the named plaintiffs in the California and Illinois actions have dismissed those actions without prejudice pursuant to Rule 41(a).  All of the Plaintiffs (in the Florida, California, and Illinois actions) have agreed to participate as Class Representatives, have agreed not to request exclusion from the Settlement Class, and have agreed to be bound by the release set forth in the Settlement Agreement.

### E.  Class Representative Service Payments

As part of the Settlement, Defendant has agreed to pay, subject to Court approval, Service Payments for the Class Representatives in the Action and Related Actions, of up to $4,500 each, in recognition of the time and effort they personally invested in this litigation and in exchange for the claims of Class Representatives in the Action and Related Actions being released.[4] Proposed Class Representatives in the Action and Related Actions efforts include instigating and filing of the Complaints, providing support to Class Counsel of their claims and attempts to resolve those claims with GM, responding to Interrogatories and Requests for Documents, providing all

---

[4] The Illinois Proposed Class Representatives are Patrick Sanchez, Mark Stauber and Sally Stauber, Jacob Ross-Demmin, and Jennifer Herringto. The California Proposed Class Representatives are Ryan Hindsman, Diana Miranda, and Vanessa Maryanski.

responsive documents, and otherwise working with Class Counsel in prosecuting and resolving these actions.

### F.  Attorneys' Fees and Expenses

Following the Agreement on the above-referenced material terms, the Parties negotiated and agreed upon attorneys' fees and costs.  GM has agreed to pay the attorney fee and expense award approved by the Court, of up to three million, five hundred thousand dollars ($3,500,000.00). This represents approximately only 8% of the $40-45 million dollar value of the settlement as estimated by GM based on its experience with the 2010, 2011 and 2012 SCAs. However, Class Counsel are not seeking an award of attorneys' fees at this time and will file a motion and supporting memoranda prior to the final settlement hearing. Class Counsel has agreed not to seek an award of more than that amount in the aggregate in attorneys' fees and expenses. GM's payment of fees and costs to Class Counsel is entirely separate and apart from the benefits provided to the Class and will have no impact on the recovery received by Settlement Class Members.

The effectiveness of the Settlement and the releases is not contingent upon the Court's approval of the Fee and Expense Award or the amount of the Fee and Expense Award approved by the Court.

### G.  Notice and Administration

**Notice Plan**

The proposed Class Notice (Exhibit A to the Settlement Agreement) is designed to apprise the Settlement Class of the certification of the Settlement Class, the proposed Settlement Agreement, the Opt-Out Procedure, Opt-out Deadline, the procedure for filing objections, the Objection Deadline, and the date and place of the Fairness Hearing.

GM will provide to IHS Markit/R.L. Polk & Co. a list of the VINs for each Class Vehicle. IHS/Polk will develop the Class mailing list ("Class List") using state motor vehicle registration data and U.S. Postal Change of Address information and provide it to the Settlement Administrator. All information in the Class List shall be protected as confidential and will not be disclosed to anyone, except to Class Counsel, except as required by applicable tax authorities, pursuant to the express written consent of an authorized representative of GM, or by order of the District Court. The Class List shall be used only for the purpose of administering this Settlement. This list shall include the first and last names and physical mailing addresses of Settlement Class Members.

The Notice Plan provides Settlement Class Members the best notice that is practicable under the circumstances, satisfying the requirements of Fed. R. Civ. P. 23(c)(2)(b), and due process, and consists of the following: (i) the Class Notice will be mailed, by first class or priority United States Mail, to the last known address of Settlement Class Members as identified by GM and IHS/Polk, an automotive business and marketing information firm, and U.S. Postal Change of Address data, (ii) the Class Notice will be mailed, by first class or priority United States Mail, to the last known address of Settlement Class Members that can reasonably be identified by GM and IHS/Polk following entry of the Preliminary Approval Order; and (iii) prior to the dissemination of the Class Notice, the Settlement Administrator shall establish a toll-free telephone number, through which Settlement Class Members may (a) obtain information about the Action, (b) submit inquiries regarding the Class Notice and claims procedures, and (c) request a mailed copy of the Class Notice at any time and/or the Claim Form after the Effective Date, pursuant to the terms and conditions of the Agreement.

Among other things, the Class Notice provides a description of the nature of the Action and the proposed Settlement, including information on the definition of the Settlement Class, how the proposed Settlement would provide relief to Settlement Class Members, what claims are released under the proposed Settlement, and other relevant information. The Class Notice informs Settlement Class Members of the time, date and place set by the Court for the Fairness hearing to determine whether the Settlement Agreement should receive final approval as fair and adequate, whether the certification of the Settlement Class should be re-affirmed, whether Service Payments should be issued and in what amount, whether the Fee and Expense Award should be awarded to Class Counsel and in what amounts, and whether the Final Order and Judgment should be entered.

The Class Notice also provides instructions to individuals who wish to exclude themselves from the Settlement Class regarding the Opt-Out Procedure, as well as directions for objecting to or opposing the Settlement Agreement.

Within 30 days of receipt of the Class List the Settlement Administrator will commence dissemination of the Class Notice to the Settlement Class in a manner so ordered.  The reasonable costs for the Notice Plan will be paid for by GM.  Thereafter, if the Court grants final approval, an additional Notice and Claim Form will be sent to the Class Members.  In summary, Class Members will receive direct notice on two separate occasions - after Preliminary Approval and after Final Approval.

**<u>Settlement Administration</u>**

Analytics Consulting LLC has been designated by the Parties as Settlement Administrator, subject to Court approval.  Analytics Consulting LLC will be responsible for printing and mailing the Class Notice, distribution of the Settlement benefits to Settlement Class Members who submit

Claim Forms, and providing all other related support, reporting, and administration as further stated in the Settlement Agreement.[5]

Among other things, the Settlement Administrator shall also be responsible for (a) printing and mailing the Class Notice as provided in the Settlement Agreement; (b) printing and mailing the Claim Forms as provided in the Settlement Agreement; (c) responding to requests from Class Counsel and/or Defense Counsel; (d) establishing a toll-free voice response unit with message and interactive voice response (IVR) capabilities to which Class Members may refer for information about the Action and the Settlement; (e) receiving and maintaining any Settlement Class Member correspondence regarding requests for exclusion to the Settlement; (f) forwarding inquiries from Settlement Class Members to Class Counsel for a response, if warranted; (g) establishing a post office box for the receipt of Claim Forms, exclusion requests, and any correspondence; (h) reviewing Claim Forms according to the review protocols agreed to by the Parties and as set forth in the Agreement; (i) otherwise implementing and/or assisting with the Claim Form review process and the distribution of the Settlement benefits to Claimants; and (j) paying funds to Claimants in the amounts set forth in timely and valid Claim Forms within sixty (60) days of the Claim Deadline.

Moreover, the Settlement Administrator shall execute appropriate agreements with GM and Class Counsel needed to ensure that any information provided to it by Settlement Class Members will be secure and used solely for the purpose of effecting this Settlement.

## IV.    THE SETTLEMENT CLASS SHOULD BE CONDITIONALLY CERTIFIED

The Eleventh Circuit recognizes the strong public and judicial policy favoring the pretrial settlement of class-action lawsuits. *See, e.g.*, *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (citing *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir.1977)); *Turner v. GE*, 20 Fla. L.

---

[5] A copy of the declaration of Richard Simmons which outlines Analytics Consulting LLC's experience and the proposed Notice Plan is attached to the Settlement Agreement as Exhibit. B.

Weekly Fed. D 145 (U.S. M.D. Fla. 2006); *Lee v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 121998, at *14 (S.D. Fla. Sep. 14, 2015). "A class may be certified 'solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue.'" *Smith v. Wm. Wrigley Jr. Co*., 2010 U.S. Dist. LEXIS 67832, a t  *8 (citation omitted). When presented with a proposed settlement prior to a ruling on class certification, a court must determine whether the proposed settlement class satisfies the requirements for class certification under Federal Rule of Civil Procedure, Rule 23. *Id*. But in assessing those certification requirements in the context of a settlement, a court may properly consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

"Under Fed. R. Civ. P. 23 . . . [there are] four threshold requirements of Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable ('numerosity'); (2) questions of law or fact common to the class must exist ('commonality'); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ('typicality'); and (4) the representative parties must fairly and adequately protect the interests of the class ('adequacy of representation')." *Leszczynski v. Allianz Ins*., 176 F.R.D. 659, 668 (S.D. Fla. 1997). Also, the movant must show that the case can proceed as a class action under subparts (1), (2), and/or (3) of Rule 23(b). *Fabricant v. Sears Roebuck & Co*., 202 F.R.D. 310, 313 (S.D. Fla. 2001).

### A.  The Rule 23(a) Requirements are Satisfied

Rule 23(a) requires the party seeking certification to demonstrate that the members of the class are so numerous that joinder is impracticable (numerosity); that there are questions of law or

fact common to the proposed class (commonality); that the class representatives' claims are typical of the claims of the class (typicality); and that the representatives and Class counsel will fairly and adequately represent the interests of the class (adequacy). *See Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 461 (S.D. Fla. 2002) (citing Fed. R. Civ. P. 23(a)(1)-(4)). As set forth more fully below, it is Plaintiff's position that each of the Rule 23(a) prerequisites is satisfied with respect to the proposed Class.

### 1. The Class is so numerous that joinder is impracticable.

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." No specific number is required to satisfy numerosity. However, fewer than twenty-one members is generally inadequate. *See, e.g., Jones v. Firestone Tire & Rubber Co., Inc.*, 977 F.2d 527, 534 (11th Cir. 1992) (citations omitted). Impracticability depends on the facts of each case. *See General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980) (The "numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."). Here, the Settlement Class has been defined as "all persons within the United States who purchased or leased, at any time before the Preliminary Approval Date, a new retail or used model year 2010, 2011, 2012, or 2013 Chevrolet Equinox or GMC Terrain vehicle equipped with a 2.4 liter Ecotec engine, manufactured prior to the Production Change, and who have not executed a prior release of claims related to Class Vehicle oil consumption or resulting piston or engine damage in favor of GM." This agreed upon definition encompasses potentially hundreds of thousands of Settlement Class Members, and joinder of all such persons is impracticable. *See Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

### 2. There are questions of law and fact common to the Class.

The second prerequisite to class certification is that "there are questions of law or fact common to the class." Rule 23(a)(2) (emphasis added). The "threshold of commonality is not high." *Campos v. INS*, 188 F.R.D. 656, 659 (S.D. Fla. 1999) (citation omitted. The "Plaintiffs' legal claims need not be completely identical to every Class Member." *Brown v. SCI Funeral Servs. Of Fla., Inc.,* 212 F.R.D. 602, 604 (S.D. Fla. 2003) (citations omitted). "[F]actual differences concerning treatment [by Defendants] or damages will not defeat a finding of commonality." *Id.* Moreover, Rule 23(a)(2) "does not require that all of the questions of law and/or fact be common to all the plaintiffs." *Campos v. INS*, 188 F.R.D. at 660. "[C]ourts in the Eleventh Circuit have held that 'a single common question is sufficient to satisfy Rule 23(a)(2) [with respect to commonality].'" *In re Terazosin Hydrocloride Antitrust Litig.*, 220 F.R.D. 672, 685 (S.D. Fla. 2004) (citation omitted).

In this case, the commonality requirement is satisfied because Plaintiff's allegations arise from the same common nucleus of operative facts, and all members of the proposed Settlement Class will rely upon the same common evidence to prove their claims. The common issues include: whether the Class Vehicles contain common defective parts, whether GM breached its uniform implied and express warranties by selling defective Class Vehicles, and whether GM's breach of warranties caused consumers to suffer harm.   Thus, in this case, a "classwide proceeding [will] generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).

### 3. Plaintiff's claims are typical of the claims of the Class.

The third prerequisite for class certification is "typicality" set forth in Rule 23(a)(3), which provides that a class action can be maintained only if "the claims or defenses of the representative

parties are typical of the claims or defenses of the class." "[S]ubsection (a)(3) [of Rule 23] primarily directs the district court to focus on whether named representatives' claims have the same essential characteristics as the claims of the class at large." *Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir. 1985) (citations omitted). "The commonality and typicality requirements of Rule 23(a) tend to merge." *Campos*, 188 F.R.D. at 659. The typicality requirement, like commonality, is not demanding. *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996).

Plaintiff's claims arise from the same common defective piston rings at issue in the Class Vehicles' engines, and from the same legal theories, as the Settlement Class Members' claims. Although Plaintiff may own a different model of Class Vehicle than other Settlement Class Members, Plaintiff contends that all of the models of Class Vehicles contain similar allegedly defective parts. Here, Plaintiff seeks redress—on behalf of the Settlement Class Members—for alleged damages arising out of similar alleged defects. Thus, Plaintiff and Settlement Class Members have an identical interest in recovering their alleged losses sustained as a result of the same course of conduct.

### 4. Plaintiff will fairly and adequately represent the Settlement Class.

The fourth and final prerequisite under Rule 23(a) is the "adequacy of representation" requirement contained in Rule 23(a)(4). The inquiry under Rule 23(a)(4) has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class"; and (2) "the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation." *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992) (citation omitted). Adequacy of representation is usually presumed in the absence of evidence to the contrary. *Access Now, Inc. v. AHM CGH, Inc.*, 2000 U.S. Dist. LEXIS 14788 (S.D. Fla. 2000)

(citation omitted); *accord Sheftelman v. Jones,* 667 F. Supp. 859, 870 (N.D. Ga. 1987) (conflict of interest to render a named representative an inadequate representative must be more than merely speculative or hypothetical).

Here, the proposed Class Representatives in this Action and the Related Actions purchased Class Vehicles containing allegedly defective parts and thus allegedly suffered injury or loss. The proposed Class Representatives seek to maximize the recovery to the Settlement Class through this litigation. None of the proposed Class Representatives have any interest that is antagonistic to the claims of any Settlement Class Member. The proposed Class Representatives' interests are aligned with the interests of Settlement Class Members. Moreover, proposed Class Representatives has vigorously prosecuted this Action in the interests of the Class.  proposed Class Representatives understand their duties as representatives of the Class and will dutifully execute their responsibilities. Their active participation is strong evidence that Plaintiffs are adequate representatives of the Class.

Likewise, Class Counsel have vigorously represented the Proposed Class Representatives and putative Class Members in this Action and the Related Actions. They represent that they will continue to do so and have submitted evidence showing that they are qualified, experienced, and generally able to conduct the litigation as detailed herein.

### B.  The Requirements of Rule 23(b)(3) are Satisfied

In addition to meeting the requirements of Rule 23(a), the movant must show that the case can proceed as a class action under subparts (a), (2), and/or (3) of Rule 23(b).  *Fabricant,* 202 F.R.D. at 313 (citation omitted).  The Settlement entails certification under Rule 23(b)(3).  Under Rule 23(b)(3), a movant must show two elements: (1) that common questions predominate over individual questions; and (2) that a class action is a superior procedural vehicle rather than separate

individual cases.  Both elements are met here.  As discussed above, Plaintiffs contend that the common and predominant issues in this case include: whether the Class Vehicles contain common defective parts, whether GM breached its uniform implied and express warranties by selling defective Class Vehicles, and whether GM's breach of warranties caused consumers to suffer economic harm.  Plaintiff contends that each of these issues can be resolved "in one stroke" in a single adjudication, therefore warranting class certification.

### 1.   Common Questions Predominate

The predominance requirement of Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of the individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,* 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). The predominance requirement "does not require that all issues be common to all parties, rather it mandates that resolution of the common liability questions affect all or a substantial number of the class members." *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 692 (N.D. Ga. 2003) (citation omitted).  "Courts generally agree that the predominance of common issues does not mean that common issues merely outnumber individual issues." *See* 5-23 *Moore's Federal Practice – Civil* § 23.45*; cf. Buford v. H&R Block, Inc.*, 168 F.R.D. 340, 356 (S.D. Ga. 1996), *aff'd without published opinion,* 117 F.3d 1433 (11th Cir. 1997); *Gunnels v. Healthplan Servs.*, 348 F.3d 417, 429 (4th Cir. 2003) ("Qualitatively…liability issues' may far exceed . . . the more mundane individual damages issues.").  Central to the predominance determination is consideration of "what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *In re Tri-State Crematory Litig.*, 215 F.R.D. at 692 (citations omitted).  Common

questions of law or fact predominate when "there are common liability issues which may be resolved efficiently on a class-wide basis." *Brown*, 215 F.R.D. at 606.

Here, Plaintiff satisfies the predominance requirement because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member.  The salient evidence necessary to establish Plaintiff's claims are common to all the Class Representatives and all members of the Class – they would all seek to prove that the Class Vehicles have common defects and that GM's conduct was wrongful. The evidentiary presentation changes little if there are 100 Class Members or as many as 100,000 Class Members.  In either instance, Plaintiff would present the same evidence of GM's marketing and promised warranties, and the same evidence of the Class Vehicles' alleged defects.  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004) ("[If] common issues truly predominate over individualized issues in a lawsuit, then 'the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered.'") (quoting *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 322 (5th Cir. 1978)).

Furthermore, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication.  *See* Fed. R. Civ. P. 23(b)(3).  For these reasons, the Court should certify the Class defined in the Settlement.

### 2.    Class Treatment of Plaintiff's Claims is Superior

The second prong of Rule 23(b)(3) requires a court to determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Sacred Heart Health*, 601 F.3d at 1183 (citing Fed. R. Civ. P. 23(b)(3)). The focus of the analysis is on "the relative advantages of a class action suit over whether other forms of litigation might be realistically available to the plaintiffs." *Id.* (quoting *Klay*, 382 F.3d at 1269).  In other words, the

superiority requirement comes down to whether class treatment makes sense. In this case, the Court should "consider whether the class members would be aware of their rights" absent class certification, and also "the improbability that large numbers of class members would possess the initiative to litigate individually." *Fabricant,* 202 F.R.D. at 318 (citations omitted).  Class actions are meant to promote "economies of time, effort and expense, assuring uniformity and avoiding repetitive actions."  *Id.*  Accordingly, litigating the predominant legal questions in one forum makes sense.

Indeed, the "predominance analysis has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Sacred Heart Health*, 601 F.3d at 1183 (quotations omitted). The converse is also true: the less common the issues, the less desirable a class action will be as a vehicle for resolving them. *Id.* That any awarded damages must be adjusted is not fatal to certification because there are adequate judicial processes for addressing the problem. *See, e.g., Fabricant*, 202 F.R.D. at 317 ("If Plaintiffs are able to establish liability, the Court may either appoint a master to resolve actual damages or merely allow class members to bring individual actions with the benefit of a res judicata finding of liability."); *cf. Brown*, 212 F.R.D. at 606 ("The mere fact that class members will have to file a claim form or affidavit" to prove their eligibility for individual relief does not defeat predominance under Rule 23(b)(3)); *Sacred Heart Health*, 601 F.3d at 1184 ("[T]he text of Rule 23(b)3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all . . .").

The fact that the Parties have reached a settlement also weighs in favor of a finding that

the class mechanism is superior.  *See Amchem Prods. V. Windsor*, 521 U.S. 591, 619-20 (1997)

("settlement is relevant to a class certification" and can alleviate manageability concerns that

otherwise may arise).  Indeed, the *Newberg* treatise explains that in some cases a:

> [c]lass might not have been certified were it not for the proposed
> class settlement.  This observation does not mean that Rule 23
> criteria were not applied strictly in these circumstances.  On the
> contrary, these tests were applied, and the observation that a
> different ruling might have resulted in the absence of the settlement
> offer refers to the fact that Rule 23 criteria would have been applied
> in a different context and thus might have led to a different result.

4 *Newberg* § 11.27 at 56 (footnote omitted).

In the present suit, the alleged existence of common parts among all Class Vehicles

compels a similar result as the cases cited above where class certification was granted.

In addition, Plaintiff contends that a class action is the superior method for adjudicating

Plaintiff's and Settlement Class Members' claims.  Here, individual Settlement Class Members

have little incentive to control the prosecution of separate individual actions because the time and

expense associated with such litigation would easily exceed the potential individual recovery.

And, as the Supreme Court said in *Amchem*, "[t]he policy at the very core of the class action

mechanism is to overcome the problem that small recoveries do not provide the incentive for any

individual to bring a solo action prosecuting his or her rights."[6]  The potential recovery on the

economic damage claims sought to be certified in this action—the cost of repair or replacement—

is too small to warrant individuals taking on the cost and burden of litigating individual lawsuits

against these large corporate defendants.

Moreover, no putative Settlement Class Members have expressed an interest in prosecuting

their actions separately, no other litigation regarding Plaintiff's claims has been initiated, and

---

[6] *Amchem Prods.*, 521 U.S. at 617.

efficiency weighs in favor of resolving the claims of all Settlement Class Members in this forum. Fed. R. Civ. P. 23(b)(3)(A)-(C). The proposed Settlement Class therefore meets the requirements of Rule 23(b)(3) and should be conditionally certified for purposes of settlement only.

### C. The Class Is Ascertainable

In addition to satisfying the requirements of Rule 23, a Rule 23(b)(3) class must also be ascertainable before it may be certified. *See Karhu v. Vital Pharms., Inc.* 621 Fed. Appx. 945, 946 (11th Cir. 2015). A class is ascertainable if it can be identified in an "administratively feasible" manner. *Id.* At 948. This implicit requirement of Rule 23 requires that a class be identified in a way that does not solely rely on a defendant's records for identification purposes. *Id.* Instead, defendant's records need to be supplemented with other methods such as "[a]ffidavits, in combination with records or other reliable and administratively feasible means, can meet the ascertainability standard." *Reyes v. BCA Fin. Servs.*, 2018 U.S. Dist. LEXIS 106449 (S.D. Fla. June 26, 2018) (citing *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 441 (3d. Cir. 2017)). It is Plaintiff's position that the proposed Class satisfies these criteria.

Here, the proposed Class is defined to include all persons who purchased or leased a Class Vehicle in the United States. Settlement Class Members may be ascertained using GM's sales records, state motor vehicle registration data, and data obtained by IHS Markit/R.L. Polk & Co. Class membership is clearly based on the objective criteria of whether a person purchased or leased a Class Vehicle in the United States. It is not based on any subjective factors.

### V.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

"[I]n analyzing any settlement, 'the clear policy in favor of encouraging settlements must . . . be taken into account.'" *Ass'n for Disabled Ams.*, 211 F.R.D. at 467 (S.D. Fla. 2002) (citation omitted); *Lipuma v. Am. Express Co.* 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (same); *Cotton*

*v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (same).  Moreover, "[i]n evaluating a settlement's fairness, it should [not] be forgotten that compromise is the essence of a settlement.  The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might [be] gained." *Ass'n for Disabled Ams.*, 211 F.R.D. at 467 (quoting *Cotton*, 559 F.2d at 1330 (internal quotations omitted)); *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV, 2002 U.S. Dist. LEXIS 28975 at *4 (S.D. Fla. May 7, 2002) (same).

"Judicial review of a proposed class action settlement is a two-step process: preliminary approval and a subsequent fairness hearing." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 U.S. Dist. LEXIS 67832 at *2 (S.D. Fla. June 15, 2010) (citations omitted).  In the first step, the Court determines whether the proposed settlement should be preliminarily approved. *See* David F. Herr, *Annotated Manual for Complex Litigation* § 21.632 (4th ed. 2004).  In the second step, after hearing from any objectors and being presented with declarations and materials to support the fairness of the settlement, the court makes a final decision whether the settlement should be finally approved. *See id.* §§ 21.633-35.  "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good-faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Wm. Wrigley Jr., Co.*, 210 U.S. Dist. LEXIS 67832, at *2 (citations omitted).  "Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *Papa v. Grieco Ford Fort Lauderdale, LLC*, 2019 U.S. Dist. LEXIS 12891, at *10 (S.D. Fla. Jan. 28, 2019).

Here, there are several reasons why the proposed Settlement Agreement is within the realm of reasonableness and warrants its notice to Settlement Class Members.

24

### A.  The Settlement Provides Substantial Relief

"[A] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Beherens v. Wometco Enterprises, Inc.*, 18 F.R.D. 534, 542 (S.D. Fla. 1988).  This Settlement meets a critical test in gaging its fairness and reasonableness because it provides significant, concrete relief to affected Settlement Class Members (far above "a hundredth or even a thousandth of a single percent") and directly remedies the injury alleged in the Action.  The gravamen of Plaintiff's Complaint was that they and Class Members purchased Class Vehicles which GM knew or had reason to know were defective at the time of sale. Accordingly, the proposed Settlement provides for the repair of the defect and compensates Settlement Class Members for their related out-of-pocket expenses associated with the defect and for the periods when their Class Vehicles were undergoing repairs. Settlement Class Members will be able to receive a Cash Payment, as described above, by submitting a simple Claim Form. The Settlement thus directly addresses the claimed harm.

### B.  The Settlement Provides Relief to Class Members

As a matter of public policy, courts favor settlements of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *Bennet v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  That this Settlement would eliminate the delay and expenses of litigation also strongly weights in favor of approval. *See, e.g., Ass'n for Disabled Ams.*, 211 F.R.D. at 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton*, 559 F.2d at 1331); *see also 4 Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).   "The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise of the

25

mere possibility of relief in the future, after protracted and extensive litigation.  In this respect, [as this Court has observed] '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'"  *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006) (citation omitted).

Absent a settlement, the final resolution of this litigation through the trial process may require several more months or even years of protracted, adversarial litigation and appeals, which will delay relief to the tens of thousands of possible Settlement Class Members. The proofs necessary to prevail at trial in this case would be greater than what is required under the Settlement. Settlement Class Members may receive relief (replacement of their Class Vehicles' piston assembly and/or reimbursement of out-of-pocket expenses associated with excessive oil consumption repairs) under the Settlement with limited documentation other than a simple Claim Form. It is clearly advantageous for Settlement Class Members to be eligible to obtain this significant relief without further delay or extensive proof. By reaching this Settlement, the Parties will avoid further protracted litigation and will establish a means for prompt, streamlined resolution of Settlement Class Members' claims against GM. Given the alternative of long and complex litigation before this Court, the risks involved in such litigation, the potential evidentiary issues, and the possibility of further appellate review, the availability of prompt relief under the Settlement is highly beneficial to Settlement Class Members.

**C.  The Settlement is the Result of Good-Faith Arm's-Length Negotiations Conducted by Well-Informed and Experienced Counsel.**

A class action settlement should be approved so long as the district court finds that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties. *See, e.g., In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011) ("Preliminary approval is appropriate where the proposed settlement is the result of the parties'

good faith negotiations, there are not obvious deficiencies, and the settlement falls within the range of reason."); *Lipuma*, 406 F. Supp. 2d at 1318-19 (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

The Settlement was achieved through months of arm's-length negotiations between well-informed and experienced counsel after engaging discovery, and hard-fought motion practice. In addition, the Parties engaged in mediation before an experienced and respected mediator. The mediation and corresponding negotiations were arms-length and extensive. *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"); *see also Wm. Wrigley Jr. Co.,* 2010 U.S. Dist. LEXIS 67832, at *7 (presumption of good faith negotiations has been found where the parties have engaged in extensive discovery and participated in the mediation process).

Putative Class Counsel – law firms that are nationwide leaders in class-action litigation – have made a considered judgment based on adequate information gleaned from discovery, mediation, and based on their deep familiarity with the factual and legal issues in this case and the risks associated with continued litigation. *See Elkins v. Equitable Life Ins. Of Iowa,* 1998 U.S. Dist. LEXIS 1557 (M.D. Fla. Jan. 27, 1998) (giving consideration to the judgment of experienced counsel). It is the opinion of the counsel who achieved the Settlement that it is fair and reasonable to the members of the Settlement Class. Each of these factors strongly supports preliminary approval of the Settlement. Accordingly, the proposed Settlement should be preliminarily approved.

## VI.   THE COURT SHOULD APPOINT PLAINTIFF'S COUNSEL AS CLASS COUNSEL UNDER RULE 23(g).

Fed. R. Civ. P. 23(g) requires a Court to appoint class counsel. In appointing class counsel, the Court "must" consider:

- the work counsel has done in identifying or investigating potential claims in the action;

- counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the  action;

- counsel's knowledge of the applicable law; and

- the resources that counsel will commit to representing the class.

*Id.* R. 23(g)(1)(A). The court "may" also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* R. 23(g)(1)(B).

Proposed Class Counsel, the law firms of Greg Coleman Law PC, Ahdoot & Wolfson, PC, and Whitfield Bryson & Mason LLP have expended a great deal of time, effort and expense investigating the Defendant's documents, practices, and actions prior to and since filing this action. Further, as set forth in the firm resumes submitted herewith, each firm is highly experienced in complex consumer class action litigation. (*See* Exs. B, C, D.) It is clear from each firm's track-record of success that Class Counsel  are highly  skilled and knowledgeable  concerning and class-action practice.

Greg Coleman Law PC is a nationally-recognized leading firm in complex class-actions, with an impressive track record of success and numerous multimillion-dollar settlements.  *See* firm resume attached as Ex. B. Greg Coleman Law PC has a strong track record of success in consumer class-actions cases, including but not limited to a number of cases related to automobile defects.

Whitfield Bryson & Mason LLP, is a nationally-recognized leading firm in complex and class-action litigation, and attorneys at the firm have been appointed to numerous leadership

28

positions in class action cases and MDL proceedings across the country with a strong track record of success in consumer class-actions cases.  The firm's resume is attached as Ex. C.

Ahdoot & Wolfson, PC is a nationally-recognized leading firm in complex and class-action litigation. For decades, the attorneys at Ahdoot & Wolfson, PC have vigorously litigated against large corporations and public entities vindicating the rights of millions of consumers in protracted, complex litigation, to successful results. The firm's resume attached hereto as Ex. D.  Since its founding, Ahdoot & Wolfson, PC has served as class counsel and in leadership positions in a wide range of consumer protection class actions, including in cases and MDL proceedings involving competing lead applications.

As can be seen by their commitment to prosecuting these cases thus far as well as their track record, Class Counsel have made the investment and have the experience to represent the Settlement Class vigorously. Accordingly, the appointment of the proposed Class Counsel under Rule 23(g) is warranted.

## VII.    THE NOTICE PLAN SHOULD BE APPROVED

A settlement must provide adequate notice to class members so that each can make an informed choice about whether to object. Rule 23(e)(1) provides that, in the event of a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" the proposed settlement. *Id.* R. 23(e)(1). To satisfy due process, the notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  Rule 23(c)(2) of the Federal Rules of Civil Procedure also requires class action notices to be written in "plain, easily understood language." Courts have considerable discretion in approving an appropriate notice plan. *See Juris v. Inamed Corp.*, 685

F.3d 1294, 1317 (11th Cir. 2012); *see also Manual for Complex Litig.* 28 U.S.C. § 21.311 ("Determination of whether a given notification is reasonable under the circumstances of the case is discretionary.").

The proposed Notice Plan is the best notice that is practicable under the circumstances and fully comports with due process and Rule 23 of the Federal Rules of Civil Procedure. Specifically, the Notice Plan requires GM to engage the automotive business and marketing information firm, IHS Markit/R.L. Polk & Co., to prepare a Class List which will identify the first and last names, last known e-mail addresses and corresponding physical mailing addresses of Settlement Class Members. After the Class List is determined, the Notice Plan incorporates a combination of direct notice via U.S. postal mail to Settlement Class Members who are identified in the Class List with follow-ups if such direct mailings are returned as undeliverable. (Ex. B. of Settlement Agreement) All information in the Class List shall be protected as confidential and will not be disclosed to anyone, except to Class Counsel, except as required by applicable tax authorities, pursuant to the express written consent of an authorized representative of GM, or by order of the District Court. The Class List shall be used only for the purpose of administering this Settlement.

The Notice Plan is the best notice that is practicable and is equivalent or superior to notice campaigns approved in similar class action settlements. (*See* Ex. B. of Settlement Agreement) *See In Re Whirlpool Corp. Front Loading Washer Products Liability Litigation* (MDL No. 2001) (N.D. Ohio), *In Re LG Front Loading Washing Machine Class Action Litigation* - Civil Action No. 08-51 (D. N.J.) and *Grasso v. Electrolux Home Products, Inc.* – No. 8:16- cv-00911 (M.D. Fla.). The Notice Plan using IHS/Polk data to compile mailing lists is consistent with notice requirements of the National Highway Traffic Safety Administration used for product recalls and has proved effective in reaching owners.

30

The Federal Judicial Center states that a publication notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm." Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges," at 27 (3d ed. 2010). (Ex. B. of Settlement Agreement) Here, the Parties estimate that the proposed Notice Plan is likely to reach even more of the Class Members given the ability of IHS/Polk to access up-to-date state motor vehicle registration data.

Additionally, the Notice forms used in this matter are designed to be "noticed," reviewed, and—by presenting the information in plain language—understood by Settlement Class Members. The design of the Notices follows principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov. (Ex. B. of Settlement Agreement) The Notice forms contain plain-language summaries of key information about Settlement Class Members' rights and options. Consistent with normal practice, prior to being delivered and published, all Notice documents will undergo a final edit for accuracy. (Ex. B. of Settlement Agreement)

All the forms of Notice are noticeable, clear, and concise, and are written in plain, easily understood language. The Notice forms effectively communicate key information about the Settlement and are designed to alert the reader that the Notice is an important document and that the content may affect them.

Accordingly, the Notice Program will provide full and proper notice to Settlement Class Members before the claims, opt-out, and objection deadlines. This Notice Program provides Class Members due process and is the best notice practicable under the circumstances, in full compliance with Rule 23 of the Federal Rules of Civil Procedure.

Moreover, Analytics Consulting LLC is well positioned to serve as Notice and Settlement Administrator. Analytics Consulting LLC is a class action notice and claims administration

31

company that has been a leader in developing claims processing methods and procedures since 1970. Collectively, the management team at Analytics Consulting LLC has overseen thousands of class action settlements and distributed billions of dollars to class members. *See* Simmons Declaration attached as Exhibit B to the Settlement Agreement.

## VIII.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the Motion for Preliminary Approval of the Settlement and for certification of the proposed Class for settlement purposes only and enter the proposed Preliminary Approval Order.

Dated: April 26, 2019                     Respectfully submitted,


                                          s/Rachel Soffin
                                          Rachel Soffin, FL Bar No. 0018054
                                          Gregory F. Coleman*
                                          Greg Coleman Law PC
                                          800 S. Gay Street, Suite 1100
                                          Knoxville, TN 37929
                                          Tel: 865-247-0080
                                          Fax: 865-522-0049
                                          rachel@gregcolemanlaw.com
                                          greg@gregcolemanlaw.com

                                          Daniel K. Bryson*
                                          J. Hunter Bryson*
                                          WHITFIELD BRYSON & MASON LLP
                                          900 W. Morgan St.
                                          Raleigh, NC 27603
                                          Tel: 919-600-5000
                                          Fax: 919-600-5035
                                          dan@wbmllp.com
                                          hunter@wbmllp.com

                                          Robert Ahdoot*
                                          AHDOOT & WOLFSON, PC
                                          10728 Lindbrook Drive
                                          Los Angeles, California 90024
                                          Tel: 310-474-9111
                                          Fax: 310-474-8585
                                          randoot@ahdootwolfson.com

                                          (*admitted *pro hac vice*)

                                          *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing document was filed electronically with the clerk of court via ECF which provided notice to all parties through their counsel of record.

GREG COLEMAN LAW PC

*/s/Rachel Soffin*
Rachel Soffin
FL Bar No. 0018084
GREG COLEMAN LAW PC