# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT PIERCE DIVISION

ELLEN BERMAN and DAYANA          )
GUACH on behalf of themselves and all   )
others similarly situated,       )        **CASE NO. 2:18-CV-14371**
                                 )        **ROSENBERG/MAYNARD**
                                 )
Plaintiffs,                      )
                                 )
v.                               )
                                 )
GENERAL MOTORS LLC, a Delaware   )
limited liability company,       )
                                 )
Defendant.                       )
_____ )

## SETTLEMENT AGREEMENT AND RELEASE

# **TABLE OF CONTENTS**

**PAGE**

| | | |
|---|---|---|
| I. | RECITALS | 3 |
| II. | DEFINITIONS | 7 |
| III. | SETTLEMENT APPROVAL | 16 |
| IV. | SETTLEMENT CONSIDERATION | 20 |
| V. | NOTICE OF THE SETTLEMENT | 24 |
| VI. | OF THE SETTLEMENT | 27 |
| VII. | RELEASE AND DISMISSAL WITH PREJUDICE | 33 |
| VIII. | REQUEST FOR EXCLUSION BY CLASS MEMBERS | 35 |
| IX. | OBJECTIONS BY CLASS MEMBERS | 36 |
| X. | SERVICE PAYMENTS AND ATTORNEYS' FEES AND EXPENSES | 38 |
| XI. | MODIFICATION OR TERMINATION OF THE SETTLEMENT | 40 |
| XII. | MISCELLANEOUS PROVISIONS | 44 |

## **EXHIBIT LIST**

| EXHIBIT A | CLASS NOTICE |
|-----------|--------------|
| EXHIBIT B | DECLARATION OF SETTLEMENT ADMINISTRATOR |
| EXHIBIT C | PRELIMINARY APPROVAL ORDER |
| EXHIBIT D | SPECIAL COVERAGE ADJUSTMENT 14159 |
| EXHIBIT E | SPECIAL COVERAGE ADJUSTMENT 15285 |
| EXHIBIT F | SPECIAL COVERAGE ADJUSTMENT 16118 |
| EXHIBIT G | MODEL YEAR 2010 CLAIM FORM |
| EXHIBIT H | MODEL YEAR 2011-12 CLAIM FORM |
| EXHIBIT I | MODEL YEAR 2013 CLAIM FORM |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release is made and entered into as of the last date of any signature below by and among: (a) Florida Plaintiffs Ellen Berman and Dayana Guach, (b) Illinois Plaintiffs Patrick Sanchez, Mark Stauber and Sally Stauber, Jacob Ross-Demmin, and Jennifer Herrington, (c) California Plaintiffs Ryan Hindsman, Robin Peterson, Diana Miranda, Vanessa Maryanski, Rene Mitchell and Brittany Chambers, individually and as representatives of the proposed Settlement Class, and (d) defendant General Motors LLC ("General Motors" or "GM"), in consideration for and subject to the promises, terms and conditions herein.

This Agreement is subject to Court approval pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Unless otherwise defined, all capitalized words and terms used herein shall have the meanings ascribed to them in Section II of this Agreement, entitled "Definitions."

The Agreement is intended to fully, finally and forever resolve, discharge and settle the lawsuit styled *Ellen Berman, et al. v. General Motors LLC*, Case No. 2:18-CV-14371, pending in the United States District Court for the Southern District of Florida ("Florida Action") and all matters raised or that could have been raised therein or in the Related Actions, *Hindsman, et al. v. General Motors LLC,* Case No. 3:17-cv-5337, United States District Court for the Northern District of California ("California Action"), and *Sanchez, et al. v. General Motors LLC*, Case No. 1:18-cv-2563, United

States District Court for the Northern District of Illinois ("Illinois Action"), subject to the terms and conditions set forth below and approval by the Court. Plaintiffs in the three actions (Florida, California, and Illinois) are collectively called "Plaintiffs" for the purposes of this agreement, unless specified otherwise.

## I.    RECITALS

WHEREAS, some owners and lessees of the Class Vehicles have expressed concerns about excessive oil consumption caused by piston ring wear issues. Prior to the filing of the Action and the Related Actions, GM took the following actions to address such concerns:

a.    Beginning with Class Vehicles manufactured after the Production Change (in May 2013), GM introduced "525" piston rings that GM claims to have reduced piston ring wear; according to GM, this change significantly reduced claims of excessive oil consumption for model year 2013 Equinox and Terrain vehicles with the improved piston rings.

b.    For model year 2010 Class Vehicles, GM issued Special Coverage Adjustment 14159, attached hereto as **Exhibit D**, which provides free piston assembly replacement for ten years or 120,000 miles, whichever comes first, after initial retail sale or lease.

c.    For model year 2011 Class Vehicles, GM issued Special Coverage Adjustment 15285, attached hereto as **Exhibit E**, which provides free piston assembly

replacement for seven years, six months or 120,000 miles, whichever comes first, after initial retail sale or lease.

        d.     For model year 2012 Class Vehicles, GM issued Special Coverage Adjustment 16118, attached hereto as **Exhibit F**, which provides free piston assembly replacement for seven years, six months or 120,000 miles, whichever comes first, after initial retail sale or lease.

WHEREAS, these three existing SCAs remain in effect, subject to their applicable time and mileage limitations and other terms and conditions, and Class Members with an eligible vehicle can obtain any now available SCA benefits independent of the Settlement.

WHEREAS, Class Counsel filed this Action in Florida and the Related Actions in federal courts in California and Illinois.  Plaintiffs' complaints alleged that GM violated state consumer protection laws and breached express and implied warranties by distributing Class Vehicles for sale or lease to retail customers that were prone to excessive oil consumption.

WHEREAS, in the California Related Action, GM moved to dismiss plaintiffs' First Amended Complaint and the Court granted the motion in part and denied it in part.  Plaintiffs subsequently filed a Second Amended Complaint, and GM filed a second motion to dismiss that pleading that was not fully briefed before the parties reached a tentative settlement memorialized in this Agreement.  If the parties had not

negotiated the settlement, GM planned to file motions to dismiss the Illinois and Florida Actions.

WHEREAS, in the California Related Action, the parties entered into a scheduling order that included exchange of discovery requests. GM produced documents to Plaintiffs in response to Plaintiffs' discovery requests. In addition, GM inspected various Class Representatives' vehicles. As a result of the progress of discovery and related discussions, the Parties entered into settlement negotiations.

WHEREAS, on September 29, 2018, representatives of GM and Plaintiffs engaged in a full day mediation session with the Honorable Jay Gandhi (Ret.), at the JAMS Los Angeles Resolution Center that resulted in a tentative settlement without discussion of attorneys' fees, subject to final documentation, Class Notice, and Court approval.

WHEREAS, after the Parties agreed to the terms of the tentative settlement, GM's and Plaintiffs' Counsel attended a second mediation session with Judge Gandhi on November 7, 2018 to negotiate Plaintiffs' claim for an award of attorneys' fees and reimbursement of litigation costs and expenses. This mediation session resulted in an agreement by GM to pay Fees and Costs in an amount not to exceed $3.5 million, once again subject to Class Notice and Court approval.

WHEREAS, in anticipation of Plaintiffs' motions for approval of this settlement and certification of the Settlement Class, the plaintiffs in the California and Illinois

Actions have dismissed those actions without prejudice pursuant to Rule 41(a).  All of the Plaintiffs (in the Florida, California, and Illinois actions) have agreed to participate as Class Representatives, have agreed not to request exclusion from the Settlement Class, and have agreed to be bound by the release set forth in Section VII below.

WHEREAS, before entering into this Settlement, Plaintiffs, by and through their counsel, conducted an examination, investigation, and evaluation of the relevant law and facts to assess the merits of Plaintiffs' claims and potential claims to determine the strength of liability, potential remedies, and all defenses thereto.

WHEREAS, this Agreement was reached as a result of extensive arms'-length negotiations between the Parties and their counsel, occurring over the course of a number of months and two separate, in-person mediation sessions with a respected mediator, the Honorable Jay Gandhi (Ret.) of JAMS.

WHEREAS, Plaintiffs, as putative class representatives, believe that the claims settled herein have merit, but they and their counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the claims through trial, appeal, and ancillary actions.  Plaintiffs and Class Counsel have also taken into account the uncertain outcome and risk of any litigation, as well as the difficulties and delay inherent in such litigation, and they believe that the Settlement set forth in this Agreement confers substantial benefits upon the Class Members.  Plaintiffs and Class Counsel are also mindful of the inherent challenges of proof and the strength of the

defenses to the alleged claims. Based upon their evaluation, they have determined that the Settlement herein provides a just, fair, and favorable recovery for the Settlement Class and is in the best interest of the Class.

WHEREAS, based upon their review, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, Plaintiffs and Class Counsel, on behalf of Plaintiffs and the other members of the proposed Class, have agreed to settle the Action pursuant to the provisions of this Agreement, after considering, among other things: (i) the substantial benefits to the Class Members under the terms of this Settlement; (ii) the risks, costs, and uncertainty of protracted litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation; and (iii) the desirability of consummating this Settlement promptly in order to provide effective relief to Class Members.

WHEREAS, GM has vigorously denied and continues to dispute all of the claims and contentions alleged in the Action and the Related Actions, and denies any and all allegations of wrongdoing, fault, liability or damage of any kind to Plaintiffs and the putative class. GM further denies that it acted improperly or wrongfully in any way, and believes that the Action and Related Actions have no merit. GM further denies that Plaintiffs' claims would be suitable for class action treatment outside of a class settlement context if this litigation were to proceed and Plaintiffs were to move for class certification. GM desires to settle the Action upon the terms and conditions

set forth in this Settlement to promote customer satisfaction with its products and to eliminate the uncertainties, burden, expense, and delay of further protracted litigation.

NOW, THEREFORE, it is hereby STIPULATED AND AGREED, by and between the Parties, through their respective counsel, that: (a) the Action be fully and finally compromised, settled, and released upon final settlement approval by the Court after the hearings as provided for in this Agreement; and (b) upon such approval by the Court, a Final Order and Judgment be entered dismissing the Florida Action with prejudice upon the following terms and conditions.

## II.    DEFINITIONS

In addition to the terms defined parenthetically elsewhere in this Agreement, the following definitions apply to this Agreement.

1.    "Action" means the civil action entitled *Ellen Berman, et al. v. General Motors LLC*, Case No. 2:18-CV-14371, pending in the United States District Court for the Southern District of Florida.

2.    "Agreement," "Settlement," or "Settlement Agreement" means this Settlement Agreement and Release and the settlement terms embodied herein, including all attached Exhibits (which are an integral part of this Settlement Agreement and Release and are incorporated in their entirety by reference), including all subsequent amendments agreed to in writing by the Parties and exhibits to such amendments.

3.      "CAFA Notice" refers to the notice requirements of 28 U.S.C. § 1715(b).

4.      "Claim Deadline" means one hundred and twenty (120) days after Claim Forms are mailed.  The Claim Deadline will be the final time and date by which a Claim Form must be received by the Settlement Administrator in order for a Class Member to be entitled to any of the settlement consideration contemplated in this Agreement.  The Claim Deadline will be set forth in the Claim Form mailed after the Effective Date.

5.      "Claim Form(s)" means the separate claim forms for each model year that will be made available to Class Members, via US mail, after the Effective Date.

6.      "Claimant" means a Settlement Class Member who complies with the claims submission requirements herein, including the requirements of timely and complete submission.

7.      "Claims Administrator" or "Administrator" or "Settlement Administrator" means the qualified third-party administrator and agent agreed to by the Parties and approved and appointed by the Court in the Preliminary Approval Order to administer the Settlement, including providing the Class Notice.  The Parties agree to recommend that the Court appoint Analytics Consulting LLC as Settlement Administrator to: (a) implement and distribute the Class Notice by U.S. Mail as provided herein; (b) distribute the Claim Forms to Class Members after the Effective Date as provided herein; (c) receive completed Claim Forms, review them for eligibility and pay eligible

Claims with funds to be provided by GM; and (d) to provide reasonable and necessary ancillary settlement administration services.

8.     "Class Counsel" shall mean Whitfield Bryson & Mason LLP, Greg Coleman Law PC, and Ahdoot & Wolfson, PC.

9.     "Class Member(s)" or "Settlement Class Member(s)" means any member of the Settlement Class who is identified in the Class List and does not elect exclusion or opt out from the Settlement Class pursuant to terms and conditions for exclusion set out in this Agreement and / or in the Class Notice.

10.    "Class Notice" or "Notice" means the settlement notice to be mailed to the Class, substantially in the form attached as **Exhibit A** hereto.

11.    "Class List" means and includes all of the following: (i) the first and last names of all Potential Class Members, which include all current and former retail owners and lessees of Class Vehicles; and (ii) the corresponding physical mailing addresses for all Potential Class Members.  GM shall compile the Class List of Class Vehicles (defined below) using IHS/Polk and U.S. Postal Change of Address data for use by the Settlement Administrator in sending Class Notice and Claim Forms by first-class mail to potential Class Members.

12.    "Class Vehicles" shall mean model year 2010, 2011, 2012 and 2013 Chevrolet Equinox and GMC Terrain vehicles equipped with 2.4 liter Ecotec engines that were purchased or leased new at retail, or were purchased or leased used by Class

Members, and that GM manufactured before the Production Change.  Excluded from the Class Vehicles for avoidance of doubt are all model year 2013 Equinox and Terrain vehicles that GM manufactured after the Production Change.

13.     "Court" means the United States District Court for the Southern District of Florida presiding over the Action.

14.     "Effective Date" means the first date when each and all of the following conditions have occurred:

        a.     The Court has entered the Final Order and Judgment; and

        b.     The Final Order and Judgment has become Final.  "Final," when referring to a judgment or order, means that (i) the judgment is a final, appealable judgment; and (ii) either (1) no appeal has been taken from the judgment as of the date on which all deadlines to appeal therefrom have expired; or (2) an appeal or other review proceeding of the judgment having been commenced, the date by which such appeal or other review is finally concluded and no longer is subject to review by any court, whether by appeal, petitions or rehearing or re-argument, petitions for rehearing en banc, petitions for writ of certiorari, or otherwise, and such appeal or other review has been finally resolved in a manner that affirms the Final Order and Judgment in all material respects.

15.     "Eligible Claimant" means a Settlement Class Member.

16.    "Fairness Hearing" or "Settlement Hearing" means the hearing that is to take place after the entry of the Preliminary Approval Order and after the Notice Date for purposes of: (a) entering the Final Order and Judgment; (b) determining whether the Settlement should be approved as fair, reasonable, and adequate; (c) ruling upon an application for Service Payments by the Plaintiffs; (d) ruling upon an application by Class Counsel for the Fee and Expense Award; and (e) entering any final order awarding the Fee and Expense Award and Service Payments.  The Parties shall request that the Court schedule the Fairness Hearing for a date that is in compliance with the provisions of 28 U.S.C. §1715(d).

17.    "Fee and Expense Award" means such funds as may be approved and awarded by the Court to Class Counsel and/or Plaintiffs' Counsel to compensate them for conferring the benefits upon the Class under this Agreement and for their professional time, fees, costs, advances, and expenses incurred in connection with the Action and the Settlement.

18.     "Fee Application" means Class Counsel's and/or Plaintiffs' Counsel's application for the Fee and Expense Award.

19.    "Final Order and Judgment" means the Court's order and judgment fully and finally approving the Settlement and dismissing the Action with prejudice, as described in Section III herein.

20.    "GM" means General Motors LLC.

11

21.    "GM's Counsel" or "Defense Counsel" means Jones Walker LLP and Isaacs Clouse Crose & Oxford LLP.

22.    "Notice and Administration Costs" means any and all reasonable fees, costs, and charges incurred, charged, or invoiced by the Settlement Administrator relating to the administration and notice of the Settlement, including but not limited to: (i) the costs and expenses that are associated with disseminating the Class Notice to the Settlement Class, including, but not limited to, the Class Notice; and (ii) the costs and expenses of the distribution of the Settlement's benefits to Claimants pursuant to terms and conditions herein.

23.    "Notice Date" means the first date upon which the Class Notice is disseminated to the Settlement Class.

24.    "Opt-Out" shall refer to a member of the Settlement Class who properly and timely submits a request for exclusion from the Settlement Class as set forth in Section VIII herein.

25.    "Opt-Out and Objection Deadline" means the date that shall be sixty days after the Class Notice authorized by the court in the Preliminary Approval Order is mailed, or any other date set by the Court, by which a person in the Settlement Class must opt out of the Settlement or make any objection to the proposed Settlement, the Fee Application, and/or the Service Payment Application, in accordance with the procedures set forth herein and/or in any order of the Court.

26.     "Parties" shall refer to Plaintiffs and GM.

27.     "Party" shall mean any one of the "Parties."

28.     "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, affiliates, attorneys, predecessors, successors, representatives, and/or assignees.

29.     "Potential Class Members" means and includes all persons who fall within the definition of the Settlement Class.

30.     "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order.

31.     "Preliminary Approval Order" shall mean the order of the Court preliminarily approving this Agreement, substantially in the form attached hereto as **Exhibit C**.

32.     "Production Change" refers to the introduction of the new "525" piston rings into model year 2013 Chevrolet Equinox and GMC Terrain production in May 2013.

33.     "Related Actions" means *Hindsman et al. v. General Motors LLC*, United States District Court for the Northern District of California, No. 3:17-cv-5337-JSC, and

13

*Sanchez et al. v. General Motors LLC*, United States District Court for the Northern District of Illinois, No. 18-cv-02536.

34.     "Released Claims" shall mean the claims released under this Agreement as set forth in more detail in Section VII below.

35.     "Released Parties" shall mean GM, any individual or entity, including authorized GM dealerships, involved in any way in the design, manufacture, advertising, marketing, distribution, sale, and/or service of any of the Class Vehicles purchased or leased by the Class Members, as well as all of these individuals' and entities' past, present, and future employees, officers, directors, shareholders, owners, partners, members, joint venturers, managers, representatives, adjusters, attorneys, agents, consultants, insurers, excess insurers, reinsurers, indemnitors, contractors, employers, affiliates, divisions, partnerships, independent contractors, servants, parents, subsidiaries, related entities, predecessors, successors, assignors, assignees, including but not limited to, successors or predecessors by merger, and any other person or entity who has, had, or could have legal responsibility relating to the Released Claims.

36.     "Plaintiffs," "Representative Plaintiffs," or "Class Representatives" means plaintiffs and class representatives in all three matters (Florida, California, and Illinois), including: Ellen Berman, Dayana Guach, Patrick Sanchez, Mark Stauber and Sally

Stauber, Jacob Ross-Demmin, Jennifer Herrington, Ryan Hindsman, Robin Peterson, Diana Miranda, Vanessa Maryanski, Rene Mitchell and Brittany Chambers.

37.    "Service Payment" means the payment to each Representative Plaintiff, in an amount approved by the Court, for their time and effort in connection with this Action, in recognition of the time and effort the Representative Plaintiffs expended in pursuing this Action and in fulfilling their obligations and responsibilities as class representatives, and of the benefits conferred on all Class Members by the Settlement.

38.    "Service Payment Application" means Class Counsel's application for Service Payments to the Representative Plaintiffs.

39.    "Settlement Class" or "Class" shall mean "all persons within the United States who purchased or leased, at any time before the Preliminary Approval Date, a new retail or used model year 2010, 2011, 2012, or 2013 Chevrolet Equinox or GMC Terrain vehicle equipped with 2.4 liter Ecotec engines, manufactured prior to the Production Change, and who have *not* executed a prior release of claims related to Class Vehicle oil consumption or resulting piston or engine damage in favor of GM.

40.    "Special Coverage Adjustment(s)" or "SCA(s)" means a program established by GM that offers to pay for all or part of the cost of specified covered repairs after expiration of a given vehicle's GM-issued express warranty and not previously reimbursed by GM via a good will adjustment and not reimbursed by any third-party service contract provider.

## III.   SETTLEMENT APPROVAL

41.   As soon as is practicable following the signing of this Agreement, Class Counsel shall apply to the Court for entry of the Preliminary Approval Order (substantially in the form attached as **Exhibit C**), for the purpose of, among other things:

a.   Approving the Class Notice, substantially in the form set forth at **Exhibit A**;

b.   Finding that the requirements for provisional certification of the Settlement Class have been satisfied, appointing Plaintiffs as the representatives of the Settlement Class and Class Counsel as counsel for the Settlement Class, and preliminarily approving the Settlement as being within the range of reasonableness such that the Class Notice should be provided pursuant to this Agreement;

c.   Scheduling the Fairness Hearing on a date ordered by the Court, provided in the Preliminary Approval Order, and in compliance with applicable law, to determine whether the Settlement should be approved as fair, reasonable, and adequate, and to determine whether a Final Order and Judgment should be entered dismissing the Action with prejudice;

d.   Determining that the notice of the Settlement and of the Fairness Hearing, as set forth in this Agreement, complies with all legal requirements, including but not limited to the Due Process Clause of the United States Constitution;

      e.        Appointing the Settlement Administrator;

      f.        Directing that Class Notice shall be given to the Settlement Class as provided in this Agreement;

      g.        Providing that Class Members will have until the Claim Deadline to submit Claim Forms;

      h.        Providing that any objections by any Class Member to the certification of the Settlement Class and the proposed Settlement contained in this Agreement, the Fee Application, the Service Payment Application, and/or the entry of the Final Order and Judgment shall be heard and any papers submitted in support of said objections shall be considered by the Court at the Fairness Hearing only if, on or before the date(s) specified in the Class Notice and Preliminary Approval Order, such objector submits to the Court a written objection, and otherwise complies with the requirements of this Agreement;

      i.        Establishing dates by which the Parties shall file and serve all papers in support of the application for final approval of the Settlement and in response to any valid and timely objections;

      j.        Providing that all Class Members will be bound by the Final Order and Judgment dismissing the Action with prejudice, unless such Class Members timely file valid written requests for exclusion or opt out in accordance with this Agreement and the Class Notice;

k.      Providing that Class Members wishing to exclude themselves from the Settlement will have until the date specified in the Class Notice and the Preliminary Approval Order to submit a valid written request for exclusion or opt out to the Settlement Administrator, and requiring that the Settlement Administrator provide GM and Class Counsel with copies of all Requests for Exclusion.

l.      Directing the Parties, pursuant to the terms and conditions of this Agreement, to take all necessary and appropriate steps to establish the means necessary to implement the Settlement; and

m.      Pending the Fairness Hearing, staying all proceedings in the Action, other than proceedings necessary to carry out or enforce the terms and conditions of this Agreement and the Preliminary Approval Order.

42.    Following the entry of the Preliminary Approval Order, Class Notice shall be disseminated in the manner directed and approved by the Court.

43.    At the Fairness Hearing, the Parties shall seek to obtain from the Court a Final Order and Judgment.  The Final Order and Final Judgment shall, among other things:

a.      Find that the Court has personal jurisdiction over all Class Members, the Court has subject matter jurisdiction over the claims asserted in the Action, and that venue is proper;

b.      Finally approve this Agreement and the Settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c.      Certify the Settlement Class for purposes of this Settlement only;

d.      Find that the Notice to the Settlement Class complied with all laws, including, but not limited to, Federal Rule of Civil Procedure 23 and the Due Process Clause of the United States Constitution;

e.      Incorporate the Release set forth in this Agreement and make the Release effective as of the date of the Final Order and Judgment;

f.      Authorize the Parties to implement the terms of the Settlement;

g.      Dismiss the Action with prejudice; and

h.      Retain jurisdiction relating to the administration, consummation, validity, enforcement, and interpretation of this Agreement, the Final Order and Judgment and any final order approving the Fees and Expense Award.

44.      Based upon the Declaration of the Settlement Administrator, attached hereto as **Exhibit B**, the parties believe that mailing of the Notice attached hereto as **Exhibit A** will provide reasonable notice to the Settlement Class, and that it represents the best practicable notice under the circumstances.

45.      The Parties shall cooperate with each other in good faith to carry out the purpose of and effectuate this Agreement, and they shall take any and all actions and execute and deliver any and all additional documents reasonably necessary or

appropriate to carry out the terms of this Agreement and the transactions contemplated hereby.

## IV.   SETTLEMENT CONSIDERATION

46.   In consideration for the releases contained in this Agreement, and without admitting liability for any of the alleged acts or omissions in the Action and the Related Actions, and in the interest of minimizing the costs inherent in any litigation, Defendant agrees to provide notice to eligible Class Members within thirty days of the Effective Date of the following items of settlement consideration:

a.   Notice that prior Special Adjustment Coverage Adjustments 14159, 15285, and 16118 remain in effect, subject to their express terms, conditions and time and mileage limits, including free diagnosis and piston assembly replacement by authorized GM dealers for Class Vehicles within SCA time and mileage limits that are diagnosed as currently consuming excessive oil pursuant to GM Technical Service Bulletin No. 13-06-01-003H (more than one quart of oil per 2,000 miles).

b.   Notice that Class Members who previously paid out-of-pocket for piston assembly replacement in their Class Vehicles due to excessive oil consumption as defined in the SCAs may submit a Claim Form to the Settlement Administrator prior to the Claim Deadline requesting full reimbursement of any and all out-of-pocket expenses covered under the express terms of the applicable SCA that have not previously been reimbursed by GM or by a third-party service contract provider.  To be

20

eligible for reimbursement such expenses must have been incurred within the SCA's time and mileage limits.  Expenses incurred after expiration of the time and mileage limits (as defined in the applicable SCAs) are not eligible for reimbursement. Reimbursable expenses include expenses covered explicitly by the applicable SCAs and, for avoidance of doubt, reasonable rental car charges supported by reasonable documentation showing that such charges were incurred during the period that vehicles were at a dealership or repair shop for piston assembly repairs related to oil consumption within the SCA time and mileage limits.

c.    <u>New 2013 Special Coverage Adjustment</u>:  Within thirty days of the Effective Date, GM shall issue and notify all of its U.S. dealers and eligible Class Members of a new SCA ("New SCA"),covering model year 2013 Class Vehicles manufactured prior to the Production Change and containing terms and limitations substantially the same as the model year 2011 and 2012 SCAs.  Under the New SCA, subject to it express terms, conditions and time and mileage limits, Class Members may take their Class Vehicles to authorized GM dealerships for free diagnosis and, if diagnosed as currently consuming excessive oil within New SCA time and mileage limits, free piston assembly replacement.

d.    Class Members who previously paid out-of-pocket for piston assembly replacement in their model year 2013 Class Vehicles due to excessive oil consumption as defined in the New SCAs may submit a Claim Form to the Settlement

Administrator prior to the Claim Deadline requesting full reimbursement of any and all out-of-pocket expenses covered under the express terms of the New SCA that have not previously been reimbursed by GM or by a third-party service contract provider.  To be eligible for reimbursement such expenses must have been incurred within the New SCA's time and mileage limits.  Expense incurred after expiration of the time and mileage limits are not eligible for reimbursement.  Reimbursable expenses include expenses covered explicitly by the applicable SCAs and, for avoidance of doubt, reasonable rental car charges supported by reasonable documentation showing that such charges were incurred during the period that vehicles were at a dealership or repair shop for piston assembly repairs related to oil consumption within the New SCA time and mileage limitations.

       e.    <u>Notice and Administration Costs</u>:  GM shall pay any and all Notice and Administration Costs directly to the Settlement Administrator as such costs and expenses are invoiced.  The Settlement Administrator shall provide a copy of all invoices and charges to Class Counsel when transmitting same to GM and / or any of GM's agents, representatives, or attorneys; and

       f.    <u>Value of 2013 New SCA</u>: GM's best estimate of the dollar value of the benefits that will be provided pursuant to the 2013 New SCA is forty to forty-five million dollars ($40,000,000- $45,000,000).

g.  <u>Fee and Expenses Award</u>: GM shall pay the Fee and Expenses Award and all Service Payments awarded by the Court pursuant to the terms and conditions of Section X herein.

h.  <u>Notice and Claim Form</u>.  Class Members shall have the opportunity to seek reimbursement of expenses pursuant to SCA 14159, SCA 15285, SCA 16118, and the New 2013 SCA.  The Settlement Administrator will notify and advise Class Members of the right to make a claim for such expense reimbursement subject to the terms, conditions and time and mileage limits of the SCAs by mailing them a Notice ("Notice and Claim Form") within thirty days of the Effective Date.  The Notice and Claim Form will further advise Class Members that to claim reimbursement they must submit the attached Claim Form to the Settlement Administrator no later than the Claim Deadline (120 days after the Notice and Claim Form is mailed) and shall specifically advise Class Members of the specific Claims Deadline.  A copy of the Notice and Claim Form for model year 2010 is attached hereto as **Exhibit G.**  A copy of the Notice and Claim Form for model year 2011 and 2012 Class Vehicles is attached hereto as **Exhibit H**.  A copy of the Notice and Claim Form for model year 2013 Class Vehicles is attached hereto as **Exhibit I**.

i.  GM shall provide to the Settlement Administrator sufficient funds to pay all Eligible Class Member claims reflected in timely and valid Claim Forms within sixty days after the Claim Deadline.

47.   The Settlement Administrator will manage and oversee SCA expense reimbursement claims received from Class Members via the Claim Form, as provided herein in Section VI.

48.   Claims for repairs or reimbursement submitted after the Claim Deadline, or via an otherwise invalid Claim Form, as well as complaints about GM dealership handling of SCA repair requests, will be addressed by GM's normal customer goodwill procedures provided customers contact the Chevrolet or GMC Customer Assistance Centers as set forth in their vehicles' warranty booklets and Owners' Manuals.

## V.   NOTICE OF THE SETTLEMENT

49.   GM shall comply with 28 U.S.C. §1715 ("CAFA").  No later than ten (10) days after this Agreement is filed with the Court, GM shall mail or cause the items specified in 28 U.S.C. §1715(b) to be mailed to each State and Federal official, as specified in 28 U.S.C. §1715(a).  All notification duties imposed by 28 U.S.C. §1715, including the corresponding expenses, shall be separate and in addition to any other obligation imposed herein.  Any and all cost or expense related to, either directly or indirectly, GM's compliance with CAFA shall be paid by GM.

50.   The Class Notice shall comply with Federal Rules of Civil Procedure and any other applicable statute, law, or rule, including but not limited to, the Due Process Clause of the United States Constitution.

51.     The Parties shall jointly recommend that the Court approve the retention of Analytics Consulting LLC to be the Settlement Administrator.   Following the Court's preliminary approval of this Agreement and the Court's appointment of the proposed Settlement Administrator, the Settlement Administrator shall disseminate the Class Notice as provided for herein and in the Declaration of the Settlement Administrator, attached hereto as **Exhibit B**, as specified in the Preliminary Approval Order and in this Agreement, and in order to comply with all applicable laws, including, but not limited to, the Due Process Clause of the United States Constitution.

52.     Dissemination of the Class Notice:

a.     Class List: GM will provide to IHS/Polk, within 14 days of the date the Settlement Agreement is executed by GM and plaintiffs, a list of the VINs for each Class Vehicle.  IHS/Polk will develop the Class mailing list using registration data and U.S. Postal Change of Address information and provide it to the Settlement Administrator within 20 days of the last governmental approval required for IHS/Polk to access state motor vehicle registration data for this purpose. All information in the Class List shall be protected as confidential and will not be disclosed to anyone, except to Class Counsel, except as required by applicable tax authorities, pursuant to the express written consent of an authorized representative of GM, or by order of the District Court.  The Class List shall be used only for the purpose of administering this Settlement.

53.    Toll Free Telephone Number: Prior to the dissemination of the Class Notice, the Settlement Administrator shall establish a toll-free telephone number, through which Class Members may obtain information about the Action, submit inquiries regarding the Settlement, and request a mailed copy of the Class Notice and/or the Notice and Claim Form, pursuant to the terms and conditions of this Agreement.

54.    Direct Notice to Settlement Class Members: Within thirty days of the Settlement Administrator's receipt of the Class List, the Settlement Administrator will provide direct notice to all Settlement Class Members as described in the Declaration of the Settlement Administrator attached hereto as **Exhibit B**.

55.    The Class Notice: The Class Notice shall be substantially similar to the document attached to this Agreement as **Exhibit A** and shall cover the following:

a.    General Terms: The Class Notice shall contain a plain and concise description of the nature of the Action and the proposed Settlement, including information on the definition of the Settlement Class, how the proposed Settlement would provide relief to Class Members, what claims are released under the proposed Settlement, and other relevant information.

b.    Opt-Out Rights: The Class Notice shall inform Class Members that they have the right to opt out of the Settlement.  The Class Notice shall provide the deadlines and procedures for exercising this right.

      c.      Objection to Settlement: The Class Notice shall inform Class Members of their right to object to the proposed Settlement and appear at the Fairness Hearing.  The Class Notice shall provide the deadlines and procedures for exercising these rights.

      d.      Fees and Expenses: The Class Notice shall inform Class Members of the total estimated Notice and Administration Costs and the maximum amounts to be sought by Class Counsel in the Fee Application and shall also explain that the fees and expenses awarded to Class Counsel (if any) and Service Payments to Plaintiffs (if any), are in addition to Settlement benefits and consideration being made available to Class Members.  Nothing in this provision is intended to prevent GM from communicating with Class Members in the normal course of GM's business.

56.    The Parties agree that any communications or publications by Class Counsel regarding the issues addressed in this Agreement will be consistent with the terms of this Agreement, the Class Notice, the Preliminary Approval Order, and the Final Order and Judgment.  To the extent that Class Counsel communicate with any press or media concerning this Agreement, Class Counsel will give GM 48 hours advance notice and reasonable opportunity to review such communications in advance.

## VI.   ADMINISTRATION OF THE SETTLEMENT

57.    Because the names of Class Members and other personal information about them will be provided to the Settlement Administrator for purposes of providing

cash benefits and processing opt out requests, the Settlement Administrator will ensure that any information provided to it by Settlement Class Members will be secure and used solely for the purpose of effecting this Settlement and will execute any appropriate agreement needed to ensure confidentiality.

58.     The Settlement Administrator shall administer the Settlement in the most cost-effective and timely manner, subject to the terms and conditions of this Agreement.   Without limiting any of its other obligations as stated herein, the Settlement Administrator shall be responsible for printing and mailing the Class Notice, distribution of the Settlement benefits to Settlement Class Members who submit Claim Forms, and providing all other related support, reporting, and administration as further stated in this Agreement.  Class Counsel and GM's Counsel may direct the Settlement Administrator to assist with various additional administrative tasks in implementing the Settlement as Class Counsel and GM's Counsel shall deem appropriate by mutual agreement.

59.     In fulfilling its responsibilities in providing Class Notice, the Settlement Administrator shall be responsible for, without limitation, consulting on and designing the notice to the Settlement Class.   In particular, the Settlement Administrator shall be responsible for:  (a) printing and mailing the Class Notice as provided herein;  (b) printing and mailing the Claim Forms as provided herein;  (b) responding to requests from Class Counsel and/or Defense Counsel; (c) establishing a toll-free voice response

unit with message and interactive voice response (IVR) capabilities to which Class Members may refer for information about the Action and the Settlement; (d) receiving and maintaining any Class Member correspondence regarding requests for exclusion to the Settlement;  (e) forwarding inquiries from Class Members to Class Counsel for a response, if warranted; (f) establishing a post office box for the receipt of Claim Forms, exclusion requests, and any correspondence; (g) reviewing Claim Forms according to the review protocols agreed to by the Parties and set forth in this Agreement; (h) otherwise implementing and/or assisting with the Claim Form review process and the distribution of the Settlement benefits to Claimants; and (j) paying funds to Eligible Claimants in the amounts set forth in timely and valid Claim Forms within sixty (60) days of the Claim Deadline.

60.   The Settlement Administrator shall administer the Settlement in accordance with the terms of this Agreement and, without limiting the foregoing, shall:

a.   Treat any and all documents, communications, and other information and materials received in connection with the administration of the Settlement as confidential and shall not disclose any or all such documents, communications, or other information to any person or entity except as provided for in this Agreement or by court order;

b.   Receive requests for exclusion or opt out requests from Class Members and provide to Class Counsel and Defense Counsel a copy thereof within

three (3) days of receipt.   If the Settlement Administrator receives any requests for exclusion or opt out request after the deadline for the submission of such requests, the Settlement Administrator shall promptly provide Class Counsel and Defense Counsel with copies thereof; and

        c.    Receive and maintain all correspondence from any Class Member regarding the Settlement.

        d.    Provide a summary report on a weekly basis to Class Counsel and Defense Counsel on number of calls and any other pertinent information agreed to by Class Counsel and Defense Counsel.

        61.    Each eligible Class Member may submit a Claim Form.   Class Members must follow and abide by the instructions set forth in the Claim Form.   Claim Forms that do not meet the requirements set forth in the Claim Form instructions shall be rejected.   Where a good faith basis exists, the Settlement Administrator may reject a Class Member's Claim Form for good cause and, among any other valid reason, the following:  (i) failure to fully complete and/or sign the Claim Form; (ii) illegible Claim Form; (iii) the person submitting the Claim Form is not a Class Member; (iv) the Claim Form is fraudulent; (v) the Claim Form is duplicative; (vi) failure to submit a Claim Form by the Claim Deadline; and/or (vii) the Claim Form otherwise does not meet the requirements of this Agreement.

62.     The Settlement Administrator shall determine whether a Claim Form meets the requirements set forth in this Agreement.   Each Claim Form shall be submitted to and reviewed by the Settlement Administrator, who shall determine (in accordance with this Agreement) the extent, if any, to which the claim shall be allowed.

63.     The Settlement Administrator shall have thirty (30) days from the Claim Deadline to exercise the right of rejection.  The Settlement Administrator shall notify the Settlement Class Member using the contact information provided in the Claim Form of the rejection.   Class Counsel and Defense Counsel shall be provided with copies of all such notifications to Class Members.  If any Class Member whose Claim Form has been rejected, in whole or in part, desires to contest such rejection, the Settlement Class Member must, within ten (10) business days from receipt of the rejection, transmit to the Settlement Administrator by U.S. mail a notice and statement of reasons indicating the grounds for contesting the rejection, along with any supporting documentation, and requesting further review by the Settlement Administrator, in consultation with Class Counsel and Defense Counsel, of the denial of the Claim Form.  If Class Counsel and Defense Counsel cannot agree on a resolution of the Class Member's notice contesting the rejection, the disputed Claim Form shall be presented to the Court, and/or a referee appointed by the Court to make recommendations to the Court, for summary and non-appealable resolution.   Any monies due to such Class Members not previously paid to the Settlement Administrator

shall be paid by GM in sufficient time to permit timely distribution to the applicable Class Member by the Settlement Administrator.

64. No person shall have any claim against GM, Defense Counsel, Plaintiffs, Class Counsel, the Settlement Class, and/or the Settlement Administrator based on any eligibility determinations, distributions, or awards made in accordance with this Agreement. This provision does not affect or limit in any way the right of review by the Court or referee of any disputed Claim Forms as provided in this Agreement.

65. Claim Forms submitted via U.S. Mail to the Settlement Administrator shall be deemed to have been submitted when it is actually received by the Settlement Administrator, or by the USPS postmark date, whichever is earlier.

66. Class Counsel and Defense Counsel shall have the right to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

67. Any Class Member who, in accordance with the terms and conditions of this Agreement, does not seek exclusion from the Settlement Class will be bound together with all Class Members by all of the terms of this Agreement, including the terms of the Final Order and Judgment to be entered in the Action and the releases provided for herein, and will be barred from bringing any action in any forum (state or federal) against any of the Released Parties concerning the claims released in this Agreement.

68.     Not later than fourteen (14) days before the date of the Fairness Hearing the Settlement Administrator shall file with the Court an affidavit containing a list of those persons who have opted out or excluded themselves from the Settlement.

69.     If the Settlement is not approved or for any reason the Effective Date does not occur, no payments or distributions of any kind shall be made pursuant to this Agreement, except for the costs and expenses of the Settlement Administrator, which shall be paid by GM, and for which Plaintiffs and/or Class Counsel are not responsible. In the event the Settlement Administrator fails to perform its duties, and/or makes a material or fraudulent misrepresentation to, or conceals requested material information from Class Counsel, GM, and/or Defense Counsel, then the party to whom the misrepresentation is made shall, in addition to any other appropriate relief, have the right to demand that the Settlement Administrator immediately be replaced.  No party shall unreasonably withhold consent to remove the Settlement Administrator.  The Parties will attempt to resolve any disputes regarding the retention or dismissal of the Settlement Administrator in good faith, and, if they are unable to do so, will refer the matter to the Court for resolution.

## VII.   RELEASE AND DISMISSAL WITH PREJUDICE

70.     As of the entry of the Final Order and Judgment, Plaintiffs and the Class Members hereby release GM and the Released Parties from any and all claims, demands, actions, causes of actions, individual actions, class actions, damages,

obligations, liabilities, appeals, reimbursements, penalties, costs, expenses, attorneys' fees, liens, interest, injunctive or equitable claims and/or administrative claims, whether known or unknown, filed or unfiled, asserted or unasserted, regardless of the legal theories involved, that were brought or could have been brought based on the facts alleged in the Action and Related Actions that relate in any manner to claims of excessive oil consumption or resulting piston or engine damage in Class Vehicles as alleged in the Action and the Related Actions, and Plaintiffs and Class Members expressly waive and relinquish all such claims or causes of action to the fullest extent permitted by law ("Released Claims").  Plaintiffs and the Settlement Class Members recognize that even if they later discover facts in addition to or different from those which they now know or believe to be true, they nevertheless agree that, upon entry of the Final Order and Judgment, Plaintiffs and the Class Members fully, finally and forever settle and release any and all of the Released Claims.  The Parties acknowledge that the foregoing release was bargained for and is an essential and material element of this Agreement.  For the avoidance of doubt, the Released Claims shall not include the release of any claims concerning any alleged personal injury.  It is expressly understood and agreed that this settlement does not impact remaining warranty coverage on any Class Vehicle, if any, that is unrelated to the allegations in the Action.

71.    The foregoing release does not affect the rights of Class Members who timely and properly submit Requests for Exclusion.

72.     Upon issuance of the Final Order and Judgment, the Action shall be dismissed with prejudice and Plaintiffs and Class Members, other than those who timely and properly submitted a Request for Exclusion, shall be permanently barred and enjoined from initiating, asserting, or prosecuting any Released Claim against GM or any of the other Released Parties.

## VIII.  REQUEST FOR EXCLUSION BY CLASS MEMBERS

73.     Any Class Member may make a request to be excluded from the Settlement Class, and from participation in the settlement consideration provided by this Agreement, by mailing or delivering such request in writing ("Request for Exclusion") to the Settlement Administrator at the address set forth in the Class Notice prior to the Opt Out and Objection Deadline.

74.     Any Request for Exclusion must be actually delivered not later than the Opt Out and Objection Deadline.  The Request for Exclusion shall (1) state the Class Member's printed full name, current address and phone number and email address; (2) specifically state the Class Member's desire to be excluded from the Settlement Class; (3) provide the Vehicle Identification Number for the Class Member's vehicle; and (4) be signed personally by the Class Member.  Failure to comply with these requirements or to timely submit the Request for Exclusion will result in the Class Member being bound by the terms of this Agreement.

75.     Any Class Member who submits a timely Request for Exclusion may not file an Objection and waives any rights or benefits under this Agreement.

## IX.     OBJECTIONS BY CLASS MEMBERS

76.     As will be set forth in the Class Notice, any Class Member who wishes to object to any provision of this Agreement must file a written notice of objection (an "Objection") with the Court no later than the Opt Out and Objection Deadline.   An objection may only be filed by a Class Member.

77.     To state a valid Objection, a Class Member must include the following information in the Objection: (1) the objector's full name, current address, current telephone number and email address; (2) documentation, such as documents showing the Vehicle Identification Number for the Settlement Class Member's vehicle, sufficient to establish membership in the Settlement Class; (3) a written statement of all grounds for the objection, accompanied by any legal support for the objection; (4) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; (5) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representation (if any) along with documentation setting forth such representation; (6) copies of any documents supporting the Objection.

78.     The Class Member must personally sign the objection; an attorney's signature is not sufficient.   Subject to the approval of the Court, any Class Member

filing an Objection may appear, in person or by counsel, at the Fairness Hearing. However, to be eligible for appearance at the hearing, such Class Member must file with the Court and serve upon all counsel designated in the Class Notice, a Notice of Intention to Appear by the Objection Deadline. The Notice of Intention to Appear must include the case name, case number, the Class Member's printed name, address, email address, telephone number and signature. The Class Member also must include copies of any papers, exhibits, or other evidence that the Class Member or counsel will present to the Court. Any Class Member who does not provide a Notice of Intention to Appear in complete accordance with these specifications, subject to approval by the Court, waives any objections to the Agreement and may be barred from speaking or otherwise presenting any views at the hearing on the Final Order and Judgment.

79. In the event that a Class Member objects through an attorney hired at his, her or its own expense, the attorney must file a notice of appearance with the Court by the Objection Deadline and serve a copy of the notice and the objection containing the information detailed above on Class Counsel and GM's Counsel by the Objection Deadline.

80. Any Class Member who fails to file and serve timely a written objection containing all of the information listed above in the previous paragraphs, including notice of his/her intent to appear at the final approval hearing, shall not be permitted to object to the Settlement and shall be foreclosed from seeking any review of the

settlement or the terms of the Settlement Agreement by any means, including but not limited to an appeal.

81.     Written notice of an objection in appropriate form must be filed with: The Clerk, United States District Court for the Southern District of Florida, Alto Lee Adams, Sr. United States Courthouse, 101 South U.S. Highway One, Fort Pierce, Florida 34950.

## X.     SERVICE PAYMENTS AND ATTORNEYS'S FEES AND EXPENSES

82.     In recognition of the time and effort the Plaintiffs expended in pursuing this action and in fulfilling their obligations and responsibilities as class representatives, the benefits conferred on all Class Members by the Settlement, Class Counsel may ask the Court for the award and payment of the Service Payment, in an amount not to exceed four thousand five hundred dollars ($4,500 for each Plaintiff or Co-Plaintiffs, i.e., total of $4,500 for Plaintiffs who co-own a single vehicle).

83.     The Service Payments as awarded by the Court (if any) shall be paid by GM by way of physical check or wire transfer to "Greg Coleman Law PC Client Trust Account" within seven (7) business days after the Effective Date, subject to GM's prior receipt of a completed IRS Form W-9 form duly executed on behalf of Greg Coleman Law PC and, if applicable, wire instructions.

84.     Plaintiffs acknowledge and understand that they may receive no Service Payments, and their agreement to the Settlement is not conditioned on the possibility of

receiving Service Payments. If the Court does not grant a Service Payment to a Plaintiff, that Plaintiff is entitled only to the amounts they claim as Class Members.

85. Class Counsel will make a Fee Application for an award of reasonable attorneys' Fees and Expenses incurred in the Action and Related Actions. The amount of the attorneys' Fees and Expenses will be determined by the Court. The amount of the attorneys' Fees and Expenses will be determined by the Court. GM will not object, oppose, appeal, or take a position to any fee and expenses request up to and including the aggregate amount of Three Million Five Hundred Thousand Dollars and No Cents ($3,500,000.00). Class Counsel will not seek any other attorneys' fees, costs and expenses for any work they have performed or will perform in connection with this Agreement and will not seek or accept Fees and Expenses exceeding $3,500,000 in the aggregate.

86. The Fee and Expense Award shall be paid by GM by way of physical check or wire transfer to "Greg Coleman Law PC" within seven (7) business days of the Effective Date, subject to GM's prior receipt of a completed IRS Form W-9 form duly executed on behalf of Greg Coleman Law PC and, if applicable, wire instructions.

87. The procedure for and the allowance or disallowance by the Court of any application for reasonable attorneys' fees, costs, expenses, or reimbursement to be paid to Class Counsel are not part of the settlement of the Released Claims, and the Parties request that this issue be considered by the Court separately from the Court's

consideration of the fairness, reasonableness, and adequacy of the settlement of the Released Claims. Assuming compliance with Federal Rule of Civil Procedure 54(b), any such separate order, finding, ruling, holding, or proceeding which solely involves any such applications for reasonable attorneys' fees and expenses, or any separate appeal from any separate order, finding, ruling, holding, or proceeding solely involving plaintiffs' attorney fees or reversal or modification of such fees shall not operate to terminate or cancel this Agreement or otherwise affect or delay the finality of the Final Order and Judgment or the Settlement.

88.     GM shall have no responsibility for and no liability with respect to the allocation of the attorneys' fees, costs and expenses among Class Counsel or any other counsel purporting to represent Plaintiffs.

## XI.    MODIFICATION OR TERMINATION OF THE SETTLEMENT

89.     In addition to the circumstances outlined above that entitle the Parties to terminate this Agreement, either Party shall have the right to terminate this Agreement in the event that the Court or any appellate court, rejects, denies approval, or modifies the Agreement or any portion of the Agreement in a way that is material.  For purposes of this provision, "material" shall mean any modifications to the definitions of the Settlement Class, Class Members, or Released Claims, any modifications to the Settlement that relieve or alter the rights of the Plaintiffs, and/or any modifications to the terms of the settlement consideration described in Paragraphs 46 to 48.

90.     In addition to the circumstances outlined above that entitle the Parties to terminate this Agreement, either Party shall have the right to terminate this Agreement in the event that any governmental or regulatory agency should successfully challenge any of the terms of the Agreement such that any material provisions of this Agreement are deemed invalid.

91.     Defendants shall have the right to withdraw from the Settlement if the number of Settlement Class Members who attempt to exclude themselves from the Settlement Class equals or exceeds two percent (2%) of the total Potential Class Members.  If Defendants choose, pursuant to their sole and absolute discretion, to exercise this right, Defendants must do so within ten (10) days of receipt of the Settlement Administrator's opt-out list as provided in Paragraph 68, by providing written notice to Class Counsel.

92.     If any Party elects to terminate this Agreement under any provision herein, that Party shall provide the other Party with notice of the termination ten (10) days after the event or action that gives rise to the termination.

93.      In the event that: (i) the Settlement is not approved, is overturned, or is "materially modified" by the Court or on appeal, (ii) the Judgment does not become Final, or (iii) this Agreement is terminated, cancelled, or fails to become effective for any reason, then:  (a) the Settlement shall be without force and effect upon the rights of the Parties hereto, and none of its terms shall be effective or enforceable, with the

exception of this Paragraph and Paragraphs 46e and 94 herein, which shall remain effective and enforceable; (b) the Parties shall be deemed to have reverted *nunc pro tunc* to their respective status as of the date of the first mediation described herein; (c) all orders entered in connection with the Settlement, including the certification of the Settlement Class shall be vacated without prejudice to any Party's position on the issue of class certification or any other issue, in this Action or any other action, and the Parties shall be restored to their litigation positions existing on the date of execution of this Agreement; (d) the Parties shall proceed in all respects as if the Settlement Agreement and related documentation and orders had not been executed, and without prejudice in any way from the negotiation or fact of the Settlement or the terms of the Agreement; and (e) GM shall honor Claim Forms for Class Members who submitted valid Claim Forms for benefits pursuant to SCA 14159, SCA 15285, and SCA 16118, which would have been valid claims for such benefits even if this Agreement was never executed.  The Agreement, the Settlement, and orders sought or entered as a result of an obligation herein, the fact of their existence, any of their terms, any press release or other statement or report by the Parties or by others concerning the Agreement, the Settlement, their existence, or their terms, any negotiations, proceedings, acts performed, or documents executed pursuant to or in furtherance of the Agreement or the Settlement shall not be offered, received, or construed as evidence of a presumption, concession, or an admission of liability, of the certifiability

of a litigation class, or of any misrepresentation or omission in any statement or written document approved or made, or otherwise used by any Person for any purpose whatsoever, in any trial of this Action or any other action or proceedings.

94.     Notwithstanding any provision herein, in the event this Agreement is not approved by the Court, or the Settlement set forth herein is declared null and void, or in the event that the Effective Date does not occur, Class Members, Plaintiffs, and Class Counsel shall not in any way be responsible or liable for any costs of notice and associated with this Settlement or this Agreement, except that each Party shall bear its own attorneys' fees and costs and GM's future payment obligations pursuant to this Agreement shall cease.

95.     The terms and provisions of this Settlement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however that, after entry of the Final Order and Judgment, the Parties may by written agreement effect such amendments, modifications, or expansions of this Settlement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Final Order and Judgment and do not materially alter, reduce or limit the rights of the Class Members under this Agreement.

## XII.   MISCELLANEOUS PROVISIONS

96.   This Agreement is not to be used in evidence (except in connection with obtaining approval of this Agreement and enforcing its terms) and shall not at any time be construed or deemed to be an admission or concession by GM with respect to any alleged wrongdoing, fault, or omission of any kind whatsoever, regardless of whether or not this Agreement results in entry of a Final Order and Judgment as contemplated herein.   Neither this Agreement nor any certification of a class pursuant to it shall constitute, in this or any other proceeding, an admission by GM, or evidence or a finding of any kind, that any requirement for class certification is satisfied with respect to the Action, or any other litigation, except for the limited purpose of settlement pursuant to this Agreement.

97.   The headings of the sections and paragraphs of this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

98.   This Agreement may not be modified or amended except in writing and signed by all of the Parties.   This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

99.   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the

same instrument.   Electronic, .pdf, faxed or scanned signatures shall be treated as originals.

100.   Except as otherwise provided in this Agreement, each Party bears his, her, or its own attorneys' fees, costs and expenses of the Action and in connection with this Agreement.

101.   The Parties to this Agreement reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement, as well as to correct any inadvertent, non-substantive mistakes or typographical errors contained in the Agreement or the Exhibits.

102.   The administration, consummation, and enforcement of the settlement embodied in this Agreement shall be under the authority of the Court.  The Court shall retain jurisdiction to protect, preserve, and implement the Agreement, including but not limited to, the release contained herein.  The Court expressly retains jurisdiction to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of this Agreement.  The Parties do not intend by this provision to give the Court authority to change any term or condition of this Agreement over the objection of any Party.

103.   The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of

all Parties and their counsel.  Since this Agreement was drafted with the participation of all Parties and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply.  The Parties were represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the Parties to this Agreement.

104.   All of the Parties warrant and represent that they are agreeing to the terms of this Agreement based upon the legal advice of their respective attorneys, that they have been afforded the opportunity to discuss the contents of this Agreement with their attorneys and that the terms and conditions of this document are fully understood and voluntarily accepted.

105.   This Agreement constitutes the entire, fully integrated agreement among the Parties and cancels and supersedes all prior written and unwritten agreements and understandings pertaining to the settlement of the Action.

106.   The Agreement shall be governed by and interpreted according to the laws of the State of Michigan, notwithstanding its conflict of law provisions.

107.   This Settlement will be binding upon and will inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

108.   If any disputes arise regarding the implementation or interpretation of this Agreement, the parties agree to use reasonable efforts to resolve the dispute, including consultation with the Mediator, Hon. Jay Gandhi (Ret.); and if no agreement can be reached, the dispute will be submitted to the Court, which will retain continuing jurisdiction to resolve such disputes.  The Parties do not intend by this provision to give the Court authority to change any term or condition of this Agreement over the objection of a Party.  Any disagreement and/or action to enforce this Agreement shall be commenced and maintained only in the Court in which this Action is pending.  The Court has jurisdiction over the Parties to this Agreement and the Settlement Class.

109.   All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Agreement, the day of the act, or default, from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday or Sunday or a legal holiday, in which event the period shall run until the end of the next day that is not one of the aforementioned days. Each of the Parties reserves the right, subject to the Court's approval, to seek any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement, and to modify or supplement any notice contemplated hereunder.

110.   Any failure by any of the Parties to insist upon the strict performance by any of the other Parties of any of the provisions of this Agreement shall not be deemed

47

a waiver of any provision of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions herein.

111.   Class Counsel represent and warrant that they have the authority, on behalf of Plaintiffs, to execute, deliver, and perform this Agreement and to consummate all of the transactions contemplated hereby.  This Agreement has been duly and validly executed and delivered by Class Counsel and Plaintiffs and constitutes their legal, valid, and binding obligation.

112.   GM, through its undersigned attorney, represents and warrants that it has the authority to execute, deliver, and perform this Agreement and to consummate the transactions contemplated hereby.  This Agreement has been duly and validly executed and delivered by GM and constitutes its legal, valid, and binding obligation.

113.   GM represents and warrants that the individual(s) executing this Agreement on its behalf are authorized to enter into this Agreement on behalf of GM.

114.   The signatories to this Settlement hereby represent that they are fully authorized to enter into this Settlement on behalf of themselves or their respective principals.

115.   The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

116.   All notices to the Parties or counsel required by this Agreement shall be made in writing and communicated by electronic and regular mail to the following addresses (unless one of the Parties subsequently designates one or more other designees):

**<u>For Plaintiffs and Class Counsel:</u>**   **<u>For GM:</u>**

Gregory F. Coleman               Thomas A. Casey, Jr.
Greg Coleman Law                  Jones Walker LLP
800 S. Gay Street, Suite 1100      201 St. Charles Av,
Knoxville TN 37929             New Orleans, LA 70170
greg@gregcolemanlaw.com      tcaseyjr@joneswalker.com

Dan Bryson                      Gregory R. Oxford
Whitfield Bryson & Mason LLP   Isaacs Clouse Crose & Oxford LLP
900 W. Morgan St.             21515 Hawthorne Blvd., Suite 950
Raleigh, NC 27603            Torrance CA 90503
dan@wbmllp.com               goxford@icclawfirm.com

      **IN WITNESS WHEREOF**, the Parties and their representatives have executed this Agreement as of the dates(s) indicated on the lines below.


Dated:_____   _____
                             Ellen Berman, Plaintiff


Dated:_____   _____
                             Dayana Guach, Plaintiff


Dated:_____   _____
                             Patrick Sanchez, Plaintiff


Dated:_____   _____
                           Mark Stauber or Sally Stauber, Co-Plaintiffs

Dated:_____          _____
                                    Jacob Ross-Demmin, Plaintiff


Dated:_____          _____
                                    Jennifer Herrington, Plaintiff


Dated:_____          _____
                                    Ryan Hindsman, Plaintiff


Dated:_____          _____
                                    Robin Peterson, Plaintiff


Dated:_____          _____
                                    Diana Miranda, Plaintiff

Dated:_____          _____
                                    Vanessa Maryanski, Plaintiff


Dated:_____          _____
                                    Rene Mitchell, Plaintiff


Dated:_____          _____
                                    Brittany Chambers, Plaintiff

Dated:_____          _____

Daniel K. Bryson, Plaintiffs' Counsel


Dated:_____          _____

Gregory F. Coleman, Plaintiffs' Counsel


Dated:_____          _____

Tina Wolfson, Plaintiff's Counsel


Dated:_____          _____

L. Joseph Lines III, Attorney
for Defendant General Motors LLC

Dated:_____        _____
                                     Diana Miranda, Plaintiff

Dated:_____        _____
                                     Vanessa Maryanski, Plaintiff

Dated:  4/17/2019                    _____
                                     Rene Mitchell, Plaintiff

Dated:_____        _____
                                     Brittany Chambers, Plaintiff

Dated:_____     _____
                                           Diana Miranda, Plaintiff

Dated:_____     _____
                                           Vanessa Maryanski, Plaintiff


Dated:_____     _____
                                           Rene Mitchell, Plaintiff


Dated:___04/22/2019_____     _____
                                           Brittany Chambers, Plaintiff

Dated:_____      _____
                                          Diana Miranda, Plaintiff

Dated:\_4\_-\_1\_7\_-\_1\_9\_\_\_\_\_      _____
                                          Vanessa Maryanski, Plaintiff


Dated:_____      _____
                                          Rene Mitchell, Plaintiff


Dated:_____      _____
                                          Brittany Chambers, Plaintiff

designees):

**For Plaintiffs and Class Counsel:**    **For GM:**

Gregory F. Coleman
Greg Coleman Law
800 S. Gay Street, Suite 1100
Knoxville TN 37929
greg@gregcolemanlaw.com

Thomas A. Casey, Jr.
Jones Walker LLP
201 St. Charles Av,
New Orleans, LA 70170
tcaseyjr@joneswalker.com

Dan Bryson
Whitfield Bryson & Mason LLP
900 W. Morgan St.
Raleigh, NC 27603
dan@wbmllp.com

Gregory R. Oxford
Isaacs Clouse Crose & Oxford LLP
21515 Hawthorne Blvd., Suite 950
Torrance CA 90503
goxford@icclawfirm.com

**IN WITNESS WHEREOF**, the Parties and their representatives have executed

this Agreement as of the dates(s) indicated on the lines below.

Dated: _____

Ellen Berman, Plaintiff

Dated: _____

Patrick Sanchez, Plaintiff

Dated: _____

Mark Stauber or Sally Stauber, Co-Plaintiffs

Dated: 4/22/19

Jacob Ross-Demmin, Plaintiff

Dated: _____

Ryan Hindsman, Plaintiff

designees):

**For Plaintiffs and Class Counsel:**     **For GM:**

Gregory F. Coleman                         Thomas A. Casey, Jr.
Greg Coleman Law                           Jones Walker LLP
800 S. Gay Street, Suite 1100              201 St. Charles Av,
Knoxville TN 37929                         New Orleans, LA 70170
greg@gregcolemanlaw.com                    tcaseyjr@joneswalker.com


Dan Bryson                                 Gregory R. Oxford
Whitfield Bryson & Mason LLP               Isaacs Clouse Crose & Oxford LLP
900 W. Morgan St.                          21515 Hawthorne Blvd., Suite 950
Raleigh, NC 27603                          Torrance CA 90503
dan@wbmllp.com                             goxford@icclawfirm.com

**IN WITNESS WHEREOF**, the Parties and their representatives have executed

this Agreement as of the dates(s) indicated on the lines below.


Dated:_____     _____
                                   Ellen Berman, Plaintiff


Dated:_____     _____
                                   Patrick Sanchez, Plaintiff


Dated:_____4/18/19_____     _____
                                   Mark Stauber or Sally Stauber, Co-Plaintiffs


Dated:_____     _____
                                   Jacob Ross-Demmin, Plaintiff


Dated:_____     _____
                                   Ryan Hindsman, Plaintiff

designees):

| **For Plaintiffs and Class Counsel:** | **For GM:** |
|---|---|
| Gregory F. Coleman | Thomas A. Casey, Jr. |
| Greg Coleman Law | Jones Walker LLP |
| 800 S. Gay Street, Suite 1100 | 201 St. Charles Av, |
| Knoxville TN 37929 | New Orleans, LA 70170 |
| greg@gregcolemanlaw.com | tcaseyjr@joneswalker.com |
| | |
| Dan Bryson | Gregory R. Oxford |
| Whitfield Bryson & Mason LLP | Isaacs Clouse Crose & Oxford LLP |
| 900 W. Morgan St. | 21515 Hawthorne Blvd., Suite 950 |
| Raleigh, NC 27603 | Torrance CA 90503 |
| dan@wbmllp.com | goxford@icclawfirm.com |

**IN WITNESS WHEREOF**, the Parties and their representatives have executed

this Agreement as of the dates(s) indicated on the lines below.

Dated:_____     _____
                                                     Ellen Berman, Plaintiff

Dated:_____     _____
                                                     Patrick Sanchez, Plaintiff

Dated:_____     _____
                                                     Mark Stauber or Sally Stauber, Co-Plaintiffs

Dated:_____     _____
                                                     Jacob Ross-Demmin, Plaintiff

Dated:___4·17·19_____     _____
                                                     Ryan Hindsman, Plaintiff

designees):

**For Plaintiffs and Class Counsel:**    **For GM:**
Gregory F. Coleman                          Thomas A. Casey, Jr.
Greg Coleman Law                            Jones Walker LLP
800 S. Gay Street, Suite 1100               201 St. Charles Av,
Knoxville TN 37929                          New Orleans, LA 70170
greg@gregcolemanlaw.com                     tcaseyjr@joneswalker.com

Dan Bryson                                  Gregory R. Oxford
Whitfield Bryson & Mason LLP                Isaacs Clouse Crose & Oxford LLP
900 W. Morgan St.                           21515 Hawthorne Blvd., Suite 950
Raleigh, NC 27603                           Torrance CA 90503
dan@wbmllp.com                              goxford@icclawfirm.com

**IN WITNESS WHEREOF**, the Parties and their representatives have executed

this Agreement as of the dates(s) indicated on the lines below.

Dated: 4 20.19 _____          _Ellen Berman_____
                                    Ellen Berman, Plaintiff


Dated:_____          _____
                                    Patrick Sanchez, Plaintiff


Dated:_____          _____
                                    Mark Stauber or Sally Stauber, Co-Plaintiffs


Dated:_____          _____
                                    Jacob Ross-Demmin, Plaintiff


Dated:_____          _____
                                    Ryan Hindsman, Plaintiff

Dated:_____    _____
                                 Diana Miranda, Plaintiff

Dated:_____    _____
                                 Vanessa Maryanski, Plaintiff

Dated:_____    _____
                                 Rene Mitchell, Plaintiff

Dated:_____    _____
                                 Brittany Chambers, Plaintiff

Dated:___04/23/2019_____   _____
                                 Jennifer Herrington, Plaintiff

designees):

**For Plaintiffs and Class Counsel:**    **For GM:**
Gregory F. Coleman                        Thomas A. Casey, Jr.
Greg Coleman Law                          Jones Walker LLP
800 S. Gay Street, Suite 1100             201 St. Charles Av,
Knoxville TN 37929                        New Orleans, LA 70170
greg@gregcolemanlaw.com                   tcaseyjr@joneswalker.com

Dan Bryson                                Gregory R. Oxford
Whitfield Bryson & Mason LLP              Isaacs Clouse Crose & Oxford LLP
900 W. Morgan St.                         21515 Hawthorne Blvd., Suite 950
Raleigh, NC 27603                         Torrance CA 90503
dan@wbmllp.com                            goxford@icclawfirm.com

**IN WITNESS WHEREOF**, the Parties and their representatives have e

this Agreement as of the dates(s) indicated on the lines below.

Dated:_____          _____
                                Ellen Berman, Plaintiff

Dated: _April 17, 2019_        _____
                                Patrick Sanchez, Plaintiff

Dated:_____          _____
                                Mark Stauber or Sally Stauber, Co-Pl

Dated:_____          _____
                                Jacob Ross-Demmin, Plaintiff

Dated:_____          _____
                                Ryan Hindsman, Plaintiff

Dated: ___4__|_23_|_2019___          _____
                                     Diana Miranda, Plaintiff

Dated:_____      _____
                                     Vanessa Maryanski, Plaintiff

Dated:_____      _____
                                     Rene Mitchell, Plaintiff

Dated:_____      _____
                                     Brittany Chambers, Plaintiff

Dated: 04/25/2019

_____
Daniel K. Bryson, Plaintiffs' Counsel

Dated: _____

_____
Gregory F. Coleman, Plaintiffs' Counsel

Dated: _____

_____
Tina Wolfson, Plaintiff's Counsel

Dated: _____

_____
L. Joseph Lines III, Attorney
for Defendant General Motors LLC

Dated: _04/25/2019_      _____

Daniel K. Bryson, Plaintiffs' Counsel

Dated: _____      _____

Gregory F. Coleman, Plaintiffs' Counsel

Dated: _4-25-19_      _____

~~Tina Wolfson~~, Plaintiff's Counsel
ROBERT AHDOOT

Dated: _____      _____

L. Joseph Lines III, Attorney
for Defendant General Motors LLC

Dated:_____      _____
                                    Daniel K. Bryson, Plaintiffs' Counsel


Dated:_____      _____
                                    Gregory F. Coleman, Plaintiffs' Counsel


Dated:_____      _____
                                    Tina Wolfson, Plaintiff's Counsel


Dated:_____4/18/19_____      _____
                                    L. Joseph Lines III, Attorney
                                    for Defendant General Motors LLC

EXHIBIT A

TO SETTLEMENT AGREEMENT

United States District Court for the Southern District of Florida
*Ellen Berman, et al. v. General Motors LLC*
Case No. 2:18-cv-14371

*A court has authorized this notice. This is not a solicitation from a lawyer.*

**You may be a member of a class that the Court is being asked to certify in the above-entitled class action (the "Action").  The class includes certain persons who purchased or leased new or used Chevrolet Equinox or GMC Terrain vehicles equipped with 2.4 liter Ecotec engines ("Class Vehicles") for model years 2010, 2011, 2012, as well as certain model year 2013 vehicles.**

This notice is to advise you of the proposed class certification and request for court approval of a settlement of the Action and of the court hearing on the proposed class certification and settlement. This notice contains important information regarding the Action, the proposed settlement, the final hearing to approve the settlement, and your rights.

**PLEASE READ THIS NOTICE CAREFULLY.  IT MAY AFFECT YOUR RIGHTS**

Plaintiffs in the Action allege that defendant General Motors LLC ("GM") violated state consumer protection laws and breached express and implied warranties by manufacturing and distributing to dealers for retail sale or lease Class Vehicles that allegedly were prone to consume excessive amounts of motor oil.  GM has acknowledged that under certain driving conditions and cycles a small percentage of Class Vehicles have exhibited excessive oil consumption due to piston ring wear issues. Before plaintiffs' filing of the Action, GM took steps to remedy this potential issue, including (a) introducing updated pistons with improved piston rings that markedly reduce oil consumption and (b) issuing voluntary Special Coverage Adjustments ("SCAs") authorizing free replacement of piston assemblies in 2010, 2011 and 2012 model year Class Vehicles with expired powertrain warranties that were manufactured before introduction of the updated piston rings mid-model year 2013.

The Class proposed to be certified in the Action includes all persons who purchased or leased new or used Class Vehicles before [insert date Settlement Agreement fully executed] and who have not otherwise released their claims against GM that arose out of oil consumption concerns.   The proposed settlement ("Settlement") will provide Class Members with (1) specified notices and the opportunity to file reimbursement claims for prior customer-paid repairs under the existing model year 2010, 2011 and 2012 SCAs, and (2) a new SCA that will cover model year 2013 Class Vehicles that were manufactured prior to the production change that introduced the updated piston rings in May 2013. These settlement benefits are set forth in greater detail below.  In consideration of the benefits provided to Class Members under the Settlement, the Action will be dismissed with prejudice, and GM will receive releases from all members of the Class who do not exclude themselves from the Class and thereby "opt out" of participating in the Settlement.

1

The Court has not decided whether GM did anything wrong.  GM disputes Plaintiffs' allegations in the Action.  However, to avoid the further costs and delay of litigation and promote customer satisfaction, GM has agreed to provide the relief described in this notice.

The following describes your legal rights in relation to the Settlement.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **REMAIN IN THE CLASS AND RECEIVE THE BENEFITS OF THE SETTLEMENT** | **Stay in the Action.  You will receive the benefits of the proposed Settlement if it is approved, as detailed in paragraph 6 below.** |
| **ASK TO BE EXCLUDED** | If you wish to be excluded from the Action, receive no benefits from the Settlement, and retain your legal rights, **MAIL A REQUEST FOR EXCLUSION,** also known as an Opt-Out, to the Settlement Administrator by _____, 2019.<br><br>If you ask to be excluded, you will not share in any benefits of the Settlement. But you will keep any rights you have to sue GM separately concerning the legal claims asserted in the Action. |
| **OBJECT** | If you wish to object to the terms of the proposed Settlement, you must (1) stay in the Action, and (2) file your objection papers by _____, 2019. You must comply with the instructions in Question 10 below to object.<br><br>You are also free to attend the hearing on _____, 2019 where the Court will consider your objection.  You are free to hire an attorney at your own expense to represent you at the hearing. You or your attorney cannot speak at the hearing unless you comply with the instructions below in Question 10. |

### BASIC INFORMATION

**1.  Why did I get this notice?**

You received this notice because you may be included in the Class described above.

**2.  What is the action about?**

This lawsuit is about Plaintiffs' claims that GM allegedly violated state consumer protection laws and breached express and implied warranties by manufacturing and distributing to

dealers for retail sale or lease Class Vehicles that were prone to consume excessive amounts of motor oil due to piston ring wear issues.

| | |
|---|---|
| **3. What is a class action lawsuit and who is involved?** | |

In a class action lawsuit, one or more persons called "plaintiffs" or "class representatives" sue on behalf of other people who may have a similar claim. These people together are a "class" or "class members." The entity sued (in this case GM) is called the defendant. In a class action, the claim of the Plaintiffs and all Class Members are decided in one action. The Court resolves the claim for everyone in the Class—except for those people who choose to exclude themselves from the Class.

<u>WHO IS IN THE CLASS?</u>

*If you received this Notice, you are likely a member of the Class.*

| | |
|---|---|
| **4. Am I part of this Class?** | |

You are a member of the Class if within the United States you purchased or leased a new or used model year 2010, 2011 or 2012 Chevrolet Equinox or GMC Terrain equipped with a 2.4 liter Ecotec engine or a model year 2013 Equinox or Terrain equipped with a 2.4 liter Ecotec engine that was manufactured prior to the May 2013 production change that introduced updated piston rings. However, you are not part of the Class if you previously released a claim against GM arising out of oil consumption issues in your Equinox or Terrain.

| | |
|---|---|
| **5. I'm still not sure if I am included.** | |

If you are still not sure whether you are a member of the certified Class, you can call or write to the lawyers representing the Class at the phone numbers or addresses provided below.

<u>THE SETTLEMENT BENEFITS – WHAT YOU CAN GET</u>

| | |
|---|---|
| **6. What does the Settlement provide?** | |

A. If you are a Class Member and own or owned a ***model year 2010, 2011 or 2012 Class Vehicle***, and you believe that you incurred out-of-pocket repair expenses due to an oil consumption diagnosis and piston assembly replacement before the SCA for your Class Vehicle was announced, and if the Court approves the Settlement, you may complete and submit a Claim Form. As long as you have not already received reimbursement, you will be able to send documentation of the repair and out-of-pocket expenses for reimbursement. These expenses must have been incurred by you within the SCA time and mileage limits set forth below:

2010: 10 years or 120,000 miles, whichever comes first following the initial retail sale or lease of your Class Vehicle;

3

2011:      7 years, 6 months or 120,000 miles, whichever comes first following the initial retail sale or lease of your Class Vehicle;

2012:      7 years, 6 months or 120,000 miles, whichever comes first following the initial retail sale or lease of your Class Vehicle.

To claim reimbursement from GM you must complete and return a Claim Form and send supporting documentation no later than [120 days after Claim Forms are mailed].  The Claim Form will be mailed to you if the Settlement is approved.  To be eligible for reimbursement, qualified expenses must have been incurred within both the time and mileage limits noted above for the applicable model year.  Expenses incurred after expiration of either the time or mileage limits will not be eligible for reimbursement.

B.      If you are a Class Member who owns or owned a ***model year 2013 Class Vehicle***, and if the Court approves the Settlement, GM will issue and provide to you with notice of a new SCA that will cover your vehicle for 7 years, six months or 120,000 miles, whichever comes first following its initial retail sale or lease.  Under the new model year 2013 SCA, you may take your vehicle to an authorized Chevrolet or GMC dealership for free diagnosis and, if excessive oil consumption is found, free replacement of its piston assemblies, as long as your vehicle is within both the time and mileage limits of the SCA (7 years, six months or 120,000 miles, whichever comes first).  Further, if you previously paid for diagnosis or piston assembly replacement within both or these time and mileage limits, you will be able to file a claim for reimbursement for repairs related to this oil consumption issue.

To claim reimbursement from GM you must complete and return a Claim Form and send supporting documentation no later than 120 days after Claim Forms are mailed.  To be eligible for reimbursement, qualified expenses must have been incurred within both the time and mileage limits noted above for the applicable model year.  Expenses incurred after expiration of either the time or mileage limits will not be eligible for reimbursement. A Claim Form will be mailed to you if the Settlement is approved.

C.      NOTE:  Independent of the Settlement, the model year 2010, 2011 and 2012 SCAs remain in effect, subject to their time and mileage limits detailed in paragraph 6A above.  If your vehicle is within both the time and mileage limits of the applicable SCA, you may take your vehicle to an authorized Chevrolet or GMC dealership for free diagnosis and, if excessive oil consumption is found, free replacement of its piston assemblies.

<u>**EXCLUDING YOURSELF FROM THE SETTLEMENT**</u>

**7.  What happens if I ask to be excluded?**

If you exclude yourself from the Class—which is sometimes called "opting-out" of the Class— you won't get any benefits from the Settlement of the Action.  If you exclude yourself, you will not be legally bound by the Court's judgments in the Action.   If you start your own

lawsuit against GM after you exclude yourself, you'll have to hire and pay your own lawyer for that lawsuit, and you'll have to prove your claims.

To exclude yourself from (or opt out of) the Settlement, you must send a written request (**Request for Exclusion**) by U.S. mail stating, "I wish to be excluded from the Settlement in *Berman v General Motors, LLC,* Case No. 2:18-cv-14371." Be sure to include your printed name, address, phone number, email address and the Vehicle Identification Number for your vehicle.

**You must also personally sign the letter**. You must mail your Request for Exclusion no later than [insert 120-day deadline date] to the following address:

2.4 Liter Oil Consumption Litigation
c/o Analytics Consulting LLC
P.O. Box 2003
Chanhassen, MN 55317-2003

You cannot ask to be excluded from the Settlement on the phone, by email or by submitting an email to any law firm's website. If you choose to Opt Out (be excluded) from the Settlement, you must opt out for all claims that you have that are included in the Settlement. If you ask to be excluded, you will not receive any settlement benefits and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) GM in the future about the legal issues in the case.

## 8.  If I exclude myself, can I get anything from this Settlement?

No. If you exclude yourself from the Settlement, you will not be able to make a claim to receive any benefits under the Settlement, and you cannot object to the proposed Settlement. But, you will not lose any right you may have to sue Defendant about the legal issues in this case.

## 9.  If I do not exclude myself, can I sue later?

No. Unless you exclude yourself, you give up the right to sue Defendant for the issues resolved by this Settlement. If the Settlement is finally approved, you will be permanently enjoined and barred from initiating or continuing any lawsuit or other proceeding against Defendant about the issues in the lawsuit. You also will have agreed not to sue Defendant over the claims you have released in the Settlement.

**OBJECTING TO THE SETTLEMENT**

## 10.  How do I object to the settlement?

Only a Class Member who does not opt out can object to the Settlement. If you are a Class Member, you can object to the Settlement if you do not like all or some part of it. To object, send a letter explaining your objection to the proposed Settlement in *Berman v General Motors, LLC,* Case No. 2:18-cv-14371 to the Court with a copy to Class and

Defendant's Counsel at the addresses below.   Your objection letter must include: (1) the objector's full name, current address, current telephone number, and e-mail address; (2) documentation, such as documents showing the Vehicle Identification Number for the Class Member's vehicle, sufficient to establish membership in the Class; (3) a written statement of all grounds for the objection, accompanied by any legal support for the objection; and (4) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; (5) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (if any) along with documentation setting forth such representation; and (6) copies of any documents supporting the Objection.

If you wish to object to the Settlement, your objection must be filed with the Court (received by the Court), with copies sent to lawyers for both Plaintiffs (Class Counsel) and GM (Defendant's Counsel).

| CLASS COUNSEL | DEFENDANT'S COUNSEL | COURT |
|---|---|---|
| Daniel K. Bryson<br>J. Hunter Bryson<br>Whitfield Bryson & Mason LLP<br>900 W. Morgan St.<br>Raleigh, NC 27603 | Thomas A. Casey, Jr.<br>Jones Walker LLP<br>201 St. Charles Ave<br>New Orleans, LA 70170-5100 | Clerk of the Court<br>United States District Court<br>Southern District of Florida<br>Alto Lee Adams, Sr. United<br>States Courthouse<br>101 South U.S. Highway One<br>Fort Pierce, Florida 34950 |

In the event that a Class Member objects through an attorney hired at his, her, or its own expense, the attorney will have to file a notice of appearance with the Court by the Objection Deadline [**Month Day, 2019**] and serve a copy of the notice and the objection containing the information detailed above on Class Counsel and Defendant's Counsel by the Objection Deadline.

### THE LAWYERS REPRESENTING YOU

| 11.  Do I have a lawyer in this case? |
|---|

Yes.  These lawyers are referred to as Class Counsel or Plaintiffs' Counsel:

Daniel K. Bryson
J. Hunter Bryson
Whitfield Bryson & Mason LLP
900 W. Morgan St.
Raleigh, NC 27603
Tel: 919-600-5000
Email: Hunter@wbmlllp.com

Gregory F. Coleman
Greg Coleman Law PC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Email: greg@gregcolemanlaw.com

6

You will not be charged for these lawyers.  If you want to be represented by another lawyer, you may hire one at your own expense.

| 12.  Should I get my own lawyer? |
|---|

You do not need to hire your own lawyer because the Class Counsel are working on your behalf. But, if you want your own lawyer, you will have to pay that lawyer to appear in Court for you if you want someone other than Class Counsel to speak for you.

| 13.  How will the lawyers for Plaintiffs and the proposed Class be paid? |
|---|

The lawyers who represent the Class will ask the Court for an award of attorneys' fees and reimbursement of their out-of-pocket expenses in an amount not to exceed $3,500,000.  Any legal fees awarded by the Court will be paid separately by the Defendant and these payments of legal fees and expenses will not reduce the value of the Settlement benefits made available to Class Members.

Defendant will also separately pay the costs to provide notice of and to administer the Settlement.

Class Counsel will petition the Court to approve the payment to Class Counsel which GM has agreed not to oppose.  Class Counsel will file their request for an award of attorneys' fees. Class Members may obtain any such submission to the Court by contacting Class Counsel.

### THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement.  You may attend, and you may ask to speak, but you don't have to appear.

| 14.  When and where will the Court decide whether to approve the Settlement? |
|---|

The Court will hold a Final Approval Hearing at **[___ _.m.]** on **[Month Day, 2019]** (the "Final Approval Hearing Date"), at the United States District Court for the Southern District of Florida, Alto Lee Adams, Sr. United States Courthouse, 101 South U.S. Highway One, Courtroom 4008, Fort Pierce, Florida 34950

At the Final Approval Hearing, the Court will consider whether the proposed Settlement  is fair, reasonable, and adequate.  The Court will also consider Class Counsel's request for fees, costs and expenses.

If there are objections to the Settlement, the Court will consider them.  After the Final Approval Hearing, the Court will decide whether to approve the Settlement and how much to award to Class Counsel as fees, costs, and expenses.

7

The Final Approval Hearing may be moved to a different date, time, or location without additional notice, so it is recommended that you check the Court's website regarding the hearing date.

| 15.  Do I have to come to the Final Approval Hearing? |
| --- |

No.   Class Counsel will answer any questions the Court may have.   But you are welcome to come at your own expense.  If you send an objection, you don't have to come to court to talk about it.  As long as you filed a written objection with all of the required information on time with the Court and delivered it on time to Class Counsel and Defendant's Counsel, the Court will consider it.  You may also have a lawyer attend the hearing on your behalf at your own expense, but it is not required. Class members do not need to appear at the hearing or take any other action to indicate their approval.

| 16.  May I speak at the Final Approval Hearing? |
| --- |

You may ask the Court for permission to speak at the Final Approval Hearing.  To do so, you must send a letter saying that you intend to appear and speak at the Final Approval Hearing in "*Berman v General Motors, LLC,* Case No. 2:18-CV-14371."  Be sure to include the case name case number, your printed name, address, email address, telephone number, and your signature.  Your letter of intent to appear and speak must be received by the Clerk of the Court, Class Counsel and Defendant's Counsel, at the three addresses listed in Question 10 no later than **[day, month 2019].** You cannot speak at the hearing if you exclude yourself.

<u>GETTING MORE INFORMATION</u>

| 17.  How do I get more information? |
| --- |

If you have any questions about this class action notice, you may call the toll free number --------- ,

**PLEASE DO NOT ADDRESS QUESTIONS ABOUT THE SETTLEMENT OF THE LITIGATION TO THE COURT OR TO THE JUDGE OR TO GM.**

DATED: _____, 2019.

EXHIBIT B
TO SETTLEMENT AGREEMENT

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT PIERCE DIVISION

ELLEN BERMAN and DAYANA GUACH on )
behalf of themselves and all )
others similarly situated, )       **CASE NO. 2:18-CV-14371**
  )                                **ROSENBERG/MAYNARD**
  )
Plaintiffs, )
  )
v. )
  )
GENERAL MOTORS LLC, a Delaware limited )
liability company, )
  )
Defendant. )
_____ )

## DECLARATION OF RICHARD W. SIMMONS OF ANALYTICS CONSULTING LLC IN SUPPORT OF PROPOSED NOTICE PROGRAM

I, Richard W. Simmons, have personal knowledge of the facts and opinions set forth

herein, and I believe them to be true and correct to the best of my knowledge.  If called to do so,

I would testify consistent with the sworn testimony set forth in this Declaration.  Under penalty

of perjury, I state as follows:

### SCOPE OF ENGAGEMENT

1.     I am the President of Analytics Consulting LLC ("Analytics")[1].  My company is

one of the leading providers of class and collective action notice and claims management

---

[1]     In October 2013, Analytics Consulting LLC acquired Analytics, Incorporated.  I am the
former President of Analytics, Incorporated (also d/b/a "BMC Group Class Action Services").
References to "Analytics" herein include the prior legal entity.

programs in the nation.  It is my understanding that Analytics' class action consulting practice, including the design and implementation of legal notice campaigns, is the oldest in the country. Through my work, I have personally overseen court-ordered class and collective notice programs in more than 1,000 matters.

2. This Declaration summarizes: my experience and qualifications; Analytics' business process controls and information security measures; the proposed Notice Program[2] (the "Notice Plan"); and, why the Notice Plan will provide the best practicable notice in this matter.

## QUALIFICATIONS AND EXPERIENCE

3. Founded in 1970, Analytics has consulted for 49 years regarding the design and implementation of legal notice and claims management programs relating to class and collective action litigation.  These engagements have included notice and claims administration involving antitrust, civil rights, consumer fraud, employment, insurance, product defect/liability, and securities litigation.   An overview of Analytics' class action consulting services is attached hereto as **Exhibit 1**.

4. Analytics' clients include corporations, law firms (both plaintiff and defense), and the federal government.  Analytics' long term federal contracts include the following:

   a)    Since 1998, Analytics has been under contract (five consecutive five-year contracts) with the Federal Trade Commission ("FTC") to administer and provide expert advice regarding notice and claims processing in their settlements/redress programs;

   b)    In 2012, Analytics was awarded a 10-year contract by the Department of Justice ("DOJ") to administer and provide expert advice regarding notice and claims processing to support their asset forfeiture/remission program;

   c)    Since 2013, Analytics has been appointed as a Distribution Agent (two consecutive five-year terms) by the Securities and Exchange Commission

---

[2]    All capitalized terms not defined herein have the same meaning as those defined in the Settlement Agreement (the "Settlement," "Settlement Agreement" or "SA").

("SEC") to administer and provide expert advice regarding notice and claims processing to support their investor settlements; and

d) In 2017, Analytics was awarded an eight-year contract by the Consumer Financial Protection Bureau ("CFPB") to administer and provide expert advice regarding notice and claims processing to support their settlements and redress programs.

5. Key personnel that will be assigned to this matter have undergone Federal background checks conducted independently by the CFPB, DOJ, and FTC.

6. All consulting work on this matter will be performed at Analytics' headquarters facility located in Chanhassen, Minnesota. No portion of the engagement will be out-sourced to third parties or performed by personnel working out of a foreign-based (i.e., non-U.S.) office.

7. I joined Analytics in 1990 and have 29 years of experience in designing and implementing class action settlements and notice campaigns. The notice programs I have managed range in size from fewer than 100 class members to more than 40 million known class members, including some of the largest and most complex notice and claims administration programs in history.

8. Analytics' experience with automotive (non-finance) related notice campaigns, settlements, and private remediation programs includes[3]: *Braulio M. Cuesta, et al. v. Ford Motor Company, Inc., and Williams Controls, Inc.,* CIV-06-61-S (E.D. Okla.), *Henderson, et al. v. Volvo Cars of North America, LLC, et al.*, No. 2:2009-cv-04146 (D.N.J.), *In Re: High Sulfur Content Gasoline Products Liability Litigation,* No. 2:04-md-01632-ILRL-KWR (E.D. La.), and *Anthony Talalai, et al. v. Cooper Tire & Rubber Company,* Case No. L-008830-00-MT (Middlesex County, NJ).

---

[3] This list does not include confidential engagements.

3

9.      In addition to my class action consulting work, I taught a college course in antitrust economics, was a guest lecturer at the University of Minnesota Law School on issues of statistical and economic analysis, was a charter member of the American Academy of Economic and Financial Experts, and am a former referee for the Journal of Legal Economics (reviewing and critiquing peer-reviewed articles on the application of economic and statistical analysis to legal issues).

**CONTROLS AND INFORMATION SECURITY CONSIDERATIONS**

*Operational Controls*

10.      Analytics completed a SOC 1 Type II audit of data intake, review, and distribution services that covered the 2018 Calendar Year.   Also known as the Statement on Standards for Attestation Engagements (SSAE) 18 report, Analytics' SOC 1 Type II Repot focuses on our controls relevant to the management and distribution of settlement funds and reviews both business process and information technology controls. This audit was conducted by an independent, PCAOB-registered accounting firm (Boulay PLLP) and opines on the operating effectiveness of Analytics' internal controls for 2018.   This audit report noted no exceptions relating to the implementation and operating effectiveness of Analytics' internal controls.

*Information Security Considerations*

11.      The Settlement Agreement requires that:

All information in the Class List shall be protected as confidential and will not be disclosed to anyone, except to Counsel, except as required by applicable tax authorities, pursuant to the express written consent of an authorized representative of GM, or by order of the District Court.  The Class List shall be used only for the purpose of administering this Settlement. (¶ 52.a)

* * *

Because the names of Class Members and other personal information about them will be provided to the Settlement Administrator for purposes of providing cash benefits and processing opt out requests, the Settlement Administrator will ensure

4

that any information provided to it by Settlement Class Members will be secure and used solely for the purpose of effecting this Settlement and will execute any appropriate agreement needed to ensure confidentiality. (¶ 57)

12.     In order to comply with requirements such as these, as well as state and federal data privacy laws, Analytics goes to great lengths to protect the confidentiality of the sensitive data we maintain on behalf of our clients.  We have developed, documented, and implemented extensive programs to provide security for the information and information systems that support our class action consulting operations.  A summary of Analytics' information security program is attached hereto as **Exhibit 2**.

13.     Exceeding private sector information security requirements, Analytics has "authority to use" from the FTC under the Federal Information Security and Management Act (FISMA) to maintain critical and sensitive data regarding class members and potential claimants. This accreditation includes all of the systems, processes, and procedures needed to ensure the confidentiality, integrity and availability of the client/claimant data.   Similar authorizations have been provided by the CFPB, DOJ, and SEC.

14.     Analytics' privacy policies and assessments that will govern this engagement have been reviewed and approved by the Federal Trade Commission, including a review by its Chief Privacy Officer.

### NOTICE PROGRAM DETAIL: CLASS NOTICE

15.     Rule 23 directs that the best notice practicable under the circumstances must include "individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The proposed notice effort here satisfies this mandate.  The identities of Settlement Class Members are known with certainty and proposed address research and remailing protocols will meet or exceed those used in other class action settlements.

16.     The Settlement Agreement defines the "Settlement Class" as:

All persons within the United States who purchased or leased, at any time before the Preliminary Approval Date, a new retail or used model year 2010, 2011, 2012, or 2013 Chevrolet Equinox or GMC Terrain vehicle equipped with 2.4 liter Ecotec engines, manufactured prior to the Production Change, and who have not executed a prior release of claims related to Class Vehicle oil consumption or resulting piston or engine damage in favor of GM. (¶ 39)

17.     The Settlement Agreement defines "Class Vehicles" as:

Model year 2010, 2011, 2012 and 2013 Chevrolet Equinox and GMC Terrain vehicles equipped with 2.4 liter Ecotec engines that were purchased or leased new at retail, or were purchased or leased used by Class Members, and that GM manufactured before the Production Change.  Excluded from the Class Vehicles for avoidance of doubt are all model year 2013 Equinox and Terrain vehicles that GM manufactured after the Production Change (¶ 12)

*Development of List of Settlement Class Members*

18.     The Settlement Agreement requires that, within (60) days of the Preliminary Approval Order, or within 20 days of the last governmental approval required for Polk/IHS to access state motor vehicle registration data, whichever is later, GM shall provide Analytics with the Class List using IHS/Polk data for all Class Vehicles.

19.     Analytics expects these lists to be fulsome, accurate (given the model years of the vehicles involved (2010–2013)), and to be able to reach the vast majority of Class Members directly by mail.

*Class Notice*

20.     In preparation for mailing, mailing addresses will be updated using the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS");[4] certified via the Coding Accuracy Support System ("CASS");[5] and verified through

---

[4]     The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years.  The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

Delivery Point Validation ("DPV").[6]  This ensures that all appropriate steps have been taken to send Class Notices to current and valid addresses.  This address updating process is standard for the industry and is required by the USPS for mailings of this size.

21.     Class Notices will be mailed via First Class Mail within thirty days after receipt of the Class List from GM.

22.     Analytics will request that the USPS return (or otherwise notify Analytics) of Class Notices with undeliverable mailing addresses.  Addresses for these Settlement Class Members will be researched using third-party data to identify potential updated mailing addresses, and a Class Notice will be mailed to the Settlement Class Member if an updated address becomes available.  Additionally, the Class Notice will be mailed to all persons/entities who request one via the toll-free phone number maintained by Analytics.

*Toll-Free Phone Support*

23.     Prior to the mailing of the Class Notice, we will coordinate with Counsel to implement a dedicated toll-free number as a resource for Settlement Class Members seeking information about the Settlement.

24.     By calling this number, Settlement Class Members will be able to listen to pre-recorded answers to Frequently Asked Questions ("FAQs") or request to have a Notice mailed to them.  Automated messages will be available to Settlement Class Members 24-hours a day, 7-days a week, with live call center agents also available during standard business hours to handle

---

[5]     The CASS is a certification system used by the USPS to ensure the quality of ZIP +4 coding systems.

[6]     Records that are ZIP +4 coded are then sent through Delivery Point Validation ("DPV") to verify the address and identify Commercial Mail Receiving Agencies.  DPV verifies the accuracy of addresses and reports exactly what is wrong with incorrect addresses.

escalated inquiries.  Analytics' IVR system[7] allows Class Members to request a return call if they call outside of business hours. This automated process confirms the caller's phone number and automatically queues a return call the next business day.

25.     Calls are transferred to agents specifically assigned to an engagement using "skillset" routing.  In addition to engagement specific training. call center agents receive training regarding Analytics' applications, policies, and procedures (such as privacy and identity proofing). This training also includes customer service-oriented modules to ensure that the answers to callers' questions are delivered in a professional, conversational, and plain-English manner.

26.     Answers to frequently asked questions will be standardized and managed in Analytics' centralized knowledge management system. Each time a call is delivered to an agent, the agent is provided, on-screen, with a list of questions and Counsel-approved responses. Call center agents are monitored, graded, and coached on an ongoing basis to ensure that consistent messages are delivered regarding each matter.

## NOTICE PROGRAM DETAIL: NOTICE AND CLAIM FORM

*Notice and Claim Form*

27.     Within thirty days of the Effective Date, Analytics will notify Class Members of the right to make a claim for such expense reimbursement subject to the terms, conditions and time and mileage limits of the SCAs by mailing them a Notice ("Notice and Claim Form").

---

[7] Analytics' contact center and interactive voice response system is based upon software provided by Genesys.  Genesys has been rated as the leading enterprise provider of contact center software by Gartner. Gartner is a leading technology research and advisory firm and provides independent, objective, and rigorously researched insights regarding enterprise solutions/technology products.

28.     In preparation for this mailing, the Class List developed for the mailing of the Class Notice (as supplemented and revised in the initial notice campaign) will be updated using the National Change of Address ("NCOA") database.   This captures address changes for Settlement Class Member that may have occurred after the mailing of the Class Notice and ensures that all appropriate steps have been taken to send Notice and Claim Form to current and valid addresses.  As noted previously, this process is required by the USPS for mailings of this size.

29.     As with the mailing of the Class Notice, Analytics will request that the USPS return (or otherwise notify Analytics) Class Notices with undeliverable mailing addresses. Addresses for these Settlement Class Members will be researched using third-party data to identify potential updated mailing addresses, and a Notice and Claim Form will be mailed to the Settlement Class Member if an updated address becomes available.  Additionally, the Notice and Claim Form will be mailed to all persons/entities who request one via the toll-free phone number maintained by Analytics.

*Toll-Free Phone Support*

30.     Prior to the mailing of the Notice and Claim Form, we will coordinate with Counsel to revise and implement updates to the recorded messages and call center agent scripts that reflect the approval of the settlement so that the toll-free number continues to serve as a timely resource for Settlement Class Members seeking information about the claims process.

## PERFORMANCE OF THE NOTICE PROGRAM

*Reach*

31.     Because of the nature of the Settlement Class, and the fact that nearly all Settlement Class Members are known, we expect to successfully deliver the Notice to virtually all of the Settlement Class.

9

32.     As proposed. the Class Notice features a prominent headline ("**You may be a member of a class that the Court is being asked to certify in the above-entitled class action (the "Action").  The class includes certain persons who purchased or leased new or used Chevrolet Equinox or GMC Terrain vehicles equipped with 2.4 liter Ecotec engines ("Class Vehicles") for model years 2010, 2011, 2012, as well as certain model year 2013 vehicles.")** in bold text.  This alerts recipients and readers that the Notice is an important document authorized by a court and that the content may affect them, thereby supplying reasons to read the Class Notice.

33.     The body of the Class Notice provides substantial information to Settlement Class Members.  It begins with a summary page providing a concise overview of the important information and a table highlighting key options available to the Settlement Class.  The Class Notice is categorized into logical sections, helps to organize the information, while a question and answer format makes it easy to find answers to common questions by breaking the information into simple headings.

a)  Similarly, the Notice that will accompany the Claim Form is designed to increase noticeability and comprehension.  This includes conspicuous messages on the outside of the envelope regarding the importance and contents of the mailing ("Important Court Notice" on the front and "If you who purchased or leased new or used model year 2010, 2011, 2012 as well as certain model year 2013 Chevrolet Equinox or GMC Terrain vehicles equipped with 2.4 liter Ecotec engines, you may be eligible to receive a payment from a class action settlement." on the back of the envelope.).  Once people "notice" the Notice and Claim Form, it is critical that they can understand them.  As such, the Notice and Claim Form, as produced, is clearly

worded with an emphasis on simple, plain language to encourage readership and comprehension.

## CONCLUSION

34.     In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, state and local rules and statutes, and further by case law pertaining to notice.  This framework requires that: (1) notice reaches the class; (2) the notice that actually comes to the attention of the class is informative and easy to understand; (3) how likely are class members to respond given the means, or combination of means, of sending notice; and (4) class members rights and members' rights and options easy to act upon.  All of these requirements will be met in this case:

a)     Direct Class Notice (and subsequent Notice and Claim Form) is provided to nearly all Settlement Class Members in this Litigation;

b)     The formats and means selected to provide notice are those most likely to have Settlement Class Members actively make an informed decision regarding their rights and options; and

c)     The Class Notice (and subsequent Notice and Claim Form) is designed to be "noticed" and are written in carefully organized, plain language.

35.     The proposed Notice Program will inform Settlement Class Members of the existence of the Litigation and Settlement through direct mail.  These notice efforts will be supplemented by toll-free phone support.  Given the availability of data regarding Settlement Class Members, and the proposed efforts to identify updated addresses for Settlemesnt Class Members, this Notice Program provides comprehensive notice and support to Settlement Class Members.

36.     The Notice Program will provide the best notice practicable under the circumstances of this case, conforms to all aspects of Fed. R. Civ. P. 23, and comports with the guidance for effective notice articulated in the Manual for Complex Litigation, Fourth.

37.     In my opinion, the Notice Program, if implemented, will provide the best notice practicable under the circumstances of this Litigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated:  April 17, 2019

Richard W. Simmons
President
Analytics Consulting LLC

12

**Exhibit 1**

# Class Action
# Consulting Services

ANALYTICS



# Table of Contents

1    INTRODUCTION ..................................................................................................... 1

  1.1    Company Information ....................................................................................... 1

      1.1.1    Analytics ................................................................................................... 1

      1.1.2    Why Analytics? ........................................................................................ 2

2    EXPERTS – NOTICE AND ADMINISTRATION ................................................ 3

3    PROJECT MANAGEMENT AND IMPLEMENTATION .................................... 4

  3.1    Project Management Plan ................................................................................ 4

  3.2    Project Implementation ................................................................................... 4

      3.2.1    Claims ....................................................................................................... 5

      3.2.2    Claim Controls ......................................................................................... 5

      3.2.3    Claims Support & Contact Center ........................................................... 6

      3.2.4    Distribution Services ............................................................................... 7

  3.3    Technology and Data Security ........................................................................ 7

© 2019 Analytics Consulting LLC



# 1   INTRODUCTION

Analytics is one of the premier providers of class action consulting and administration services - including the planning, notification, claims processing and distribution of settlement funds.

Top law firms, corporate legal departments, Special Masters, and other legal professionals rely on Analytics to plan and implement complex notice and claims programs, including collective and class action settlements, governmental settlements, and regulatory remediation engagements. Our experienced staff, tested systems, and turn-key operations centers are in place to meet the most complex of notice and settlement requirements.

Analytics' program and claims management practice provides:

- PMP-certified project managers
- SOC 1 Type II audited data intake, case management, and distribution process
- FISMA-Moderate accredited infrastructure and applications that includes:
  - o   Call Centers
  - o   Claims Resolution
  - o   Application and Data Hosting
  - o   Mail Processing
  - o   Treasury Management and Distribution Services
- Experience providing expert testimony and consulting services regarding legal and operational issues as they relate to the management of claims facilities and communications programs.

## 1.1   Company Information

### 1.1.1   Analytics

Analytics was established in 1970, two years after the revisions to Federal Rules of Civil Procedure Rule 23 that made federal class action litigation practical. Throughout our 49-year history, Analytics has assisted clients in managing class action settlements around the globe involving more than 250 million class members and $6 billion dollars.  With decades of experience, Analytics has the demonstrated ability to customize fund administration solutions for every sector and to manage engagements ranging from less than 25 to over 80 million individuals.  Our clients include law firms, Special Masters. Fortune 500 corporations, and the United States Government. Analytics has been retained under multi-year contracts to provide expert consulting and administration services to the following agencies to support their consumer and investor protection missions: The Consumer Financial Protection Bureau,  Federal Trade Commission, Securities and Exchange Commission, and the  Department of Justice.

Our experience covers the full range of collective action, class action and mass tort litigation, including antitrust, building products, consumer fraud, employment, ERISA, racial and sexual discrimination, insurance, privacy, securities, and truth-in-lending litigation.   We have

1

© 2019 Analytics Consulting LLC



administered settlements ranging in size from fewer than 100 class members to more than 40 million, including one of the largest mailed-notice campaigns in history.

### 1.1.2   Why Analytics?

There are several qualities that distinguish Analytics as a notice and claims administrator:

- **EXPERTS IN CLASS ACTION NOTICE AND SETTLEMENT ADMINISTRATION.**  Our management team includes experts in law, economics, and e-commerce, and averages more than three decade's worth of class action notice and settlement administration experience.  The unique perspective this team brings gives us the ability to meet the challenges of modern legal notice and claims administration.
- **WE ARE E-COMMERCE AND TECHNOLOGY EXPERTS.**  We are committed to investments in technology to improve the administration process for clients and class members. From load-tested applications designed to accommodate surges in claimant interest, to websites designed for smartphones that encourage participation; our systems are designed to meet the needs of modern notice and claims administration.
- **WE'RE OBSESSIVE ABOUT THE DETAILS.**  Our processes are based upon decades of experience and detailed planning and undergo an annual SOC 1 Type II audit.  For each engagement, project plans result in defined deliverables as well as measured and transparent results.
- **PERSONALIZED SERVICE FOR CLIENTS AND CLASS MEMBERS**  We understand that every engagement is personal: personal to the lawyers who litigated the matter and personal to the class members who participate in the settlement process.  For clients, we provide a single point of contact that oversees and coordinates all aspects of each engagement.  For class members – we provide the administration support they need in the mode best suited to their needs.
- **WE HAVE NO CONFLICTS.**  We have no conflicts of interest that could compromise our services or undermine the trust of the parties.  Due to our closely held nature, Analytics has never had a conflict of interest, however remote, in any matter that we've assisted in administering.
- **WE NEVER OUTSOURCE.**  All consulting services are performed in house, and we do not offshore any portion of our administration work.  This provides us with greater control over our work product and tighter data security for our clients.

Our focused approach to class action consulting provides a single, fully dedicated point of contact who is responsible for overseeing and coordinating all aspects of each engagement.  In addition to a single point of contact for each engagement, we provide an unmatched level of access to senior management (all of whom are actively involved with every case we administer).   Our management team has regular and direct contact with all employees, from the mailroom, processing staff and customer service representatives working directly with class members, to IT and accounting departments.

2

© 2019 Analytics Consulting LLC



While Analytics administers cases of all sizes and scope, we are a recognized as the leader in bespoke case administration.  Analytics' Minneapolis facility has 25,000 square feet of floor space (with access to an additional 30,000 of contiguous flexible space) and includes an on-site call center and on-demand, on-premise printing and mail center.

Our success stems from our leadership in the development of methods to notify consumers of their rights and our development of processes that ease the manner in which they participate in a settlement or judgement.  Our focus on improving the process and participation rates is backed by our proprietary software application, CARMEN.    We pioneered the class action claims administration process - and have incorporated the lessons that we've learned into carefully documented, scalable, notice and administration best practices.

## 2   EXPERTS – NOTICE AND ADMINISTRATION

State and Federal Courts, the Department of Justice, the Federal Trade Commission, and the Securities and Exchange Commission have all recognized Analytics (and members of the executive team) as experts regarding class notification and notice procedures.  Significantly, we have:

- testified regarding the adequacy of notice procedures in direct notice cases;
- testified regarding the adequacy of published notice plans;
- been appointed as a Distribution Fund Administrator by the Securities and Exchange Commission tasked with developing Distribution Plans for court approval;
- been retained as an expert by the Federal Trade Commission to testify regarding the effectiveness of competing notice plans and procedures.

Attached is a biography for Richard Simmons, Analytics' president and principal consultant with respect to notification issues.  This biography identifies matters in which Analytics testified as to the adequacy of published notice, including quotes from relevant orders.

This does not include the hundreds of instances where we testified as to notice procedures employed by Analytics so that a court could have a basis for a ruling regarding the adequacy of notice.  These cases are reflected in the Partial List of Class Action Consulting Experience that accompanies the biography.

Additionally,

- In 2011, Mr. Simmons was a panelist at the Federal Judicial Center's workshop/meeting regarding class action notice and settlement administration.
- In 2014, we were interviewed by the Consumer Financial Protection Bureau regarding notice and claims administration in class action litigation as part of their study on arbitration and consumer class litigation waivers.
- In 2016, we worked with the Federal Trade Commission's Class Action Notice Project to design and test alternate forms of notice.

3

© 2019 Analytics Consulting LLC



- In 2017, Mr. Simmons is the primary author for the Duke Law Center's standards for evaluating class action notice programs.

## 3    PROJECT MANAGEMENT AND IMPLEMENTATION

Analytics provides turnkey solutions for the management of collective action, class action, and mass tort notice and claims programs.  Every engagement is managed using a project management structure designed to meet the standards of the Project Management Institute and our annual SOC 1 audit.  We will work closely with each client detailed Project Plan that addresses the lifecycle of the matter from initial database development through distribution of funds.  This ensures that the scope of the work is clearly identified, appropriate responsibilities are assigned, and realistic timelines are established for key milestones.  This ensures accuracy, timeliness, and cost efficiency for clients.

### 3.1    Project Management Plan

After a project is awarded to Analytics, a project team is assembled to work with the client to document the matter, coordinate data transfer, and begin the initial process. We will work closely with each client to prepare a detailed Project Plan that addresses the lifecycle of the distribution fund.  This ensures that the scope of the work is clearly identified for engagement, appropriate responsibilities are assigned, and realistic timelines are established for milestones.

Analytics senior management team chairs a weekly management meeting that is attended by project managers and a representative from each department that supports their engagements (i.e., Data Services, Shared Services [Call Center and Data Capture], Document Center, and Treasury Management). During this meeting, Project Managers and Executive team will review Analytics' performance against commitments to our clients.  This ensures Analytics' senior management is fully informed of each engagement, and that resources are made available so that we meet or exceed client expectations.

### 3.2    Project Implementation

Analytics leverages its capabilities from startup to closeout to complete all services within the scope of the contract in a timely manner.  Analytics' consulting services are based on a tested technology infrastructure and documented processes to securely collects, manages, and distribute data.  Consequently, we are able to efficiently and cost-effectively manage matters of any size. We have available for our clients use:

- Applications hosted in secure Tier III data centers;
- Imaging and scanning facilities with a capacity of more than 200,000 pages/day
- Call-center capacity suitable for direct notification programs of up to 40 million consumers; and
- Inbound mail-processing center engineered for volumes that accompany direct notification programs of up to 40 million consumers.

4

© 2019 Analytics Consulting LLC



### 3.2.1   Claims

In a typical engagement, claims are submitted in one of two ways:

- **Online Claims**:  A claimant may prepare and submit (or upload) a claim using a secure online claims portal.
- **Paper Claim Submission**:  Claimant may submit an original claim form, including supporting documentation (if any) to Analytics.

Our claims processing team is supported by dedicated applications designed to meet the specific needs and workflows of class action settlements.  These applications allow for:

- **Document Imaging:**  Our applications provide scanned images of claims and supporting documentation and have the ability to interpret the information.
- **Process Management:**  Our systems are designed to enforce the criteria of each settlement agreement to ensure claimant eligibility and claim valuation is appropriate and correct.
- **Analysis**:  Our systems provide pattern matching for claim validation and identify duplicate claims.
- **Data Security:**  Analytics' applications enforce a secure audit trail, and we separate duties for claims processing and review to reduce the risk of fraud.

### 3.2.2   Claim Controls

In each engagement, we perform comprehensive audits and reviews to ensure that all claims are processed accurately and that the settlement fund is protected against fraud.

#### 3.2.2.1   *Fraud Prevention*

Analytics is an industry leader in addressing and preventing fraudulent transactions. This has been accomplished through statistical analysis of transactions and extensive training of claims analysts to keep a watchful eye for suspicious claims. All staff members are trained to investigate red flag alerts.

Analytics employs an experienced and trained disbursements staff. These professionals are highly skilled in detecting potential check fraud and performing daily fraud and abuse monitoring activities in addition to account reconciliation. The disbursements team has appropriate quality controls in place to ensure error-free processing of financial transactions once the case has reached the disbursement phase.

#### 3.2.2.2   *Misuse of Data*

Analytics has also implemented internal procedures to prevent unscrupulous activity and to protect our clients' and class members' private information.  These controls include:

- Configuring all of Analytics' systems so that modifications can only be made to data though the use of Analytics' proprietary applications.  Individuals are not allowed direct access to underlying production databases.

© 2019 Analytics Consulting LLC



- Tracking all modifications to Analytics computer programs with a version control system and auditing all changes.
- Authorizing only designated individuals to perform work on a matter and access data on which any distribution will be based.
- If an individual has the security clearance to make changes in data, all original data is maintained, a copy of the edited data is maintained, and the system records the identity of the individual who made the change.

### 3.2.3   Claims Support & Contact Center

In a world where consumers expect 24/7 availability, we are committed to providing class members the support that they need, when and how they need it.  Each engagement is staffed with dedicated agents and supported by an enterprise grade contact center infrastructure that integrates calls, emails, and online chat into a single system:

- **Interactive Voice Response**:  Calls are initially routed to an automated system that answers to 90% of callers' questions.  We monitor caller selections to optimize class member experience.  If they request to speak to an agent, and hold times are above average, callers can request a return call rather than remain on hold.  When requested, voice recognition in multiple languages is available.
- **Call Center Agents**: Calls are routed based on skill sets to agents that are trained on the specific engagement.  Agents have access to online scripts (approved by our clients) that provide them with answers frequently asked questions. Inquiries not covered by the script can be immediately queued to a supervisor, and then on to the client if appropriate.  We also have Spanish, French, and Chinese speaking agents and can accommodate other languages upon request.
- **Email**: Each email is routed to ticketing systems and immediately acknowledged.  Class members know that we've received their inquiry, and we track and report on the response to every email.  Where possible, responses are standardized, ensuring that class members receive correct, client approved answers to all of their questions.

Analytics has a full service, in-house call center in its Minneapolis facility with capacity for more than 200 agents (including flexible space). For larger projects, remote locations offer the ability to scale our capacity significantly.

Analytics' contact center system employs VOIP (Voice-Over Internet Protocol) technology that provides clients with local access/toll free/free phone numbers across the globe and allows us to route calls to any location in the world.  With real-time monitoring, Analytics is also able to allocate staff as needed to a particular program – all dependent on the amount of incoming calls, number of calls in queue and average hold time. Staffing projections and budget monitoring are also better informed given the detailed, historical information routinely available.

The "average" Analytics' agent has supported callers on hundreds of settlements, and has received training regarding Analytics' applications, policies, and procedures.  This training includes

6

© 2019 Analytics Consulting LLC



engagement specific information as well as customer service-oriented training to ensure that the answers to callers' questions are delivered in a conversational manner.

Agents are supported in accurate information by a knowledgebase that is integrated into the contact center software that scripts information about each engagement and answers of the most commonly discussed topics.

Call center agents are monitored and coached on an ongoing basis to ensure that consistent messages are delivered regarding each litigation.  To further ensure the quality of the experience and the accuracy of the information we provide, calls are anonymously monitored through digital call recordings, and are graded for compliance with standards of accuracy and service.

### 3.2.4   Distribution Services

Following the completion of the data capture process, Analytics coordinates the distribution of checks or other forms of compensation to eligible recipients. All checks are printed in-house by Analytics, ensuring quick and accurate payment to all eligible claimants once payment amounts are approved.

Analytics has breadth of experience in the distribution of awards on qualifying claims. Fund management and disbursement services are handled on-site by accounting and tax professionals. Rigorous controls that exceed banking and federal government-sector security and audit standards are followed.

Checks are printed on-site with MICR encoding and secure check stock. All financial instruments are handled with dual custody and in areas secured by access keys and recorded digital camera monitoring. Daily account reviews are conducted, and positive pay presentments escalated to the business unit. Monthly reconciliations and account reporting are available for review.

### 3.3   Technology and Data Security

In managing settlement, Analytics brings decades of experience handling the sensitive and complex data for clients across a range of industries, from financial and healthcare to manufacturing and services. Analytics' pre-existing management processes and years of operations with complex systems and infrastructure to deliver proven value to our clients.

In light of uncertainty and marketing representations made regarding the "alphabet soup" of information security standards (HIPAA, ISO 27001, NIST, PCI/DSS, SAS70, SOC2, SSAE16, for example), Analytics chose to implement the National Institute of Standards and Technology ("NIST") Cybersecurity Framework.  This Framework embodies best practices from the various bodies and can be mapped directly to any of these standards[1].  It requires us to conduct a risk assessment regarding the data that we maintain (be it credit card data, health, or financial

---

[1] For example, SOC2 compliance does not indicate NIST compliance, but NIST compliance at the level that Analytics maintains indicates full SOC2 compliance.

© 2019 Analytics Consulting LLC



information), develop a System Security Plan to address those risks, and then continuously test our compliance with that plan.

Within this standard – also in NIST Publication 800-53 (Security and Privacy Controls for Federal Information Systems and Organizations) - there are various tiers of commitments to information security.   After consultation with the Federal Trade Commission (the agency charged with enforcing data privacy), we chose to implement one of the highest standards within this framework– "FISMA" Moderate[2] (meeting the information security requirements for the top 10% of Federal systems).   We hold a FISMA-moderate "authority to operate" or "authority to use" from the US Federal Trade Commission, the US Bureau of Consumer Financial Protection, and the US Securities and Exchange Commission.

Highlights of Analytics' commitment to technology and data security include:

- **High Availability**: The systems that we utilize support 24/7 operations, are architected for redundancy (i.e., no critical single points of failure) and have a business continuity management strategy in place.
- **Secure Data Transfer**: Analytics takes the protection of personal information very seriously. Analytics will receive encrypted data files from clients using sFTP or encrypted media. The data elements sent by the client may vary from case to case and may include personally identifiable information (PII) such as: full name, address, telephone numbers, date of birth, and social security number
- **Secure Data Storage**: Once Analytics has retrieved the data, it will be processed and stored in Analytics' secure network. Analytics uses state-of-the-art enterprise database server technology for data storage, and our database and application solution.
- **Audited and Controlled Access**: Analytics staff, including processing and technical support personnel, will have access to the CARMEN Database. IT specialists and Analytics technical and operational program managers will access CARMEN and the CARMEN Database to ensure system performance and to audit the use 'of the system.
  All of these users and other authorized users, whose identity and need for access have been validated, will have varying levels of access to CARMEN Database.
- **Physical Security:** Analytics maintains access levels at the physical, software, and database levels. In addition to the many layers of data security, Analytics data processing facilities are physically secured – at the perimeter and within datacenters – through the use of electronic key cards, biometric access controls, and monitoring equipment. Anyone visiting our facility must sign in and out and be accompanied by an employee at all times.
- **Information Governance:** A comprehensive, written Information Security Plan designed to comply with applicable state and Federal laws and to ensure the confidentiality, integrity, and availability of client data.

---

[2] FISMA is the acronym for the Federal Information Security Management Act of 2002 that established the initial NIST authority and framework.

8

© 2019 Analytics Consulting LLC



- o A dedicated information security team, including an Information Technology Security officer, with specific responsibility of implementing and overseeing the Information Security Plan.
- o An on-site 3,000 square foot enterprise grade Tier III data center.
- o All Analytics personnel who have full access to client data have undergone comprehensive background checks
- o Periodic evaluations of the implementation of Analytics' Information Security Plan, including:
  - ▪ Annual reviews by the Federal Trade Commission, the Department of Justice, and other external auditors.

9

© 2019 Analytics Consulting LLC

**Exhibit 2**

## INFORMATION SECURITY

Information security is more than a risk management policy and locked office doors. As part of ongoing contractual relationships, Analytics' information security program is reviewed by the Federal Trade Commission, the Consumer Financial Protection Bureau, and the Securities and Exchange Commission. The most recent review and re-authorization of Analytics' systems occurred by the Federal Trade Commission on October 29, 2018. These same systems and facilities would be utilized by Analytics in this matter.

**Data Security Measures and Certification/Compliance Standards**

In light of uncertainty and marketing representations made regarding the "alphabet soup" of information security standards (HIPAA, ISO 27001, NIST, PCI/DSS, SAS70, SOC2, SSAE16, for example), Analytics chose to implement the National Institute of Standards and Technology ("NIST") Cybersecurity Framework released in 2014. This Framework embodies best practices from the various standards bodies and can be mapped directly to any of these standards[1]. It requires us to conduct a risk assessment regarding the data that we maintain (be it credit card data, health, or financial information), develop a System Security Plan to address those risks, and then continuously test our compliance with that plan.

Within this standard – also in NIST Publication 800-53 (Security and Privacy Controls for Federal Information Systems and Organizations) - there are various tiers of commitments to information security. After consultation with the Federal Trade Commission (the agency charged with enforcing data privacy), we chose to implement one of the highest standards – "FISMA" Moderate[2] (meeting the information security requirements for the top 10% of Federal systems).



We hold a FISMA-moderate "authority to operate" from the Federal Trade Commission, which has been accepted by the Department of Justice and the Securities and Exchange Commission. A copy of this authorization is attached – with the Chief Information Security Officer for the Federal Trade Commission attesting to the security of the systems maintained by Analytics. Additionally, we have received an "authority to use" from the Consumer Financial Protection Bureau. These are the same systems that will be used to manage this settlement.

---

[1] For example, SOC2 compliance does not indicate NIST compliance, but NIST compliance at the level that Analytics maintains indicates full SOC2 compliance.
[2] FISMA is the acronym for the Federal Information Security Management Act of 2002 that established the initial NIST authority and framework.



Highlights of Analytics' information security plan include:

- A comprehensive, written Information Security Plan designed to comply with applicable state and Federal laws and to ensure the confidentiality, integrity, and availability of client data.
- A dedicated information security team, including an Information Technology Security officer, with specific responsibility of implementing and overseeing the Information Security Plan.
- An on-site 3,000 square foot enterprise grade Tier III data center.
- Analytics' online claims systems are regularly scanned by the Department of Homeland Security to ensure data confidentiality.
- All Analytics personnel who have full access to client data have undergone comprehensive background checks for the Department of Justice and the Federal Trade Commission.
- Periodic evaluations of the implementation of Analytics' Information Security Plan, including:
  - Annual reviews by the Consumer Financial Protection Bureau, the Department of Justice, the Federal Trade Commission, and other external auditors.
  - Information security audits from external clients such as MassMutuial and ING.

**System Security Plan and Policies**

Copies of Analytics Privacy Impact Assessment and System Security Plan are available upon request.  Analytics policies cover the following control areas:

- Access Control
- Accountability, Audit and Risk Management
- Awareness and Training
- Audit and Accountability
- Security Assessment and Authorization
- Configuration Management
- Contingency Planning
- Identification and Authentication
- Incident Response
- Maintenance
- Media Protection
- Physical and Environmental Protection
- Planning
- Personnel Security
- Risk Assessment
- System and Services Acquisition
- System and Communications Protection
- System and Information Integrity

EXHIBIT C
TO SETTLEMENT AGREEMENT

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

**Civil Action No. 2:18-CV-14371-ROSENBERG/MAYNARD**

ELLEN BERMAN, and DAYANA
GUACH on behalf of themselves and all others
similarly situated,

       Plaintiffs,

          v.

GENERAL MOTORS LLC, a Delaware
limited liability company

       Defendant.

**[PROPOSED] PRELIMINARY APPROVAL ORDER**

This matter is before the Court on Plaintiff's Unopposed Motion for Preliminary Approval of the Settlement Agreement that Plaintiff Ellen Berman (hereinafter "Plaintiff") have reached with Defendant General Motors, LLC ("GM") (Dkt. No. 27).  In connection with that Motion, the Court has considered and reviewed the following materials: (a) Plaintiff's motion for preliminary approval of the settlement (the "Motion"), and the declarations and papers filed in connection therewith; and (b) the settlement agreement dated April 25, 2019 and the exhibits attached thereto (the "Settlement Agreement").[1]  In addition, the Court has considered the arguments of counsel and the pleadings and record in this case.  As a part of the Settlement Agreement, the Defendants are not objecting to the certification of the Settlement Class for settlement purposes only.  Having considered all the foregoing materials and information, this Court finds that there is good cause

---

[1] Unless otherwise stated, defined terms herein have the meaning given to such terms in the Settlement Agreement.

for granting the Motion.

**THEREFORE, IT IS HEREBY ORDERED:**

<u>**Conditional Certification of Settlement Class**</u>

1.      For purposes of this proposed Settlement only, and pending final approval of the Settlement Agreement after a Final Approval Hearing, the Court finds that the prerequisites for a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure have been met, and therefore the Court provisionally certifies a nationwide Settlement Class consisting of:

> All persons within the United States who purchased or leased, at any time before the Preliminary Approval Date, a new retail or used model year 2010, 2011, 2012 or 2013 Chevrolet Equinox or GMC Terrain vehicle equipped with 2.4 liter Ecotec engines, manufactured prior to the Production Change, and who have not experienced engine failure or executed a prior release of the claims set forth in the Action or Related Actions in favor of GM.

> Excluded from the Class Vehicles for avoidance of doubt are all model year 2013 Equinox and Terrain vehicles that GM manufactured after the Production Change.

2.      The Settlement Class satisfies the requirements of Rule 23(a).  The members of the Settlement Class are so numerous that joinder is impracticable; there are questions of law or fact common to the proposed Settlement Classes; Plaintiff's claims are typical of the claims of the Settlement Class; and Plaintiff and Class Counsel will fairly and adequately represent the interests of the Settlement Class.

3.      The Settlement Class also satisfies the requirements of 23(b)(3) because this Court finds that issues of law and fact common to the proposed Settlement Class predominate over any issues affecting only individual members of the proposed Settlement Class, and that settlement of this action as a class action is superior to other means available for fairly and efficiently resolving the controversy.

4.      Lastly, the class definition is sufficiently ascertainable such that an individual can

ascertain whether he or she is in the Settlement Class based on objective criteria.

5.      The Court finds that proposed Class Counsel are competent and capable of exercising their responsibilities, and that proposed Class Counsel and the proposed Class Representatives have fairly and adequately represented the interests of the Settlement Class. The Court appoints Daniel Bryson of Whitfield, Bryson & Mason, LLP; Gregory F. Coleman and Rachel Soffin of Greg Coleman Law PC; and Robert Ahdoot of Ahdoot & Wolfson, P.C., as Class Counsel for the proposed Settlement Class. Plaintiff Ellen Berman appointed as Class Representative for the Settlement Class, along with previously named plaintiffs of the related matters[2] (Illinois Plaintiffs Patrick Sanchez, Mark Stauber and Sally Stauber, Jacob Ross-Demmin, and Jennifer Herrington, and California Plaintiffs Ryan Hindsman, Diana Miranda, and Vanessa Maryanski).

## **Preliminary Approval of Settlement**

6.      The terms of the Settlement Agreement, including all exhibits thereto, appear to be in the range of reason and fair, reasonable, and adequate, and the Settlement Agreement is hereby preliminarily approved.  This Order incorporates the Settlement Agreement, and terms used in this Order that are defined in the Settlement Agreement have the same meanings.

7.      The Agreement provides comprehensive relief and monetary compensation to eligible members of the Settlement Class.  It was entered into after arm's-length negotiations by experienced counsel on behalf of the Settlement Class.  There is no evidence of collusion or that the Class Counsel placed their interests above those of the Settlement Class.  The material terms of the Settlement were agreed to prior to the Parties' discussion of attorneys' fees and expenses,

---

[2] As explained in the Settlement Agreement, the parties have agreed to resolve all claims in this matter as well as two related actions: *Hindsman, et al. v. General Motors LLC*, Case No. 3:17-cv-5337, pending in the United States District Court for the Northern District of California ("California Action"), and *Sanchez, et al. v. General Motors LLC*, Case No. 1:18-cv-2563, pending in the United States District Court for the Northern District of Illinois.

and any attorneys' fees and expenses awarded will be in addition to the relief provided to Settlement Class Members under the Settlement Agreement.

8.      Pending further order of the Court, all litigation activity in this case unrelated to the settlement is hereby stayed.  In the event that the Settlement Agreement is not approved by the Court or such approval is vacated on appeal, the litigation shall resume without prejudice to the Parties for having negotiated the settlement agreement upon joint application of the Parties to the Court to lift the stay.

9.      The Court retains exclusive jurisdiction to consider all further matters arising out of or connected with the Settlement Agreement.

## Class Notice

1.      The Settlement Agreement is attached as Exhibit A to Plaintiff's Memorandum in Support of Preliminary Approval of the Class Action Settlement and Related Matters.  The Court approves the proposed Class Notice that is submitted as Exhibit A  to the Settlement Agreement.

2.      The Court finds that the manner of mailing and dissemination of the Notices and related Settlement information as described in Part V of the Settlement Agreement and the Declaration of Richard Simmons of Analytics Consulting LLC constitutes the best practicable notice under the circumstances as well as valid, due and sufficient notice to all persons entitled thereto, and that the Notice Plan complies with the requirements of Fed. R. Civ. P. 23 and provides Settlement Class Members due process under the United States Constitution.  The Class Notice is subject to further modification to insert the proper deadlines and as determined appropriate by the Settlement Administrator.

3.      Promptly following the entry of this Order, the Parties and Settlement Administrator shall prepare the final version of the Class Notice, incorporating into it the Fairness

4

Hearing date and the Objection and Opt Out deadlines based on the actual date determined by the Parties and the Settlement Administrator to be the Notice Commencement Date as set forth below.

4.      The Notice Date is the date on which the Class Notice is disseminated to the Class. The Notice Date should occur no later than 30 days after the Settlement Administrator receives the Class list from IHS/Polk, or by the next following Business Day if the deadline falls on a weekend or legal holiday.

5.      The Court appoints Analytics Consulting, LLC as the Settlement Administrator.

6.      The fees and costs of the Settlement Administrator shall be paid by GM.

7.      The Settlement Administrator shall implement the Parties' Notice Plan which is set forth in the Declaration of Richard Simmons of Analytics Consulting LLC and described in Part V of the Settlement Agreement.  The payment of fees and costs to the Settlement Administrator shall not be contingent upon any further action of the Court, including, without limitation, any decision on a Motion for Final Approval of the Settlement Agreement.

**Final Approval Hearing**

8.      The Court will hold a Final Approval Hearing on _____, 2019 at ____ a.m. in Courtroom 4008 of the Alto Lee Adams, Sr. United States Courthouse, 101 South U.S. Highway One, Fort Pierce, Florida 34950, to determine the fairness, reasonableness, and adequacy of the proposed Settlement Agreement, and to determine whether the proposed Settlement should be finally approved, and final judgment entered thereon.  At the Final Approval Hearing, the Court will also consider Class Counsels' Motion for Approval of Attorneys' Fees and Expenses and Named Plaintiff Service Awards. Any Settlement Class Member who follows the procedures set forth in the Settlement Agreement may appear and be heard at the Final Approval Hearing. The Final Approval Hearing may be continued without further notice to the proposed Settlement Class,

except that Class Counsel shall cause any newly-established date and time for the Final Approval Hearing to be mailed to the class.

9.      All objections and requests for exclusion from the proposed Settlement Class, as more fully explained in the Notices, shall be postmarked no later than [60] days after the Notice Commencement Date. Settlement Class Members wishing to make objections, file claims or exclude themselves from the Settlement Class and this Settlement must otherwise comply with the requirements set forth in the Class Notice.

10.      Pending Final Approval, no Settlement Class Member, either directly, representatively, or in any other capacity (other than a Class Member who validly and timely elects to be excluded from the Settlement Class), shall commence, continue or prosecute against any Defendant any action or proceeding in any court or tribunal asserting any of the matters, claims, or causes of action that are to be released upon Final Approval pursuant to the Agreement, and are hereby enjoined from so proceeding. Upon Final Approval, all Settlement Class Members who do not previously file a timely notice of exclusion shall be forever enjoined and barred from asserting any of the matters, claims, or causes of action released pursuant to the Agreement, and any such Settlement Class Member shall be deemed to have forever released any and all such matters, claims, and causes of action as provided for in the Agreement.

20. Class Counsel shall file with the Court their Motion for Final Approval of Settlement Agreement, including any motion for an award of attorneys' fees and expenses and Named Plaintiff Service Awards, at least 14 days before the Final Approval Hearing.

21. The Parties entered into the Settlement Agreement solely for the purpose of compromising and settling disputed claims.  Defendants maintain that the class vehicles are free of defects and have at all times denied, and continue to deny, any wrongful act or omission alleged

6

by Plaintiff or that they owe any liability of any sort to Plaintiff or any member of the Settlement Class. Nothing contained in the Settlement Agreement, in the documents relating to the Settlement Agreement, or in this Order shall be construed, deemed, or offered as an admission by any of the Parties, or by any member of the Settlement Class, for any purpose in any judicial or administrative action or proceeding, whether in law or in equity.

22. If for any reason the Settlement Agreement ultimately does not become effective, Defendants' conditional decision to not object to the certification of the Settlement Class shall be null and void in its entirety; this Order certifying a nationwide class shall be vacated; the Parties shall return to their respective positions in this Action as those positions existed immediately before the Parties executed the Settlement Agreement; and nothing stated in the Settlement Agreement or in this Order shall be deemed an admission or waiver of any kind by any of the Parties or used as evidence against, or over the objection of, any of the Parties for any purpose in this action or in any other action or proceeding of any kind.

IT IS SO ORDERED.

Dated: _____, 2019

_/s/_____
Robin L. Rosenberg, Judge
United States District Court
Southern District of Florida

7

EXHIBIT D
TO SETTLEMENT AGREEMENT

Bulletin No.:   14159D
Date:   April 2017

**Service Bulletin**

## SPECIAL COVERAGE

**SUBJECT:**   **Special Coverage Adjustment – Excessive Engine Oil Consumption**

**MODELS:**   **2010 Chevrolet Equinox**
**2010 GMC Terrain**
**Equipped with 2.4L Engine (LAF)**

> The Piston and Ring Replacement section has been revised, prior to step 1, to emphasize the PCV orifice procedure in the referenced Technical Service Bulletin.  Please discard all copies of bulletin 14159C.

CONDITION

Some 2010 model year Chevrolet Equinox and GMC Terrain vehicles, equipped with a 2.4L engine, may exhibit excessive engine oil consumption (less than 2,000 miles per quart of engine oil), due to piston ring wear.   If this condition is present, the oil can light may illuminate on the instrument panel or one of the following messages may appear in the Driver Information Center: "Engine Oil Low – Add Oil" or "Oil Pressure Low – Stop Engine".

SPECIAL COVERAGE ADJUSTMENT

This special coverage covers the condition described above for a period of 10 years or 120,000 miles (193,000 km), whichever occurs first, from the date the vehicle was originally placed in service, regardless of ownership.

Dealers are to replace the 4 piston assemblies.  The repairs will be made at no charge to the customer.

For vehicles covered by Vehicle Service Contracts, all eligible claims with repair orders on or after August 15, 2014, are covered by this special coverage and must be submitted using the labor operation codes provided with this bulletin.  Claims with repair orders prior to August 15, 2014, must be submitted to the Service Contract provider.

VEHICLES INVOLVED

All involved vehicles are identified by Vehicle Identification Number on the Applicable Warranties section in GM Global Warranty Management system.  Dealership service personnel should always check this site to confirm vehicle involvement prior to beginning any required inspections and/or repairs.  It is important to routinely use this tool to verify eligibility because not all similar vehicles may be involved regardless of description or option content.

Copyright 2017 General Motors.  All Rights Reserved.

PART INFORMATION

Parts required to complete this special coverage are to be obtained from General Motors Customer Care and Aftersales (GMCC&A).
**Reminder:** Parts may be removed from Retail Inventory Management (RIM) management. Dealers should review the affected parts to confirm RIM managed status. Parts may have quantity limiters in effect.

| Part Number | Description | Quantity/Vehicle |
|---|---|---|
| 19303450 | Piston Kit | 1 |
| 12637166 | Gasket Kit, Cylinder Head | 1 |
| 12609291 | Gasket Kit, Camshaft Cover | 1 |
| 12635447 | Seal, Chain Package, Timing | 1 |
| 12635427 | Chain Assembly, W/Pmp And Balr Shf | 1 |
| 12649233 | Tensioner Asm - W/Pmp & Balr Shf Chain | 1 |
| 24435052 | Gasket, Engine Front Cover | 1 |
| 12602379 | Seal, Fuel Pump Housing (Oring) | 1 |
| 12608374 | Pipe Asm, Fuel Feed Inter | 1 |
| 12584041 | Seal, Cr/Shf Front Oil | 1 |
| 11589123 | Bolt Asm, Hx Hd W/Con Spr Washer | 1 |
| 11588844 | Bolt, Cm/Shf Posn Actr | 2 |
| 12605566 | Filter, Oil | 1 |
| 19293000 | Oil, Engine, AC Delco DEXOS1 5W30 | 5 |
| 90537293 | Screw Schraube (Connecting Rod) | 8 |
| 88864346 | Sealant, RTV | 2 |
| 90537336 | Guide, Balr Chain | 1 |
| 12346290 | Coolant, Engine, Dexcool Antifreeze | 1 |

SERVICE PROCEDURE

**Note:** This special policy covers repairs after the original powertrain warranty has expired. For vehicles still covered under the original powertrain warranty, the labor code operations should be used from bulletin 13-06-01-003.

**Note:** Technicians should perform an oil consumption test to determine if the pistons and rings must be replaced. Follow the latest version of Corporate Bulletin Number 01-06-01-011 to perform an oil consumption test. Before starting the oil consumption test, verify the ECM has latest TIS2web calibrations to adjust the engine oil life monitor to a maximum of 7,500 miles (12,070 km) — Refer to the latest version of Customer Satisfaction Bulletin number 12312.

1. Determine the rate of oil consumption.

- If the oil consumption test indicates that the rate of consumption is less than 1 quart (0.946L) of oil every 2,000 miles (3,200 km), note the oil consumption rate and the date that the ECM was reprogrammed. No further action is required.

- If the oil consumption test indicates that the rate of consumption is greater than 1 quart (0.946 L) of oil every 2,000 miles (3,200 km), note the oil consumption rate, the date that the ECM was reprogrammed and replace the pistons and rings.

**Note:** The repair is to replace the pistons and rings. In some cases the bore surface may not have a uniform look to the finish (zebra stripes) as shown in Technical Service Bulletin 13-06-01-003F. As a result, some technicians may question whether the engine should be repaired or replaced. After careful evaluation, GM Powertrain has determined that the new pistons and rings will perform correctly in bores that have this appearance so engine replacement should not be necessary. The cylinder bores do not need any machine or honing work performed on them. Refer to Technical Service Bulletin 13-06-01-003F for more information.

**Piston and Ring Replacement Procedure**



2146346

**Note:** Review the following service procedures and technical bulletin in SI:

- Engine Replacement
- Technical Service Bulletin 13-06-01-003F placing a special emphasis on the PCV orifice between the #2 and #3 intake runners.
- Piston and Connecting Rod Disassemble
- Piston and Connecting Rod Assemble
- Piston, Connecting Rod, and Bearing Installation (LAF, LAT, LE5, LE9, LEA, or LUK)

1. Remove the engine from the vehicle.
2. Remove the pistons from the engine.
3. Remove the pistons from the connecting rods.
4. Discard the pistons and piston rings.
5. Install the new piston rings onto the new pistons.

6.  Install the new pistons onto the connecting rods.

7.  Assemble the engine.

8.  Install the engine into the vehicle.

CUSTOMER REIMBURSEMENT - For US

Customer requests for reimbursement of previously paid repairs to correct the condition described in this bulletin are to be submitted to the dealer by September 30, 2015, unless otherwise specified by state law.  If this is not convenient for the customer, they may mail the completed Customer Reimbursement Request Form and all required documents to the GM Customer Assistance Center. Repairs must have occurred within the 10 years of the date the vehicle was originally placed in service, or 120,000 miles, whichever occurs first.

**All reasonable and customary costs to correct the condition described in this bulletin should be considered for reimbursement.  Any questions or concerns should be reviewed with your GM representative prior to processing the request.**

When a customer requests reimbursement, they must provide the following:

- A completed Customer Reimbursement Request Form. This form is mailed to the customer or can be obtained through GM GlobalConnect.
- The name and address of the person who paid for the repair.
- Paid receipt confirming the amount of the repair expense, a description of the repair, and the person or entity performing the repair.

**IMPORTANT:**  GM requires dealers to approve or deny a reimbursement request within 30 days of receipt.  If a reimbursement request is approved, the dealer should immediately issue a check to the customer and submit an appropriate warranty transaction for the incurred expense.  If a reimbursement request is denied, the dealer MUST provide the customer with a clear and concise explanation, in writing, as to why the request was denied.  The bottom portion of the Customer Reimbursement Request Form may be used for this purpose.  If the denial was due to missing documents, the customer can resubmit the request when the missing documents are obtained, as long as it is still within the allowed reimbursement period.

Warranty transactions for customer reimbursement of previously paid repairs are to be submitted as required by GM Global Warranty Management.  Additional information can also be found in Warranty Administration Bulletin 11-00-89-004.

CUSTOMER REIMBURSEMENT - For Canada and Export

Customer requests for reimbursement of previously paid repairs to correct the condition described in this bulletin are to be submitted to the dealer prior to or by September 30, 2015. Repairs must have occurred within the 10 years of the date the vehicle was originally placed in service, or 193,000 kilometers, whichever occurs first.

When a customer requests reimbursement, they must provide the following:

- Proof of ownership at time of repair.
- Original paid receipt confirming the amount of unreimbursed repair expense(s) (including Service Contract deductibles), a description of the repair, and the person or entity performing the repair.

All reasonable and customary costs to correct the condition described in this bulletin should be considered for reimbursement. Any questions or concerns should be reviewed with your GM representative prior to processing the request.

COURTESY TRANSPORTATION – For US and Canada

The General Motors Courtesy Transportation program is intended to minimize customer inconvenience when a vehicle requires a repair that is covered by the New Vehicle Limited Warranties. The availability of courtesy transportation to customers whose vehicles are within the warranty coverage period and involved in a product program is very important in maintaining customer satisfaction. Dealers are to ensure that these customers understand that shuttle service or some other form of courtesy transportation is available and will be provided at no charge. Dealers should refer to the General Motors Service Policies and Procedures Manual for Courtesy Transportation guidelines.

WARRANTY TRANSACTION INFORMATION

Submit a transaction using the table below. All transactions should be submitted as a ZREG transaction type, unless noted otherwise.

**Note:** This special policy covers repairs after the original powertrain warranty has expired. For vehicles still covered under the original powertrain warranty, the labor code operations should be used from bulletin 13-06-01-003 as shown below.

**Note:** To avoid having to "H" route the customer reimbursement transaction for approval, it must be submitted prior to the repair transaction.

**Note:** The labor times have been revised in the labor time files. The Labor Time Guide was updated February 1, 2016.

| Labor Code | Description | Labor Time | Net Item |
|---|---|---|---|
| | **For use on vehicles still covered under the original powertrain warranty:** | | |
| 4080008 | Oil Consumption Test Setup – No Repair Required | 0.2 | N/A |
| 4080178 | Piston, Connecting Rod and Bearing Replacement (Includes Oil Consumption Test) | | N/A |
| | - AWD | 13.0 | |
| | - FWD | 12.6 | |

| | For use on vehicles no longer covered under warranty: | | |
|---|---|---|---|
| 9900033 | Oil Consumption Test Setup – No Repair Required | 0.2 | N/A |
| 9900034 | Piston and Piston Ring Replacement (Includes Oil Consumption Test)<br>- AWD<br>- FWD | <br><br>13.0<br>12.6 | N/A |
| 9900035 | Customer Reimbursement Approved | 0.2 | * |
| 9900036 | Customer Reimbursement Denied - For US dealers only | 0.1 | N/A |

\* The amount identified in Net/Reimbursement should represent the dollar amount reimbursed to the customer.

<u>CUSTOMER NOTIFICATION</u>

General Motors will notify customers of this special coverage on their vehicles (see copy of typical customer letter included with this bulletin - actual divisional letter may vary slightly).

GM bulletins are intended for use by professional technicians, NOT a "do-it-yourselfer".  They are written to inform these technicians of conditions that may occur on some vehicles, or to provide information that could assist in the proper service of a vehicle.  Properly trained technicians have the tools, equipment, safety instructions, and know-how to do a job properly and safely. If a condition is described, DO NOT assume that the bulletin applies to your vehicle, or that your vehicle will have that condition.  See your dealer/retailer for information on whether your vehicle may benefit from the information.

We Support
Voluntary Technician
Certification

August 2014

Dear General Motors Customer:

As the owner of a 2010 model year Chevrolet Equinox or GMC Terrain, your satisfaction with our product is very important to us.

This letter is intended to make you aware that some 2010 model year Chevrolet Equinox and GMC Terrain vehicles, equipped with a 2.4L engine, may exhibit excessive engine oil consumption (less than 2,000 miles per quart of engine oil), due to piston ring wear.   Check your oil level periodically.  Also, if this condition is present, the oil can light may illuminate on your instrument panel or you may have one of the following messages in the Driver Information Center: "Engine Oil Low – Add Oil" or "Oil Pressure Low – Stop Engine".  See your owner manual for additional information on what to do if the vehicle displays one of these messages.

**Do not take your vehicle to your GM dealer as a result of this letter unless you believe that your vehicle has the condition as described above.**

**What We Have Done:**  General Motors is providing owners with additional protection for the condition described above.  If this condition occurs on your 2010 model year Chevrolet Equinox or GMC Terrain within 10 years of the date your vehicle was originally placed in service or 120,000 miles (193,000 km), whichever occurs first, the condition will be repaired for you at **no charge**. Diagnosis or repair for conditions other than the condition described above is not covered under this special coverage program.

**What You Should Do:**  If you believe that your vehicle has the condition described above, repairs and adjustments qualifying under this special coverage must be performed by a General Motors dealer.  You may want to contact your GM dealer to find out how long they will need to have your vehicle so that you may schedule the appointment at a time that is convenient for you.  This will also allow your dealer to order parts if they are not already in stock.  Keep this letter with your other important glove box literature for future reference.

**Reimbursement:**  If you have paid for repairs for the condition described in this letter, please complete the enclosed reimbursement form and present it to your dealer with all required documents.  Working with your dealer will expedite your request, however, if this is not convenient, you may mail the completed reimbursement form and all required documents to Reimbursement Department, PO Box 33170, Detroit, MI 48232-5170.  The completed form and required documents must be presented to your dealer or received by the Reimbursement Department by September 30, 2015, unless state law specifies a longer reimbursement period.

If you have any questions or need any assistance, just contact your dealer or the appropriate Customer Assistance Center at the number listed below.

| Division | Number | Text Telephones (TTY) |
|---|---|---|
| Chevrolet | 1-800-222-1020 | 1-800-833-2438 |
| GMC | 1-800-462-8782 | 1-888-889-2438 |
| Guam | 65-6267-1752 | |
| Puerto Rico – English | 1-800-496-9992 | |
| Puerto Rico – Español | 1-800-496-9993 | |
| Virgin Islands | 1-800-496-9994 | |

Case 2:18-cv-14371-RLR   Document 27-1   Entered on FLSD Docket 04/26/2019   Page 122 of
155

We are sorry for any inconvenience you may experience; however, we have taken this action in the interest of your continued satisfaction with our products.

Jim Moloney
General Director,
Customer and Relationship Services

Enclosure
14159

EXHIBIT E
TO SETTLEMENT AGREEMENT

Bulletin No.:    15285D
Date:    April 2017

# Service Bulletin

# SPECIAL COVERAGE

**SUBJECT:**   **Special Coverage Adjustment - Excessive Engine Oil Consumption**

**MODELS:**   **2011 Chevrolet Equinox**
**2011 GMC Terrain**
**Equipped with 2.4L Engine (LAF)**

> The Piston and Ring Replacement section has been revised, prior to step 1, to emphasize the PCV orifice procedure in the referenced Technical Service Bulletin.  Please discard all copies of bulletin 15285C.

## CONDITION

Some 2011 model year Chevrolet Equinox and GMC Terrain vehicles, equipped with a 2.4L engine, may exhibit excessive engine oil consumption (less than 2,000 miles per quart of engine oil), due to piston ring wear.   If this condition is present, the oil can light may illuminate on the instrument panel or the following message may appear in the Driver Information Center: "Oil Pressure Low – Stop Engine".

## SPECIAL COVERAGE ADJUSTMENT

This special coverage covers the condition described above for a period of 7 years and 6 months or 120,000 miles (193,000 km), whichever occurs first, from the date the vehicle was originally placed in service, regardless of ownership.

Dealers are to replace the 4 piston assemblies.  The repairs will be made at no charge to the customer.

For vehicles covered by Vehicle Service Contracts, all eligible claims with repair orders on or after July 21, 2015, are covered by this special coverage and must be submitted using the labor operation codes provided with this bulletin.  Claims with repair orders prior to July 21, 2015, must be submitted to the Service Contract provider.

## VEHICLES INVOLVED

All involved vehicles are identified by Vehicle Identification Number on the Applicable Warranties section in GM Global Warranty Management system.  Dealership service personnel should always check this site to confirm vehicle involvement prior to beginning any required inspections and/or repairs.  It is important to routinely use this tool to verify eligibility because not all similar vehicles may be involved regardless of description or option content.

Copyright 2017 General Motors.  All Rights Reserved.

## PART INFORMATION

Parts required to complete this special coverage are to be obtained from General Motors Customer Care and Aftersales (GMCC&A).

**Reminder:** Parts may be removed from Retail Inventory Management (RIM) management. Dealers should review the affected parts to confirm RIM managed status. Parts may have quantity limiters in effect.

| Part Number | Description | Quantity/Vehicle |
|---|---|---|
| 19303450 | Piston Kit | 1 |
| 12637166 | Gasket Kit, Cylinder Head | 1 |
| 12609291 | Gasket Kit, Camshaft Cover | 1 |
| 12635447 | Seal, Chain Package, Timing | 1 |
| 12635427 | Chain Assembly, W/Pmp And Balr Shf | 1 |
| 12649233 | Tensioner Asm - W/Pmp & Balr Shf Chain | 1 |
| 24435052 | Gasket, Engine Front Cover | 1 |
| 12602379 | Seal, Fuel Pump Housing (Oring) | 1 |
| 12608374 | Pipe Asm, Fuel Feed Inter | 1 |
| 12584041 | Seal, Cr/Shf Front Oil | 1 |
| 11589123 | Bolt Asm, Hx Hd W/Con Spr Washer | 1 |
| 11588844 | Bolt, Cm/Shf Posn Actr | 2 |
| 12605566 | Filter, Oil | 1 |
| 19293000 | Oil, Engine, AC Delco DEXOS1 5W30 | 5 |
| 90537293 | Screw Schraube (Connecting Rod) | 8 |
| 88864346 | Sealant, RTV | 2 |
| 90537336 | Guide, Balr Chain | 1 |
| 12346290 | Coolant, Engine, Dexcool Antifreeze | 1 |

## SERVICE PROCEDURE

**Note:** This special policy covers repairs after the original powertrain warranty has expired. For vehicles still covered under the original powertrain warranty, the labor code operations should be used from bulletin 13-06-01-003.

**Note:** Technicians should perform an oil consumption test to determine if the pistons and rings must be replaced. Follow the latest version of Corporate Bulletin Number 01-06-01-011 to perform an oil consumption test. Before starting the oil consumption test, verify the ECM has latest TIS2web calibrations to adjust the engine oil life monitor to a maximum of 7,500 miles (12,070 km) — Refer to the latest version of Customer Satisfaction Bulletin number 12312.

1. Determine the rate of oil consumption.

- If the oil consumption test indicates that the rate of consumption is less than 1 quart (0.946L) of oil every 2,000 miles (3,200 km), note the oil consumption rate and the date that the ECM was reprogrammed. No further action is required.

- If the oil consumption test indicates that the rate of consumption is greater than 1 quart (0.946 L) of oil every 2,000 miles (3,200 km), note the oil consumption rate, the date that the ECM was reprogrammed and replace the pistons and rings.

**Note:** The repair is to replace the pistons and rings. In some cases the bore surface may not have a uniform look to the finish (zebra stripes) as shown in Technical Service Bulletin 13-06-01-003F. As a result, some technicians may question whether the engine should be repaired or replaced. After careful evaluation, GM Powertrain has determined that the new pistons and rings will perform correctly in bores that have this appearance so engine replacement should not be necessary. The cylinder bores do not need any machine or honing work performed on them. Refer to Technical Service Bulletin 13-06-01-003F for more information.

**Piston and Ring Replacement Procedure**



2146346

**Note:** Review the following service procedures and technical bulletin in SI:

- Engine Replacement
- Technical Service Bulletin 13-06-01-003F placing a special emphasis on the PCV orifice between the #2 and #3 intake runners.
- Piston and Connecting Rod Disassemble
- Piston and Connecting Rod Assemble
- Piston, Connecting Rod, and Bearing Installation (LAF, LAT, LE5, LE9, LEA, or LUK)

1. Remove the engine from the vehicle.
2. Remove the pistons from the engine.
3. Remove the pistons from the connecting rods.
4. Discard the pistons and piston rings.

5. Install the new piston rings onto the new pistons.

6. Install the new pistons onto the connecting rods.

7. Assemble the engine.

8. Install the engine into the vehicle.

<u>CUSTOMER REIMBURSEMENT</u> - For US

Customer requests for reimbursement of previously paid repairs to correct the condition described in this bulletin are to be submitted to the dealer by August 31, 2016, unless otherwise specified by state law.  If this is not convenient for the customer, they may mail the completed Customer Reimbursement Request Form and all required documents to the GM Customer Assistance Center. Repairs must have occurred within the 7 years and 6 months of the date the vehicle was originally placed in service, or 120,000 miles, whichever occurs first.

**All reasonable and customary costs to correct the condition described in this bulletin should be considered for reimbursement.  Any questions or concerns should be reviewed with your GM representative prior to processing the request.**

When a customer requests reimbursement, they must provide the following:

- A completed Customer Reimbursement Request Form. This form is mailed to the customer or can be obtained through GM GlobalConnect.
- The name and address of the person who paid for the repair.
- Paid receipt confirming the amount of the repair expense, a description of the repair, and the person or entity performing the repair.

**IMPORTANT:** GM requires dealers to approve or deny a reimbursement request within 30 days of receipt.  If a reimbursement request is approved, the dealer should immediately issue a check to the customer and submit an appropriate warranty transaction for the incurred expense.  If a reimbursement request is denied, the dealer <u>MUST</u> provide the customer with a clear and concise explanation, in writing, as to why the request was denied.  The bottom portion of the Customer Reimbursement Request Form may be used for this purpose.  If the denial was due to missing documents, the customer can resubmit the request when the missing documents are obtained, as long as it is still within the allowed reimbursement period.

Warranty transactions for customer reimbursement of previously paid repairs are to be submitted as required by GM Global Warranty Management.  Additional information can also be found in Warranty Administration Bulletin 11-00-89-004.

CUSTOMER REIMBURSEMENT - For Canada and Export

Customer requests for reimbursement of previously paid repairs to correct the condition described in this bulletin are to be submitted to the dealer prior to or by August 31, 2016.  Repairs must have occurred within the 7 years and 6 months of the date the vehicle was originally placed in service, or 193,000 kilometers, whichever occurs first.

When a customer requests reimbursement, they must provide the following:

- Proof of ownership at time of repair.
- Original paid receipt confirming the amount of unreimbursed repair expense(s) (including Service Contract deductibles), a description of the repair, and the person or entity performing the repair.

All reasonable and customary costs to correct the condition described in this bulletin should be considered for reimbursement.  Any questions or concerns should be reviewed with your GM representative prior to processing the request.

COURTESY TRANSPORTATION – For US and Canada

The General Motors Courtesy Transportation program is intended to minimize customer inconvenience when a vehicle requires a repair that is covered by the New Vehicle Limited Warranties.  The availability of courtesy transportation to customers whose vehicles are within the warranty coverage period and involved in a product program is very important in maintaining customer satisfaction.  Dealers are to ensure that these customers understand that shuttle service or some other form of courtesy transportation is available and will be provided at no charge.  Dealers should refer to the General Motors Service Policies and Procedures Manual for Courtesy Transportation guidelines.

WARRANTY TRANSACTION INFORMATION

Submit a transaction using the table below.  All transactions should be submitted as a ZREG transaction type, unless noted otherwise.

**Note:** This special policy covers repairs after the original powertrain warranty has expired.  For vehicles still covered under the original powertrain warranty, the labor code operations should be used from bulletin 13-06-01-003 as shown below.

**Note:** To avoid having to "H" route the customer reimbursement transaction for approval, it must be submitted prior to the repair transaction.

**Note:** The labor times have been revised in the labor time files. The Labor Time Guide was updated February 1, 2016.

| For Use With Vehicles <u>Still Covered</u> Under Applicable New Vehicle Limited Warranties | | | |
|---|---|---|---|
| Labor Code | Description | Labor Time | Net Item |
| 4080008 | Oil Consumption Test Setup – No Repair Required | 0.2 | N/A |
| 4080178 | Piston, Connecting Rod and Bearing Replacement (Includes Oil Consumption Test) | | * |
| | - AWD | 13.0 | |
| | - FWD | 12.6 | |

April 2017

**Note:** For reimbursements on vehicles covered under warranty, refer to the Policies and Procedures Manual.

| | For Use With Vehicles <u>No Longer Covered</u> Under Applicable New Vehicle Limited Warranties | | | |
|---|---|---|---|---|
| **Labor Code** | **Description** | **Labor Time** | **Net Item** |
| 9900183 | Oil Consumption Test Setup – No Repair Required | 0.2 | N/A |
| 9900184 | Piston and Piston Ring Replacement (Includes Oil Consumption Test) <br> - AWD <br> - FWD | <br><br>13.0<br>12.6 | N/A |
| 9900185 | Customer Reimbursement Approved | 0.2 | * |
| 9900186 | Customer Reimbursement Denied - For US dealers only | 0.1 | N/A |

\* The amount identified in Net/Reimbursement should represent the dollar amount reimbursed to the customer.

<u>CUSTOMER NOTIFICATION</u>

General Motors will notify customers of this special coverage on their vehicles (see copy of typical customer letter included with this bulletin - actual divisional letter may vary slightly).

GM bulletins are intended for use by professional technicians, NOT a "<u>do-it-yourselfer</u>". They are written to inform these technicians of conditions that may occur on some vehicles, or to provide information that could assist in the proper service of a vehicle. Properly trained technicians have the tools, equipment, safety instructions, and know how to do a job properly and safely. If a condition is described, <u>DO NOT</u> assume that the bulletin applies to your vehicle, or that your vehicle will have that condition. See your dealer/retailer for information on whether your vehicle may benefit from the information.

We Support
Voluntary Technician
Certification

August 2015

This notice applies to your vehicle, **VIN:** _____

Dear General Motors Customer:

As the owner of a 2011 model year Chevrolet Equinox or GMC Terrain, your satisfaction with our product is very important to us.

This letter is intended to make you aware that some 2011 model year Chevrolet Equinox and GMC Terrain vehicles, equipped with a 2.4L engine, may exhibit excessive engine oil consumption (less than 2,000 miles per quart of engine oil), due to piston ring wear.   Check your oil level periodically.  Also, if this condition is present, the oil can light may illuminate on your instrument panel or you may have the following message in the Driver Information Center:  "Oil Pressure Low – Stop Engine".  See your owner manual for additional information on what to do if the vehicle displays this message.

**<u>Do not take your vehicle to your GM dealer as a result of this letter unless you believe that your vehicle has the condition as described above.</u>**

**What We Have Done:**  General Motors is providing owners with additional protection for the condition described above.  If this condition occurs on your 2011 model year Chevrolet Equinox or GMC Terrain within 7 years and 6 months of the date your vehicle was originally placed in service or 120,000 miles (193,000 km), whichever occurs first, the condition will be repaired for you at **no charge**.  Diagnosis or repair for conditions other than the condition described above is not covered under this special coverage program.

**What You Should Do:**  Be sure to maintain proper engine oil level at all times and have the oil changed when the CHANGE ENGINE OIL SOON message appears on the Driver Information Center.  If you believe that your vehicle has the condition described above, repairs and adjustments qualifying under this special coverage must be performed by a General Motors dealer.  You may want to contact your GM dealer to find out how long they will need to have your vehicle so that you may schedule the appointment at a time that is convenient for you.  This will also allow your dealer to order parts if they are not already in stock. Keep this letter with your other important glove box literature for future reference.

**Reimbursement:**  If you have paid for repairs for the condition described in this letter, please complete the enclosed reimbursement form and present it to your dealer with all required documents.  Working with your dealer will expedite your request, however, if this is not convenient, you may mail the completed reimbursement form and all required documents to Reimbursement Department, PO Box 33170, Detroit, MI 48232-5170.  The completed form and required documents must be presented to your dealer or received by the Reimbursement Department by August 31, 2016, unless state law specifies a longer reimbursement period.

If you have any questions or need any assistance, just contact your dealer or the appropriate Customer Assistance Center at the number listed below.

| Division | Number | Text Telephones (TTY) |
|---|---|---|
| Chevrolet | 1-800-222-1020 | 1-800-833-2438 |
| GMC | 1-800-462-8782 | 1-888-889-2438 |
| Guam | 65-6267-1752 | |
| Puerto Rico – English | 1-800-496-9992 | |
| Puerto Rico – Español | 1-800-496-9993 | |
| Virgin Islands | 1-800-496-9994 | |

We are sorry for any inconvenience you may experience; however, we have taken this action in the interest of your continued satisfaction with our products.

Alicia S. Boler-Davis
Sr. Vice President
Global Connected Customer Experience

Enclosure
15285

EXHIBIT F
TO SETTLEMENT AGREEMENT

**Special Coverage Adjustment**
16118 Excessive Engine Oil Consumption



| Reference Number: | N162053210 | | | Release Date: | April 2017 |
| | | | | Revision: | 00 |

| | | Model Year | | | |
|---|---|---|---|---|---|
| Make | Model | From | To | RPO | Description |
| Chevrolet | Equinox | 2012 | 2012 | LEA | Engine-Gas, 4 Cyl, 2.4L |
| GMC | Terrain | | | | |

Involved vehicles are identified on the Applicable Warranties section in GM Global Warranty Management system. This site should always be checked to confirm vehicle involvement prior to beginning any required inspections and/or repairs.

| Condition | Some 2012 model year Chevrolet Equinox and GMC Terrain vehicles, equipped with a 2.4L engine, may exhibit excessive engine oil consumption (less than 2,000 miles [3,200 km] per quart [0.946 L] of engine oil), due to piston ring wear. If this condition is present, an audible rattle or knock from the engine may be heard. The engine oil pressure telltale may illuminate on the instrument panel or the following message may appear in the Driver Information Center: "Oil Pressure Low – Stop Engine". |
|---|---|
| Special Coverage Adjustment | This special coverage covers the condition described above for a period of 7 years and 6 months or 120,000 miles (193,000 km), whichever occurs first, from the date the vehicle was originally placed in service, regardless of ownership.<br><br>For vehicles covered by Vehicle Service Contracts, all eligible claims with repair orders on or after April 28, 2017, are covered by this special coverage and must be submitted using the labor operation codes provided with this bulletin. Claims with repair orders prior to April 28, 2017, must be submitted to the Service Contract provider.<br><br>Vehicle owners or lessees who paid for repairs referenced in this Special Coverage ("Customers") are eligible for reimbursement of their reasonable and customary expenses in accordance with the procedures specified below. The conditional right to reimbursement is provided by GM solely in the interest of customer satisfaction and is personal to Customers. *Customers may not assign and GM does not consent to any assignment of any Customer's right to submit reimbursement claims, or to receive reimbursement, or any other rights granted by this Special Coverage to any third party, including but not limited to service contract providers, and this Special Coverage is not intended to and does not confer any third party beneficiary, subrogation or contribution rights, or any other rights to reimbursement, against GM, whether in law, equity or otherwise, on any third parties.* |
| Correction | Dealers are to perform an oil consumption test and install new pistons and piston rings. The repairs will be made at no charge to the Customer. |

Copyright 2017 General Motors. All Rights Reserved.

**Special Coverage Adjustment**
16118 Excessive Engine Oil Consumption



**Parts**

| Quantity | Part Name | Part No. |
|---|---|---|
| 1 | Piston Kit | 12683595 |
| 1 | Gasket Kit, Cylinder Head | 12637166 |
| 1 | Gasket Kit, Camshaft Cover | 12609291 |
| 1 | Seal, Chain Package, Timing | 12680750 |
| 1 | Chain Assembly, W/Pmp And Balr Shf | 12635427 |
| 1 | Tensioner Asm - W/Pmp & Balr Shf Chain | 12649233 |
| 1 | Gasket, Engine Front Cover | 24435052 |
| 1 | Seal, Fuel Pump Housing (Oring) | 12602379 |
| 1 | Pipe Asm, Fuel Feed Inter | 12608374 |
| 1 | Seal, Cr/Shf Front Oil | 12584041 |
| 1 | Bolt Asm, Hx Hd W/Con Spr Washer | 11589123 |
| 2 | Bolt, Cm/Shf Posn Actr | 11588844 |
| 1 | Filter, Oil | 12605566 |
| 5 | Oil, Engine, AC Delco DEXOS1 5W30 | 19293000 |
| 8 | Screw Schraube (Connecting Rod) | 90537293 |
| 2 | Sealant, RTV | 88864346 (US) 88861418 (Canada) |
| 1 | Guide, Balr Chain | 90537336 |
| 1 | Coolant, Engine, Dexcool Antifreeze | 12346290 (US) 10953464 (Canada) |

**Reminder:** Parts may be removed from Retail Inventory Management (RIM).  Dealers should review the affected parts to confirm RIM managed status.

**Warranty Information**

| Labor Operation | Description | Labor Time | Trans. Type | Net Item |
|---|---|---|---|---|
| 9900414 | Oil Consumption Test Setup – No Repair Required | 0.2 | ZREG | N/A |
| 9900415 | Piston and Piston Ring Replacement (Includes Oil Consumption Test)<br>-   AWD<br>-   FWD | <br><br>13.0<br>12.6 | ZREG | |
| 9900416 | Customer Reimbursement Approved<br>- For USA and Canada dealers only<br>- For Export dealers only | <br>N/A<br>0.2 | ZREG | * |
| 9900417 | Customer Reimbursement Denied – For USA dealers only | N/A | ZREG | ** |

\*    For USA and Canada: Submit the dollar amount reimbursed to the Customer in Net/Reimbursement. Submit $20.00 administrative allowance in Net/Admin Allowance.

For Export: Submit the dollar amount reimbursed to the Customer in Net/Reimbursement.

\*\*   Submit $10.00 administrative allowance in Net/Admin Allowance.

**Service Procedure**

Customers will be notified of the Special Policy by General Motors (see copy of owner letter included with this bulletin).

**Note:** This special policy covers repairs after the original powertrain warranty has expired. For vehicles still covered under the original powertrain warranty, the labor code operations should be used from bulletin 13-06-01-003.

**Note:** Technicians should perform an oil consumption test to determine if the pistons and rings must be replaced. Follow the latest version of Corporate Bulletin Number 01-06-01-011 to perform an oil consumption test. Before starting the oil consumption test, verify the ECM has latest TIS2web calibrations to adjust the engine oil life monitor to a maximum of 7,500 miles (12,070 km) — Refer to the latest version of Customer Satisfaction Bulletin number 12312.

**Special Coverage Adjustment**
16118 Excessive Engine Oil Consumption



Determine the rate of oil consumption.

- If the oil consumption test indicates that the rate of consumption is <u>equal to or less than</u> 1 quart (0.946L) of oil every 2,000 miles (3,200 km), note the oil consumption rate and the date that the ECM was reprogrammed. Explain to the customer, that their engine meets the guidelines for oil consumption at this time.  No further action is required.

- If the oil consumption test indicates that the rate of consumption is <u>greater than</u> 1 quart (0.946 L) of oil every 2,000 miles (3,200 km), note the oil consumption rate, the date that the ECM was reprogrammed and replace the pistons and rings.

<span style="color:#c00000">**Note:** The repair is to replace the pistons and rings. In some cases the bore surface may not have a uniform look to the finish (zebra stripes) as shown in Technical Service Bulletin 13-06-01-003F. As a result, some technicians may question whether the engine should be repaired or replaced. After careful evaluation, GM Powertrain has determined that the new pistons and rings will perform correctly in bores that have this appearance so engine replacement should not be necessary. The cylinder bores do not need any machine or honing work performed on them. Refer to Technical Service Bulletin 13-06-01-003F for more information.</span>

**Piston and Ring Replacement Procedure**



2146346

<span style="color:#c00000">**Note:** Review the following service procedures and technical bulletin in SI:</span>

- <span style="color:#c00000">Engine Replacement</span>

- <span style="color:#c00000">Technical Service Bulletin 13-06-01-003F placing a special emphasis on the PCV orifice between the #2 and #3 intake runners.</span>

- <span style="color:#c00000">Piston and Connecting Rod Disassemble</span>

- <span style="color:#c00000">Piston and Connecting Rod Assemble</span>

- <span style="color:#c00000">Piston Connecting Rod, and Bearing Installation (LAF, LAT, LE5, LE9, LEA, or LUK)</span>

1. Remove the engine from the vehicle.

2. Remove the pistons from the engine.

3. Remove the pistons from the connecting rods.

4. Discard the pistons and piston rings.

5. Install the new piston rings onto the new pistons.

6. Install the new pistons onto the connecting rods.

7. Assemble the engine.

**Special Coverage Adjustment**
16118 Excessive Engine Oil Consumption



8.  Install the engine into the vehicle.

**Courtesy Transportation** – For USA & Canada

Courtesy transportation is available for Customers whose vehicles are involved in a product program and still within the warranty coverage period. See General Motors Service Policies and Procedures Manual, Sections 1.4 and 6.1.10, for courtesy transportation program details.

**Customer Notification**

General Motors will notify Customers of this special coverage on their vehicle (see copy of typical Customer letter included with this bulletin).

**Customer Reimbursement**

Customer requests for reimbursement of previously paid repairs to correct the condition described in this bulletin are to be submitted to the dealer prior to or by May 31, 2018.  See General Motors Service Policies and Procedures Manual, Section 6.1.11 – Product Field Action Customer Reimbursement Procedure (USA & Canada) or local Policies and Procedures, for details.

GM bulletins are intended for use by professional technicians, NOT a "do-it-yourselfer".  They are written to inform these technicians of conditions that may occur on some vehicles, or to provide information that could assist in the proper service of a vehicle.  Properly trained technicians have the tools, equipment, safety instructions, and know-how to do a job properly and safely.  If a condition is described, DO NOT assume that the bulletin applies to your vehicle, or that your vehicle will have that condition.  See your dealer for information on whether your vehicle may benefit from the information.

**We Support
Voluntary Technician
Certification**

**Special Coverage Adjustment**
16118 Excessive Engine Oil Consumption



May 2017

This notice applies to your vehicle, **VIN:** _____

Dear General Motors Customer:

As the owner of a 2012 model year Chevrolet Equinox or GMC Terrain, your satisfaction with our product is very important to us.

This letter is intended to make you aware that some 2012 model year Chevrolet Equinox or GMC Terrain vehicles, equipped with a 2.4L engine, may exhibit excessive engine oil consumption (less than 2,000 miles [3,200 km] per quart [0.946 L] of engine oil), due to piston ring wear. If this condition is present, an audible rattle or knock from the engine may be heard.  The engine oil pressure telltale may illuminate on the instrument panel or the following message may appear in the Driver Information Center: "Oil Pressure Low – Stop Engine."

**Do not take your vehicle to your GM dealer as a result of this letter unless you believe that your vehicle has the condition as described above.**

**What We Have Done:**  General Motors is providing owners with additional protection for the condition described above. If this condition occurs on your 2012 model year Chevrolet Equinox or GMC Terrain within 7 years and 6 months of the date your vehicle was originally placed in service or 120,000 miles (193,000 km), whichever occurs first, the condition will be repaired for you at **no charge**.  Diagnosis or repair for conditions other than the condition described above is not covered under this special coverage program.

**What You Should Do:**  It is a good idea to check the engine oil level at each fuel fill.  Your vehicle owner manual has instructions on checking engine oil in the Vehicle Care section.  If you believe that your vehicle has the condition described above, repairs and adjustments qualifying under this special coverage must be performed by a General Motors dealer.  You may want to contact your GM dealer to find out how long they will need to have your vehicle so that you may schedule the appointment at a time that is convenient for you.  This will also allow your dealer to order parts if they are not already in stock.  Keep this letter with your other important glove box literature for future reference.

**Reimbursement:**  If you have paid for repairs for the condition described in this letter, please complete the enclosed reimbursement form and present it to your dealer with all required documents.  Working with your dealer will expedite your request, however, if this is not convenient, you may mail the completed reimbursement form and all required documents to Reimbursement Department, PO Box 33170, Detroit, MI 48232-5170.  The completed form and required documents must be presented to your dealer or received by the Reimbursement Department by May 31, 2018, unless state law specifies a longer reimbursement period.

The right to submit reimbursement claims is provided by GM solely in the interest of customer satisfaction and is personal to vehicle owners and lessees who previously paid for repairs referenced in this Special Coverage ("Customers").  ***Customers may not assign and GM does not consent to any assignment of any Customer's right to submit reimbursement claims, or to receive reimbursement, or any other rights granted by this Special Coverage to any third party, including but not limited to service contract providers, and this Special Coverage is not intended to and does not confer any third party beneficiary, subrogation or contribution rights, or any other rights to reimbursement, against GM, whether in law, equity or otherwise, on any third parties.***

If you have any questions or need any assistance, please contact your dealer or the appropriate Customer Assistance Center at the number listed below.

| Division | Number | Text Telephones (TTY) |
|---|---|---|
| Chevrolet | 1-800-222-1020 | 1-800-833-2438 |
| GMC | 1-800-462-8782 | 1-800-889-2438 |
| Puerto Rico – English | 1-800-496-9992 | |
| Puerto Rico – Español | 1-800-496-9993 | |
| Virgin Islands | 1-800-496-9994 | |

We are sorry for any inconvenience you may experience; however, we have taken this action in the interest of your continued satisfaction with our products.

Terry M. Inch
Executive Director
Global Connected Customer Experience

Enclosure
16118

EXHIBIT G
TO SETTLEMENT AGREEMENT

### NOTICE OF APPROVAL OF CLASS ACTION SETTLEMENT AND CLAIM FORM

Dear General Motors Customer:

We are pleased to advise you that the class action settlement in Berman et al v. General Motors LLC has been approved by the Court.  This notice is to advise you of the settlement benefits that may be available to you.

There are Special Coverage Adjustments ("SCA") that cover certain model year 2010 Chevrolet Equinox and GMC Terrain Vehicles for possible excessive oil consumption related to piston ring wear issues.  Your vehicle may be a part of this SCA coverage, whether you purchased it new or used.  The coverage is for 10 years or 120,000 miles, whichever comes first, after the date it was originally sold or leased.  Your GM dealer can provide you with that date.

Whether or not you still own your model year 2010  Chevrolet Equinox or GMC Terrain, you may still benefit from this settlement.  If you previously paid a GM dealer or other repair facility for a piston assembly replacement, you may be able to seek reimbursement.  The repair must have: (1) been due to oil consumption concerns, and  (2) been within both the time and mileage limits stated above.   If so, you may seek reimbursement for your out-of-pocket repair costs and/or the amount you had to pay for a rental vehicle while these repairs were being performed.  This settlement extends the deadline for claiming reimbursement from GM until [insert date 120 days after the date of this letter].

To request reimbursement, please complete the enclosed Claim Form and return it by mail along with documentation of the repair and the out-of-pocket expenses you incurred to the address given below:

2.4 Liter Oil Consumption
c/o Analytics Consulting LLC
P.O. Box 2003
Chanhassen, MN 55317-2003

If you have any questions about the SCA for your vehicle, please feel free to contact your Chevrolet or GMC dealer or call or write to the Customer Assistance Centers for Chevrolet or GMC set forth below:

[Chevrolet Customer Assistance contact info]

[GMC Customer Assistance contact info]

**Exhibit G**

Sincerely,

GENERAL MOTORS LLC

## <u>CLAIM FORM FOR PRIOR PISTON REPLACEMENT PAYMENTS</u>

Your name: _____

Address: _____
            (Street and Unit/Apartment Number)


            _____
            (City)                                    (State)  (Zip Code)

VEHICLE IDENTIFICATION NUMBER  (17 Digits): _____

Date of Prior Repair/Payment: _____

Repairing GM Dealer or Other Repair Facility: _____

Address of Dealer or Repair Facility: _____
                                         (Street and Unit/Apartment Number)


                                         _____
                                         (City)                         (State) (Zip Code)

Total Amount of Repair and Rental Vehicle Payment(s): _____

<u>IMPORTANT:</u>  BE SURE TO INCLUDE COPIES OF ALL PERTINENT REPAIR ORDERS,
            RENTAL VEHICLE INVOICES AND/OR OTHER DOCUMENTATION
            OF YOUR OUT-OF-POCKET PAYMENTS.  YOUR CLAIM CANNOT BE
            EVALUATED WITHOUT THIS SUPPORTING DOCUMENTATION.

**Return your Claim Form and Supporting Documentation by first-class mail no
later than [ 120 days from the date of this letter] to the following address:**

**2.4 Liter Oil Consumption
c/o Analytics Consulting LLC
P.O. Box 2003
Chanhassen, MN 55317-2003**

If your claim is approved you will receive a reimbursement check within approximately 90 days.

EXHIBIT H
TO SETTLEMENT AGREEMENT

## NOTICE OF APPROVAL OF CLASS ACTION SETTLEMENT AND CLAIM FORM

Dear General Motors Customer:

We are pleased to advise you that the class action settlement in Berman et al v. General Motors LLC has been approved by the Court.  This notice is to advise you of the settlement benefits that may be available to you.

There are Special Coverage Adjustments ("SCA") that cover certain model year 2011 and 2012 Chevrolet Equinox and GMC Terrain Vehicles for possible excessive oil consumption related to piston ring wear issues.  Your vehicle may be a part of this SCA coverage, whether you purchased it new or used.  The coverage is for 7 years 6 months or 120,000 miles, whichever comes first, after the date it was originally sold or leased.  Your GM dealer can provide you with that date.

Whether or not you still own your model year 2011 or 2012 Chevrolet Equinox or GMC Terrain, you may still benefit from this settlement.  If you previously paid a GM dealer or other repair facility for a piston assembly replacement, you may be able to seek reimbursement.  The repair must have: (1) been due to oil consumption concerns, and  (2) been within both the time and mileage limits stated above.   If so, you may seek reimbursement for your out-of-pocket repair costs and/or the amount you had to pay for a rental vehicle while these repairs were being performed.  This settlement extends the deadline for claiming reimbursement from GM until [insert date 120 days after the date of this letter].

To request reimbursement, please complete the enclosed Claim Form and return it by mail along with documentation of the repair and the out-of-pocket expenses you incurred to the address given below:

2.4 Liter Oil Consumption
c/o Analytics Consulting LLC
P.O. Box 2003
Chanhassen, MN 55317-2003

If you have any questions about the SCA for your vehicle, please feel free to contact your Chevrolet or GMC dealer or call or write to the Customer Assistance Centers for Chevrolet or GMC set forth below:

[Chevrolet Customer Assistance contact info]

[GMC Customer Assistance contact info]

**Exhibit H**

Sincerely,

GENERAL MOTORS LLC

## <u>CLAIM FORM FOR PRIOR PISTON REPLACEMENT PAYMENTS</u>

Your name: _____

Address: _____
(Street and Unit/Apartment Number)

_____
(City)                                        (State)  (Zip Code)

VEHICLE IDENTIFICATION NUMBER  (17 Digits): _____

Date of Prior Repair/Payment: _____

Repairing GM Dealer or Other Repair Facility: _____

Address of Dealer or Repair Facility: _____
(Street and Unit/Apartment Number)

_____
(City)                                        (State) (Zip Code)

Total Amount of Repair and Rental Vehicle Payment(s): _____

<u>IMPORTANT:</u>  BE SURE TO INCLUDE COPIES OF ALL PERTINENT REPAIR ORDERS,
RENTAL VEHICLE INVOICES AND/OR OTHER DOCUMENTATION
OF YOUR OUT-OF-POCKET PAYMENTS.  YOUR CLAIM CANNOT BE
EVALUATED WITHOUT THIS SUPPORTING DOCUMENTATION.

**Return your Claim Form and Supporting Documentation by first-class mail no later than [120 days from the date of this letter] to the following address:**

**2.4 Liter Oil Consumption Litigation**
**c/o Analytics Consulting LLC**
**P.O. Box 2003**
**Chanhassen, MN 55317-2003**

If your claim is approved you will receive a reimbursement check within approximately 90 days.

EXHIBIT I
TO SETTLEMENT AGREEMENT

<u>**NOTICE OF APPROVAL OF CLASS ACTION SETTLEMENT AND CLAIM FORM**</u>

Dear General Motors Customer:

      We are pleased to advise you that the class action settlement in Berman et al v. General Motors LLC has been approved by the Court.

      Under the Settlement, your vehicle is covered by a new Special Coverage Adjustment ("SCA") for possible excessive oil consumption due to piston ring wear issues. SCA coverage is for 7 years 6 months or 120,000 miles, whichever comes first, after the initial new vehicle retail sale or lease of your vehicle.

      A notice and explanation of the new SCA coverage for your vehicle is attached. If you still own your model year 2013 vehicle and it is within both the time and mileage limits noted above, and if you believe it is consuming excessive amounts of motor oil, please follow the instructions in the attached notice for obtaining diagnosis from your GM dealer and, if excessive oil consumption is found, free replacement of your vehicle's piston assemblies. If you would like a copy of the SCA you may request it from your Chevrolet or GMC dealer.

      Whether or not you still own your model year 2013 Chevrolet Equinox or GMC Terrain, if you previously paid a GM dealer or other repair facility for piston assembly replacement due to oil consumption concerns within both of the time and mileage limits noted above, or incurred rental vehicle charges while such repairs were being performed, please follow the instructions in the attached notice for submitting a Claim Form and supporting repair documentation. Note, the deadline for submitting a reimbursement claim is [insert date 120 days from the date of this letter].

      To request reimbursement, please complete the enclosed Claim Form and return it by mail along with documentation of the repair and the out-of-pocket expenses you incurred to the address given below:

2.4 Liter Oil Consumption Litigation
c/o Analytics Consulting LLC
P.O. Box 2003
Chanhassen, MN 55317-2003

      If you have any questions about the SCA for your vehicle, please feel free to contact your Chevrolet or GMC dealer or call or write to the Customer Assistance Centers for Chevrolet or GMC set forth below:

[Chevrolet Customer Assistance contact info]
[GMC Customer Assistance contact info]

**EXHIBIT I**

Sincerely,

GENERAL MOTORS LLC



April 25, 2019

This notice applies to your vehicle, **VIN: _____**

Dear General Motors Customer:

As the owner of a 2013 model year Chevrolet Equinox or GMC Terrain, your satisfaction with our product is very important to us.

This letter is intended to make you aware that some 2013 model year Chevrolet Equinox or GMC Terrain vehicles, equipped with a 2.4L engine, may exhibit excessive engine oil consumption (less than 2,000 miles [3,200 km] per quart [0.946 L] of engine oil), due to piston ring wear. If this condition is present, an audible rattle or knock from the engine may be heard. The engine oil pressure warning light may illuminate on the instrument panel or the following message may appear in the Driver Information Center: "Oil Pressure Low – Stop Engine."

**<u>Do not take your vehicle to your GM dealer as a result of this letter unless you believe that your vehicle has the condition as described above.</u>**

**What We Have Done:** General Motors is providing owners with additional protection for the condition described above. If this condition occurs on your 2013 model year Chevrolet Equinox or GMC Terrain within 7 years and 6 months of the date your vehicle was originally placed in service or 120,000 miles (193,000 km), whichever occurs first, the condition will be repaired for you at **no charge**. Diagnosis or repair for conditions other than the condition described above is not covered under this special coverage program.

**What You Should Do:** It is a good idea to check the engine oil level at each fuel fill. Your vehicle owner manual has instructions on checking engine oil in the Vehicle Care section. If you believe that your vehicle has the condition described above, and it is within both the time and mileage limits set forth above, diagnosis, and repairs and adjustments if needed ,which qualify under this special coverage must be performed by a General Motors dealer. You may want to contact your GM dealer to find out how long they will need to have your vehicle so that you may schedule the appointment at a time that is convenient for you. This will also allow your dealer to order parts if they are not already in stock. Keep this letter with your other important glove box literature for future reference.

**Reimbursement**: If you have previously paid for repairs for the condition described in this letter within the time and mileage limits of the Special Coverage or incurred reasonable rental vehicle costs while such repairs were being performed, you may complete the enclosed claim form along with supporting documents showing the qualified expenses for potential reimbursement. The competed claim form and required documentation of eligible expenses must be mailed no later than [date] to the following address:

2.4 Liter Oil Consumption Litigation
c/o Analytics Consulting LLC
P.O. Box 2003
Chanhassen, MN 55317-2003

Repairs that were performed after the expiration of the time or mileage limits of this Special Coverage are not eligible for reimbursement.

The right to submit reimbursement claims is provided by GM solely in the interest of customer satisfaction and is personal to vehicle owners and lessees who previously paid for repairs within the time and mileage limits of this Special Coverage ("Customers"). **Customers may not assign and GM does not consent to any assignment of any Customer's right to submit reimbursements claims, or to receive reimbursement, or any other rights granted by this Special Coverage to any third party, including but not limited to service contract providers, and this Special Coverage is not intended to and does not confer any third party beneficiary, subrogation or contribution rights, or any other rights to reimbursement, against GM, whether in law, equity or otherwise, in favor of any third parties.**

If you have any questions or need any assistance with obtaining repairs covered under this Special Coverage, please contact your dealer or the appropriate Customer Assistance Center at the number listed below.

| Division | Number | Text Telephones (TTY) |
|---|---|---|
| Chevrolet | 1-800-222-1020 | 1-800-833-2438 |
| GMC | 1-800-462-8782 | 1-800-889-2438 |

We are sorry for any inconvenience you may experience; however, we have taken this action in the interest of your continued satisfaction with our products.

## <u>CLAIM FORM FOR PRIOR PISTON REPLACEMENT PAYMENTS</u>

Your name: _____

Address: _____
(Street and Unit/Apartment Number)

_____
(City)                                        (State)  (Zip Code)

VEHICLE IDENTIFICATION NUMBER  (17 Digits): _____

Date of Prior Repair/Payment: _____

Repairing GM Dealer or Other Repair Facility: _____

Address of Dealer or Repair Facility: _____
(Street and Unit/Apartment Number)

_____
(City)                          (State) (Zip Code)

Total Amount of Repair and Rental Vehicle Payment(s): _____

**<u>IMPORTANT:</u>** BE SURE TO INCLUDE COPIES OF ALL PERTINENT REPAIR ORDERS,
RENTAL VEHICLE INVOICES AND/OR OTHER DOCUMENTATION
OF YOUR OUT-OF-POCKET PAYMENTS.  YOUR CLAIM CANNOT BE
EVALUATED WITHOUT THIS SUPPORTING DOCUMENTATION.

**Return your Claim Form and Supporting Documentation by first-class mail no
later than [120 days from the date of this letter] to the following address:**

**2.4 Liter Oil Consumption Litigation
c/o Analytics Consulting LLC
P.O. Box 2003
Chanhassen, MN 55317-2003**

If your claim is approved you will receive a reimbursement check within approximately 90 days.