## OBJECTOR PATRICK HOLLOWAY; S TABLE OF CONTENTS/ LIST OF FILED DOCUMENTS IN CONECTION WITH HIS 7 PAGE GOOD FAITH OBJECTION

Seven-page Good Faith objection pages 1- 7 including certificate of service

Objection exhibits

Ex. A. The Untitled Notice of settlement in pertinent part. Pages 1,3,5,7

B none

C Cal Case 3-7-CV 05337 -JSC ( Hindsmans v GM ) in pertinent part  Pages 1-4 of 35, 6,11,1213,14,15,16,of 35 ( total of pages11 in exhibit )

D. Objectors Proof of purchase Equinox New Finance Document   I page

E Engine replacement bill pages 1-2 and Island Pond Bill Pages 1-3

F Northern Dist. Cal Judge Implements Guidance to assist objectors regarding amended Fed R. C. P. rule 23 (access to the court) and settlement materials. 1 page

G. Objector Holloway proof of ownership as to fl Registration Page 1.

Objectors Notice Compliant Letter to Court requesting permission to speak at the Oct 4 1;00 hearing, Complaint in content and method of service and clocked timely at the Ft. Pierce Federal Court Clerk's Office US 1.

The forgoing has been filed In the U.S. Court In Ft Pierce and sent Via the requirements in the notice to Plaintiffs Attorney and Defendants attorneys via the attached Certificate of service.

Case Number   2; 18-CV-14371

*OBj Holloway's Ex* *A Notice pages 1, 3, 5, 7*
*OBj ecfort*

United States District Court for the Southern District of Florida
*Ellen Berman, et al. v. General Motors LLC*
Case No. 2:18-cv-14371

*A court has authorized this notice. This is not a solicitation from a lawyer.*

**You may be a member of a class that the Court is being asked to certify in the above-entitled class action (the "Action"). The class includes certain persons who purchased or leased new or used Chevrolet Equinox or GMC Terrain vehicles equipped with 2.4 liter Ecotec engines ("Class Vehicles") for model years 2010, 2011, 2012, as well as certain model year 2013 vehicles.**

This notice is to advise you of the proposed class certification and request for court approval of a settlement of the Action and of the court hearing on the proposed class certification and settlement. This notice contains important information regarding the Action, the proposed settlement, the final hearing to approve the settlement, and your rights.

**PLEASE READ THIS NOTICE CAREFULLY. IT MAY AFFECT YOUR RIGHTS**

Plaintiffs in the Action allege that defendant General Motors LLC ("GM") violated state consumer protection laws and breached express and implied warranties by manufacturing and distributing to dealers for retail sale or lease Class Vehicles that allegedly were prone to consume excessive amounts of motor oil. GM has acknowledged that under certain driving conditions and cycles a small percentage of Class Vehicles have exhibited excessive oil consumption due to piston ring wear issues. Before plaintiffs' filing of the Action, GM took steps to remedy this potential issue, including (a) introducing updated pistons with improved piston rings that markedly reduce oil consumption and (b) issuing voluntary Special Coverage Adjustments ("SCAs") authorizing free replacement of piston assemblies in 2010, 2011 and 2012 model year Class Vehicles with expired powertrain warranties that were manufactured before introduction of the updated piston rings mid-model year 2013. *Not ME ! ?*

The Class proposed to be certified in the Action includes all persons who purchased or leased new or used Class Vehicles before [insert date Settlement Agreement fully executed] and who have not otherwise released their claims against GM that arose out of oil consumption concerns. The proposed settlement ("Settlement") will provide Class Members with (1) specified notices and the opportunity to file reimbursement claims for prior customer-paid repairs under the existing model year 2010, 2011 and 2012 SCAs, and (2) a new SCA that will cover model year 2013 Class Vehicles that were manufactured prior to the production change that introduced the updated piston rings in May 2013. These settlement benefits are set forth in greater detail below. In consideration of the benefits provided to Class Members under the Settlement, the Action will be dismissed with prejudice, and GM will receive releases from all members of the Class who do not exclude themselves from the Class and thereby "opt out" of participating in the Settlement.

The Court has not decided whether GM did anything wrong. GM disputes Plaintiffs' allegations in the Action. However, to avoid the further costs and delay of litigation and promote customer satisfaction, GM has agreed to provide the relief described in this notice. *?*
*6*

*1*

*OBjecTor Holloways Ex A*
*Pg 3*

### 3.  What is a class action lawsuit and who is involved?

In a class action lawsuit, one or more persons called "plaintiffs" or "class representatives" sue on behalf of other people who may have a similar claim. These people together are a "class" or "class members." The entity sued (in this case GM) is called the defendant. In a class action, the claim of the Plaintiffs and all Class Members are decided in one action. The Court resolves the claim for everyone in the Class—except for those people who choose to exclude themselves from the Class.

## WHO IS IN THE CLASS?

*If you received this Notice, you are likely a member of the Class.*

### 4.  Am I part of this Class?

You are a member of the Class if within the United States you purchased or leased a new or used model year 2010, 2011 or 2012 Chevrolet Equinox or GMC Terrain equipped with a 2.4 liter Ecotec engine or a model year 2013 Equinox or Terrain equipped with a 2.4 liter Ecotec engine that was manufactured prior to the May 2013 production change that introduced updated piston rings. However, you are not part of the Class if you previously released a claim against GM arising out of oil consumption issues in your Equinox or Terrain.

### 5.  I'm still not sure if I am included.

If you are still not sure whether you are a member of the certified Class, you can call or write to the lawyers representing the Class at the phone numbers or addresses provided below.

## THE SETTLEMENT BENEFITS –WHAT YOU CAN GET

### 6.  What does the Settlement provide?

A.  If you are a Class Member and own or owned a ***model year 2010, 2011 or 2012 Class Vehicle***, and you believe that you incurred out-of-pocket repair expenses due to an oil consumption diagnosis and piston assembly replacement before the SCA for your Class Vehicle was announced, and if the Court approves the Settlement, you may complete and submit a Claim Form. As long as you have not already received reimbursement, you will be able to send documentation of the repair and out-of-pocket expenses for reimbursement. These expenses must have been incurred by you within the SCA time and mileage limits set forth below:

> 2010:  10 years or 120,000 miles, whichever comes first following the initial retail sale or lease of your Class Vehicle;
>
> 2011:  7 years, 6 months or 120,000 miles, whichever comes first following the initial retail sale or lease of your Class Vehicle;
>
> 2012:  7 years, 6 months or 120,000 miles, whichever comes first following the initial retail sale or lease of your Class Vehicle.

To claim reimbursement from GM you must complete and return a Claim Form and send supporting documentation no later than 120 days after Claim Forms are mailed. The Claim Form will be mailed to you if the Settlement is approved. To be eligible for reimbursement, qualified expenses must have been

*3*

EY A

for all claims that you have that are included in the Settlement. If you ask to be excluded, you will not receive any settlement benefits and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) GM in the future about the legal issues in the case.

## 8.  If I exclude myself, can I get anything from this Settlement?

No. If you exclude yourself from the Settlement, you will not be able to make a claim to receive any benefits under the Settlement, and you cannot object to the proposed Settlement. But, you will not lose any right you may have to sue Defendant about the legal issues in this case.

## 9.  If I do not exclude myself, can I sue later?

No. Unless you exclude yourself, you give up the right to sue Defendant for the issues resolved by this Settlement. If the Settlement is finally approved, you will be permanently enjoined and barred from initiating or continuing any lawsuit or other proceeding against Defendant about the issues in the lawsuit. You also will have agreed not to sue Defendant over the claims you have released in the Settlement.

## OBJECTING TO THE SETTLEMENT

## 10. How do I object to the settlement?

Only a Class Member who does not opt out can object to the Settlement. If you are a Class Member, you can object to the Settlement if you do not like all or some part of it. To object, send a letter explaining your objection to the proposed Settlement in *Berman v General Motors, LLC*, Case No. 2:18-cv-14371 to the Court with a copy to Class and Defendant's Counsel at the addresses below. Your objection letter must include: (1) the objector's full name, current address, current telephone number, and e-mail address; (2) documentation, such as documents showing the Vehicle Identification Number for the Class Member's vehicle, sufficient to establish membership in the Class; (3) a written statement of all grounds for the objection, accompanied by any legal support for the objection; and (4) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; (5) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (if any) along with documentation setting forth such representation; and (6) copies of any documents supporting the Objection.

If you wish to object to the Settlement, your objection must be filed with the Court (received by the Court), with copies sent to lawyers for both Plaintiffs (Class Counsel) and GM (Defendant's Counsel).

| CLASS COUNSEL | DEFENDANT'S COUNSEL | COURT |
|---|---|---|
| Daniel K. Bryson<br>J. Hunter Bryson<br>Whitfield Bryson & Mason LLP<br>900 W. Morgan St.<br>Raleigh, NC 27603 | Thomas A. Casey, Jr.<br>Jones Walker LLP<br>201 St. Charles Ave<br>New Orleans, LA 70170-5100 | Clerk of the Court<br>United States District Court<br>Southern District of Florida<br>Alto Lee Adams, Sr. United<br>States Courthouse<br>101 South U.S. Highway 1<br>Fort Pierce, FL 34950 |

At the Final Approval Hearing, the Court will consider whether the proposed Settlement is fair, reasonable, and adequate. The Court will also consider Class Counsel's request for fees, costs and expenses.

If there are objections to the Settlement, the Court will consider them. After the Final Approval Hearing, the Court will decide whether to approve the Settlement and how much to award to Class Counsel as fees, costs, and expenses.

The Final Approval Hearing may be moved to a different date, time, or location without additional notice, so it is recommended that you check the Court's website regarding the hearing date.

## 15. Do I have to come to the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. But you are welcome to come at your own expense. If you send an objection, you don't have to come to court to talk about it. As long as you filed a written objection with all of the required information on time with the Court and delivered it on time to Class Counsel and Defendant's Counsel, the Court will consider it. You may also have a lawyer attend the hearing on your behalf at your own expense, but it is not required. Class members do not need to appear at the hearing or take any other action to indicate their approval.

## 16. May I speak at the Final Approval Hearing?

You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must send a letter saying that you intend to appear and speak at the Final Approval Hearing in "*Berman v General Motors, LLC*, Case No. 2:18-CV-14371." Be sure to include the case name case number, your printed name, address, email address, telephone number, and your signature. Your letter of intent to appear and speak must be received by the Clerk of the Court, Class Counsel and Defendant's Counsel, at the three addresses listed in Question 10 no later than **September 20, 2019**. You cannot speak at the hearing if you exclude yourself.

## GETTING MORE INFORMATION

## 17. How do I get more information?

If you have any questions about this class action notice, you may call the toll free number 1-888-970-0698.

**PLEASE DO NOT ADDRESS QUESTIONS ABOUT THE SETTLEMENT OF THE LITIGATION TO THE COURT OR TO THE JUDGE OR TO GM.**

DATED: May 16, 2019.

GREGORY R. OXFORD (SBN 62333)
goxford@icclawfirm.com
ISAACS CLOUSE CROSE & OXFORD LLP
21515 Hawthorne Boulevard, Suite 950
Torrance, California 90503
Tel.: (310) 316-1990
Fac.: (310) 316-1330

*EX- C*
*Total 11 pages*

Attorneys for Defendant General Motors LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| RYAN HINDSMAN and JAMES ANDREWS, on behalf of themselves and all others similarly situated,<br><br>                         Plaintiffs,<br><br>            v.<br><br>GENERAL MOTORS LLC,<br><br>                       Defendant. | Case No. 3:17-cv-05337-JSC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    March 8, 2018<br>Time:    9:00 a.m.<br>Courtroom F<br>Hon. Jacqueline Scott Corley |

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

      **PLEASE TAKE NOTICE** that on March 8, 2017, at 9:00 a.m., or as soon thereafter as counsel may be heard, in the United States District Court, Northern District of California, San Francisco Division, 450 Golden Gate Avenue, Courtroom F, before the Honorable Jacqueline Scott Corley, defendant General Motors LLC ("GM") will move for an order

      (1)  dismissing plaintiffs' First Amended Complaint as to all plaintiffs pursuant to Rules 8(a)(2), 9(b) and 12(b)(6) for failure to state a claim upon which relief can be granted; and

      (2)  dismissing the First Amended Complaint as to all claims that the California plaintiffs assert on behalf of purported class members who do not reside in and did not purchase vehicles in

1   California for lack of standing and consequent lack of subject matter jurisdiction pursuant to Rule

2   12(b)(1) and, alternatively, for lack of personal jurisdiction pursuant to Rule 12(b)(2).

3        The motion is based on the annexed memorandum of points and authorities, the

4   accompanying request for judicial notice and declaration, and all other pleadings and papers on

5   file herein.

6   **STATEMENT OF ISSUES TO BE DECIDED [L.R. 7-4(a)(3)]:**

7        1.       Should plaintiffs' First Amended Complaint be dismissed under Rules 8(a)(2),

8   9(b) and 12(b)(6) for failure to state a claim upon which relief can be granted on the grounds set

9   forth below?

10        (a)   Plaintiffs' breach of express warranty claims (First and Fifth Causes of Action)

11   are barred because the GM warranty does not cover design defects and, alternatively, even

12   assuming warranty coverage *arguendo*, plaintiffs did not present their vehicles to authorized

13   GM dealers for repairs during the powertrain warranty period – five years or 100,000 miles,

14   whichever came first after the initial new retail sale or lease of their vehicles.

15        (b)   Plaintiffs' claims that they were wrongly denied free-of-charge repairs under

16   GM's Special Coverage Adjustments ("SCAs") are barred by their failure to allege facts

17   showing that they satisfied the conditions for coverage under the SCAs.

18        (c)   Plaintiffs' nondisclosure claims under the Consumers Legal Remedies Act, Cal.

19   Civ. Code § 1750 *et seq.*, and Unfair Competition Law, Cal. Bus. & Prof. Code § 1750 *et seq.*

20   (Second and Third Causes of Action) are barred by their failure to plead particularized facts

21   showing (1) an unreasonable safety hazard caused by the claimed defect that GM knew about

22   pre-sale and had a duty to disclose; (2) reliance on the alleged nondisclosures; or (3) "active

23   concealment" of the alleged defect.

24        (d)   Plaintiffs' breach of implied warranty claims (Fourth Cause of Action) are

25   barred because (1) plaintiffs Andrews, Miranda and Maryanski did not receive any GM

26   implied warranty when they purchased their used vehicles from third parties in transactions in

27   which GM was not a seller; (2) plaintiffs Hindsman and Peterson do not allege facts plausibly

28   showing their vehicles were unmerchantable during the maximum one-year implied warranty

1    period provided by California's Song-Beverly Act, Cal. Civ. Code §1791.1(c); and (3) all

2    plaintiffs' breach of implied warranty claims are barred by the four-year statute of limitations

3    that began running upon the initial new retail sale of their vehicles, *see* Cal. Coml. Code

4    (UCC) § 2725.

5         2.      Should the First Amended Complaint be dismissed under Rules 12(b)(1) and

6    12(b)(2) as to all claims asserted by the plaintiffs on behalf of purported unnamed class members

7    who do not reside and did not purchase their vehicles in California because (a) plaintiffs lack

8    standing to assert such claims and (b) this Court lacks personal jurisdiction of such claims under

9    *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017)?

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT** .......................... 1

**ALLEGED AND JUDICIALLY NOTICEABLE FACTS** ................................ 3

    A.   **The Original Plaintiffs' Vehicles and Oil Consumption Issues** ......... 3

    B.   **The New Plaintiffs' Vehicles and Oil Consumption Issues** ............. 5

    C.   **Plaintiffs' General Allegations** ................................... 6

    D.   **GM's Alleged Knowledge of Oil Consumption Issues** .................. 8

    E.   **The Special Coverage Adjustments** ................................. 9

**STANDARDS GOVERNING MOTIONS TO DISMISS** ............................... 9

**ARGUMENT** ..................................................................... 10

I.    **THE EXPRESS WARRANTY CLAIMS FAIL ON MULTIPLE GROUNDS** ......... 10

    A.   **The GM Warranty Does Not Cover the Alleged Design Defects** ......... 10

    B.   **Failure To Request Repairs During the Warranty Period** ............. 12

    C.   **Plaintiffs Have Not Alleged Facts Showing SCA Eligibility** .......... 14

II.   **THE CLRA AND UCL CLAIMS FAIL AS A MATTER OF LAW** .............. 14

    A.   **GM Had No Pre-Sale Duty To Disclose the Alleged Defect** ............ 14

        *1.*   *Plaintiffs Do Not Allege an Unreasonable Safety Hazard* ...... 14

        *2.*   *Plaintiffs Do Not Adequately Plead GM's Knowledge of the*

            *Purported Defect Before the Initial Sale of Their Vehicles* ...... 17

    B.   **Plaintiffs Fail To Adequately Allege Reliance and Causation** ........ 19

    C.   **Plaintiffs Do Not Plead Facts Showing Concealment** ................. 20

III.  **THE IMPLIED WARRANTY CLAIMS FAIL ON MULTIPLE GROUNDS** ......... 20

    A.   **No GM Implied Warranty Covers Plaintiffs Who Bought Used Vehicles** . 20

    B.   **Plaintiffs Hindsman and Peterson Do Not Allege a Breach Within**

        **the Implied Warranty Period** ...................................... 21

    C.   **The Implied Warranty Claims Are Barred by the Statute of Limitations** . 22

*IV. This court lacks jurisdiction of claims by other residents who did not by Vehicles in Cal*

OBjecTor Holloway Ex C in
CASE 2:18 CV-14371
FT Pierce - Fl

**TABLE OF AUTHORITIES**

| *Cases* | *Page(s)* |
|---|---|
| *Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063 (S.D.Cal. 2015) | 23 |
| *American Suzuki Motor Co. v. Superior Court*, 37 Cal. App. 4th 1291 (1995) | 21 |
| *Andrew v. Radiancy, Inc.*, 2017 U.S. Dist. LEXIS 96384, 2017 WL 2692840 (M.D. Fla. June 22, 2017) | 25 |
| *Asghari v. Volkswagen Group of Am., Inc.*, 42 F. Supp. 3d 1306 (C.D. Cal. 2013) | 16 |
| *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) | 9 |
| *Avedisian v. Mercedes-Benz USA, LLC*, 43 F. Supp. 3d 1071 (C.D. Cal. 2014) | 2,21 |
| *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) | 9,17 |
| *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) | 3,23,25 |
| *Brothers v. Hewlett-Packard Co.*, 2007 U.S. Dist. LEXIS 13155 (N.D. Cal. Feb. 12, 2007) | 10 |
| *Cardinal Health 301, Inc. v. Tyco Electronics Corp.*, 169 Cal. App. 4th 116 (2008) | 22,23 |
| *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220 (C.D. Cal. 2011) | 10 |
| *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) | 10 |
| *Corcoran v. CVS Health Corp.*, 2016 U.S. Dist. LEXIS 99797 (N.D. Cal. July 29, 2016) | 23 |
| *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824 (2006) | 12,14,15 |
| *Davidson v. Apple, Inc.*, 2017 U.S. Dist. LEXIS 36524, 2017 WL 976048 (N.D. Cal. Mar. 14, 2017) | 2,10,11,19 |
| *Demedicis v. CVS Health Corp.*, 2017 U.S. Dist. LEXIS 19589, 2017 WL 569157 (N.D. Ill. Feb. 13, 2017) | 24 |
| *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843 (N.D. Cal. 2012) | 22 |
| *Fenerjian v. Nongshim Co.*, 72 F. Supp. 3d 1058 (N.D. Cal. 2014) | 24 |
| *Ferrari v. Mercedes-Benz USA, LLC*, 2017 U.S. Dist. LEXIS 114271, 2017 WL 3115198 (N.D. Cal. July 21, 2017) | 25 |
| *Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*, 2017 U.S. Dist. LEXIS 155654, 2017 WL 4224723 (N.D. Cal. Sept. 22, 2017) | 25 |
| *Gauthier v. AMF, Inc.*, 788 F.2d 634 (9th Cir. 1986) | 16 |

## PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

This case arises out of alleged oil consumption issues in plaintiffs' Chevrolet Equinox vehicles that are or were fully covered by GM's powertrain warranty (five years or 100,000 miles after initial new vehicle delivery, whichever comes first) and, for model year 2010 through 2012 vehicles, by GM Special Coverage Adjustments ("SCAs") that extended coverage beyond expiration of the powertrain warranty by offering free-of-charge replacement of pistons and piston rings for the small percentage of Equinoxes that had higher than normal oil consumption.

Instead of taking advantage of these coverages, plaintiffs have brought this action on behalf of a proposed nationwide class and California sub-class of owners of model year 2010-17 Chevrolet Equinoxes ("Subject Vehicles") that supposedly have "one or more design and/or manufacturing defects" that cause them "to consume abnormally high amounts of oil (the 'Oil Consumption Defect')." First Amended Complaint ("FAC"), ¶¶ 3, 62.

Plaintiffs' claims fall into three categories: (1) alleged breach of express warranty under the Magnuson Moss Act, 15 U.S.C. § 2301 *et seq.* (First Cause of Action) and common law (Fifth Cause of Action); (2) alleged violation of California's Consumers Legal Remedies Act, Civ. Code § 1750 *et seq.* ("CLRA") and Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.* ("UCL") (Second and Third Causes of Action) based on non-disclosure of the alleged defect; and (3) alleged breach of implied warranty (Fourth Cause of Action).

Plaintiffs' express warranty claims fail because GM's warranty only covers "defects related to materials and workmanship," not the claimed design defects alleged by plaintiffs. And even assuming coverage *arguendo*, plaintiffs' allegations do not satisfy the requirement that they request repairs from a GM dealership within the warranty period. They also do not allege that they requested testing and/or eligible repairs within the applicable SCA coverage periods.

Plaintiffs' CLRA and UCL claims fail under Rules 8(a)(2) and 9(b) because (1) they do not allege particularized facts showing an unreasonable safety hazard that GM had a pre-sale duty to disclose, *see Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 (9th Cir. 2017); (2) they do not allege facts plausibly showing that GM knew about the alleged defect and hazard at the time it was distributing and marketing their vehicles for new retail sale by GM dealers, *see Wilson v.*

1

1    *Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012); *Resnick v. Hyundai Motor Am., Inc.*,

2    2017 U.S. Dist. LEXIS 67525, *53 (C.D. Cal. Apr. 13, 2017);[1] (3) they do not plead reliance on

3    the claimed nondisclosures with the particularity required by Rule 9(b), *see Davidson v. Apple,*

4    *Inc.*, 2017 U.S. Dist. LEXIS 36524, *29-31, 2017 WL 976048 (N.D. Cal. Mar. 14, 2017) (*held*,

5    omissions allegations were "too vague" to satisfy Rule 9(b) where, as here, plaintiffs did not

6    allege that they reviewed or "were exposed to *any* information, advertisements, labeling or

7    packaging" by the manufacturer) (emphasis in original); and (4) they do not allege the "specific

8    substantiating facts" or "affirmative acts of concealment" required to adequately plead "exclusive

9    knowledge" or "active concealment" of the claimed defect. *Taragan v. Nissan N. Am., Inc.*, 2013

10   U.S. Dist. LEXIS 87148, *21-25, 2013 WL 3157918 (N.D. Cal. June 20, 2013).

11        Plaintiffs' implied warranty claims fail because (1) plaintiffs Andrews, Miranda and

12   Maryanski bought used vehicles from third parties in transactions in which GM did not issue any

13   implied warranty; (2) plaintiffs Hindsman and Peterson do not plead a plausible factual basis for

14   their claim that the alleged defect rendered their new Equinoxes unmerchantable during the one-

15   year implied warranty period, *see Avedisian v. Mercedes-Benz USA, LLC*, 43 F. Supp. 3d 1071,

16   1079 (C.D. Cal. 2014) (no breach of implied warranty if an alleged defect does not "'drastically

17   undermine[] the ordinary operation of the vehicle'"); and (3) all implied warranty claims are

18   barred by limitations because plaintiffs did not file suit within 4 years of the new retail sales that

19   created any manufacturer implied warranties.  *See* Cal. Coml. Code § 2725; *Valencia v.*

20   *Volkswagen Grp. of Am., Inc.*, 119 F. Supp. 3d 1130, 1141 (N.D. Cal. 2005) (the "discovery rule"

21   does not postpone accrual of such claims, which occurs upon the initial new retail sale or lease).

22        Finally, the express warranty claims (both Magnuson Moss and common law)—the only

23   claims brought on behalf of the purported nationwide class—must be dismissed under Rules

24   12(b)(1) and 12(b)(2) as to all alleged class members who do not reside and did not purchase

25   vehicles in the State of California because (1) the California plaintiffs lack standing to assert such

26   claims, *see Johnson v. Nissan N. Am., Inc.*, 2017 U.S. Dist. LEXIS 174573, *19 (N.D. Cal. Aug.

27

28   [1] GM *later* discovered and disclosed oil consumption issues in *some* model year 2010, 2011 and
     2012 Equinoxes caused by piston ring wear and issued the SCAs described above.

2

1   29, 2017), and (2) this Court lacks personal jurisdiction to adjudicate non-resident class member

2   claims against GM, *see Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017).

3   <u>**ALLEGED AND JUDICIALLY NOTICEABLE FACTS**</u>

4   A.   <u>**The Original Plaintiffs' Vehicles and Oil Consumption Issues**</u>

5   Plaintiff James Andrews purchased a used 2012 Chevrolet Equinox with 65,551 odometer

6   miles on January 14, 2017 from a used car dealer, "Auto Source Car Sales." FAC, ¶ 32. About

7   two weeks later, he "noticed his vehicle would start to subtly rock back and forth while coming to

8   a stop" and he "started hearing a knocking noise," described as "spark knock," that allegedly

9   worsened by late February 2017. *Id.*, ¶¶ 33-34. A mechanic allegedly found that "over three-

10   quarters of his vehicle's oil had already been consumed despite driving only 1,000 miles." *Id.*, ¶

11   35. The mechanic found a GM service bulletin online and took the vehicle to a GM dealership,

12   which told him "there was no recall on the vehicle at that time." *Id.*, ¶ 36 (emphasis added).

13   On April 14, 2017, Andrews "contacted GM directly." FAC, ¶ 38. GM responded that if

14   his vehicle was consuming more than one quart of oil per 2,000 miles, an SCA "would extend his

15   warranty to remedy the issue within 7 years and 6 months of the date the vehicle was originally

16   placed in service or 120,000 miles." *Id.*, ¶ 19 & Exh. 1. What the SCA actually said was this:

17   [S]ome 2012 … Chevrolet Equinox vehicles, equipped with a 2.4L engine,
    may exhibit excessive oil consumption (less than 2,000 miles per quart of engine
18   oil), due to piston ring wear. If this condition is present, *an audible rattle or
    knock from the engine may be heard. The engine oil pressure telltale may
19   illuminate on the instrument panel or the following message may appear in the
    Driver Information Center: "Oil Pressure Low – Stop Engine."* … If this
20   condition occurs on your 2012 Chevrolet Equinox within 7 years and 6 months of
    the date your vehicle was originally placed in service or 120,000 miles, whichever
21   occurs first, the condition will be repaired for you at no charge.

22   FAC, Exh.1 (emphasis added). After learning of the SCA, Andrews went to a GM dealership, but

23   for some reason would not allow the dealership to test his vehicle's actual oil consumption rate to

24   determine its eligibility for free repairs. FAC, ¶¶ 40-41. Instead, he continued "check[ing] his oil

25   every 2 to 3 days" and changing his oil every 2,000 miles "to ensure that his vehicle has sufficient

26   oil." *Id.*, ¶ 42. His model year 2012 Equinox with 82,403 odometer miles is still within the

27   seven-year, six- month and 120,000 mile limits for free piston and ring replacement under the

28   SCA. *Id.*, Exh. 1. So assuming *arguendo* that Andrews is correct about his oil consumption rate

3

*Holloway Objectors Ex C4-6*

1    (which GM does not know because he would not permit it to be tested), the alleged "time-

2    consuming" oil checks and changes and fear of "long trips" are the result of his own conduct and

3    could have been avoided entirely if he had agreed to have his vehicle tested and, if eligible,

4    repaired at no cost. *Id.*, ¶ 42.

5         Plaintiff Ryan Hindsman bought his Equinox new in January 2010. FAC, ¶ 20. After

6    about 5,000 odometer miles, a service technician told him it was "bone dry inside"; he then began

7    "manually" adding oil between oil changes. *Id.*, ¶ 22. At about 18,000 miles "[o]n or around

8    February 2011," he told a GM dealership service technician "that his vehicle was "over

9    consuming oil between routine oil changes." *Id.*, ¶ 23. Then, in February or March 2011, his

10   vehicle allegedly began making a "gurgling" sound that would improve temporarily after adding

11   oil, but would resume after "routine" driving; he also noticed a knocking sound. *Id.*, ¶ 24.

12        In about March 2014, Hindsman received a letter from GM notifying him of a Special

13   Coverage Adjustment similar to the notice Andrews received, *i.e.*, GM would repair his engine by

14   replacing the pistons and piston rings free-of-charge if its oil consumption rate exceeded one

15   quart per 2,000 miles. FAC, ¶ 30; *see id.*, ¶ 38. The letter also disclosed as symptoms an audible

16   knock, illumination of the low oil pressure telltale and the Driver Information Center warning:

17   "Oil Pressure Low – Stop Engine." *Id.*, ¶ 26; *see id.*, ¶ 26 & Exh. 1. About one year later, in

18   spring 2015 (more than five years after his initial purchase, *ergo* after the powertrain warranty

19   had expired), Hindsman took the SCA notice and his vehicle to an independently owned and

20   operated GM dealer and was told by a service technician that it had "failed the oil consumption

21   test," that it "was consuming excessive oil," and that "his vehicle would be repaired the following

22   week." *Id.*, ¶ 27. But when he returned for the repairs, the service technician who allegedly

23   promised the repairs was no longer working at the dealership and his vehicle's oil consumption

24   was re-tested. *Id.*, ¶ 28. This time it passed and he was told that no repairs would be made. *Id.*

25   Mr. Hindsman apparently did not contact GM to seek its assistance with this issue.

26        Hindsman alleges he has added about 12 quarts per year to his vehicle "between regularly

27   scheduled oil changes" for a total of approximately 60-70 quarts between oil changes. FAC, ¶ 30.

28   Yet he does not allege that he ever asked a GM dealer for a re-test after spring 2015. At 115,082

4

1    odometer miles (*id.*, ¶ 31), his vehicle remains within the ten-year, 120,000 mile window for free-

2    of-charge repairs under the 2010 SCA, provided that testing confirms higher than normal oil

3    consumption. The same opportunity continues to exist for Mr. Andrews, whose model year 2012

4    Equinox has less than 120,000 miles and is less than 7-1/2 years old.

5           **B.**     **The New Plaintiffs' Vehicles and Oil Consumption Issues**

6          Plaintiff Robin Peterson purchased a new model year 2013 Equinox in December 2012.

7    FAC, ¶ 44. In or around August 2013, a dealer told her during a routine oil change that it was

8    "burning oil." In January 2016, "with approximately 100,000 miles on her vehicle," the

9    dealership told her the vehicle was "not 'burning oil,' but instead the oil level was low because

10   she uses her vehicle more than the average driver." *Id.*, ¶ 47. About a month later (presumably

11   after the 100,000 mile warranty had expired), she noticed "a knocking noise while driving," found

12   no oil visible on the dipstick and added a quart; since then, her vehicle "has made a knocking

13   sound when driving on almost a daily basis." *Id.*, ¶ 48. She has started checking her oil level

14   between regular oil changes and adding a quart when indicated by the dipstick; since February

15   2016 she has added approximately 20 quarts of oil in addition to regular oil changes. *Id.*, ¶ 49.

16   Her five-year-old vehicle now has approximately 160,000 odometer miles and allegedly

17   continues to make "a knocking sound" and consume "excessive amounts of oil." *Id.*, ¶ 50.

18         Plaintiff Diana Miranda purchased a used model year 2012 Equinox from a Nissan dealer

19   on January 3, 2015 when it had 40,736 odometer miles. FAC, ¶¶ 51-52. On October 5, 2017, she

20   heard "a loud rattling noise coming from her engine" and "a knocking noise" while driving to

21   work. *Id.*, ¶ 53. She says her vehicle then showed an "Emergency Engine Shut Off" warning and

22   shut down. *Id.* After "coasting" into her work parking lot, she checked the dipstick and found it

23   was "completely dry" despite an oil change less than two months earlier. *Id.* She claims that her

24   "online oil level percentage on her dash" showed her vehicle "had 68% oil level" when it actually

25   "had little to no oil left." *Id.* (this is a reference to her vehicle's "Oil *Life* Monitor" which, as

26   plaintiffs admit, estimates remaining oil *quality*—not *quantity*—to determine when the oil should

27   be changed). Plaintiff then added two quarts of oil and attempted to re-start the vehicle, which

28   "smoked profusely"; she then had the vehicle towed. *Id.*, ¶ 55. A dealership service technician

1   told her the engine "was completely ruined and a complete engine replacement was required."

2   *Id.*, ¶ 56. The dealership told her that GM would not cover this repair, but she does not say why.

3   *Id.* She says she was unable to afford the repair, so her vehicle is "inoperable." *Id.*, ¶ 57.

4   Although her vehicle has 91,787 odometer miles (*id.*), the five-year powertrain warranty

5   apparently has expired; but she is still well within the seven-and-one-half-year, 120,000 mile

6   window for SCA repairs. *See* FAC, ¶ 38 & Exh. 1.

7       Plaintiff Vanessa Maryanski purchased a used model year 2011 Equinox on February 25,

8   2012 with approximately 5,000 odometer miles. FAC, ¶ 58. More than three years later, in April

9   2015, she heard a knocking noise. *Id.*, ¶ 60. Since then she has added oil between regularly

10   scheduled oil changes. *Id.*, ¶ 61. In 2016, her engine "completely shut off on its own" at a stop

11   light, but she was able to restart it. *Id.*, ¶ 62. In July 2017, she took her vehicle to a Chevrolet

12   dealership and requested that it be fixed "pursuant to the Service Bulletin described herein." *Id.*,

13   ¶ 63. The dealership diagnosed her vehicle "with a multitude of [unspecified] issues, yet none

14   were fixed pursuant to the Service Bulletin described herein." *Id.* The vehicle remains

15   unrepaired. *Id.*, ¶ 64. She does not allege the current mileage so it is unclear whether it may be

16   eligible for repairs under the model year 2011 SCA if in fact it has oil consumption issues.

17       **C.**   **Plaintiffs' General Allegations**

18       Plaintiffs allege that their vehicles have "one or more design and/or manufacturing

19   defects, including but not limited to defects … that cause them to be unable to properly utilize the

20   engine oil and, in fact, to improperly burn off and/or consume abnormally high amounts of

21   oil…." FAC, ¶¶ 3, 71. The "Low-Tension Oil Rings" used in the engines allegedly do not apply

22   "sufficient tension to prevent oil from being consumed in the combustion chamber, which in turn

23   fouls spark plugs, and creates harmful carbon buildup in the pistons and cylinders" that causes

24   "pre-ignition detonation, or 'spark knock'" and resulting wear; the engine also allegedly

25   "vaporizes the cylinder wall oil film, pushing it past the rings and into the crankcase where it is

26   vacuumed into the intake manifold via the Positive Crankcase Ventilation ('PCV') system." *Id.*,

27   ¶¶ 74-83, 87-89. As a remedy, GM has "offered a repair … that include(s) … improving piston

28

GM'S MOTION TO DISMISS FIRST AMENDED
COMPLAINT, CASE NO. 3:17-CV-05337-JSC

*5 Star Preferred*

**GAP Addendum - Standard 150 ML**

This Guaranteed Asset Protection (GAP) Addendum (Addendum) dated _____11/30/2011_____ amends Your **Financing Contract**. This Addendum is between the **Customer/Borrower** (**You, Your**) and the **Dealer/Creditor** (**We, Us, Our**) or if assigned, with the assignee.

*EXHIBIT*

| | |
|---|---|
| Customer/Borrower **PATRICK J HOLLOWAY** | Dealer/Creditor **HERB CHAMBERS CHEVY/BUICK/PONTIAC** |
| Address **7 GREENBRIAR DRIVE** | Address **90 ANDOVER STREET** |
| City, State, Zip **READING MA 01864** | City, State, Zip **DANVERS, MA       01923-1** |
| Vehicle Make/Model/Year **CHEVROLET  EQUINOX    2012** | VIN **2GNALBEK0C6194730** |
| Date of Financing Contract **11/30/2011** | Term of GAP **72** | Monthly Pymt. **464.20** |
| Email Address | Term of **Financing Contract 72** | Maximum Term of GAP: **84 Mos** |
| Lender/Financial Institution **WELLS FARGO DEALER SERVICES** | MSRP/NADA **27004.00** | Finance Benefit Limit % **150%** |
| Address **PO BOX 997517** | Amount Financed **29761.80** | Interest Rate |
| City **SACRAMENTO** | State **CA** | **95899-7517** | |
| ☐ Balloon  ☐ Lease **XX** ☐ Installment Sales Contract | ☐ New  ☐ Used Mileage **42** | For Administrative Purposes CLASS: |

You have voluntarily elected to purchase this Addendum which amends Your **Financing Contract. This Addendum is not considered insurance and does not take the place of insurance on the Covered Vehicle.** You are responsible for insurance required by the **Financing Contract** or applicable state law. You are responsible for handling all notifications or insurance claims that are required to be filed with Your **Primary Carrier**.

The charge to You for this GAP Addendum is $ _____610.00_____

In the event of a **Constructive Total Loss** to the **Covered Vehicle**, the **GAP Amount** will be **Waived** pursuant to all of the terms and conditions of this Addendum. You will remain responsible for payment of any items not included in the **GAP Amount**.

**ASSIGNMENT:** This Addendum will remain a part of the **Financing Contract** if the **Financing Contract** or lease is assigned, sold or transferred by the **Dealer/Creditor**.

**REPORT YOUR CONSTRUCTIVE TOTAL LOSS TO THE GAP ADMINISTRATOR:**
**E.R.J. Insurance Group, Inc. d/b/a American Heritage Insurance Services (AHiS)**
**PO BOX 260098, MIAMI, FL 33126-0098 • Phone (305) 267-4344 • Toll Free (800) 741-4216 • Fax 866-378-6409**
**WEBSITE: http://www.allstatecarcare.com**
**All Benefit requests must be submitted and required documentation provided to the GAP Administrator within ninety (90) days of settlement from an insurance carrier; or if no insurance coverage is in effect on the Date of Loss within ninety (90) days of the accident, theft or discovery of loss. No GAP Amount will be Waived if the Benefit request is not submitted and required documentation provided within these stated time periods. BENEFIT REQUEST PROCEDURES:** In the event of a Constructive Total Loss, You must provide a copy of all the following, if applicable, to the **GAP Administrator** shown above. 1. Vehicle valuation statement; 2. Estimate of damage; 3. Insurance settlement check; 4. Automobile insurance policy declaration page; 5. Original **Financing Contract** including this Addendum; 6. Payoff from the **Lender** as of the **Date of Loss**; 7. Loan history; 8. Accident/police report; 9. Fire report (if applicable); and/or 10. Any additional reasonable documentation requested by the **Dealer/Creditor** or the **GAP Administrator** to include, but not limited to, a sworn proof of loss, and/or examination under oath.

YOU MAY PURCHASE THIS ADDENDUM ONLY AT THE TIME THE **FINANCING CONTRACT** IS ORIGINALLY EXECUTED. BY YOUR SIGNATURE BELOW, **YOU ACKNOWLEDGE AND AGREE THAT YOUR ACCEPTANCE OF THIS GAP ADDENDUM IS VOLUNTARY AND IS NOT REQUIRED IN ORDER FOR YOU TO OBTAIN CREDIT, DOES NOT IMPACT YOUR ABILITY TO OBTAIN ANY PARTICULAR OR MORE FAVORABLE CREDIT TERMS, AND HAS NO EFFECT ON THE TERMS OF THE RELATED SALE OF THIS COVERED VEHICLE.** The GAP Amount may decrease over the term of Your Financing Contract and may not extend for the full term of Your Financing Contract. You may wish to consult an alternative source to determine whether similar Benefits may be obtained and at what cost. You acknowledge that this Addendum supersedes any other representations made. If You purchase this Addendum from this **Dealer/Creditor**, You understand that the **Dealer/Creditor** may retain all or a portion of the charge paid by You. This Addendum includes a binding arbitration clause. **You acknowledge that you have read and understand the entire Addendum and its terms and conditions which may reduce or prevent you from receiving all or part of the Benefits due under this Addendum.**

**TERMINATION OF ADDENDUM** This Addendum will terminate on the date Your **Financing Contract** is scheduled to terminate and no refund will be due. A refund may be due if the Addendum terminates for reasons including but not limited to: 1. Payment in full of the **Financing Contract**; 2. Expiration of any redemption period following the repossession or surrender of the **Covered Vehicle**; 3. In the event of a **Constructive Total Loss** or theft of the **Covered Vehicle**; or 4. The date the **Financing Contract** is refinanced. You must request a refund, in writing, except where prohibited by law, from the Dealer/Creditor for any terminating event.

| | | | |
|---|---|---|---|
| Customer/Borrower *Patrick J. Holloway* | | Dealer/Creditor | **HERB CHAMBERS CHEVY/BUICK/PONTIA** |
| **PATRICK J HOLLOWAY**      11/30/2011 | | BY | 11/30/2011 |
| PRINT NAME            DATE | | | DATE |

**TERMS AND CONDITIONS**

**YOUR RIGHT TO CANCEL** You have the unconditional right to cancel this optional Addendum for a refund/credit of the unearned

CUSTOMER #: 76729

361585

# Dyer!
dyerauto.com
Dyer Chevrolet

1000 US Highway 1
Vero Beach, FL 32960
Phone: (772) 469-3000
Fax: (772) 569-1505

INVOICE

PATRICK HOLLOWAY
776 BAY HARBOR TERRACE
SEBASTIAN, FL 32958
HOME:978-317-4521  CONT:978-317-4521
BUS:          CELL:

Objector Ex. E
Holloway

PAGE 1

Repair Shop Registration Number:    MV69802

SERVICE ADVISOR: 69 BRANDON WELLS

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN / OUT | TAG |
|---|---|---|---|---|---|---|
| | 12 | CHEVROLET EQUINOX | 2GNALBEK0C6194730 | | 132237/132237 | T4741 |

| DEL. DATE | PROD. DATE | WARR. EXP. | PROMISED | PO NO. | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 25MAY16 DD | | | 17:00 31JAN18 | | 124.95 | EXT | 28FEB18 |

| R.O. OPENED | READY | OPTIONS: | ENG:2.4_Liter_SIDI_DOHC |
|---|---|---|---|
| 16:23 31JAN18 | 18:18 28FEB18 | | |

| LINE | OPCODE | TECH | TYPE | HOURS | | LIST | NET | TOTAL |
|---|---|---|---|---|---|---|---|---|
| A | CUSTOMER STATES THE VEHICLE IS SHAKING AND ALSO SMOKING | | | | | | | |
| | 21 | | Diagnosis | | | | | |
| | 466 | | C | | | 2286.59 | | 2286.59 |
| 1 | 12657111 | | ENGINE | | | 5044.52 | 5044.52 | 5044.52 |
| | CORE CHARGE | | C | | | | 200.00 | 200.00 |
| -1 | 12657111 | | CORE RETURN | | | 200.00 | 200.00 | -200.00 |
| 1 | 12634319 | | (S)BELT | | | 38.23 | 38.23 | 38.23 |
| 1 | 22868413 | | (S)BLADE | | | 24.77 | 24.77 | 24.77 |
| 1 | 22868414 | | (S)BLADE | | | 24.77 | 24.77 | 24.77 |
| 1 | 12346290 | | COOLANT | | | 27.99 | 27.99 | 27.99 |
| 1 | 20999459 | | (S)BLADE | | | 18.22 | 18.22 | 18.22 |
| 4 | 12628003 | | (S)GASKET | | | 5.56 | 5.56 | 22.24 |
| 1 | 12622668 | | (S)GASKET | | | 16.03 | 16.03 | 16.03 |
| 1 | 12577245 | | (S)SENSOR | | | 70.38 | 70.38 | 70.38 |
| 1 | 22741672 | | GASKET | | | 20.59 | 20.59 | 20.59 |
| 1 | 90537379 | | (S)SEAL | | | 20.68 | 20.68 | 20.68 |
| 1 | 90537471 | | (S)SEAL | | | 32.13 | 32.13 | 32.13 |
| 1 | 12609317 | | W-(S)STARTER | | | 387.37 | 387.37 | 387.37 |
| 1 | 12595951 | | (S)GASKET | | | 21.38 | 21.38 | 21.38 |
| 1 | 88864346 | | SEALANT | | | 20.75 | 20.75 | 20.75 |
| 5 | 88865638 | | OIL | | | 5.58 | 5.58 | 27.90 |

PARTS:  5817.95  LABOR:  2286.59  OTHER:     0.00    TOTAL LINE A:     8104.54
CUSTOMER STATES THE VEHICLE IS SHAKING AND ALSO SMOKING, NEEDS O2
SENSORS AND ALSO NEEDS CATALYTIC CONVERTER, FOUND COOLANT IN THE OIL,
DRAINED OIL AND FOUND METAL AND COOLANT COMING OUT THE OIL PAN,
REPLACED ENGINE AND TRANSFERRED ALL THE OLD PARTS, TOPPED OFF COOLANT
AND RECHARGED AC SYSTEM.

*************************************************
# PERFORM MULTI POINT VEHICLE INSPECTION

WNTY DISCLAIMER: ALL PARTS AND ACCESSORIES ARE SOLD AND ALL REPAIRS ARE PERFORMED BY THE DEALERSHIP AS-IS, THE SHIP HEREBY DISCLAIMS ALL WARRANTIES, EXPRESS AND IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY NESS FOR A PARTICULAR PURPOSE, AND NEITHER ASSUMES ANY OTHER PERSON TO ASSUME FOR IT ANY IN CONNECTION WITH THE SALE OF PARTS OR ACCESSORIES OR ANY REPAIRS PERFORMED TO THE VEHICLE. THE ONLY TIES ON PARTS AND ACCESSORIES OR REPAIRS ARE THOSE WHICH MAY BE OFFERED BY THE MANUFACTURER OR DISTRIBUTOR Y SUCH MANUFACTURER OR DISTRIBUTOR SHALL BE LIABLE FOR PERFORMANCE UNDER SUCH WARRANTIES. CUSTOMER SHALL ITTLED TO RECOVER FROM THE DEALERSHIP ANY CONSEQUENTIAL DAMAGES, DAMAGES TO PROPERTY, DAMAGES FOR LOSS LOSS OF TIME, LOSS OF PROFITOR INCOME, OR ANY OTHER INCIDENTAL DAMAGES.

JPPLY COSTS: We have added a charge equal to 12% of the total cost of labor and parts, not to exceed $25.00, air Other. This charge represents costs and profits to the motor vehicle repair facility for miscellaneous shop supplies disposal. The State of Florida requires a $1.00 fee to be collected for each new tire sold in the state [s.403.718], ) fee to be collected for each new or remanufactured lead-acid battery sold in the state [s.403.7185].

below, you acknowledge that you were notified of and authorized the Dealership to perform the services/repairs his invoice and that you received (or had the opportunity to inspect) any replaced parts as requested by you. The ng returned to you in exchange for your payment of the Amount Due.

| DESCRIPTION | TOTALS |
|---|---|
| LABOR AMOUNT | |
| PARTS AMOUNT | |
| GAS, OIL, LUBE | |
| SUBLET AMOUNT | |
| MISC. CHARGES * | |
| TOTAL CHARGES | |
| LESS INSURANCE | |
| SALES TAX | |
| PLEASE PAY THIS AMOUNT | |

CUSTOMER SIGNATURE          AUTHORIZED DEALERSHIP REPRESENTATIVE SIGNATURE

1.98, Florida Statutes, requires that, at least 30 days before bringing any claim against a motor vehicle dealer for an unfair or deceptive trade consumer must provide the dealer with a written demand letter stating the name, address, and telephone number of the consumer; the na of the dealer; a description of the facts that serve as the basis for the claim; the amount of damages; and copies of any documents of the consumer which relate to the claim. Such notice must be delivered by the United States Postal Service or by a nationally rec n receipt requested, to the address where the subject vehicle was purchased or leased or where the subject transaction occur hich the dealer regularly conducts business.

P 1

X _____

ALL PARTS ARE NEW UNLESS OTHERWISE INDICATE

K Global, LLC   (06/15) SERVICE INVOICE TYPE 2 - ZS12C - "AS-IS" - FLORIDA - 5658193

CUSTOMER COPY

**Dyer!**
dyerauto.com
Dyer Chevrolet

1000 US Highway 1
Vero Beach, FL 32960
Phone: (772) 469-3000
Fax: (772) 569-1505

OMER #: 76729

361585

INVOICE

PAGE 2

*Objector Ex. Holloway*

RICK HOLLOWAY
6 BAY HARBOR TERRACE
SEBASTIAN, FL 32958
OME:978-317-4521  CONT:978-317-4521
BUS:        CELL:

Repair Shop Registration Number:  MV69802

SERVICE ADVISOR: 69 BRANDON WELLS

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN / OUT | TAG |
|---|---|---|---|---|---|---|
| | 12 | CHEVROLET EQUINOX | 2GNALBEK0C6194730 | | 132237/132237 | T4741 |

| DEL. DATE | PROD. DATE | WARR. EXP. | PROMISED | PO NO. | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 25MAY16 DD | | | 17:00 31JAN18 | | 124.95 | EXT | 28FEB18 |

| R.O. OPENED | READY | OPTIONS: | ENG:2.4_Liter_SIDI_DOHC |
|---|---|---|---|
| 16:23 31JAN18 | 18:18 28FEB18 | | |

| LINE OPCODE TECH TYPE HOURS | LIST | NET | TOTAL |
|---|---|---|---|
| QMPI PERFORM MULTI POINT VEHICLE INSPECTION | | 0.00 | 0.00 |
| 466   C | | | |

PARTS:   0.00   LABOR:   0.00   OTHER:   0.00   TOTAL LINE B:   0.00
*************************************************

CUSTOMER PAY SHOP CHARGE FOR REPAIR ORDER          25.00

WARRANTY DISCLAIMER: ALL PARTS AND ACCESSORIES ARE SOLD AND ALL REPAIRS ARE PERFORMED BY THE DEALERSHIP AS-IS. THE DEALERSHIP HEREBY DISCLAIMS ALL WARRANTIES, EXPRESS AND IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, AND NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE SALE OF PARTS OR ACCESSORIES OR ANY REPAIRS PERFORMED TO THE VEHICLE. THE ONLY WARRANTIES ON PARTS AND ACCESSORIES OR REPAIRS ARE THOSE WHICH MAY BE OFFERED BY THE MANUFACTURER OR DISTRIBUTOR AND ONLY SUCH MANUFACTURER OR DISTRIBUTOR SHALL BE LIABLE FOR PERFORMANCE UNDER SUCH WARRANTIES. CUSTOMER SHALL NOT BE ENTITLED TO RECOVER FROM THE DEALERSHIP ANY CONSEQUENTIAL DAMAGES, DAMAGES TO PROPERTY, DAMAGES FOR LOSS OF USE, LOSS OF TIME, LOSS OF PROFIT OR INCOME, OR ANY OTHER INCIDENTAL DAMAGES.

SHOP SUPPLY COSTS: We have added a charge equal to 12% of the total cost of labor and parts, not to exceed $25.00, to the Repair Order. This charge represents costs and profits to the motor vehicle repair facility for miscellaneous shop supplies and waste disposal. The State of Florida requires a $1.00 fee to be collected for each new tire sold in the state (s.403.718), and a $1.50 fee to be collected for each new or remanufactured lead-acid battery sold in the state (s.403.7185).

By signing below, you acknowledge that you were notified of and authorized the Dealership to perform the services/repairs itemized in this invoice and that you received (or had the opportunity to inspect) any replaced parts as requested by you. The vehicle is being returned to you in exchange for your payment of the Amount Due.

DATE        CUSTOMER SIGNATURE        AUTHORIZED DEALERSHIP REPRESENTATIVE SIGNATURE

| DESCRIPTION | TOTALS |
|---|---|
| LABOR AMOUNT | 2286.59 |
| PARTS AMOUNT | 5817.95 |
| GAS, OIL, LUBE | 0.00 |
| SUBLET AMOUNT | 0.00 |
| MISC. CHARGES * | 25.00 |
| TOTAL CHARGES | 8129.54 |
| LESS INSURANCE | 8667.32 |
| SALES TAX | 537.78 |
| PLEASE PAY THIS AMOUNT | 0.00 |

Section 501.98, Florida Statutes, requires that, at least 30 days before bringing any claim against a motor vehicle dealer for an unfair or deceptive trade practice, a consumer must provide the dealer with a written demand letter stating the name, address, and telephone number of the consumer; the name and address of the dealer; a description of the facts that serve as the basis for the claim; the amount of damages; and copies of any documents in possession of the consumer which relate to the claim. Such notice must be delivered by the United States Postal Service or by a nationally rec carrier, return receipt requested, to the address where the subject vehicle was purchased or leased or where the subject transaction occurr address at which the dealer regularly conducts business.

*P2* x

DealerCAP   2014 C. J. Global, LLC  (05/15) SERVICE INVOICE TYPE 2 - 2512C - "AS-IS" - FLORIDA - 9698193

ALL PARTS ARE NEW UNLESS OTHERWISE INDICATE

**Island Automotive of Sebastian Inc.**
300-60 Industrial Park blvd.
FL 32958
(772)388-0004

later 4:00

| | Date | Invoice # |
|---|---|---|
| | 4/3/2018 | 9993 |

Bill To

Patrick Holloway

| Year | Make | Model | Engine | VIN | Odometer | Tag |
|---|---|---|---|---|---|---|
| 2012 | Chevrolet | Equinox | 2.4L | | 134,176 | 361 7XR |

| Qty | Description | Rate | Amount |
|---|---|---|---|
| 1 | Catalytic converter | 549.90 | 549.90T |
| 1 | Upstream oxygen sensor | 68.99 | 68.99T |
| 1 | Down stream oxygen sensor | 104.75 | 104.75T |
| 1 | Heat shield | 29.32 | 29.32T |
| 1 | Exhaust manifold | 125.80 | 125.80T |
| 4.7 | Diagnosed no power, removed and replaced exhaust manifold, heat shied, catalytic converter, and both upstream and down stream oxygen sensors. | 85.00 | 399.50T |

PLEASE READ CAREFULLY, CHECK ONE OF THE STATEMENTS BELOW AND
SIGN: I UNDERSTAND, THAT UNDER STATE LAW, I AM ENTITLED TO A
WRITTEN ESTIMATE IF MY FINAL BILL WILL EXCEED $100.
__ I REQUEST A WRITTEN ESTIMATE.
__ I DO NOT REQUEST A WRITTEN ESTIMATE AS LONG AS THE REPAIR COSTS
DO NOT EXCEED $_____. THE SHOP MAY NOT EXCEED THIS AMOUNT
WITHOUT MY WRITTEN OR ORAL APPROVAL.
__ I DO NOT REQUEST A WRITTEN ESTIMATE.

SIGNED:_____DATE:_____

I hereby authorize the above repair work to be done along with the necessary materials.
You and your employees may operate vehicle for purposes of testing, inspection, or delivery
at my risk. It is understood that you will not be held responsible for loss or damage to
vehicle or articles left in vehicle in case of fire, theft or any other cause beyond your
control.

| | |
|---|---|
| Subtotal | $1,278.26 |
| Sales Tax (7.0%) | $89.48 |
| **Balance Due** | **$1,367.74** |

Additional Notes:

P 3



*Holloway Objector Ex F*

*Case # 2;18-CV-14371*

**MAYER | BROWN**

Class Defense Blog

Cutting-Edge Issues in Class Action Law and Policy

# Northern District of California adopts guidance for class action settlements

By Lucia Nale, Debra Bogo-Ernst, Kevin Ranlett & Elaine Liu on January 2, 2019



On November 1, 2018, the U.S. District Court for the Northern District of California published updated procedural guidance for class action settlements (the "Guidance"). While the court made changes to align its rules with the December 1, 2018 amendments to Federal Rule of Civil Procedure 23, the court also sought to provide better information for parties and courts in negotiating and approving settlements. It became the first federal district court to require parties to class action settlements to publicly disclose a broad range of detailed settlement information. The following is an overview of key changes.

We use cookies to enhance your experience of our websites and to enable you to register when necessary. By continuing to use this website, you agree to the use of these cookies. For more information and to learn how you can change your cookie settings, please see our Cookie Policy and our Privacy Policy.

Close

# FLORIDA VEHICLE REGISTRATION

CO/AGT 92/73#  9890125764
B#  641221

| PLATE | **3617XR** | DECAL | **00000810** | Expires | **Midnight Tue 1/7/2020** |

| YR/MK | **2012/CHEV** | BODY | **UT** | COLOR | **BLK** | Reg. Tax | 147.50 | Class Code | 1 |
|---|---|---|---|---|---|---|---|---|---|
| VIN | **2GNALBEK0C6194730** | | | TITLE | **128713177** | Init. Reg. | | Tax Months | 27 |
| Plate Type | **RMR** | NET WT | **3598** | | | County Fee | 5.00 | Back Tax Mos | |
| | | | | | | Mail Fee | | Credit Class | 31 |
| DL/FEID | **H400670540070** | | | | | Sales Tax | | Credit Months | |
| Date Issued | **10/10/2017** | Plate Issued | **10/10/2017** | TRANSFER: | **X** | Voluntary Fees | | | |
| | | | | | | Grand Total | 152.50 | | |

**PATRICK JAMES HOLLOWAY**
**776 BAYHARBOR TER**
**SEBASTIAN, FL 32958**

*EX. G*

### IMPORTANT INFORMATION

1.  The Florida license plate must remain with the registrant upon sale of vehicle.
2.  The registration must be delivered to a Tax Collector or Tag Agent for transfer to a replacement vehicle.
3.  Your registration must be updated to your new address within 30 days of moving.
4.  Registration renewals are the responsibility of the registrant and shall occur during the 30-day period prior to the expiration date shown on this registration. Renewal notices are provided as a courtesy and are not required for renewal purposes.
5.  I understand that my driver license and registrations will be suspended immediately if the insurer denies the insurance information submitted for this registration.

**RMR - STATE MOTTO     PLATE ISSUED X**

Hon Judge Rosenberg / Maynard

Case No: 2;18-CV-14371

Ellen Berman and Dayana Guach v. GM

Excessive oil burning Class Action Eco tech 2.4 Liter Engine

PARTICK JAMES HOLLOWAY'S REQUEST TO APPEAR AND SPEAK AT THE FINAL APPROVAL HEARING

OBJECTOR Patrick James Holloway's Request to appear and speak at the Final Approval Hearing on Oct 4, 2019 in case no 2:18- CV – 14371 Berman et al V GM . Holloway objects Individually as a class member and on Behalf of the sub class for the 2011 and 2012 SCA and objects on behalf of the entire class. Holloway has his pending objection before this Court has filed it in Clerks Office and noticed the parties. The objection is compliant with Fed. R. C. P. 23 ( 2019 ) in pertinent part as to the specify of the objection and content required in Rule 23 as amended .

The believed time allocation needed if the honorable judge allows Objector Holloway the privilege to speak is 20 minutes. Holloway has his pending objection before this Court in the pro se fashion as allowed in the notice but otherwise is represented by class counsel.

Patrick James Holloway     email dgconran@gmail.com and heidsappetite@gmail.com

Phone : 978-317-4521 Address Patrick Holloway 776 Bayharbor Terrace   Sebastian Fl. 32958 - 5920 BRM 004595330B    Claim Number 2053927

Certificate of service

Patrick James Holloway has Mailed by First class or 24 Hr or 48 Hr US mail a true and correct copy of the forgoing letter of intent to appear and speak on this Day    September 2019 to Counsel for plaintiff Daniel K Bryson, J Hunter Bryson Whitfield Bryson and Mason LLP. 900 W. Morgan St. Raleigh, NC 27603, Defendant's Counsel Thomas A. Casey, yr. Jones Walker LLP 201 St. Charles Ave. New Orleans, LA 70170-5100 and hand carried and clocked personally at The Clerk Of the US Dist., Court S.D. of Fl. Alto Adams Sr. United States courthouse 101 South U.S. Hwy. 1 Ft. Pierce , Fl. 34950

Patrick James Holloway     Date Sept. 17, 2019