# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT PIERCE DIVISION

## Civil Action No. 2:18-CV-14371-ROSENBERG/MAYNARD

ELLEN BERMAN, on behalf of herself
and all others similarly situated,

    Plaintiffs,

        v.

GENERAL MOTORS, LLC, a Delaware
limited liability company,

    Defendant.

_____/

## MEMORANDUM IN SUPPORT OF OBJECTIONS OF CLASS MEMBERS GHISELIN, FITZPATRICK, AND COULTER, AND NOTICE OF INTENT TO APPEAR

Donald A. Yarbrough
Florida Bar No. 0158658
don@donyarbrough.com
Post Office Box 11842
Ft. Lauderdale, FL 33339
Telephone: 954-537-2000
Facsimile: 954-566-2235

Michael T. Kirkpatrick
(pro hac vice pending)
mkirkpatrick@citizen.org
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
202-588-7728

*Counsel for Objectors Douglas R. Ghiselin,
Tod Fitzpatrick, and Leslie G. Coulter*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

IDENTITY OF OBJECTORS AND INTENT TO APPEAR.........................................................1

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................1

STANDARD....................................................................................................................................4

ARGUMENT...................................................................................................................................5

    I.    The proposed settlement is not fair, reasonable, and adequate because it provides no relief to the vast majority of class members but releases their claims......................5

        A.  The 2010, 2011, and 2012 SCAs are not a benefit of the settlement.............................6

        B.  Reopening the claims period for class members to seek reimbursement of out-of-pocket expenses incurred before the SCAs were issued provides little or no value to the class..................................................................................................7

        C.  The settling parties have not established that the forthcoming 2013 SCA is a benefit of the settlement ................................................................................................9

    II.   The proposed settlement does not treat class members equitably relative to each other ........................................................................................................................9

    III.  The proposed settlement is not a reasonable compromise relative to the possible risks and benefits of continued litigation ...................................................................12

CONCLUSION..............................................................................................................................14

## TABLE OF AUTHORITIES

**CASES**                                                                                                                                              **PAGES**

*In re Baby Products Antitrust Litigation*,
　　708 F.3d 163 (3rd Cir. 2013) ..............................................................................................13

*Bennett v. Behring Corp.*,
　　737 F.2d 982 (11th Cir. 1984) .........................................................................................5, 12

*Day v. Persels and Associates, LLC*,
　　729 F.3d 1309 (11th Cir. 2013) ............................................................................................6

*In re Dry Max Pampers Litigation*,
　　724 F.3d 713 (6th Cir. 2013) ................................................................................................8

*Eubank v. Pella Corp.*,
　　753 F.3d 718 (7th Cir. 2014) ..........................................................................................7, 12

*Figueroa v. Sharper Image Corp.*,
　　517 F. Supp. 2d 1292 (S.D. Fla. 2007) ...............................................................................12

*In re Katrina Canal Breaches Litigation*,
　　628 F.3d 185 (5th Cir. 2010) ................................................................................................6

*Koby v. ARS National Services, Inc.*,
　　846 F.3d 1071 (9th Cir. 2017) ..............................................................................................6

*National Super Spuds v. N.Y. Mercantile Exchange*,
　　660 F.2d 9 (2d Cir. 1981) .....................................................................................................9

*Synfuel Tech., Inc. v. DHL Express (USA), Inc.*,
　　463 F.3d 646 (7th Cir. 2006) ..............................................................................................13

*True v. America Honda Motor Co.*,
　　749 F. Supp. 2d 1052 (C.D. Cal. 2010) ..............................................................................12

**RULES**

Federal Rule of Civil Procedure 23(e)(5)(A) ................................................................................... 1

Federal Rule of Civil Procedure 23(e)(2) ............................................................................... 1, 4, 5

Federal Rule of Civil Procedure 23(e)(3) ......................................................................................... 5

Federal Rule of Civil Procedure 23(e)(2)(C) ................................................................................... 5

Federal Rule of Civil Procedure 23(e)(2)(D) ................................................................................ 5, 9

Federal Rule of Civil Procedure 23(e)(2) advisory committee's note ............................................. 5

**STATE STATUTES**

California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ................................. 11

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ............................. 11

Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.* ....................................... 11

## IDENTITY OF OBJECTORS AND INTENT TO APPEAR

Class members Douglas R. Ghiselin, Tod Fitzpatrick, and Leslie G. Coulter, through counsel, submit this memorandum in further support of the objections that they filed pro se before retaining counsel. *See* DE 46, 47, and 57. The objections contain the information required by section IX of the settlement agreement. As explained in detail below, the objections apply to the entire class. *See* Fed. R. Civ. P. 23(e)(5)(A). Objectors intend to appear at the final approval hearing through counsel and present argument in support of their objections.

## INTRODUCTION

The Court should deny final approval of the proposed settlement because it is not "fair, reasonable, and adequate" as required by Federal Rule of Civil Procedure 23(e)(2). The proposed settlement puts most class members in a worse position than if the agreement had never been made. First, the settlement requires the vast majority of class members to sacrifice their claims for nothing. Second, the purported benefits of the settlement—meager though they are—are not fairly distributed among the class. And third, the settling parties have failed to provide reliable information regarding the value of the claims being released relative to the value of the settlement benefits that might be available to the minority of class members eligible for relief.

## BACKGROUND

This class action was filed on September 10, 2018, against General Motors LLC (GM), seeking damages and equitable relief under a variety of statutory and common law breach-of-warranty and consumer-protection theories on behalf of a class of consumers who bought or leased model year 2010–2017 Chevrolet Equinox vehicles equipped with 2.4-liter Ecotec engines. *See* Complaint, DE 1, ¶ 185. The complaint alleges that the engines contain defective piston rings that cause excessive oil consumption, often leaving the engines critically low on oil

and resulting in significant engine damage and diminished resale value. *Id.* ¶ 22. Two earlier-filed cases raised similar claims based on the same alleged defect. *See Hindsman v. General Motors LLC*, No. 17-5337 (N.D. Cal. filed Sept. 14, 2017); *Sanchez v. General Motors LLC*, No. 18-2536 (N.D. Ill. filed Apr. 10, 2018). In May 2013, GM made a production change and introduced new piston rings. According to GM, vehicles manufactured after the May 2013 production change do not suffer the same oil consumption problem as those manufactured before the change. Settlement Agreement, DE 27-1, § I, ¶ (a). Thus, the proposed settlement is limited to vehicles from model years 2010–2012, and model year 2013 vehicles manufactured before the May 2013 production change.[1]

Ten days after this case was filed, the parties reached a tentative settlement to resolve all three cases. *See* Pl. Mot. for Prelim. App., DE 27, at 6. Pursuant to stipulations of the parties, the cases in California and Illinois were dismissed on April 19, 2019. On April 26, 2019, the plaintiff in this action moved for preliminary approval of the proposed settlement. The Court granted preliminary approval on May 16, 2019, and set a final approval hearing for October 4, 2019. Prelim. App. Order, DE 29. Notice of the proposed settlement, although dated May 16, 2019, was not mailed to the class until July 20, 2019. *See*, *e.g.*, Letter to Court from Robert Stowe, DE 41 (attaching notice).[2]

*Before* this case and the two related cases were filed, GM issued Special Coverage Adjustments (SCAs) to provide free piston assembly replacements after expiration of the original powertrain warranties for 2010, 2011, and 2012 class vehicles within specified time and mileage

---

[1] Although the Complaint was limited to the Chevrolet Equinox equipped with the 2.4-liter Ecotec engine, the settlement includes GMC Terrain vehicles equipped with the same engine. *Compare* Complaint ¶ 186, *with* Settlement Agreement § II ¶¶ 12, 39.

[2] The Notice envelope is not post-marked, but the Notice sets the opt out and objection deadline as September 20, 2019, and the settlement provides that such deadline shall be sixty days after the notice is mailed. *See* Settlement Agreement ¶ 25.

2

limitations. The free piston assembly replacement was available for vehicles that consumed at least one quart of engine oil in less than 2,000 miles of driving.

For model year 2010, the SCA is applicable for a period of ten years or 120,000 miles, whichever occurs first, from the date the vehicle was originally placed in service. *See* SCA No. 14159, Exhibit D to Settlement Agreement. Customers were notified of the SCA by letters issued in August 2014. *Id.* Customers who had already paid for a repair covered by the SCA had until September 30, 2015, to request reimbursement. *Id.*

For model year 2011, the SCA is applicable for a period of seven years and six months or 120,000 miles, whichever occurs first, from the date the vehicle was originally placed in service. *See* SCA No. 15285, Exhibit E to Settlement Agreement. Customers were notified of the SCA by letters issued in August 2015. *Id.* Customers who had already paid for a repair covered by the SCA had until August 31, 2016, to request reimbursement. *Id.*

For model year 2012, the SCA is applicable for a period of seven years and six months or 120,000 miles, whichever occurs first, from the date the vehicle was originally placed in service. *See* SCA No. 16118, Exhibit F to Settlement Agreement. Customers were notified of the SCA by letters issued in May 2017. *Id.* Customers who had already paid for a repair covered by the SCA had until May 31, 2018, to request reimbursement. *Id.*

The proposed settlement provides that the SCAs for model years 2010–2012 will remain in effect—just as they would have if no settlement had been reached—and provides an additional 120-day period for class members to request reimbursement if they already paid for repairs covered by the SCA and failed to request such reimbursement before the original deadlines, or incurred rental car expenses while the repairs were being made. Settlement Agreement ¶ 46(a) & (b). The proposed settlement further provides that GM will issue a new SCA for model year

2013 class vehicles manufactured prior to the May 2013 production change with terms and limitations "substantially the same" as the SCAs for model years 2011 and 2012. *Id.* ¶ 46(c). Class members will have 120 days to request reimbursement if they already paid for repairs covered by the forthcoming 2013 SCA, or incurred rental car expenses while the repairs were being made. *Id.* ¶ 46(d).

The settlement provides nothing for class members who are outside the time and mileage limits of the SCAs. It provides nothing for the cost of adding oil between scheduled oil changes to offset the excessive oil consumption. It provides nothing for engine damage caused by driving the class vehicles with insufficient oil. It provides nothing for the diminished resale value of the vehicles.

Under the settlement, class members release any and all claims "that relate in any manner to claims of excessive oil consumption or resulting piston or engine damage." *Id.* ¶ 70. The settlement includes a "clear sailing" provision under which GM agrees not to oppose an award to class counsel of up to $3,500,000 in attorneys' fees and expenses, and service payments of up to $4,500 for the plaintiff in this case and for each of the plaintiffs in the dismissed cases. *Id.* ¶¶ 82 & 85.

## STANDARD

A district court may approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The 2018 amendments to Rule 23(e)(2) added a short list of core factors that the court should consider, including whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any

4

proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."[3] Fed. R. Civ. P. 23(e)(2)(C). Further, the Court must consider whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

As explained by the Advisory Committee, each circuit had developed its own non-exhaustive list of factors to consider in determining whether a settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendments. In the Eleventh Circuit, that list included:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The 2018 amendments seek to focus the substantive review of the terms of the proposed settlement on "[t]he relief that the settlement is expected to provide to class members." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendments. The settling parties bear the burden of showing that the settlement meets the Rule 23(e) standard.

## ARGUMENT

**I.     The proposed settlement is not fair, reasonable, and adequate because it provides no relief to the vast majority of class members but releases their claims.**

The Court should reject the proposed settlement because most class members will receive nothing of value in exchange for releasing GM from any liability for the oil consumption defect. A settlement that forces class members to surrender their claims in exchange for no consideration

---

[3] Rule 23(e)(3) states that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."

5

should not be approved. *See Day v. Persels and Assocs., LLC*, 729 F.3d 1309, 1312 (11th Cir. 2013) (vacating approval of class settlement that "released most of the claims of the class in exchange for no monetary relief for the absent class members"); *Koby v. ARS Nat'l Svcs., Inc.*, 846 F.3d 1071, 1079–80 (9th Cir. 2017) (reversing approval of a class action settlement and holding that "[b]ecause the settlement gave the absent class members nothing of value, they could not reasonably be required to give up anything in return"); *see also In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 195 (5th Cir. 2010) ("The court must be assured that the settlement secures an adequate advantage for the class in return for the surrender of litigation rights against the defendants.").

**A. The 2010, 2011, and 2012 SCAs are not a benefit of the settlement.**

Before this case and the two related cases were filed, GM issued SCAs to provide additional warranty coverage for piston assembly replacements for model year 2010, 2011, and 2012 vehicles. The SCAs are not a benefit of this settlement and are not consideration provided by GM in exchange for the release. Rather, GM issued the SCAs voluntarily and for its own business purposes. Owners of qualifying model year 2010–2012 vehicles are entitled to a free piston assembly replacement regardless of whether this settlement is approved and regardless of whether such owners opt out. Indeed, the settlement agreement states explicitly that these "three existing SCAs remain in effect, subject to their applicable time and mileage limitations and other terms and conditions, and Class Members with an eligible vehicle can obtain any now available SCA benefits independent of the Settlement."[4] Settlement Agreement at 3.

Thus, the extended warranty coverage provided by the SCAs is not value offered by the proposed settlement. *See Koby*, 846 F.3d at 1080 (rejecting attempt to claim as a benefit of the

---

[4] Because of the time and mileage limitations, the SCAs have already expired for a significant number of owners, including all owners of model year 2011 class vehicles.

6

settlement changes to business practices that the defendant voluntarily adopted); *Eubank v. Pella Corp.*, 753 F.3d 718, 725 (7th Cir. 2014) (reversing district court's approval of class action settlement and holding that warranty extensions adopted before the class settlement "were not part of the value created by the settlement").

**B. Reopening the claims period for class members to seek reimbursement of out-of-pocket expenses incurred before the SCAs were issued provides little or no value to the class.**

When GM issued the SCAs, it notified its customers that, if they had already paid for repairs that would have been covered by the SCAs, they had a year in which to submit a claim for reimbursement of such out-of-pocket costs.[5] If approved, the proposed settlement will reopen those claim periods for an additional 120 days. The value to the class of rerunning the reimbursement program that GM already offered to its customers is minimal at best, and it would benefit only a tiny fraction of the class.

Any class member who had a piston assembly replacement performed for free under either the original warranty or the SCA is not eligible for any payment, and any class member that paid or will pay for a piston assembly replacement after expiration of the time and mileage limitations of the SCA is not eligible for any payment. The only class members that could possibly benefit from a rerun of the reimbursement programs offered under the 2010–2012 SCAs are those who (1) had the repair performed after the original warranty ran but before the SCA was issued; (2) had the repair performed within the time and mileage limitations of the applicable SCA; (3) paid for the repair out-of-pocket and have the required documentation to

---

[5] The deadlines for seeking such reimbursement were September 15, 2015, for the 2010 SCA; August 31, 2016, for the 2011 SCA; and May 31, 2018, for the 2012 SCA. *See* 2010–2012 SCAs, attached to the Settlement Agreement as Exhibits, D, E, and F.

7

prove it; and (4) failed to submit a reimbursement claim after they were originally notified about the program.

In *In re Dry Max Pampers Litigation*, 724 F.3d 713 (6th Cir. 2013), the court found "nearly worthless" a class action settlement under which the defendant "agreed to reinstate, for one year, a refund program that [defendant] had already made available to its customers" during an earlier six-month period. *Id.* at 715–16. The court reversed the district court's approval of the settlement, noting several shortcomings in the settling parties' claim that the refund program had value for the class. First, the court noted that the defendant must have had "data as to the number of consumers who obtained refunds" during the original program period, from which one could estimate the potential value of reopening the program, but "chose not to provide that data" even though "the burden of proving the fairness of the settlement is on the proponents." *Id.* at 718–19 (citations omitted). The court therefore held that the settling parties had not carried their burden to show that the refund program had value. Second, the court held that "the reinstated refund program brings little value to unnamed class members" because "before the settlement agreement was even reached," most of the class "already had an opportunity to obtain their [] refund, without the assistance of class counsel and without assigning away important rights as captive members of a settlement class." *Id.* at 719. As a result, the court concluded, "the value of the refund program to unnamed class members is negligible." *Id.*

The same analysis applies here. Where the settling parties have provided no data regarding the number of class members expected to benefit from reopening the reimbursement period for an additional 120 days, and where the class previously received notice and had an opportunity to obtain reimbursements much closer in time to when the expenses were incurred, "the value of the refund program to unnamed class members is negligible." *Id.*

8

### C. The settling parties have not established that the forthcoming 2013 SCA is a benefit of the settlement.

The settlement agreement states that GM will issue an SCA for model year 2013 vehicles manufactured before the May 2013 production change "containing terms and limitations substantially the same as the model year 2011 and 2012 SCAs." Settlement Agreement ¶ 46(c). GM issued SCAs for the 2010, 2011, and 2012 model years for its own business reasons, independent of the settlement. There is no reason to believe that GM would not do the same for the part of the 2013 model year production that preceded the introduction of improved piston rings, and neither the settlement agreement nor the notice sent to the class indicates that the 2013 SCA will be available only to owners in the class. If the 2013 SCA, like the 2010–2012 SCAs, will be available to all owners of qualifying model year 2013 class vehicles manufactured before the production change, even if they opt out of the class or purchased their class vehicle after the agreement received preliminary approval, the 2013 SCA is not consideration provided by GM in exchange for class members' release of their claims.

## II. The proposed settlement does not treat class members equitably relative to each other.

The Court should also reject the settlement because class members are not treated fairly relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D) (requiring court, in determining the fairness of a proposed settlement, to consider whether "the proposal treats class members equitably relative to each other"); *see Nat'l Super Spuds v. N.Y. Mercantile Exchange*, 660 F.2d 9, 19 (2d Cir. 1981) ("An advantage to the class, no matter how great, simply cannot be bought by the uncompensated sacrifice of claims of [other] members.").

First, to the extent the forthcoming 2013 SCA can be considered a benefit of the settlement because it will apply only to class members, it is not fair for class members who own

9

2010–2012 model year vehicles to get nothing, while class members who still own a 2013 model year vehicle manufactured before the production change, have a qualifying oil consumption diagnosis, and have not exceeded either the time or mileage limitations, receive the benefits of the new SCA. Thus, to the extent the new SCA is the primary benefit of the settlement, the class should have been limited to owners of model year 2013 class vehicles manufactured before the production change. Although the settling parties have not revealed the size of the class or the number of class vehicles, publicly available information indicates that there were about 1,141,078 class vehicles sold in the United States from 2010 through 2013, and 337,757 of those vehicles were sold in 2013.[6] Thus, it is reasonable to assume that the 2013 subclass is less than a quarter of the class.

Second, the settlement does not treat class members equitably because no class member who has exceeded the time or mileage limitations or who no longer owns his or her vehicle will receive any benefit from the free piston assembly replacements available under the SCAs. Further, the settlement provides no relief for any class member who had to purchase oil between scheduled oil changes to offset the excessive oil consumption caused by the defect, and the settlement provides nothing for the diminished resale value of the vehicles, although both of those harms were identified in the complaint. *See* Complaint ¶¶ 15 & 22. And while class members will receive no compensation for such harm, they will release all claims based on that harm if the proposed settlement is approved. Settlement Agreement ¶ 70.

Similarly, the settlement provides no compensation to class members who experienced engine damage caused by driving the class vehicles with insufficient oil. Such damages are

---

[6] Annual sales figures, based on sales during the calendar year rather than based on model year, are available at http://gmauthority.com/blog/gm/chevrolet/equinox/chevrolet-equinox-sales-numbers/ and http://gmauthority.com/blog/gm/gmc/terrain/gmc-terrain-sales-numbers/.

10

significant. For example, several pro se objectors report unreimbursed engine replacement costs of several thousand dollars. *See*, *e.g.*, Letter from Andrew Jennings, DE 39 (2011 Equinox engine replacement costing nearly $5,000); Letter from Elisa Ventura, DE 49 (2011 Terrain engine replacement costing more than $4,700); Letter William J. Bradley, DE 70 (2013 Terrain engine replacement costing $6,237); Letter from Rosario Estrada, DE 74 (2010 Terrain engine replacement costing $8,177). The settlement purports to waive claims for such damages, *see* Settlement Agreement ¶ 76, although there is some confusion as to whether those who experienced engine damage are in the class. In the preliminary approval order, which was submitted by plaintiff as a proposed order and entered by the Court without change, the Court provisionally certified a nationwide settlement class consisting of:

> All persons within the United States who purchased or leased, at any time before the Preliminary Approval Date, a new retail or used model year 2010, 2011, 2012 or 2013 Chevrolet Equinox or GMC Terrain vehicle equipped with 2.4 liter Ecotec engines, manufactured prior to the Production Change, and *who have not experienced engine failure* or executed a prior release of the claims set forth in the Action or Related Actions in favor of GM.

Prelim. App. Order at 2 (emphasis added). However, the exclusion from the class of those who have experienced engine failure may be a scrivener's error, because the other settlement documents do not reflect such an exclusion. *See* Settlement Agreement ¶ 39.

Finally, the proposed settlement is also unfair to class members in states with more robust consumer-protection statutes, because those class members sacrifice claims of higher value than those of other class members. For example, the California subclass, which was the focus of the *Hindsman* case, is sacrificing claims under California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; and the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.* Those statutes provide for compensatory damages, repurchase, civil penalties, punitive damages, and

11

attorneys' fees. Although the California subclass receives the same meager relief as residents of other states, all such claims are released by the proposed settlement. Class counsel could have easily excluded the California subclass from this settlement and continued to litigate, or settle separately, the *Hindsman* case, but class counsel chose instead to dismiss *Hindsman* in favor of this nationwide settlement that treats all class members the same, regardless of the differing value of the relief available to them under their respective state laws. Class counsel's choice suggests that the interests of some class members may have been traded off against the interests of others.

### III.  The proposed settlement is not a reasonable compromise relative to the possible risks and benefits of continued litigation.

To determine whether a proposed settlement is a reasonable compromise, the Court should compare the value of the settlement to the potential recovery if the litigation is successful, discounted for the risk of non-recovery. Such an analysis is the essence of the Eleventh Circuit's *Bennet* factors, which include "the likelihood of success at trial," the "range of possible recovery" if plaintiffs prevail, and the point within or below that range that a settlement is fair, taking into account "the complexity, expense and duration of litigation." *Bennett*, 737 F.2d at 986; s*ee Eubank*, 753 F.3d at 727 (holding that a district court should estimate "the likely outcome of a trial … in order to evaluate the adequacy of the settlement"); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1070 (C.D. Cal. 2010) (explaining that the court must determine whether the "settlement is reasonable in relation to the value of the claims surrendered"); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323–24 (S.D. Fla. 2007) (holding that the "'most important factor relevant to the fairness of a class action settlement'" is "'the strength of the plaintiff's case on the merits balanced against the amount

offered in the settlement'") (quoting *Synfuel Tech., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)).

Here, the settling parties have failed to provide *any* information about the value of the claims, if successful, making it impossible for the Court to assess the adequacy of the settlement *in relation to* the risk and benefits of further litigation. *See In re Baby Products Antitrust Litigation*, 708 F.3d 163, 175 (3rd Cir. 2013) (vacating district court's approval of settlement "because it did not have the factual basis necessary to determine whether the settlement was fair").

On the value-of-settlement side of the equation, the settlement agreement states that "GM's best estimate of the dollar value of the benefits that will be provided pursuant to the 2013 New SCA is forty to forty-five million dollars ($40,000,000 - $45,000,000)." Settlement Agreement ¶ 46(f). The settling parties offer no explanation for how GM arrived at this estimate, other than to aver that GM's estimate is "based on its experience with the 2010, 2011 and 2012 SCAs." Pl. Mot. for Prelim. App. at 10. Without further information, the estimate cannot be considered reliable.

First, as explained above, the settling parties have failed to show that the 2013 SCA would not have been issued independent of the settlement and that it will not benefit owners who are not in the class, either because they opted out or because they purchased their 2013 class vehicle after the preliminary approval date. Thus, even if GM has accurately estimated the cost of the piston assembly replacements that it will pay for under the forthcoming 2013 SCA, such repairs might not be a benefit of the proposed settlement.

Second, to the extent GM's estimate of the value of the 2013 SCA is based on the cost to GM of the other SCAs, it is likely an overestimate because the 2013 SCA will apply only to

13

vehicles manufactured before the May 2013 production change as opposed to the entire model year. Further, because the 2013 SCA will issue further in time from the sale of the vehicles than the earlier SCAs, more 2013 model year vehicles will have already exceeded the mileage limit before the SCA issues. And those below the mileage limit will begin reaching the time limit within months of the issuance of the 2013 SCA, because GM was selling the 2013 model as early as September 2012. Each of these factors diminishes the value of the forthcoming 2013 SCA compared to the value of the earlier SCAs that were issued independent of the settlement.

## CONCLUSION

The Court should deny final approval of the proposed class action settlement.

Dated: September 19, 2019                    Respectfully submitted,

*s/ Donald A. Yarbrough*
Donald A. Yarbrough
Florida Bar No. 0158658
don@donyarbrough.com
Post Office Box 11842
Ft. Lauderdale, FL 33339
Telephone: 954-537-2000
Facsimile: 954-566-2235

*s/ Michael T. Kirkpatrick*
Michael T. Kirkpatrick
(pro hac vice pending)
mkirkpatrick@citizen.org
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
202-588-7728

*Counsel for Objectors Douglas R. Ghiselin, Tod Fitzpatrick, and Leslie G. Coulter*