<div align="center">

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

**Civil Action No. 2:18-CV-14371-ROSENBERG/MAYNARD**

</div>

ELLEN BERMAN, and DAYANA
GUACH on behalf of themselves and all
others similarly situated,

Plaintiffs,

v.

GENERAL MOTORS LLC, a Delaware
limited liability company

Defendant.

_____

<div align="center">

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
**AND INCORPORATED MEMORANDUM OF LAW**

</div>

**I.      INTRODUCTION**

Plaintiff Ellen Berman, on behalf of the Settlement Class, move for final approval of the Settlement with Defendant General Motors LLC ("Defendant" or "GM") and for entry of the Final Order and Judgment.[1]  ECF 27-1, Settlement Agreement ("SA").  The Court preliminarily approved the Settlement on May 16, 2019.  ECF 29, Preliminary Approval Order.

In granting preliminary approval, the Court found that the Settlement was within the range of reasonableness and that the Settlement Class should be given notice.  ECF 29 ¶ 6.  Nothing has changed to alter this finding.  The Parties have complied with the Court's May 16, 2019 Preliminary Approval Order and the notice program approved by the Court was completed.  Thus, for the reasons set forth below, Plaintiffs respectfully request that the Court finally approve the Settlement Agreement, certify the Settlement Class, declare the terms of the Settlement to be fair, reasonable, and adequate, and enter the Final Order and Judgment.

Given that the compromise of complex class action litigation is encouraged by the courts and favored by public policy, especially where, as here, there is significant value to affected class

_____

[1] Unless otherwise noted, all capitalized terms have the same meaning as ascribed to them in the Settlement Agreement.

<div align="center">1</div>

members, the Court should finally approve this Settlement. *See In re Checking Account Overdraft Lit.*, 2011 WL 5873389, 6 (S.D. Fla. 2011) ("Federal courts have long recognized a strong policy and presumption in favor of class action settlements."); 4 Newberg on Class Actions § 11:41 (4th ed.).

## II.     RELEVANT FACTS AND PROCEDURAL HISTORY

### A.     The Settlement Resolves Three Related Class Actions

In this Action, Plaintiffs claim that Class Vehicles (*i.e.* 2010, 2011, 2012 and 2013 Chevrolet Equinox and GMC Terrain vehicles equipped with 2.4-liter Ecotec engines) contain certain defective piston rings in their engines that are prone to premature wear and excessive engine oil consumption. ECF 1, Complaint.  GM vigorously denies these allegations, but nonetheless claims to the extent there is an issue, this problem was addressed by the issuance of Special Coverage Adjustments ("SCA") for earlier models and a design change in May 2013.  For model years 2010, 2011, and 2012 Class Vehicles, GM's previously issued Special Coverage Adjustments ("SCA") provided free piston assembly replacement for vehicles diagnosed with high oil consumption within specified time and mileage limitations.  ECF 27-1 pp. 2-3, Exs. D, E & F.  The SCAs also allowed then current owners who received notice of the SCAs in the mail and who previously had paid out-of-pocket for piston assembly repairs to submit reimbursement claims.  The deadlines for expense reimbursement claims under the three SCAs expired years ago, on September 30, 2015, August 31, 2016, and May 31, 2018, respectively.  ECF 27-1 pp. 118, 127, & 137.  Owners who purchased a vehicle after the SCA notices were mailed did not receive the SCA mailing and may not have known about their eligibility for reimbursement.  Therefore, the new opportunity for current and past 2010 through 2012 Class Vehicle owners to file reimbursement claims is a significant benefit.  Moreover, Class Vehicles produced beginning in May 2013 were equipped with new "525" piston rings that reduce piston ring wear and that essentially eliminated excessive oil consumption for Class Vehicles produced after the production change breakpoint.  ECF 27-1 p. 2.

This Action was filed on September 10, 2018.  Two other class actions that alleged the same defect at issue here had previously been filed in the United States District Court for the Northern District of California (*Hindsman v. General Motors LLC*, No. 17-cv-5337 ("*Hindsman*")) on September 14, 2017, and in the United States District Court for the Northern District of Illinois (*Sanchez v. General Motors LLC*, No. 18-cv-02536 ("*Sanchez*")) on April 19, 2018.  All three actions will be resolved by the Settlement.

The Parties in these cases conducted discovery, which included, *inter alia*, initial disclosures, interrogatories, review and analysis of documents produced by GM and others, inspections of Class

Representatives' vehicles, and retention of qualified experts who analyzed the alleged defects and claimed damages. *See generally*, the concurrently filed Declaration of Gregory F. Coleman ("Coleman Decl.") Ex A.

The *Hindsman* Plaintiffs (Ryan Hindsman, Robin Peterson, Diana Miranda, Vanessa Maryanski, Rene Mitchell, and Brittany Chambers) filed a complaint in the Northern District of California on September 14, 2017; the case was assigned to Magistrate Jacqueline Scott Corley. *Hindsman* ECF 1. The *Hindsman* Plaintiffs alleged claims for breach of express and implied warranty and violations of California's Consumer Legal Remedies Act and Unfair Competition Law. *Id.* After the *Hindsman* Court granted an extension for GM to respond, the *Hindsman* Plaintiffs filed their first amended complaint on December 14, 2017. *Id.* ECF 34. On January 1, 2018, GM filed its first motion to dismiss the first amended complaint. *Id.* ECF 35. The Court heard oral arguments on March 22, 2018 and took the matter under submission. On June 1, 2018, Judge Corley issued an order granting in part and denying in part GM's motion to dismiss. *Id.* ECF 51. She dismissed plaintiffs' claims for breach of implied warranty, violation of consumer protection statutes, and breach of GM's Limited New Vehicle Warranty, but denied GM's motion to dismiss their express warranty claims based on GM's SCAs. On July 2, 2018, the *Hindsman* Plaintiffs filed their second amended complaint. *Id.* ECF 54. GM filed its motion to dismiss the second amended complaint on August 15, 2018. *Id.* ECF 59.

The Parties conducted substantial discovery. Plaintiffs conducted a detailed investigation of the applicable facts, the Parties exchanged initial disclosures and both propounded and responded to document production requests and interrogatories. Plaintiffs analyzed the documents produced by GM and consulted with experts to assist them in understanding the claims and potential damages at issue. GM conducted physical inspections of Plaintiffs' vehicles with Plaintiffs' experts present. Coleman Decl. ¶¶ 22-23.

On April 10, 2018, the *Sanchez* Plaintiffs (Plaintiffs Patrick Sanchez, Mark Stauber, Sally Stauber, Jacob Ross-Demmin, and Jennifer Herrington) filed their complaint in the Northern District of Illinois, which was assigned to Judge John J. Tharp, Jr. *Sanchez* ECF 1. A first amended complaint was filed in *Sanchez* on April 19, 2018. *Id.* ECF 9. On June 6, 2017, in light of the pending mediation (discussed below), GM filed a motion to extend time to respond to the first amended complaint in *Sanchez*. *Id.* ECF 14. On June 11, 2018, Judge Tharp granted that motion, and set GM's response deadline on September 28, 2018. *Id.* ECF 19.

On October 2, 2018, the Parties in this Action jointly moved for an order staying the action pending mediation and settlement discussions.  ECF 8.

**B.      Settlement Negotiations**

The Settlement is the result of two in person mediations and extensive negotiations over the course of many months both before and after the mediations.  The Parties commenced settlement discussions in earnest following the *Hindsman* Court's ruling on GM's motion to dismiss.  Coleman Decl. ¶ 26.  After a preliminary pre-mediation negotiation, on August 29, 2018, the Parties attended a full-day mediation with the Hon. Jay Gandhi (Ret.) at JAMS.  *Id.* ¶ 27.  Prior to the mediation, Plaintiffs prepared and submitted an in-depth mediation brief detailing the facts, merits of the claims, potential damages, and class certification issues.  *Id.* ¶ 28.  Though the Parties were able to make some progress at this mediation, they agreed to hold a second day of mediation.  *Id.* ¶ 29.  Thus, on September 6, 2018, the *Hindsman* parties jointly requested a stay of the case pending the mediation and related settlement negotiations.  *Hindsman* ECF 62.  The *Sanchez* parties filed a similar request on September 17, 2018.  *Sanchez* ECF 31.  The Parties completed a second full-day mediation session with Judge Gandhi on November 7, 2018, wherein they reached agreement on all substantive terms of a nationwide class settlement in the *Berman* action that encompassed the proposed class members in the *Hindsman*, *Berman* and *Sanchez* actions.  Coleman Decl. ¶ 30.  In the event the Parties had not reached an accord resolving the claims of all three cases, GM planned to file motions to dismiss in both the Illinois action and the present Action.  *Id.* ¶ 32.

On December 5, 2018, the Parties filed a "Joint Motion to Extend Stay of Proceedings and Joint Status Report Regarding Settlement" (ECF 10), informing this Court that they had reached a tentative settlement of all issues in all three cases and were formalizing a settlement agreement.  The Court granted the motion (ECF 11) and extended the stay until February 4, 2019.  Similar stays were entered in all three related cases.  *Hindsman* ECF 66; *Sanchez* ECF 38.  The Parties continued to work on the settlement agreement and on January 31, 2019 again filed a "Joint Motion to Stay Proceedings" (ECF 12) seeking an additional sixty days to finalize the settlement documents.  On February 1, 2019 the Court granted the motion, extending the stay until April 5, 2019.  ECF 13.  On April 22, 2019, the Parties filed a Joint Notice of Class Action Settlement.  ECF 24.  The Court then further extended the stay so that the Parties could finalize the Settlement Agreement and prepare the motion for preliminary approval.  ECF 26.

During this period the Parties engaged in extensive and detailed negotiations regarding every aspect of the Settlement and its exhibits.  Coleman Decl. ¶¶ 34-38.  Although the Parties reached an

agreement in principle, many of the details of the Settlement remained unresolved or in dispute. *Id.* ¶ 34. Over a span of months, the Parties worked diligently and expended a substantial amount of time in an effort to finalize the terms of the Settlement Agreement and ancillary documents and the plan for Class Notice. *Id.* ¶¶ 35-37. These negotiations were complex, and involved detailed lengthy repeated discussions regarding virtually every provision of the Settlement Agreement and its many exhibits, including, the structure of the Settlement itself, the SCAs, and the Claim Process, among a myriad of other issues. *Id.* ¶¶ 34-38. Class Counsel expended substantial efforts to negotiate a structure and terms and draft language satisfactory to both sides. *Id.* Moreover, the Parties conducted detailed negotiations regarding the language of the Class Notice and the Notice and Claim Forms and the methodology of the Notice Plan. *Id.* Thus, the Settlement was reached by the Parties' after prolonged litigation, extensive fact discovery and arms-length negotiations.

### C.   Preliminary Approval

On April 26, 2019, the Plaintiff moved for preliminary approval of the Settlement Agreement. ECF 27. On May 16, 2019, the Court preliminarily approved the Settlement. ECF 29. In the Preliminary Approval Order, the Court also approved the proposed Class Notice and Notice Plan. *Id.* ¶ 2.

### D.   Notice Plan Implementation and Administrative Costs

Analytics Consulting LLC ("Analytics"), the Settlement Administrator, implemented and executed the approved Notice Plan. *See generally* concurrently filed Declaration of Richard W. Simmons ("Simmons Decl."). Analytics fully implemented the Notice Plan approved by the Court in the Preliminary Approval Order. *Id.* ¶¶ 8-15. The Class Notice was mailed to 1,641,531 individuals who comprise the Class List. *Id.* ¶ 12.

To create the Class List, GM first obtained the unique vehicle identification number ("VIN") for all 845,412 Class Vehicles. Concurrently filed Declaration of L. Joseph Lines ("Lines Decl.") ¶ 1. GM then caused a list of the VINs of these vehicles to be transmitted to the HIS / Market d.b.a. R.L. Polk ("Polk")[2] company. GM instructed Polk to provide a list of all original owners, as well as all subsequent owners and used vehicle purchasers, as well as lessees, of all of the vehicles on VIN list. *Id.* ¶ 4. Polk created a "VIN title history" that list the names of the original purchasers and

---

[2] "Polk is the recognized industry source for automotive registration, owner and address information for both new and used vehicle purchasers and subsequent owners. Virtually all large automotive companies, including GM, have a business relationship with Polk under which Polk provides them with vehicle ownership and address information for a variety of business uses that Polk obtains from state motor vehicle registration data." Lines Decl. ¶ 4.

lessees and all subsequent owners of the vehicles.  *Id.*  This list was provided directly to Analytics from Polk.  *Id.*; Simmons Decl. ¶ 10.  After duplicate records were removed, the list contained the names and addresses for 1,641,531 individuals and entities.  *Id.*

Analytics then updated all addresses on the list (*Id.* ¶ 11) and mailed the Class Notice to each.  *Id.* ¶ 12 & Ex. B.  After all returned envelopes and subsequent skip tracing and remailing were performed (*Id.* ¶¶13, 14), the Class Notice was successfully mailed to 1,585,388 of Class Members, a reach rate of 96.58%.  *Id.* ¶¶ 14, 17.  This rate well surpasses the 70-95% reach standard set forth in the Federal Judicial Center's Judges' Class Action and Claims Process Checklist and Plain Language Guide.  *Id.* ¶ 18.  Analytics also established the toll free number ordered by the Court in the Preliminary Approval Order.  *Id.* ¶ 15.

Finally, GM also effectuated the notice required under the Class Action Fairness Act.  Concurrently filed Declaration of Thomas A. Casey, Jr. ¶¶ 5-8.

To date, Analytics' Notice and Administration Costs total $1,128,799.97 and it estimates $1,268,592.27 in future charges and expenses to mail the Notice and Claims Forms to each Class Member and administer their claims (for a total anticipated Notice and Administration Costs of $2,397,392.24).  *Id.* ¶ 19.

## III.    THE PROPOSED SETTLEMENT

### A.    The Class Definition

Subject to this Court's final approval, the Settlement will resolve the class claims of Plaintiffs and all members of the Settlement Class who do not opt out.  On May 16, 2019, this Court conditionally certified the Settlement Class agreed upon by the Parties in the Settlement Agreement:

> All persons within the United States who purchased or leased, at any time before the Preliminary Approval Date, a new retail or used model year 2010, 2011, 2012 or 2013 Chevrolet Equinox or GMC Terrain vehicle equipped with 2.4 liter Ecotec engines, manufactured prior to the Production Change, and who have not experienced engine failure or executed a prior release of the claims set forth in the Action or Related Actions in favor of GM.  Excluded from the Class Vehicles for avoidance of doubt are all model year 2013 Equinox and Terrain vehicles that GM manufactured after the Production Change.[3]

ECF 29, Preliminary Approval Order ¶ 1; *see also* ECF 27-1, Settlement Agreement ¶ 39.

---

[3]      The Settlement Agreement defines Production Change as "…the introduction of the new '525' piston rings into model year 2013 Chevrolet Equinox and GMC Terrain production in May 2013."  ECF 27-1 ¶ 32.

### B.     The Settlement Consideration

The Settlement provides substantial benefits to Settlement Class Members in consideration for the Release.   ECF 27-1 ¶ 46; *see infra* Sec. III.C.   The Settlement Agreement contains the following relief for the Settlement Class:

**1.   *2010-2012 Model Class Vehicles.***   Individuals with Class Vehicles that were subject to the previously issued SCAs (*i.e.* 2010, 2011, and 2012 models subject to SCAs 14159, 152585, and 16118) would (i) be provided direct notice of the SCAs via the Class Notice; (ii) be provided with a Claim Form directly, via First Class U.S. Mail, in another class wide mailing after the Effective Date (*see* ECF 27-1 Exs. G-I, Claim Forms), and (iii) be afforded a new opportunity to submit a claim (up to the Claim Deadline) for reimbursement for expenses previously incurred (subject to the SCA time and mileage limitations) for items such as replacement of piston assemblies for excessive oil consumption and related vehicle rental charges ECF 27-1 ¶ 46.a. and 46.b.   There is no cap for the amount of expenses a Class Member may claim for piston assembly replacement and rental car expenses.   *Id.*   The deadlines to make claims for expense reimbursement under these SCAs were September 30, 2015 (2010 models), August 31, 2016 (2011 models), and May 31, 2018 (2012 models), respectively.   ECF 27-1 pp. 118, 127 & 137.   Despite prior expiration of these deadlines years ago, Class Members who were original owners and did not submit a reimbursement claim will have a new opportunity to do so.   In addition, those who purchased a Class Vehicle after the initial notice of these SCAs (*e.g.* used vehicle purchasers) and may not have known about their eligibility will have a new, first-time opportunity to seek and obtain reimbursement,[4] will thus be able to make a claim prior to the Claim Deadline, providing them with an additional 4 months, 120-days, to submit a claim for reimbursement of expenses).[5]

**2.   *2013 Model Class Vehicles.***   GM will issue a new SCA for 2013 Class Vehicles (manufactured prior to the Production Change) within thirty days of the Effective Date of Settlement,

---

[4] Although the precise number of persons who purchased the 2010-2012 Class Vehicles after the initial SCA notice was provided by GM, or after the SCA claims deadlines expired, is not known, given that there are 844,412 Class Vehicles and 1,641,531 Settlement Class Members (a difference of 797,119), it is likely that this is a sizable population.

[5] The Claim Deadline is defined as "one hundred and twenty (120) days after Claim Forms are mailed. The Claim Deadline will be the final time and date by which a Claim Form must be received by the Settlement Administrator in order for a Class Member to be entitled to any of the settlement consideration contemplated in this Agreement. The Claim Deadline will be set forth in the Claim Form mailed after the Effective Date."   ECF 27-1 ¶ 4.

under which Settlement Class Members may present such Class Vehicles to authorized GM dealerships for free diagnosis and, if diagnosed as currently consuming excessive oil, receive free piston assembly replacement, subject to express terms, conditions and time and mileage limits of the New SCA (seven and one-half years or 120,000 miles, whichever comes first, after each Class Vehicle's initial new retail sale or lease).  In addition, Settlement Class Members who previously paid out-of-pocket for piston assembly replacement in their model 2013 Class Vehicles due to excessive oil consumption, as defined in the New SCA, may file claims for reimbursement of such expenses, including those incurred for repair car rental *Id.* ¶¶ 46.c. and 46.d.  GM's best estimate of the dollar value of the benefits that will be provided pursuant to the 2013 New SCA is at least forty million dollars ($40,000,000), an amount that comports with Plaintiffs' investigation and discovery of the relevant facts.  Coleman Decl. ¶ 24; *see also e.g.* Declaration of Lee Hurley ("Hurley Decl.") ¶ 6-7.  There is no cap for the amount of expenses a Class Member may claim for piston assembly replacement and rental car expenses.

       **3.**   ***Notice and Administration Costs.***  GM will pay any and all Notice and Administration Costs[6] associated with providing each Settlement Class Member with direct notice of their rights under the relevant SCAs and for processing and administering the Claims.  ECF 27-1 ¶¶ 46.e. and 46.h.  To date, these costs total $1,128,799.97 and it is estimated that there will be $1,268,592.27 in additional costs by the end of the Claim Process (for a total of $2,397,392.24).  It is important to note that such costs include two rounds of mailings to *all* Class Members who do not opt-out of the Settlement (first the Class Notice, and then the Notice and Claim Form).  *Id.* ¶¶ 46.h., 54, & Exs. G-I; Simmons Decl. Ex. B.

       **4.**  ***Attorneys' Fees and Expenses, and Service Payments.***  GM will pay all Service Payments awarded by the Court (up to $4,500 for each of the 13 Plaintiffs) in recognition of their efforts to prosecute this case on behalf of the Class.  *Id.* ¶¶ 36, 46.g., and 82.  In addition, GM will pay the Attorneys' Fee and Expense Award approved by the Court, up to a total of $3,500,000.  *Id.* ¶ 85.  GM has agreed not to object, oppose, appeal or any take a position with respect to any fee request up to and including this amount.  *Id.*  This amount was negotiated independently from the

---

[6]     Notice and Administration costs are defined to be "any and all reasonable fees, costs, and charges incurred, charged, or invoiced by the Settlement Administrator relating to the administration and notice of the Settlement, including but not limited to: (i) the costs and expenses that are associated with disseminating the Class Notice to the Settlement Class, including, but not limited to, the Class Notice; and (ii) the costs and expenses of the distribution of the Settlement's benefits to Claimants pursuant to terms and conditions herein.  ECF 27-1 ¶ 22.

other terms of the Settlement, after a settlement in principle was reached, under the supervision and with the assistance of Judge Gandhi.  Coleman Decl. ¶ 33.  The payment of the Notice and Administration Costs, Service Payments, and/or Fee and Expense Award does not detract, lower or limit any of the benefits due to Settlement Class Members under the Settlement.  ECF 27-1 ¶ 46.

### C.      The Settlement's Value

The Settlement provides (i) Settlement Class Members who owned / leased 2010-2012 Model Class Vehicles with two rounds of direct mail notices, including direct mailing of the Notice and Claim Form to make a Claim for expenses incurred prior to the Claim Deadline, (ii) Settlement Class Members who owned / leased 2013 Model Class Vehicles with the New 2013 SCA with two rounds of direct mail notices to make a Claim for expenses or submit their vehicle for diagnosis of oil consumption issues and, if needed, piston assembly replacement, (iii) for GM's payment of all Notice and Administration Expenses which includes two direct First Class USPS mailings to virtually all 1,641,531 million Class Members and subsequent claims administration expenses, and (iv) Attorneys' Fees and Expenses of up to $3,500,000.

It is important to note that while there is no cap for the amount of expenses a Class Member may make a claim for, the total net cost to GM for repair of the defect alleged in the Complaint is estimated to be at least $2,000 per vehicle, not accounting for labor or rental car expenses.  Coleman Decl. ¶ 25; Hurley Decl. ¶¶ 6-7.  Any rental car expenses not included in prior reimbursement to Class Members are also eligible for reimbursement.  GM itself estimates that the value of the 2013 New SCA *alone* is at least $40 million.  ECF No. 27-1 ¶ 46.f.; Coleman Decl. ¶ 25.  GM in accordance with its standard business practices has predicted that the net cost of the 2013 SCA to GM will be approximately $40 million.  *Id.*  In making this prediction, GM calculated that approximately 7.4% of the roughly 270,000 2013 model Class Vehicles will obtain repairs or submit a claim for reimbursement (valued at $2,000); thus, the value of this aspect of the Settlement would be about $40.5 million.  Using only GM's $40 million estimate of the value of the 2013 New SCA and total Notice and Administration Costs of $2,397,392.24 (Simmons Decl. ¶ 19), the total estimated net cost of this aspect of the Settlement to GM is $42,397,392.20.

This valuation does not account for the monetary value of any claims submitted by owners of the 2010-2012 model Class Vehicles which drastically increases this minimum valuation, *i.e.* an increase of $11.5 million for each 1% of the 2010-2012 Class Vehicles whose owners make a claim for reimbursement of expenses in the amount of $2,000 [((845,412 total Class Vehicles - 270,000 2013 Class Vehicles) * .01) * $2,000].  This valuation also does not account for any expenses beyond

the $2,000 alleged defect repair estimate (*i.e.* rental car expenses; for example, assuming a modest total rental charge of $50 per day, and that any given Class Member submits reimbursement of only 1 day of rental, for each 1% of the Class Members who submit such reimbursement, the value of the Settlement increases by $422,706.)  Thus, the minimum value of this substantial Settlement is likely more than $42,397,392.20.

### D.      The Release Is Narrowly Tailored to the Claims

If the Court grants final approval of the Settlement, Class Members' release is limited.  They will release only claims "that were brought or could have been brought based on the facts alleged in the Action and Related Actions that relate in any manner to claims of excessive oil consumption or *resulting* piston or engine damage in Class Vehicles as alleged in the Action and the Related Action." ECF 27-1 ¶ 70 (emphasis added).  Engine damage claims unrelated to oil consumption issues are not released.  Moreover, only those persons who are identified by GM on the Class List (and thus are mailed a Class Notice *via* First Class US Mail), and who do not opt out of the Settlement, release their claims.[7]  *Id.* ¶¶ 9, 11, 52.a. and 70.

### E.      The Claim Process

The Settlement's Claim Process is designed to incentivize Settlement Class Member participation.  Within 30 days of the Effective Date, the Settlement Administrator will mail a Notice and Claim Form to each Class Member who appears on the Class List provided by GM.  ECF 27-1 ¶¶ 27, 46(h).  In addition, the Notice and Claim Form will be mailed to Class Members who request one via the toll-free phone number maintained by the Settlement Administrator.  *Id.* ¶ 29.  The Notice and Claim Form will again notify Class Members of their right to make a claim for reimbursement for out-of-pocket costs, and provide straightforward instructions on how Class Members may submit their claims.  *Id.* ¶¶ 27, 61.

The Claim Form requires Claimants to provide their names, addresses, VINs, dates of prior repair or payment, repairing GM dealers or other repair facilities and their addresses, and the total amount of repair and rental vehicle payments.  *See* ECF 27-1 Exs. G to I.  The Claim Form conspicuously instructs Claimants to include copies of supporting documentation with their Claim submission.  *Id.*  The Claim Form also includes clearly worded instructions for Class Members to submit completed Claim Forms and supporting documentation by first-class mail by the Claim Deadline.  *Id.*

---

[7]      "Class Members" are only those who are "identified in the Class List."  ECF 27-1 ¶9.  Only "Plaintiffs and Class Members" release any claims.  *Id.* ¶ 70.

## IV.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND WARRANTS FINAL APPROVAL

Judicial and public policy favor the voluntary settlement of class litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F.Supp. 1051, 1054 (M.D. Fla. 1988) ("settlements are highly favored in the law."); *In re Sunbeam Sec. Litig.*, 176 F. Supp.2d 1323, 1329 (S.D. Fla. 2001) (citation omitted) (the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements."). Thus "there exists 'an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being [the] most complex.'" *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (internal citations omitted). With a settlement, class members are ensured a benefit as opposed to "the mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

A settlement should be approved if it is fair, reasonable, and adequate, and not the product of collusion. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). In determining whether a settlement is "fair, adequate, and reasonable," the following factors are generally considered:

> (1) the existence of fraud or collusion behind the Settlement; (2) the complexity, expense and duration of litigation; (3) the stage of proceedings at which the Settlement was achieved and the amount of discovery completed; (4) the probability of the Plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of Class Counsel, Class Representatives, and the substance and amount of opposition received.

*Oakes v. Blue Cross & Blue Shield of Fla., Inc.*, 2016 U.S. Dist. LEXIS 147252, at *3 (S.D. Fla. Oct. 21, 2016), citing *Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994).; *See also Bennett*, 737 F.2d at 986.

"In assessing these factors, the Court 'should be hesitant to substitute . . . her own judgment for that of counsel.'" *Oakes*, 2016 U.S. Dist. LEXIS 147252, at *3, quoting *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1315 (S.D. Fla. 2005) (quoting *In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991)); *Warren*, 693 F.Supp. at 1060 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation."). "Rather, the court 'must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" *Perez v. Asurion Co.*, 501 F. Supp.2d

1360, 1380 (S.D. Fla. 2007) (citation omitted).

Ultimately, "[a] settlement is fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330, 1344 (S.D. Fla. 2011) (citation omitted). That is the case here. This Settlement is the product of hard-fought litigation and arm's-length negotiations. Absent a settlement, the resolution of this litigation through the trial process would likely have entailed many more years of protracted adversary litigation (in various jurisdictions) and appeals, which would have substantially delayed relief to Settlement Class Members. Moreover, the Settlement avoids incremental litigation of these claims on an individual basis. Considering the extensive monetary and non-monetary benefits under the Settlement, the Court should determine that it is fair and reasonable and merits final approval. Here, each factor weighs in favor of granting final approval.

### A.    The Settlement is the Product of Good Faith, Informed, Arm's Length Negotiations Among Experienced Class Counsel

The threshold consideration is whether a proposed settlement is the product of fraud or collusion between the parties. In determining whether there was fraud or collusion, the court examines whether the settlement was achieved in good faith through arm's-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior or want of skill or lack of zeal on the part of class counsel." *Canupp v. Sheldon*, 2009 WL 4042928, at *9 (M.D. Fla. 2009) (citing *Bennett*, 737 F.2d at 987, n.9).

Here, no claim of fraud or collusion could be credibly made. The context in which the Settlement Agreement was reached confirms that it was the product of arm's length and informed negotiations between adverse parties. Coleman Decl. ¶ 38. The Settlement Agreement was only reached after, *inter alia*, briefing on a Motion to Dismiss, obtaining discovery from Defendant, retention of knowledgeable and qualified experts, inspections of all Class Representative vehicles in the California and Illinois actions, numerous conferences among adverse counsel, and mediation using an experienced and highly qualified mediator. *Id.* ¶ 43.

"Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029-CIV, 2017 WL 9472860, at *4 (S.D. Fla. Nov. 20, 2017) (quoting *Saccoccio v. JP Morgan Chase Bank, N.A.,* 297 F.R.D. 683, 692 (S.D. Fla. 2014). In particular, the fact that a Settlement was reached with the

assistance of a neutral mediator with substantial experience mediating class actions demonstrates the absence of collusion. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of … a highly experienced mediator, lends further support to the absence of collusion."); *see also In re Checking Acct. Overdraft Litig.*, 830 F.Supp. 2d at 1345, 1349 (no collusion where settlement reached by capable and experienced counsel with the assistance of a well-qualified, experienced mediator).

Further, litigation of this action was highly adversarial. The Parties engaged in complex motion practice, significant discovery (including initial disclosures, interrogatories, extensive review and analysis of documents produced by GM and others), and inspections of various Class Representatives' Vehicles. Coleman Decl. ¶¶ 20-23. Further, Plaintiffs retained qualified experts who performed critical analyses regarding the alleged defects and damages. *Id.* ¶ 23. From this information, the Parties were able to adequately assess the strengths and weaknesses of the claims and defenses, so that they could engage in informed, arms-length, adversarial negotiations, which further confirms the absence of fraud or collusion.

## B.  The Issues Presented Were Complex, and Settlement Approval Will Save the Class Years of Costly Litigation in this Court and on Appeal

The Court also looks to the complexity of the litigation and the expense of further litigation. Under this factor, the Court "consider[s] the vagaries of litigation and compare[s] the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F.Supp. 2d at 1323. "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez*, 501 F. Supp. 2d at 1381.

This factor favors approval because the expense and complexity of further litigation would be substantial and require extensive fact discovery, expert reports and discovery, the briefing of Plaintiffs' motion for class certification, *Daubert* motions, extensive trial preparation, trial, post-trial motion practice, and appeal. And, the outcome of litigation is uncertain. In the order on Defendant's motion to dismiss the First Amended Complaint, Magistrate Corley dismissed the express warranty claims for all five named Plaintiffs in the California action to the extent the claims are based on the New Limited Warranty (including the Powertrain Warranty). However, she held that the SCA was an express warranty, and Plaintiffs Hindsman and Andrews had valid express warranty claims. Magistrate Corley also dismissed the implied warranty claims, consumer fraud claims, and all express warranty claims by the other Plaintiffs, all with leave to amend. Plaintiffs filed a Second

Amended Complaint and are confident in their ability to revive the claims dismissed by Magistrate Corley, however, there is no guarantee any of the claims would have been revived by the Second Amended Complaint.

Moreover, while Plaintiffs are confident that they could establish certain facts regarding liability and causation by virtue of GM's testing and quality control data regarding the oil consumption within the Class Vehicles, GM could raise defenses regarding causation and if successful, could limit or entirely negate the damages claims for the Settlement Class. While Plaintiffs believe they would overcome these defenses, there is no guarantee, and they must acknowledge the risks and hurdles Plaintiffs and the Class would face with continued litigation. Moreover, the continued prosecution of this action would undoubtedly entail additional time and expense, and judicial resources. Even if Plaintiffs ultimately prevailed, such efforts would have required significant additional resources, while also delaying resolution of this action for an indeterminate time, which would create additional injury to the affected Class Members who are in need of relief. Many of the Class Members have suffered real out of pocket costs, and further delaying relief for those Class Members while the parties continued to litigate this action would only further prejudice them. In these circumstances, it is "proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F. Supp.2d at 1323, *quoting In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D. La. 1993); *see also Perez*, 501 F.Supp.2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.").

Against these substantial hurdles and uncertainties, the Settlement provides for substantial and prompt relief to members of the Settlement Class as described above. *Ass'n For Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 469 (S.D. Fla. 2002) (fact that "absent settlement, this matter clearly will require a protracted and expensive trial and appeal, under circumstances where the ultimate results are highly uncertain" was a factor supporting settlement); *Perez*, 501 F. Supp. 2d at 1381 (approving settlement because "[w]ith the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear"). The Settlement reached by Class Counsel ensures that the Settlement Class will receive fair, adequate, reasonable, and valuable relief.

### C.   The Record Was Sufficiently Developed to Enable Class Counsel to Make a Reasoned and Informed Judgment Regarding the Settlement

The stage of the proceedings at which settlement is achieved is "evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Saccoccio*, 297 F.R.D. at 694 (S.D. Fla. 2014) (quoting *Lipuma v. Am. Express Co.,* 406 F.Supp.2d at 1324.

The Settlement was reached after Class Counsel obtained necessary discovery from GM and the Court's ruling on GM's Motion to Dismiss, which enabled Class Counsel to properly evaluate the merits of the case. Coleman Decl. ¶¶ 38, 43. Further, the Settlement here is informed by expert analysis and inspections of several Class Vehicles. *Id.* ¶ 23. Before filing this action, Class Counsel conducted extensive and thorough investigation, and continued such efforts during the pendency of the litigation. *Id.* ¶¶ 21-23. In addition, as part of the mediation process, Class Counsel had numerous ongoing discussions with the mediator regarding each party's factual and legal theories, which assisted Class Counsel in making an informed decision about the merits of the Settlement. *Id.* ¶¶ 26-31.

While the Settlement occurred after the Parties engaged in discovery and investigation, that it happened prior to class certification is of no moment. Early settlements are encouraged. *Oakes*, 2016 U.S. Dist LEXIS 147252 at *5-6, quoting *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992) ("The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations."); *Lipuma*, 406 F. Supp. 2d at 1324 (citation omitted) ("'Early settlements benefit everyone involved in the process and everything that can be done to encourage such settlements—especially in complex class action cases—should be done.' "). Here, Class Counsel had sufficient and necessary information to make an informed and reasoned decision about the merits of the Settlement, and to determine that it represented a fair, reasonable and adequate result for the Class.

### D.   Plaintiffs Faced Significant Obstacles with Continued Litigation

The likelihood of success on the merits is weighed against the amount and form or relief contained in the settlement." *Lipuma*, 406 F.Supp. 2d at 1319. Where success at trial is uncertain, this factor weights in favor of approving the settlement. *Newman v. Sun Capital, Inc.*, 2012 WL 3715150, at *11 (M.D. Fla. Aug. 28, 2012). As discussed above, the claims on the merits are disputed. Plaintiffs and Class Counsel believe they had a strong case against GM. However, Plaintiffs and Class Counsel appreciate that Defendant advanced significant defenses that they

would have been required to overcome in the absence of the Settlement.[8]  GM is a large, well-capitalized multinational entity capable of funding years-long litigation and has retained experienced defense counsel toward that end.  Further, continued litigation would have involved substantial delay and expense.  The uncertainties and delays accompanying continued litigation would have been significant.  Given the myriad of risks attending ongoing litigation, as well as the likelihood of significant delay and expense of ongoing litigation, the Settlement represents a fair compromise.

### E.    The Benefits of the Settlement are Fair, Reasonable and Adequate When Compared to the Range of Possible Recovery

Analysis of the second and third factors – the range of possible recovery and the point in that range at which a settlement is fair, adequate and reasonable – are often combined.  *See In re Sunbeam*, 176 F.Supp.2d at 1331.  In evaluating a class settlement, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Id.*  "A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029-CIV, 2017 WL 9472860, at *5 (S.D. Fla. Nov. 20, 2017) *(*quoting *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 521 (S.D. Fla. 1988).  Here, the Settlement provides the Class with the relief the litigation was filed to obtain: the repair and /or reimbursement for the repair of the defect in question.

The immediate and substantial financial relief secured for the Settlement Class provides the Class with the precise relief the litigation was brought to obtain.  GM estimates the value of the settlement as $40 million dollars at least for the 2013 Models and it can be much higher when factoring that claims for out of pocket expenses related to the 2010-2012 Models can now be

---

[8] For example, in the *Hindsman* motion to dismiss, GM argued that: 1) Plaintiffs' express warranty claims fail because: a) the GM warranty only covers defects related to materials or workmanship, not the alleged design defects; b) Plaintiffs' failure to request repairs during the warranty period or request diagnostic tests precludes them from adequately alleging that repairs were improperly denied, or were unsuccessful; c) Plaintiffs' breach of warranty claims based on the SCAs fail because some plaintiffs were still eligible for repairs, and other plaintiffs' claims were not a result of the alleged defect, 2) Plaintiffs do not adequately plead GM's knowledge of the defect or allege reliance for their CLRA and UCL claims, and 3) Plaintiffs' implied warranty claims fail absent adequate allegations of unmerchantability and because those claims were barred by the statute of limitations. *Hindsman,* ECF 59.  Note, the *Hindsman* court *agreed* with some of these arguments in granting in part GM's motion to dismiss the first amended complaint.

16

submitted through the Claim Deadline.  Further, the expense of the primary repair for Class Members related to oil consumptions issues –the piston assembly replacement—is covered by the Settlement.

In addition, the Settlement makes relief obtainable through submission of a simple Court-approved claim form in a streamlined process through which Settlement Class Members have a far lesser burden and standard of proof than would be required in a court proceeding, and through which Class Members can obtain reimbursement for out-of-pocket costs.  *See* ECF 27-1 Exs. G to I.  Moreover, the Notice and Claim Form will be mailed to every Settlement Class Member, who having in effect received a second notice of the Settlement, need not take any affirmative action to obtain a Form.  (*Id.* ¶¶ 27, 46(h).)

The agreed claims process exists to satisfy the claims of any and all Settlement Class Members who simply submit a qualifying claim, which is straightforward and easy to do.  The Claim Form itself, consisting of merely 2 pages, should take no more than a few minutes for the average Claimant to complete.  To obtain reimbursement, Claimants need only to provide simple information confirming their identity, vehicle information, and out-of-pocket costs claimed, and include supporting documentation along with their submission.  Thus, the recovery here is fair and adequate for Class Members based on the potential range of recovery.  This factor supports approval.

F.    **The Opinions of Class Counsel, the Class Representatives and the Positive Reaction of Absent Class Members Strongly Favor Approval of the Settlement**

In evaluating final approval of a class action settlement, the Court may also consider the opinions of Class Counsel.  The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation."  *Warren*, 693 F. Supp. at 1060; *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).  Here, Class Counsel have substantial experience prosecuting large, complex consumer class actions.   Coleman Decl. ¶¶_6-17 & Ex. A; concurrently filed Declarations of Robert Ahdoot ("Ahdoot Decl.") ¶¶ 17-28 & Ex. A, and Daniel Bryson ("Bryson Decl.") ¶ 8.   After both formal and informal discovery, independent fact investigation, expert retention and investigation and inspections of Class Vehicles, along with mediating this claim before a well-qualified and experienced mediator, experienced Class Counsel is confident that the

Settlement provides significant and valuable relief to the Class, and is in the best interests of the Class.  Coleman Decl. ¶ 43; Ahdoot Decl. ¶ 29; Bryson Decl. ¶ 9.

Further, the low number of objections compared to the size of the class suggests that the settlement is reasonable.  *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (finding that .018% of the settlement class objecting to the settlement weights in favor of approving the settlement) (citing *Lipuma* at 1324). *See* also *Varacallo v. Mass. Mut. Life Ins. Co*., 226 F.R.D. 207, 25 I (D.N.J. 2005) (where only 0.06% of class members opted out, this weighed in favor of approval); *Bell Atlantic Corp., v. Bolger*, 2 F.3d 1304, 1313- 14 (3rd Cir. 1993) (where "[l]ess than 30 of approximately 1.1 million shareholders objected," the "small proportion of objectors does not favor derailing settlement"); *In re Cardizem CD Antitrust Litig*., 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

The Objection and Opt Out Deadlines fall on September 20, 2019.  ECF 29, Preliminary Approval Order ¶ 9 ("All objections and requests for exclusion shall be postmarked no later than [60] days after the Notice Commencement Date" [July 22, 2019]).  As of September 19, 2019, out of the 1,641,531 million Settlement Class Members, Class Counsel are aware of 59 objections and 1538 valid opt-outs.  ECF Nos. 31,33, 35-36, 39-47, 49, 51-52, 54-58, 60-62, 64-67, 69-71, 74-78, 80-94, 96, 98-101, 103, 109-110, the Objections; Simmons Decl. ¶18.

This number of objectors represents .00000036% of the Settlement Class, and only .00000937% of potential Class Members have requested to be excluded from the Settlement.  The small percentage of objecting class members (well below one-tenth of 1%) indicates overwhelming support for the Settlement and strongly favors its approval.  This factor thus weighs in support of approval.

## V.       THE REQUESTS FOR EXCLUSIONS AND OBJECTIONS

The Preliminary Approval Order states that Objections and Request for Exclusions must be postmarked no later than [60] days after the Notice Commencement Date.  Settlement Class Members were thus notified that this deadline was September 20, 2019.  In order to allow for all last minute objections and requests for exclusion to be accounted for, the Court granted the Parties until September 27, 2019, to file their replies to the objections and provide a report of all opt outs.  Accordingly, Plaintiffs will file a separate briefing as a reply to the Objections on or before September 27, 2019 which will include a listing of all valid opt outs.

## VI.    THE SETTLEMENT CLASS IS PROPERLY CERTIFIED

The Court entered an Order finding Rule 23 certification appropriate for preliminary approval on May 2, 2018.  ECF 29 ¶¶ 1 to 4.[9]  Based on the facts and argument stated herein and in for the reasons set forth in the Memorandum in support of the Motion for Preliminary for Approval (ECF 27), class certification of the Settlement Class is well warranted in this matter.  For the same reasons, also warranted are the designations of Class Counsel and the Plaintiffs as Class Representatives.  *Id.* ¶ 5.[10]

The Eleventh Circuit recognizes the strong public and judicial policy favoring the pretrial settlement of class-action lawsuits.  *See, e.g.*, *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (citing *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir.1977)); *Turner v. GE*, 20 Fla. L. Weekly Fed. D 145 (U.S. M.D. Fla. 2006); *Lee v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 121998, at *14 (S.D. Fla. Sep. 14, 2015).  "A class may be certified 'solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue.'"  *Smith v. Wm. Wrigley Jr. Co.*, 2010 U.S. Dist. LEXIS 67832, a t * 8 (citation omitted).  When presented with a proposed settlement prior to a ruling on class certification, a court must determine whether the proposed settlement class satisfies the requirements for class certification

---

[9] "[T]he Court find that the prerequisites for a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure have been met, and therefore the Court provisionally certifies … [the] Settlement Class…." ECF 29 ¶ 1. "The Settlement Class satisfies the requirements of Rule 23(a). The members of the Settlement Class are so numerous that joinder is impracticable; there are questions of law or fact common to the proposed Settlement Classes; Plaintiff's claims are typical of the claims of the Settlement Class; and Plaintiff and Class Counsel will fairly and adequately represent the interests of the Settlement Class." *Id.* ¶ 2. "The Settlement Class also satisfies the requirements of 23(b)(3) because this Court finds that issues of law and fact common to the proposed Settlement Class predominate over any issues affecting only individual members of the proposed Settlement Class, and that settlement of this action as a class action is superior to other means available for fairly and efficiently resolving the controversy." *Id.* ¶ 3. "Lastly, the class definition is sufficiently ascertainable such that an individual can ascertain whether he or she is in the Settlement Class based on objective criteria. *Id.* ¶ 4.

[10] "The Court finds that proposed Class Counsel are competent and capable of exercising their responsibilities, and that proposed Class Counsel and the proposed Class Representatives have fairly and adequately represented the interests of the Settlement Class.  The Court appoints Daniel Bryson of Whitfield, Bryson & Mason, LLP; Gregory F. Coleman and Rachel Soffin of Greg Coleman Law PC; and Robert Ahdoot of Ahdoot & Wolfson, P.C., as Class Counsel for the proposed Settlement Class.  Plaintiff Ellen Berman appointed as Class Representative for the Settlement Class, along with previously named plaintiffs of the related matters (Illinois Plaintiffs Patrick Sanchez, Mark Stauber and Sally Stauber, Jacob Ross-Demmin, and Jennifer Herrington, and California Plaintiffs Ryan Hindsman, Diana Miranda, and Vanessa Maryanski)."  ECF 29 ¶ 5.

under Federal Rule of Civil Procedure, Rule 23. *Id.* But in assessing those certification requirements in the context of a settlement, a court may properly consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

"Under Fed. R. Civ. P. 23 . . . [there are] four threshold requirements of Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable ('numerosity'); (2) questions of law or fact common to the class must exist ('commonality'); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ('typicality'); and (4) the representative parties must fairly and adequately protect the interests of the class ('adequacy of representation')." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 668 (S.D. Fla. 1997). Also, the movant must show that the case can proceed as a class action under subparts (1), (2), and/or (3) of Rule 23(b). *Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). *See also Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 461 (S.D. Fla. 2002) (citing Fed. R. Civ. P. 23(a)(1)-(4)). As set forth more fully below, it is Plaintiff's position that each of the Rule 23(a) prerequisites is satisfied with respect to the proposed Class.

### A.   The Rule 23(a) Requirements are Satisfied

#### 1.   The Class is so numerous that joinder is impracticable

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." No specific number is required to satisfy numerosity. However, fewer than twenty-one members is generally inadequate. *See, e.g., Jones v. Firestone Tire & Rubber Co., Inc.*, 977 F.2d 527, 534 (11th Cir. 1992) (citations omitted). Impracticability depends on the facts of each case. *See General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980) (The "numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."). Here, the Settlement Class consists of 1.641 million persons, and joinder of all such persons is impracticable. *See Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

#### 2.   There are questions of law and fact common to the Class

The second prerequisite to class certification is that "there are questions of law or fact common to the class." Rule 23(a)(2) (emphasis added). The "threshold of commonality is not high." *Campos v. INS*, 188 F.R.D. 656, 659 (S.D. Fla. 1999) (citation omitted). The "Plaintiffs' legal claims need not be completely identical to every Class Member." *Brown v. SCI Funeral Servs. Of Fla.*,

*Inc.,* 212 F.R.D. 602, 604 (S.D. Fla. 2003) (citations omitted).  "[F]actual differences concerning treatment [by Defendants] or damages will not defeat a finding of commonality." *Id.*  Moreover, Rule 23(a)(2) "does not require that all of the questions of law and/or fact be common to all the plaintiffs." *Campos v. INS*, 188 F.R.D. at 660.  "[C]ourts in the Eleventh Circuit have held that 'a single common question is sufficient to satisfy Rule 23(a)(2) [with respect to commonality].'" *In re Terazosin Hydrocloride Antitrust Litig.*, 220 F.R.D. 672, 685 (S.D. Fla. 2004) (citation omitted).

In this case, the commonality requirement is satisfied.  Plaintiff's allegations arise from the same common nucleus of operative facts, and all members of the proposed Settlement Class will rely upon the same common evidence to prove their claims.  The common issues include: whether the Class Vehicles contain common defective parts, whether GM breached its uniform implied and express warranties by selling defective Class Vehicles, and whether GM's breach of warranties caused consumers to suffer harm.  Thus, in this case, a "classwide proceeding [will] generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).

### 3. Plaintiffs' claims are typical of the claims of the Class

The third prerequisite for class certification is "typicality" set forth in Rule 23(a)(3), which provides that a class action can be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  "[S]ubsection (a)(3) [of Rule 23] primarily directs the district court to focus on whether named representatives' claims have the same essential characteristics as the claims of the class at large." *Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir. 1985) (citations omitted).  "The commonality and typicality requirements of Rule 23(a) tend to merge." *Campos*, 188 F.R.D. at 659.  The typicality requirement, like commonality, is not demanding. *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996).

Plaintiffs' claims arise from the same common defective piston rings at issue in the Class Vehicles' engines, and from the same legal theories, as the Settlement Class Members' claims.  Although Plaintiffs may own a different model of Class Vehicle than other Settlement Class Members, Plaintiffs contend that all of the models of Class Vehicles contain similar allegedly defective parts.  Here, Plaintiff seeks redress—on behalf of the Settlement Class Members—for alleged damages arising out of similar alleged defects.  Thus, Plaintiffs and Settlement Class Members have an identical interest in recovering their alleged losses sustained as a result of the same course of conduct.

**4.** **Plaintiffs will fairly and adequately represent the Settlement Class**

The fourth and final prerequisite under Rule 23(a) is the "adequacy of representation" requirement contained in Rule 23(a)(4). The inquiry under Rule 23(a)(4) has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class"; and (2) "the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation." *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992) (citation omitted). Adequacy of representation is usually presumed in the absence of evidence to the contrary. *Access Now, Inc. v. AHM CGH, Inc.*, 2000 U.S. Dist. LEXIS 14788 (S.D. Fla. 2000) (citation omitted); *accord Sheftelman v. Jones,* 667 F. Supp. 859, 870 (N.D. Ga. 1987) (conflict of interest to render a named representative an inadequate representative must be more than merely speculative or hypothetical).

Here, the proposed Class Representatives in this Action and the Related Actions purchased Class Vehicles containing allegedly defective parts and thus allegedly suffered injury or loss. The proposed Class Representatives seek to maximize the recovery to the Settlement Class through this litigation. None of the proposed Class Representatives have any interest that is antagonistic to the claims of any Settlement Class Member. Coleman Decl. ¶__. The proposed Class Representatives' interests are aligned with the interests of Settlement Class Members. (*Id.*) Moreover, proposed Class Representatives have vigorously prosecuted this Action in the interests of the Class. Their active participation is strong evidence that Plaintiffs are adequate representatives of the Class.

Likewise, Class Counsel have vigorously represented the Proposed Class Representatives and putative Class Members in this Action and the Related Actions. They represent that they will continue to do so and have submitted evidence showing that they are qualified, experienced, and generally able to conduct the litigation as detailed herein. Coleman Decl. ¶ 6-17; Bryson Decl. ¶ 8; Ahdoot Decl. ¶¶ 17-28.

**B.** **The Requirements of Rule 23(b)(3) are Satisfied**

In addition to meeting the requirements of Rule 23(a), the movant must show that the case can proceed as a class action under subparts (a), (2), and/or (3) of Rule 23(b). *Fabricant,* 202 F.R.D. at 313 (citation omitted). The Settlement entails certification under Rule 23(b)(3). Under Rule 23(b)(3), a movant must show two elements: (1) that common questions predominate over individual questions; and (2) that a class action is a superior procedural vehicle rather than separate individual cases. Both elements are met here. As discussed above, Plaintiffs contend that the common and predominant issues in this case include: whether the Class Vehicles contain common defective parts,

whether GM breached its uniform implied and express warranties by selling defective Class Vehicles, and whether GM's breach of warranties caused consumers to suffer economic harm. Plaintiff contends that each of these issues can be resolved "in one stroke" in a single adjudication, therefore warranting class certification.

### 1.     Common Questions Predominate

The predominance requirement of Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of the individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,* 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). The predominance requirement "does not require that all issues be common to all parties, rather it mandates that resolution of the common liability questions affect all or a substantial number of the class members." *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 692 (N.D. Ga. 2003) (citation omitted). "Courts generally agree that the predominance of common issues does not mean that common issues merely outnumber individual issues." *See* 5-23 *Moore's Federal Practice – Civil* § 23.45; *cf. Buford v. H&R Block, Inc.*, 168 F.R.D. 340, 356 (S.D. Ga. 1996), *aff'd without published opinion,* 117 F.3d 1433 (11th Cir. 1997); *Gunnels v. Healthplan Servs.*, 348 F.3d 417, 429 (4th Cir. 2003) ("Qualitatively…liability issues' may far exceed . . . the more mundane individual damages issues."). Central to the predominance determination is consideration of "what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *In re Tri-State Crematory Litig.*, 215 F.R.D. at 692 (citations omitted). Common questions of law or fact predominate when "there are common liability issues which may be resolved efficiently on a class-wide basis." *Brown*, 215 F.R.D. at 606.

Moreover, the fact that this matter involves state laws from multiple jurisdictions does not undermine certification of the Settlement Class. "'[V]ariations [in state laws] are irrelevant to certification of a settlement class' since a settlement would eliminate the principal burden of establishing the elements of liability under disparate laws." *Sullivan v. DB Investments, Inc.,* 667 F.3d 273, 303 (3rd Cir. 2011) (*en banc*); *Burrow v. Forjas Taurus S.A.,* 2019 U.S. Dist. LEXIS 63893, *22-23 (S.D. Fla. Mar. 15, 2019) ("choice-of-law analyses may have presented manageability problems in resolving claims in contested class and litigation proceedings, [but] it is not a factor in the nationwide settlement context"); *Pollard v. Remington Arms Co., LLC.,* 320 F.R.D. 198, 217 (W.D. Mo. 2017) (the "parties have agreed to settle this matter, and in doing so, they have removed

the differences amongst state laws by agreement"); *Saini v. BMW of N. America, LLC,* 2015 U.S. Dist. LEXIS 66242, *12 (D.N.J. May 21, 2015) (approving a nationwide settlement); *In re Sony SXRD Rear Projection TV Class Action Litig.,* 2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008) (same); *In re Lupron (R) Marketing & Sales Practices Litig.,* 228 F.R.D. 75, 92 n. 33 (D. Mass. 2005) (with regard to variations in state laws, "the issue is one of manageability, which is not a consideration in the certification of a settlement class").

Here, Plaintiffs satisfy the predominance requirement because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member.  The salient evidence necessary to establish Plaintiffs' claims are common to all the Class Representatives and all members of the Class – they would all seek to prove that the Class Vehicles have common defects and that GM's conduct was wrongful.  The evidentiary presentation changes little among the Class Members.  In either instance, Plaintiffs would present the same evidence of GM's marketing and promised warranties, and the same evidence of the Class Vehicles' alleged defects.  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004) ("[If] common issues truly predominate over individualized issues in a lawsuit, then 'the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered.'") (quoting *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 322 (5th Cir. 1978)).

Furthermore, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication.  *See* Fed. R. Civ. P. 23(b)(3).  For these reasons, the Court should certify the Class defined in the Settlement.

## 2.    Class Treatment of Plaintiffs' Claims is Superior

The second prong of Rule 23(b)(3) requires a court to determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Sacred Heart Health*, 601 F.3d at 1183 (citing Fed. R. Civ. P. 23(b)(3)).  The focus of the analysis is on "the relative advantages of a class action suit over whether other forms of litigation might be realistically available to the plaintiffs." *Id.* (quoting *Klay*, 382 F.3d at 1269).  In other words, the superiority requirement comes down to whether class treatment makes sense.  In this case, the Court should "consider whether the class members would be aware of their rights" absent class certification, and also "the improbability that large numbers of class members would possess the initiative to litigate individually." *Fabricant,* 202 F.R.D. at 318 (citations omitted).  Class actions are meant to promote "economies of time, effort and expense, assuring uniformity and avoiding repetitive actions." *Id.*

Accordingly, litigating the predominant legal questions in one forum makes sense.

Indeed, the "predominance analysis has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Sacred Heart Health*, 601 F.3d at 1183 (quotations omitted). The converse is also true: the less common the issues, the less desirable a class action will be as a vehicle for resolving them. *Id.* That any awarded damages must be adjusted is not fatal to certification because there are adequate judicial processes for addressing the problem. *See, e.g., Fabricant*, 202 F.R.D. at 317 ("If Plaintiffs are able to establish liability, the Court may either appoint a master to resolve actual damages or merely allow class members to bring individual actions with the benefit of a res judicata finding of liability."); *cf. Brown*, 212 F.R.D. at 606 ("The mere fact that class members will have to file a claim form or affidavit" to prove their eligibility for individual relief does not defeat predominance under Rule 23(b)(3)); *Sacred Heart Health*, 601 F.3d at 1184 ("[T]he text of Rule 23(b)3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all . . .").

The fact that the Parties have reached a settlement also weighs in favor of a finding that the class mechanism is superior. *See Amchem Prods. V. Windsor*, 521 U.S. 591, 619-20 (1997) ("settlement is relevant to a class certification" and can alleviate manageability concerns that otherwise may arise). Indeed, the *Newberg* treatise explains that in some cases a:

> [c]lass might not have been certified were it not for the proposed class settlement. This observation does not mean that Rule 23 criteria were not applied strictly in these circumstances. On the contrary, these tests were applied, and the observation that a different ruling might have resulted in the absence of the settlement offer refers to the fact that Rule 23 criteria would have been applied in a different context and thus might have led to a different result.

4 *Newberg* § 11.27 at 56 (footnote omitted).

In the present suit, the alleged existence of common parts among all Class Vehicles compels a similar result as the cases cited above where class certification was granted.

In addition, Plaintiffs contend that a class action is the superior method for adjudicating Plaintiffs' and Settlement Class Members' claims. Here, individual Settlement Class Members have little incentive to control the prosecution of separate individual actions because the time and expense associated with such litigation would easily exceed the potential individual recovery. And, as the

Supreme Court said in *Amchem*, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."[11]  The potential recovery on the economic damage claims sought to be certified in this action—the cost of repair or replacement—is too small to warrant individuals taking on the cost and burden of litigating individual lawsuits against these large corporate defendants.

Moreover, no putative Settlement Class Members have expressed an interest in prosecuting their actions separately, no other litigation regarding Plaintiffs' claims has been initiated, and efficiency weighs in favor of resolving the claims of all Settlement Class Members in this forum. Fed. R. Civ. P. 23(b)(3)(A)-(C).  The proposed Settlement Class therefore meets the requirements of Rule 23(b)(3) and should be conditionally certified for purposes of settlement only.

### C.    The Class Is Ascertainable

In addition to satisfying the requirements of Rule 23, a Rule 23(b)(3) class must also be ascertainable before it may be certified.  *See Karhu v. Vital Pharms., Inc.* 621 Fed. Appx. 945, 946 (11th Cir. 2015).  A class is ascertainable if it can be identified in an "administratively feasible" manner.  *Id.* At 948. This implicit requirement of Rule 23 requires that a class be identified in a way that does not solely rely on a defendant's records for identification purposes.  *Id.* Instead, defendant's records need to be supplemented with other methods such as "[a]ffidavits, in combination with records or other reliable and administratively feasible means, can meet the ascertainability standard." *Reyes v. BCA Fin. Servs.*, 2018 U.S. Dist. LEXIS 106449 (S.D. Fla. June 26, 2018) (citing *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 441 (3d. Cir. 2017)).  It is Plaintiff's position that the proposed Class satisfies these criteria.

 Here, the proposed Class is defined to include all persons who purchased or leased a Class Vehicle in the United States. Settlement Class Members may be ascertained using GM's sales records, state motor vehicle registration data, and data obtained by IHS Markit/R.L. Polk & Co. Class membership is clearly based on the objective criteria of whether a person purchased or leased a Class Vehicle in the United States.  It is not based on any subjective factors.

## VII.    CONCLUSION

In summary, the Settlement yields an excellent result for the Settlement Class, provides prompt cash benefits in the form of reimbursement for out-of-pocket piston assembly repair costs,

---

[11] *Amchem Prods.*, 521 U.S. at 617.

as well as repair and warranty extension relief for qualified Class Vehicles. In addition, the Settlement is the product of extensive fact-seeking by Plaintiffs, contentious litigation and arms' length negotiations before an experienced mediator. The Settlement satisfies all the *Bennett* factors. The Court already has ruled that the Settlement is within the range of reasonableness and nothing has changed to disturb that conclusion. Plaintiffs request an order conclusively approving the Settlement and, as more fully set forth in Class Counsel's concurrently filed Motion for Attorneys' Fees and Expenses, and Class Representatives' Service Payments, awarding the Class Representatives in the California, Illinois, and Florida actions a $4,500 each as a Service Payment, awarding Class Counsel $3,390,351 for reasonable attorneys' fees, and $109,649 in necessary and reasonable costs and expenses actually incurred in the litigation.

Dated: September 20, 2019

Respectfully submitted,

s/ *Gregory Coleman*

Rachel Soffin, FL Bar No. 0018054
Gregory F. Coleman*
Adam A. Edwards*
Mark E. Silvey*
GREG COLEMAN LAW PC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
rachel@gregcolemanlaw.com
greg@gregcolemanlaw.com
adam@gregcolemanlaw.com
mark@gregcolemanlaw.com

Daniel K. Bryson*
J. Hunter Bryson*
WHITFIELD BRYSON & MASON LLP
900 W. Morgan St.
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
Dan@wbmllp.com
Hunter@wbmllp.com

Robert Ahdoot*
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
rahdoot@ahdootwolfson.com

***Pro hac vice***

*Class Counsel and Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 20, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

<div style="margin-left: 50%;">

*s/ Rachel Soffin*

Rachel Soffin,
GREG COLEMAN LAW PC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

</div>