**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION**

**Civil Action No. 2:18-CV-14371-ROSENBERG/MAYNARD**

ELLEN BERMAN, and DAYANA
GUACH on behalf of themselves and all
others similarly situated,

Plaintiffs,

        v.

GENERAL MOTORS LLC, a Delaware
limited liability company

Defendant.

---

**PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES AND EXPENSES,
CLASS REPRESENTATIVE SERVICE PAYMENTS,
AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Court's May 16, 2019, Order Granting Preliminarily Approval of Class Action Settlement (ECF 29, Preliminary Approval Order), Plaintiff Ellen Berman ("Plaintiff" or "Class Representative") files this Unopposed Motion for an Award of Attorneys' Fees and Expenses, and Class Representative Service Payments (the "Motion"). Plaintiff seeks an Order which (i) awards Class Counsel attorneys' fees in the amount of $3,390,351, which represents 8% of the estimated minimum value of 42,397,392.20, (ii) grants reimbursement of litigation expenses in the amount of $109,649; and (c) Service Payments of $4,500 for the Plaintiffs. In support of this Motion, Plaintiff respectfully submits the following:

**I.     RELEVANT FACTS AND PROCEDURAL HISTORY**

    **A.     The Settlement Resolves Three Related Class Actions**

In this Action, Plaintiffs claim that Class Vehicles (*i.e.* 2010, 2011, 2012 and 2013 Chevrolet Equinox and GMC Terrain vehicles equipped with 2.4-liter Ecotec engines) contain certain defective piston rings in their engines that are prone to premature wear and excessive engine oil consumption. ECF 1, Complaint. GM vigorously denies these allegations, but

1

nonetheless claims to the extent there is an issue, this problem was addressed by the issuance of Special Coverage Adjustments ("SCA") for earlier models and a design change in May 2013. For model years 2010, 2011, and 2012 Class Vehicles, GM's previously issued Special Coverage Adjustments ("SCA") provided free piston assembly replacement for vehicles diagnosed with high oil consumption within specified time and mileage limitations. ECF 27-1 pp. 2-3, Exs. D, E & F. The SCAs also allowed then current owners who received notice of the SCAs in the mail and who previously had paid out-of-pocket for piston assembly repairs to submit reimbursement claims. The deadlines for expense reimbursement claims under the three SCAs expired years ago, on September 30, 2015, August 31, 2016, and May 31, 2018, respectively. ECF 27-1 pp. 118, 127, & 137. Owners who purchased after the SCA notices were mailed did not receive the SCA mailing and may not have known about their eligibility for reimbursement. Therefore, the new opportunity for current and past 2010 through 2012 Class Vehicle owners to file reimbursement claims is a significant benefit. Moreover, Class Vehicles produced beginning in May 2013 were equipped with new "525" piston rings that reduce piston ring wear and that essentially eliminated excessive oil consumption for Class Vehicles produced after the production change breakpoint. ECF 27-1 p. 2.

This Action was filed on September 10, 2018. Two other class actions that alleged the same defect at issue here, had previously been filed in the United States District Court for the Northern District of California (*Hindsman v. General Motors LLC*, No. 17-cv-5337 ("*Hindsman*")) on September 14, 2017, and in the United States District Court for the Northern District of Illinois (*Sanchez v. General Motors LLC*, No. 18-cv-02536 ("*Sanchez*")) on April 19, 2018. All three actions will be resolved by the Settlement.

The Parties in these cases conducted discovery, which included, *inter alia*, initial disclosures, interrogatories, review and analysis of documents produced by GM and others, inspections of Class Representatives' vehicles, and retention of qualified experts who analyzed the alleged defects and claimed damages. *See generally*, the concurrently filed Declaration of Gregory F. Coleman ("Coleman Decl.").

The *Hindsman* Plaintiffs (Ryan Hindsman, Robin Peterson, Diana Miranda, Vanessa Maryanski, Rene Mitchell, and Brittany Chambers) filed a complaint in the Northern District of California on September 14, 2017; the case was assigned to Magistrate Jacqueline Scott Corley. *Hindsman* ECF 1. The *Hindsman* Plaintiffs alleged claims for breach of express and implied

warranty and violations of California's Consumer Legal Remedies Act and Unfair Competition Law. *Id.* After the *Hindsman* Court granted an extension for GM to respond, the *Hindsman* Plaintiffs filed their first amended complaint on December 14, 2017. *Id.* ECF 34. On January 1, 2018, GM filed its first motion to dismiss the first amended complaint. *Id.* ECF 35. The Court heard oral arguments on March 22, 2018 and took the matter under submission. On June 1, 2018, Judge Corley issued an order granting in part and denying in part GM's motion to dismiss. *Id.* ECF 51. She dismissed plaintiffs' claims for breach of implied warranty, violation of consumer protection statutes, and breach of GM's Limited New Vehicle Warranty, but denied GM's motion to dismiss their express warranty claims based on GM's SCAs. On July 2, 2018, the *Hindsman* Plaintiffs filed their second amended complaint. *Id.* ECF 54. GM filed its motion to dismiss the second amended complaint on August 15, 2018. *Id.* ECF 59.

The Parties conducted substantial discovery. Plaintiffs conducted a detailed investigation of the applicable facts, the Parties exchanged initial disclosures and both propounded and responded to document production requests and interrogatories. Plaintiffs analyzed the documents produced by GM and consulted with experts to assist them in understanding the claims and potential damages at issue. GM conducted physical inspections of Plaintiffs' vehicles with Plaintiffs' experts present. Coleman Decl. ¶ 18.

On April 10, 2018, the *Sanchez* Plaintiffs (Plaintiffs Patrick Sanchez, Mark Stauber, Sally Stauber, Jacob Ross-Demmin, and Jennifer Herrington) filed their complaint in the Northern District of Illinois, which was assigned to Judge John J. Tharp, Jr. *Sanchez* ECF 1. A first amended complaint was filed in *Sanchez* on April 19, 2018. *Id.* ECF 9. On June 6, 2017, in light of the pending mediation (discussed below), GM filed a motion to extend time to respond to the first amended complaint in *Sanchez*. *Id.* ECF 14. On June 11, 2018, Judge Tharp granted that motion, and set GM's response deadline on September 28, 2018. *Id.* ECF 19.

On October 2, 2018, the Parties in this Action jointly moved for an order staying the action pending mediation and settlement discussions. ECF 8.

### B.    Settlement Negotiations

The Settlement is the result of two in person mediations and extensive negotiations over the course of many months both before and after the mediations. The Parties commenced settlement discussions in earnest following the *Hindsman* Court's ruling on GM's motion to dismiss. Coleman Decl. ¶ 26. After preliminary pre-mediation negotiation, on August 29, 2018,

3

the Parties attended a full-day mediation with the Hon. Jay Gandhi (Ret.) at JAMS. *Id.* ¶ 27. Prior to the mediation, Plaintiffs prepared and submitted an in-depth mediation brief detailing the facts, merits of the claims, potential damages, and class certification issues. *Id.* ¶ 28. Though the Parties were able to make some progress at this mediation, they agreed to hold a second day of mediation. *Id.* ¶ 29. Thus, on September 6, 2018, the *Hindsman* parties jointly requested a stay of the case pending the mediation and related settlement negotiations. *Hindsman* ECF 62. The *Sanchez* parties filed a similar request on September 17, 2018. *Sanchez* ECF 31. The Parties completed a second full-day mediation session with Judge Gandhi on November 7, 2018, wherein they reached agreement on all substantive terms of a nationwide class settlement in the *Berman* action that encompassed the proposed class members in the *Hindsman*, *Berman* and *Sanchez* actions. Coleman Decl. ¶ 30. In the event the Parties had not reached an accord resolving the claims of all three cases, GM planned to file motions to dismiss in both the Illinois action and the present Action. *Id.* ¶ 32.

On December 5, 2018, the Parties filed a "Joint Motion to Extend Stay of Proceedings and Joint Status Report Regarding Settlement" (ECF 10), informing this Court that they had reached a tentative settlement of all issues in all three cases and were formalizing a settlement agreement. The Court granted the motion (ECF 11) and extended the stay until February 4, 2019. Similar stays were entered in all three related cases. *Hindsman* ECF 66; *Sanchez* ECF 38. The Parties continued to work on the settlement agreement and on January 31, 2019 again filed a "Joint Motion to Stay Proceedings" (ECF 12) seeking an additional sixty days to finalize the settlement documents. On February 1, 2019 the Court granted the motion, extending the stay until April 5, 2019. ECF 13. On April 22, 2019, the Parties filed a Joint Notice of Class Action Settlement. ECF 24. The Court then further extended the stay so that the Parties could finalize the Settlement Agreement and prepare the motion for preliminary approval. ECF 26.

During this period the Parties engaged in extensive and detailed negotiations regarding every aspect of the Settlement and its exhibits. Coleman Decl. ¶ 34-38. Although the Parties reached an agreement in principle, many of the details of the Settlement remained unresolved or in dispute. *Id.* ¶ 34. Over a span of months, the Parties worked diligently and expended a substantial amount of time in an effort to finalize the terms of the Settlement Agreement and ancillary documents and the plan for Class Notice. *Id.* ¶¶ 35-37. These negotiations were complex, and involved detailed lengthy repeated discussions regarding virtually every provision of the

Settlement Agreement and its many exhibits, including, the structure of the Settlement itself, the SCAs, and the Claim Process, among a myriad of other issues. *Id.* ¶¶ 34-38. Class Counsel expended substantial efforts to negotiate a structure and terms and draft language satisfactory to both sides. *Id.* Moreover, the Parties conducted detailed negotiations regarding the language of the Class Notice and the Notice and Claim Forms and the methodology of the Notice Plan. *Id.* Thus, the Settlement was reached by the Parties' prolonged litigation, extensive fact discovery and arms-length negotiations.

## II.    THE PROPOSED SETTLEMENT AND ITS VALUE

The details of the proposed Settlement are set forth in Plaintiffs' Motion for Final Approval of Class Action Settlement, filed concurrently herewith (Sec. III). In short, the Settlement provides (i) Settlement Class Members who owned / leased 2010-2012 Model Class Vehicles with two rounds of direct mail notices, including direct mailing of the Notice and Claim Form to make a Claim for expenses incurred prior to the Claim Deadline, (ii) Settlement Class Members who owned / leased 2013 Model Class Vehicles with the New 2013 SCA with two rounds of direct mail notices to make a Claim for expenses or submit their vehicle for diagnosis of oil consumption issues and, if needed, piston assembly replacement, (iii) for GM's payment of all Notice and Administration Expenses which includes two direct First Class USPS mailings to virtually all 1,641,531 million Class Members and subsequent claims administration expenses, (iv) for GM's payment of Attorneys' Fees and Expenses of up to $3,500,000 as approved by the Court, and (v) for GM's payment of Service Payments of up to $4,500 for each Class Representative as approved by the Court.

It is important to note that while there is no cap for the amount of expenses a Class Member may make a claim for, the total net cost to GM for repair of the defect alleged in the Complaint is estimated to be at least $2,000 per vehicle, not accounting for labor or rental car expenses. Coleman Decl. ¶ 25; Hurley Decl. ¶¶ 6-7. Any rental car expenses not included in prior reimbursement to Class Members are also eligible for reimbursement. GM itself estimates that the value of the 2013 New SCA *alone* is at least $40 million. ECF No. 27-1 ¶ 46.f.; Coleman Decl. ¶ 25. GM in accordance with its standard business practices has predicted that the net cost of the 2013 SCA to GM will be approximately $40 million. In making this prediction, GM calculated that approximately 7.4% of the roughly 270,000 2013 model Class Vehicles will obtain repairs or submit a claim for reimbursement (valued at $2,000); thus, the value of this aspect of the

Settlement would be about $40.5 million.  Using only GM's $40 million estimate of the value of the 2013 New SCA and total estimated Notice and Administration Costs of $2,397,392.24 (Simmons Decl. ¶ 19), the minimum value of the Settlement is the total estimated net cost of this aspect of the Settlement to GM is $42,397,392.20.[1]

## III.   THE COURT SHOULD APPROVE CLASS COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES.

In the Eleventh Circuit, "it is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained."  *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015) (Rosenberg, J.) (citing *Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) (*Camden I*);  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011); *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).

In *Camden 1*, the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case.  Henceforth in this Circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."  *Gavaerts*, 2015 U.S. Dist LEXIS 150354, at *27 (S.D. Fla. Nov. 5, 2015) (J. Rosenberg), quoting *Camden I, 946 F.2d at 774.

The Eleventh Circuit has applied this percentage-based approach to "claims-made settlements," noting that a "claims-made settlement is ... the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant."  *Poertner v. Gillette Co.* 618 Fed. Appx. 624, 628 n. 2 (11th Cir. 2015); *see also Carter v. Forjas Taurus S.A.*, 2016 U.S. Dist LEXIS 96054, at *444 (S.D. Fla. 2016) (citing *Poertner*), *aff'd Carter v. Forjas*, 701 Fed. Appx.

---

[1]    The value of the Settlement, however, is likely higher because this valuation does not account for the monetary value of any claims submitted by owners of the 2010-2012 model Class Vehicles which drastically increases this minimum valuation, *i.e.* an increase of $11.5 million for each 1% of the 2010-2012 Class Vehicles whose owners make a claim for reimbursement of expenses in the amount of $2,000 [((845,412 total Class Vehicles - 270,000 2013 Class Vehicles) * .01) * $2,000].  This valuation also does not account for any expenses beyond the $2,000 alleged defect repair estimate (*i.e.* rental car expenses; for example, assuming a modest total rental charge of $50 per day, and that any given Class Member submits reimbursement of only 1 day of rental, for each 1% of the Class Members who submit such reimbursement, the value of the Settlement increases by $422,706.)  Thus, the minimum value of this substantial Settlement is likely more than $42,397,392.20.

759 (11th Cir. 2017); *Marty v. Anheuser-Busch Cos., LLC*, 2015 U.S. Dist. LEXIS 144290, at *5, fn. 3 (S.D. Fla. Oct. 22, 2015) (citing *Poertner*).

Common-fund settlements need not specify a maximum value, artificially limiting the class recovery. Common funds may be unlimited, where a defendant agrees to pay all valid claims with no cap on the potential recovery. The Eleventh Circuit has confirmed that class counsel's fee award should be based on the value of "any non-monetary benefits conferred upon the class by the settlement," such as injunctive relief, as well as "the economics involved in prosecuting a class action." *Oakes v. Blue Cross & Blue Shield of Fla., Inc.*, 2016 U.S. Dist. LEXIS 147252, at *16 (S.D. Fla. Oct. 21, 2016) (J. Rosenberg) (in class action involving expansion of health care coverage to class members, Court found aggregated, estimated cost to class members of $126,000,000 for treatment covered through settlement constituted "total available benefit" for purposes of common-fund analysis). *See also David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362, at *14 (S.D. Fla. 2010) (in action involving motorcycle defect, court treated uncapped, claims-made settlement as constructive common fund, and found settlement with ascertainable benefits involving value of credit toward purchase of new motorcycle or parts, and extended warranty, may be treated as common fund to which a percentage fee may be awarded).

## A. The Requested Fee Amount Is Modest and Reasonable as a Percentage of the Total Benefits Obtained by the Settlement.

"This Court has substantial discretion in determining the appropriate fee percentage awarded to counsel." *Gavaerts,* 2015 U.S. Dist. LEXIS 150354 at *28. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Id.*, quoting *Camden I,* 946 F.2d at 774. As a general rule "[t]he majority of common fund fee awards fall between 20% to 30% of the fund," although "an upper limit of 50% of the fund may be stated as a general rule." *Gavaerts,* 2015 U.S. Dist. LEXIS 150354, quoting *Camden I,* 946 F.2d at 774-75. "The percentage applies to the total benefits provided, even where the actual payments to the class following a claims process is lower." *Hall v. Bank of Am., N.A.*, No. 12-22700, 2014 U.S. Dist. LEXIS 177155, at *28-29 (S.D. Fla. Dec. 17, 2014) ("Attorneys representing a class action are entitled to an attorney's fee based upon the total benefits obtained in or provided by a class settlement, regardless of the amounts eventually collected by the Class") (citing *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir. 1999)); *Marty LLC*, 2015 U.S. Dist. LEXIS 144290, at *5 (using

"percentage-of-the-fund approach to evaluate the appropriateness of attorneys' fees in a claims-made class action settlement").

In this case, the value of the benefit that Class Counsel obtained for the Class is at least $42,397,392.20. The attorneys' fees requested ($3,390,351) represents 8% of this value of the Settlement's common benefit to the class. *Camden I*, 946 F.2d at 774-875; *see also Poertner*, 618 Fed.Appx. at 628. Further, Class Counsel's fee, service awards, litigation costs, and notice and administration costs, are separate from, and do not reduce the value of, the benefits to the class.

The modest fee request of 8% of the total benefits available to the Class is well below Eleventh Circuit precedent and is an appropriate fee award when considering both a percentage of the total benefits available to the Class, and pursuant to the various *Johnson* factors (discussed in detail below) that district courts of the Eleventh Circuit consider in confirming reasonableness. *See Camden I*, 946 F.2d at 774-775.

**B.    The *Johnson* Factors Confirm the Reasonableness of the Requested Fee**

The fee requested in this action is modest when compared to the benchmark of 20% to 30% and is amply supported by the factors courts consider when evaluating the reasonableness of a fee award. In *Camden 1*, the Eleventh Circuit instructed courts to further evaluate common fund awards based on reasonableness factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (the "*Johnson* factors"), which include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. *Camden 1*, 946 F.2d at 772, n.3.

**1.    The Time and Labor Required, Preclusion from Other Employment and the Time Limits Imposed Justify the Fee Amount**

The first, fourth and seventh *Johnson* factors – the time and labor, preclusion of other employment, and time limitations imposed – each heavily support the reasonableness of Class Counsel's fee request.

As described above, from initiating this action until reaching the proposed Settlement, Class Counsel was continuously engaged in vigorous litigation against a well-capitalized Defendant represented by sophisticated counsel. Prosecuting and settling this Action demanded considerable time and labor. This substantial work has included investigating the claims at issue, motion practice, engaging in extensive fact discovery, attending GM's inspections of various proposed Class Representatives' vehicles, attending mediation, and engaging in several subsequent months of arm's-length negotiations between experienced class counsel. Further, Plaintiffs consulted and retained knowledgeable and qualified experts who performed critical analyses regarding the alleged defects and damages to help formulate and substantiate the claims in this case in preparation for class certification, dispositive motions, and, ultimately, for trial.

Additional attorney time will be devoted to this case following the filing of this Memorandum, including for supervising aspects of the administration of the Settlement, answering Settlement Class Member questions, and helping resolve any issues that arise.

In sum, Class Counsel and their support staff have diverted, and will continue to divert, substantial time and resources to this matter that would otherwise have been spent on other cases. Class Counsel collectively devoted more than 3,200 attorney hours to the prosecution of this case. Accordingly, the amount of time and labor devoted to this case weighs in favor of finding Class Counsel's requested fee award reasonable. *See Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) ("The expenditure of 1,000 billable hours – and often in significant blocks of time – necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work, and this factor should raise the amount of the award."); *see also Stalcup v. Schlage Lock Co.*, 505 F. Supp.2d 704, 708 (D. Colo. 2007) (noting that "the *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium.").

### 2. The Case Involved Difficult Issues, and the Risk of Nonpayment in this Contingent Litigation, and Not Prevailing on the Claims Was High

The second, sixth and tenth *Johnson* factors – the novelty and difficulty of the questions, the contingent nature of the case, and the undesirability of the case – also support the requested fee award. This case involved difficult and novel issues that presented a significant risk of nonpayment.

As mentioned above, in the California action, the court granted and denied in part GM's motion to dismiss.  In the order, the court dismissed a portion of plaintiffs' breach of express warranty claim, a portion of their consumer protection claims, and all of the implied warranty claim.  Further, the court found that several plaintiffs had not met the requirements for tolling of the statute of limitations under the Song Beverly Act, as they had not adequately alleged fraudulent concealment.  In addition, that court struck the plaintiffs' nationwide class allegations, limiting plaintiffs' claims to a California state class.  *Hindsman*, ECF 51.  Thereafter, plaintiffs filed a second amended complaint and GM again moved to dismiss the complaint.  *Id.* ECF 54.  Further, GM planned to file motions to dismiss in both the *Sanchez* Illinois action and the present Action, seeking to dismiss each case in its entirety, which could have either eliminated or severely limited the claims in this action.  Coleman Decl. ¶ 32.  Given these considerable open issues, including uncertainty about prevailing on the motions to dismiss and ultimately on class certification, the Settlement represents an outstanding result.

The difficult and contingent nature of this case further demonstrates its undesirability.  There are few lawyers willing to invest significant time and resources prosecuting a lawsuit that involves complicated and uncertain legal questions and a substantial risk of receiving no compensation, which is evidenced by the fact that, to Class Counsel's knowledge, no other related class actions were filed elsewhere in the Country.  Although Class Counsel managed to achieve an excellent result for the Settlement Class, this outcome was anything but certain until shortly before the Settlement was reached.  As such, the "undesirability" of this case is a factor that weighs in favor of the reasonableness of the requested fee award.  *See In re Checking Account Overdraft Litig*, 830 F. Supp. 2d at 1364 ("'Undesirability' and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight.") (citing *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.* 540 F.2d 102, 112 (3d Cir. 1976)).

Such a substantial risk of nonpayment in return for advancing all of the costs and fees weighs heavily in favor of finding Class Counsel's requested award reasonable.  *See Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) ("A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high."); *In re Checking Acc't Overdraft Litig.*, 830 F.

Supp. 2d at 1364 ("A contingency fee arrangement often justifies an increase in the award of attorney's fees."); *Francisco v. Numismatic Guar. Corp.*, No. 06-61677, 2007 U.S. Dist. LEXIS 96618 at *35 (S.D. Fla. Jan. 30, 2007) ("Attorneys' risk is perhaps the foremost factor in determining an appropriate fee award.").

Class Counsel received no compensation during the course of this litigation and have incurred significant unpaid fees and costs.  While Courts in the Eleventh Circuit have rejected the lodestar method for calculating fees, even as a "cross check" on the reasonableness of a percentage fee,[2] Class Counsel nonetheless provides this information to the Court to show the high risk of the contingent nature of this litigation and the risk of non-payment of these fees.

Class Counsel's fee of $3,390,351 represents a 1.83 multiplier of their lodestar of $1,849,800.50, which is reasonable and well below the average range of lodestar multipliers in the Eleventh Circuit.  Coleman Decl. ¶¶ 44-48; Bryson Decl. ¶¶ 6-7; Ahdoot Decl. ¶¶ 6-14.  *See also Oakes*, 2016 U.S. Dist LEXIS 147252, at *17, citing *Pinto*, 513 F. Supp. 2d 1334 (noting lodestar multiples "in large and complicated class actions" range from 2.26 to 4.5, while "three appears to be average" and "most lodestar multiples awarded in cases like this are between 3 and 4").  These unpaid fees and costs were fully at risk and would have remained unpaid had GM prevailed.

### 3.    Class Counsel Achieved an Excellent Result for the Settlement Class

The eighth *Johnson* factor focuses on the results achieved for the Class.  This is a major factor in assessing the reasonableness of a requested fee award.  *E.g. Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("critical factor is the degree of success obtained"); *Pinto*, 513 F. Supp. 2d at 1342 ("The result achieved is a major factor to consider in making a fee award."); *Behrens*, 118 F.R.D. at 547-48 ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained.").  The result achieved here is exemplary, because the Settlement provides precisely what the Actions were filed to obtain, repair of the Class Vehicles and reimbursement to Class Members for related and covered out-of-pocket costs.

---

[2]    Courts in this Circuit have not only rejected the lodestar method (hours times rate) for calculating class counsel fees, but even as a so-called "cross-check" on the reasonableness of a percentage fee.  *Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362 (citing, *inter alia*, Alba Conte, ATTORNEY FEE AWARDS § 2.7, at 91 n. 41 ("the lodestar approach should not be imposed through the back door via a 'cross-check.'")).

In considering the result achieved, courts consider the value of *both* monetary and injunctive relief. *See Poertner,* 618 Fed.Appx. at 628; *Perez*, 501 F. Supp. 2d 1360; *Oakes*, 2016 U.S. Dist. LEXIS at * 15 (finding award should be based on consideration of "any non-monetary benefits conferred upon the class by the settlement," such as injunctive relief, as well as "the economics involved in prosecuting a class action.") (citing *Poertner*).   Here, the Settlement delivers at least $42,397,392.20 in value to cover the claims of Class Members.

The Settlement also addresses a public safety concern.  As alleged in the complaint, the alleged Oil Consumption Defect creates a substantial safety risk which prevents Class Members from having safe and reliable transportation because it causes excessive oil consumption that cannot be reasonably anticipated or predicted and causes the engine to run while dangerously low on engine oil. ECF No. 1, *Compl.* ¶¶ 13-15.  This can cause engine failure while the Class Vehicles are in operation, thereby placing drivers, passengers and the public at risk of accident or injury. *Carter*, 2016 U.S. Dist LEXIS 96054, at *27-48 (finding removal of defective product that presented safety risk provided excellent result for settlement class). The Settlement provides for repairs to address this risk.  Thus, the Settlement is an outstanding result that supports Class Counsel's fee request.

### C.     The Requested Fee Amount is Well Below the Market Rate in Similar Class Cases and Is Separate from the Funds Made Available to the Class.

The fifth and twelfth *Johnson* factors – the customary fee, and awards in similar cases – also support approval.  These factors weigh in favor of awarding Class Counsel the requested fee, which amounts to a mere 8% of the value of the benefits obtained by the Settlement.  Class Counsel did not receive any compensation over the course of this litigation and have incurred a $1,849,800.50 lodestar and $109,649.00 in costs.   Coleman Decl. ¶¶ 44-51; Bryson Decl. ¶ 7; Ahdoot Decl. ¶¶ 6-16.  These unpaid costs, and fees for the time expended in this action, would have remained unpaid if GM prevailed.  This risk existed from the moment Class Counsel began their investigation, and there was no promise that Class Counsel would ever receive compensation for their efforts.

A fee amounting to 8% of the estimated value of benefits obtained for the class is well below the market rate for class action fee awards in the Eleventh Circuit.  *See Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. Appx. 429 (11th Cir. 2012) (upholding fee award of 25% of common fund in claims-made settlement in which defendant agreed to send claimants free baby

formula up to a certain aggregate value). A separately paid attorneys' fee that amounts to less than 8% of the value of benefits obtained for the Class is consistent with, and far below, this Circuit's benchmark for fees in common fund class actions, including claims-made settlements. *Carter*, 1016 U.S. Dist. LEXIS 96054, at * 45 (awarding "12.2% of the Settlement's total potential value," in claims-made settlement, and finding "[c]ommon fund fee awards typically range from 20-30 percent of the total fund available, with a 25 percent benchmark adjusted for the individual circumstances of each case.").

Further, the requested fee in this action is consistent with numerous other decisions from this Circuit that use the percentage-of-the-fund approach to evaluate the appropriateness of attorneys' fees in a claims-made class action settlement like this one. The Eleventh Circuit has confirmed that class counsel fee awards should be based on the consideration of "any non-monetary benefits conferred upon the class by the settlement," such as injunctive relief, as well as "the economics involved in prosecuting a class action." *Poertner*, 618 Fed. Appx. at 628-629 (Eleventh Circuit found district court correctly concluded that injunctive relief was "part of the settlement pie"); *Carter,* 2017 WL 2813844, at *5 (holding that fee award was "a reasonable percentage of the settlement value" when considering the value of an "enhanced warranty, which is itself a significant tangible benefit"); *Faught v. American Home Shield Corp.,* 668 F.3d 1233, 1243--44 (11th Cir. 2012) (affirming fee award of $1,500,000 that was paid separately from the settlement fund and was not based on a specific dollar value awarded to class members, but rather was "designed to compensate the class counsel for the non-monetary benefits they achieved for the class" and upholding claims-made settlement that gave class members opportunity to resubmit warranty claims to the defendants through a procedure with enhanced consumer protections).

Therefore, "[w]hen determining the total value of a class action settlement for purposes of calculating the attorneys' fee award, courts usually consider not only the compensatory relief, but also the economic value of any prospective injunctive relief obtained for the class." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. Feb. 16, 2007); *see also In re: Checking Account Overdraft Litig.*, 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190560, 2013 WL 11319391, at *13 (S.D. Fla. Aug. 5, 2013) ("When using the percentage-of-the-fund approach, courts compensate class counsel for their work in extracting non-cash relief from the defendant in a variety of ways. When the non-cash relief can be reliably valued, courts often include the value of this relief in the common fund and award class counsel a percentage of the total fund."); *LiPuma*

*v. American Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (When valuing the total recovery obtained, court included cash fund, proposed value of injunctive relief, and costs of notice and administration); *In re Nissan Radiator*, 2013 U.S. Dist LEXIS 116720, at \*44-45, fn.6 (S.D.N.Y, May 30, 2016) (approving fee that represented less than 10% of the estimated value of the open-ended fund for automobile defect class action, which was based, in part, on estimated reimbursement to class members for out-of-pocket costs for vehicle repairs, and repairs to class members vehicles that were already performed and projected).

**D.     The Skill, Experience, Reputation and Ability of Class Counsel**

The remaining *Johnson* factors – the skill required to perform the legal services properly and the experience, reputation, ability of the attorneys, and the nature of the professional relationship with the clients – confirm that the fees sought are reasonable.

In the Preliminary Approval Order, this Court previously found that Class Counsel "are competent and capable of exercising their responsibilities, and [] have fairly and adequately represented the interests of the Settlement Class."  ECF 29, at 3.

Further, as shown above, Class Counsel achieved a settlement that confers substantial benefits to the Settlement Class Members despite the hard-fought litigation against sophisticated and well-financed Defendant represented by top-tier counsel.  *See In re Sunbeam Sec. Litig.,* 176 F. Supp.2d at 1334 ("In assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced.").

This outstanding result was made possible by Class Counsel's extensive experience litigating class actions of similar size, scope, and complexity like the instant Action.  This litigation required a high degree of skill and experience given the complexity of the issues.  Class Counsel employed their significant experience gained from litigating numerous class actions across the country, in both state and federal court, including defective product class actions, among others. Coleman Decl. ¶¶ 2-17; Bryson Decl. ¶ 9; Ahdoot Decl. ¶¶ 17-28.  Thus, this factor supports awarding the requested fee.

**IV.     THE SERVICE PAYMENT OF $4,500 IS APPROPRIATE**

Finally, Class Counsel respectfully request that the Court award a Service Payment of $4,500 to each of the Class Representatives [Ellen Berman, Patrick Sanchez, Mark Stauber, Sally Stauber, Jacob Ross-Demmin, Jennifer Herringto, Ryan Hindsman, Robin Peterson, Diana Miranda, Vanessa Maryanski, Rene Mitchell, and Birttany Chambers], which is separate from the

estimated value of benefits available to the class and is customary and well-supported by Eleventh Circuit precedent.  Such an award is routinely approved by Courts in order to compensate named plaintiffs for their work on behalf of the class; to account for financial, personal, or reputational risks associated with litigation; and to encourage plaintiffs to step forward on behalf of unnamed class members in the future.  Coleman Decl. ¶¶ 41-43; *see also Pinto*, 513 F. Supp. 2d at 1344 (approving service awards of $7,500.00 for each class representative, and noting that "[in instituting this litigation, the Representative Plaintiffs have acted as private attorneys general seeking a remedy for what appeared to be a public wrong. It is well recognized that private class action suits are a primary weapon in the enforcement of laws designed for the protection of the public.")  Thus, approval of the requested Service Payment is warranted.

## V.    CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court: (i) award attorneys' fees and expenses to Class Counsel in the amount of $3,390,351 (8% of the estimated minimum value of the Settlement); (ii) grants reimbursement of litigation expenses in the amount of $109,649; and (iii) award Service Payments of $4,500 to each of the Class Representatives.

Dated: September 20, 2019                                    Respectfully submitted,

s/*Gregory Coleman*

Rachel Soffin, FL Bar No. 0018054
Gregory F. Coleman*
Adam A. Edwards*
Mark E. Silvey*
GREG COLEMAN LAW PC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
rachel@gregcolemanlaw.com
greg@gregcolemanlaw.com
adam@gregcolemanlaw.com
mark@gregcolemanlaw.com

Daniel K. Bryson*
J. Hunter Bryson*
WHITFIELD BRYSON & MASON LLP
900 W. Morgan St.
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
Dan@wbmllp.com
Hunter@wbmllp.com


Robert Ahdoot*
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
rahdoot@ahdootwolfson.com


***Pro hac vice***

*Class Counsel and Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on September 20, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

<div align="center" style="margin-left:50%">

<u>s/ *Rachel Soffin*</u>
Rachel Soffin,
GREG COLEMAN LAW PC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

</div>

17