UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

Civil Action No. 2:18-CV-14371-ROSENBERG/MAYNARD

ELLEN BERMAN, on behalf of herself
and all others similarly situated,

    Plaintiff,

        v.

GENERAL MOTORS, LLC, a Delaware
limited liability company,

    Defendant.
_____/

**OBJECTORS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Donald A. Yarbrough
Florida Bar No. 0158658
don@donyarbrough.com
Post Office Box 11842
Ft. Lauderdale, FL 33339
Telephone: 954-537-2000
Facsimile: 954-566-2235

Michael T. Kirkpatrick
(admitted pro hac vice)
mkirkpatrick@citizen.org
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
202-588-7728

*Counsel for Objectors Douglas R. Ghiselin,
Tod Fitzpatrick, and Leslie G. Coulter*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ................................................................................................................................1

ARGUMENT........................................................................................................................................2

    I.      The Court cannot determine whether the settlement reflects a reasonable compromise because plaintiff has failed to estimate the range of possible recovery if the litigation were successful ...............................................................................................................2

    II.     Benefits that are available to individuals regardless of whether they are in the class are not consideration for the release of their claims.............................................................4

    III.    The class should be limited to those eligible for reimbursement of SCA-covered out-of-pocket repair and rental car costs because they are the only potential beneficiaries of the settlement ............................................................................6

    IV.    The number of objections and opt-outs does not indicate that the settlement is fair........7

    V.     The Court should not defer to the views of class counsel.................................................9

CONCLUSION...................................................................................................................................10

## TABLE OF AUTHORITIES

**CASES** **PAGES**

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) ...................................................................................................1

*Burrow v. Forjas Taurus S.A.*,
    No. 16-21606, 2019 WL 4247284 (S.D. Fla. Sept. 6, 2019) ...............................................2

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) ...................................................................................................2

*Day v. Persels and Associates, LLC*,
    729 F.3d 1309 (11th Cir. 2013) ...............................................................................................5

*In re Dry Max Pampers Litigation*,
    724 F.3d 713 (6th Cir. 2013) ...................................................................................................6

*Holmes v. Continental Can Co.*,
    706 F.2d 144 (11th Cir. 1983) .................................................................................................9

*In re Katrina Canal Breaches Litigation*,
    628 F.3d 185 (5th Cir. 2010) ...................................................................................................5

*Koby v. ARS National Services, Inc.*,
    846 F.3d 1071 (9th Cir. 2017) .................................................................................................5

*Krell v. Prudential Insurance Co. of America*,
    148 F.3d 283 (3d Cir. 1998).....................................................................................................2

*National Super Spuds v. N.Y. Mercantile Exchange*,
    660 F.2d 9 (2d Cir. 1981).........................................................................................................6

**RULES**

Federal Rule of Civil Procedure 23(e) .........................................................................................7

Federal Rule of Civil Procedure 23(e)(2) ....................................................................................1

Federal Rule of Civil Procedure 23(e)(2)(C) ...............................................................................2

Federal Rule of Civil Procedure 23(e)(2)(D)...................................................................................6

**MISCELLANEOUS**

Brian Wolfman, *Judges! Stop Deferring to Class-Action Lawyers*, 2 U. Mich. J.L. Reform 80 (2013)...............................................................................................................9

Christopher R. Leslie*, The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71 (2007) ................................................................7

Federal Trade Commission, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns* (Sept. 2019) ...............................................................................8

Martin H. Redish & Nathan D. Larsen, *Class Actions, Litigant Autonomy, and the Foundations of Procedural Due Process,* 95 Cal. L. Rev. 1573 (2007).........................................8

Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues,* 57 Vand. L. Rev. 1529 (2004).....................8

# INTRODUCTION

The Court should deny plaintiff's motion for final approval of the proposed settlement agreement because plaintiff has failed to show that the agreement provides sufficient benefit to the class to justify the release of their claims against defendant GM. Whether analyzed under the factors set forth in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984), or those listed in Federal Rule of Civil Procedure 23(e)(2), the conclusion is the same: A class action settlement that forces the vast majority of class members to surrender their claims for no consideration is not "fair, reasonable, and adequate" as required by the Rule.

Plaintiff's attempt to justify the settlement fails for several reasons. First, plaintiff has not provided an estimate of the range of possible recovery if the class prevails. Without such an estimate, the Court lacks the information necessary to determine whether the value of the settlement is a fair compromise in relation to the potential class recovery, discounted for the risk of nonrecovery.

Second, the settling parties have vastly overestimated the value of the settlement. The 2013 Special Coverage Adjustment (SCA), valued at $40 million based on an estimate of its cost to GM, is not consideration for the release of claims because the benefits of the 2013 SCA will not be limited to class members. Similarly, the receipt of the class notice is not consideration for the release because the notice has already been provided.

Third, the class should be limited to those owners eligible for reimbursement of SCA-covered out-of-pocket repair and rental car costs because they are the only potential beneficiaries of the settlement. To require the other owners to sacrifice their claims in exchange for no relief so that a minority of the class can pursue a benefit would not be fair or reasonable.

Finally, the number of objections and opt-outs does not indicate that the settlement is fair, and the Court should not defer to the views of counsel.

**ARGUMENT**

**I.     The Court cannot determine whether the settlement reflects a reasonable compromise because plaintiff has failed to estimate the range of possible recovery if the litigation were successful.**

"Whether under Rule 23(e)(2)(C) or the *Bennett* factors, it is not the value or nature of the settlement relief alone that is decisive, but whether that relief is reasonable when compared with the relief 'plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing.'" *Burrow v. Forjas Taurus S.A.*, No. 16-21606, 2019 WL 4247284, *9 (S.D. Fla. Sept. 6, 2019) (quoting *Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 322 (3d Cir. 1998)); s*ee Eubank v. Pella Corp.*, 753 F.3d 718, 727 (7th Cir. 2014) (holding that a district court should estimate "the likely outcome of a trial … in order to evaluate the adequacy of the settlement"). Such an analysis is impossible here because plaintiff has not provided an estimate of the value of the claims surrendered.

In her motion for final approval, plaintiff attempts to side-step the lack of any estimate of the recovery if the class prevailed in litigation by asserting that the proposed settlement provides full relief. According to plaintiff, "the Settlement provides the Class with the relief the litigation was filed to obtain: the repair and/or reimbursement for the repair of the defect in question." Pl. Mot. Fin. App., DE 120, at 16.[1] Plaintiff's assertion is incorrect.

This case was not brought to obtain the benefits of the 2010, 2011, and 2012 SCAs—free piston-assembly replacements for vehicles diagnosed with excessive oil consumption within the

---

[1] *See also* Pl. Mot. Att'y Fees, DE 121, at 11 ("The result achieved here is exemplary, because the Settlement provides precisely what the Actions were filed to obtain, repair of the Class Vehicles and reimbursement to Class Members for related and covered out-of-pocket costs.").

2

time and mileage limitations—because those benefits were available *before* this case was filed. Indeed, plaintiff alleged in her complaint that the SCAs "impose unworkable and unreasonable preconditions" and are "inadequate and ineffective."[2] Complaint ¶¶ 30, 117–19. Nor was this case brought to reopen the period during which owners could seek reimbursement for out-of-pocket expenses associated with repairs covered by the SCAs, or to require GM to provide further notice of the existence of the SCAs. Rather, this case sought relief beyond that available in the SCAs, including, among other things, an order requiring GM "to remove and replace Plaintiff and Class Members' engines with a suitable alternative product free of defect and repair all other damages to the Class Vehicles caused by the defective engines," and "an award to Plaintiffs and Class Members of compensatory, actual, exemplary, and statutory damages." Complaint at 73–74. Such damages would include (1) the cost of adding oil between scheduled oil changes to offset the excessive oil consumption, *id.* ¶¶ 15, 31; (2) the cost of engine repairs or replacements due to damage caused by driving the class vehicles with insufficient oil, including damage to engine components other than those covered by the SCAs or outside the time and mileage limitations of the SCAs, *id.* ¶ 22, 31, 136, 166; and (3) losses incurred as a result of the diminished resale value of the vehicles, *id.* ¶ 22, 170. The proposed settlement provides no such relief.

      Rather than shifting her view of the objectives of this litigation to correspond to the terms of the settlement, plaintiff could have submitted a declaration from an expert regarding the potential class recovery in successful litigation or considered the amount of any settlements GM has reached in individual litigation concerning the same defect. Plaintiff likely has such

---

[2] The forthcoming 2013 SCA will suffer from the same alleged inadequacies because it will contain "terms and limitations substantially the same as the model year 2011 and 2012 SCAs." Settlement Agreement ¶ 46(c).

3

information. In her complaint (at ¶ 98), plaintiff referenced a case raising the same claims as here, *Parenteau v. General Motors, LLC*, No. 14-4961 (C.D. Cal.), which was settled after the three plaintiffs reached individual settlements, *see* Stipulation for Dismissal, DE 50, at 2. And class counsel purports to have "conducted substantial discovery" and "consulted with experts to assist them in understanding the claims and potential damages at issue," Pl. Mot. Fin. App. at 3, and class counsel "deposed Defendants' domestic and internationally located corporate representatives … and worked with various experts and defended their depositions," Coleman Decl., DE 120-1, ¶ 44. Having conducted such extensive discovery, it stands to reason that plaintiff developed evidence from which she or her retained experts could extrapolate the potential value of this case.

II.     **Benefits that are available to individuals regardless of whether they are in the class are not consideration for the release of their claims.**

The proposed settlement provides that GM will issue an SCA for model year 2013 vehicles manufactured before the May 2013 production change to provide additional warranty coverage for piston assembly replacements for qualifying vehicles. The original powertrain warranty covered such repairs for five years or 100,000 miles, whichever came first. The new SCA extends that coverage to seven and a half years or 120,000 miles. Schankin Decl., DE 149-3, ¶ 1. GM projects that its cost for the 2013 SCA will be about $40 million, *id.* ¶ 6, and the settling parties assert that the $40 million cost estimate demonstrates the value of the settlement. *See* Pl. Mot. Fin. App. at 9; Pl. Resp. to Objections, DE 148, at 10; Def. Mem. in Supp. Fin. App., DE 149, at 5. But because owners of 2013 vehicles who are not in the class because they opted out or purchased their vehicle after the preliminary approval date will be eligible for the benefits of the 2013 SCA, it is not consideration for the release of claims.

The settling parties also assert that the notice of the proposed settlement constitutes a benefit of the settlement. They argue that because GM announced the 2010–2012 SCAs by letters to *then current* owners when it issued the SCAs, but the settlement notice was sent to *all current and former* owners, the settlement notice may have reached individuals who did not previously receive notice of the existence of the 2010–2012 SCAs. *See* Def. Mem. in Supp. Fin. App. at 4; Pl. Mot. Fin. App. at 7; Pl. Resp. to Objections at 10. The class notice, however, has already been sent. Thus, whatever the benefit of the notice, it has been realized, regardless of whether the Court grants final approval of the settlement and regardless of whether the recipient of the notice decided to opt out. Therefore, the notice is not consideration for the release of claims. And as the objectors explained in their opening brief, a settlement that forces class members to surrender their claims in exchange for no consideration should not be approved. *See* Mem. in Supp. of Objections, DE 108, at 5–6 (citing *Day v. Persels and Assocs., LLC*, 729 F.3d 1309, 1312 (11th Cir. 2013) (vacating approval of class settlement that "released most of the claims of the class in exchange for no monetary relief for the absent class members"); *Koby v. ARS Nat'l Svcs., Inc.*, 846 F.3d 1071, 1079–80 (9th Cir. 2017) (reversing approval of a class action settlement and holding that "[b]ecause the settlement gave the absent class members nothing of value, they could not reasonably be required to give up anything in return"); *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 195 (5th Cir. 2010) ("The court must be assured that the settlement secures an adequate advantage for the class in return for the surrender of litigation rights against the defendants.")).

### III. The class should be limited to those eligible for reimbursement of SCA-covered out-of-pocket repair and rental car costs because they are the only potential beneficiaries of the settlement.

The only consideration the settlement provides absent class members in exchange for the release of their claims is an opportunity for owners of 2010–2012 models to seek reimbursement for SCA-covered out-of-pocket repair costs if they missed the original claims deadlines, incurred the expenses after those deadlines, or had unreimbursed rental car expenses, and for owners of 2013 models to seek similar relief under the terms of the forthcoming 2013 SCA. The value of such a program is negligible for those who received prior notice of the SCAs. *See In re Dry Max Pampers Litigation*, 724 F.3d 713, 715–16 (6th Cir. 2013) (finding "nearly worthless" defendant's agreement "to reinstate, for one year, a refund program that [defendant] had already made available to its customers" during an earlier six-month period). But because some prior owners and subsequent purchasers may not have received notice of the SCAs, they might "benefit from the new 'window of opportunity' to obtain reimbursement for SCA-covered expenses created by the settlement." Def. Mem. in Supp. Fin. App. at 4. "GM believes that there are a significant number of prior and subsequent owners who fall into this category, [but] there is no way to estimate this number precisely." *Id.*

Although it may be impossible to estimate the number "precisely," it is without a doubt a minority of the class. And it is unfair to require a majority of the class to sacrifice their claims for no relief. Thus, the settlement cannot be approved because it does not "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D); *see Nat'l Super Spuds v. N.Y. Mercantile Exchange*, 660 F.2d 9, 19 (2d Cir. 1981) ("An advantage to the class, no matter how great, simply cannot be bought by the uncompensated sacrifice of claims of [other] members.").

6

The solution, however, is clear. The settling parties could change the class definition so that it binds only those who have incurred SCA-covered out-of-pocket repair and rental car costs that have not been previously reimbursed. That subclass is ascertainable using the same criteria the settlement administrator would use to determine claims for reimbursement of such expenses. Limiting the class in this way would ensure that only those individuals with something to gain from this settlement are required to release their claims.

## IV. The number of objections and opt-outs does not indicate that the settlement is fair.

Class counsel reports that they have received about 70 objections and 1700 opt-outs from the 1.6 million individuals mailed a class notice. Plaintiffs argue that "[t]he small percentage of objecting class members (well below one-tenth of 1%) indicates overwhelming support for the Settlement and strongly favors its approval." Pl. Mot. Fin. App. at 18. GM agrees, characterizing every non-response to the class notice as a "vote[] that the settlement provides substantial benefits." Def. Mem. in Supp. Fin. App. at 3. The settling parties are incorrect. The silence of the vast majority of class members is typical and unhelpful in determining whether the settlement is fair, reasonable, and adequate.

Although the reaction of the class to a proposed settlement is included in the litany of factors a district court may consider in determining whether a settlement meets the requirements of Rule 23(e), it is the *substance* of the opposition, rather than the *number* of objectors and opt-outs, that the court should consider. The Court should not equate a small number of objectors with approval of the settlement. *See* Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 104 (2007) (explaining that there are numerous disincentives to filing objections and that the benefits of objecting to a proposed settlement are minimal).

Similarly, a low rate of opt-outs is not demonstrative of the settlement's fairness. As several empirical studies have concluded, most class-action settlements have very low opt-out rates. *See, e.g.*, Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 Vand. L. Rev. 1529, 1534, 1549 (2004) (finding the average opt-out rate in product liability class actions is less than one tenth of one percent and concluding that courts should not credit low rates of class dissent as evidence that the settlement receives the affirmative endorsement of the class); Martin H. Redish & Nathan D. Larsen, *Class Actions, Litigant Autonomy, and the Foundations of Procedural Due Process*, 95 Cal. L. Rev. 1573, 1612 (2007) (criticizing inferences of support drawn from purely passive behavior on the part of the absent class member).

In any event, and contrary to plaintiff's assertion, the number of objections and opt-outs in this case is not "far less than nationwide consumer settlements usually receive." Pl. Resp. to Objections at 1. Rather, the number of objections in this case is more than 100 times higher than is typical, and the number of opt-outs is ten times higher than average. In "the most comprehensive empirical study of consumer class action settlements to date," the Federal Trade Commission analyzed a sample of 149 consumer class action cases and found that "[o]bjection and exclusion rates were miniscule; only 0.01% of notice recipients excluded themselves from the settlement and 0.0003% objected to the proposed settlement." Federal Trade Commission, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns* (Sept. 2019) at 2, 11.[3] Here, the exclusion rate is 0.1% and the objection rate is 0.04%.[4]

---

[3] The FTC Report is available at: https://www.ftc.gov/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns.

[4] Because of math errors, plaintiff's calculations of the objection and exclusion rates were off by four and five decimal points. *See* Pl. Resp. to Objections at 5 (asserting that the objection rate is

## V. The Court should not defer to the views of class counsel.

Plaintiff argues that the proposed settlement should be approved because "experienced Class Counsel is confident that the Settlement provides significant and valuable relief to the Class, and is in the best interests of the Class." Pl. Mot. Fin. App. at 17–18 (citing Coleman Decl. ¶ 43; Ahdoot Decl. ¶ 29; Bryson Decl. ¶ 9). The Court should not defer to class counsel's settlement-approval recommendation because the Court has a duty, imposed by Rule 23(e), to act as a guardian of the absent class members and analyze independently the fairness of the settlement. Rule 23(e) imposes this duty in recognition of the fact that, once a proposed settlement has been reached, the settling parties and their counsel are non-adverse because both sides favor the agreement. This realignment of interests leaves the absent class members without a champion; thus, the Court acts as a fiduciary and serves as guardian of the class. Deference to the judgment of counsel is contrary to that responsibility. *Holmes v. Cont'l Can Co.*, 706 F.2d 144, 1150 (11th Cir. 1983) ("Reliance on counsel's opinion tends to render the district court captive to the attorney and fosters rubber stamping by the court rather than the careful scrutiny which is essential in judicial approval of class action settlements."). Indeed, consideration of the views of class counsel contributes nothing as a factor to determine the fairness of a settlement because class counsel necessarily favor approval in every case; the court is never asked to evaluate a proposed settlement that class counsel have not endorsed. *See* Brian Wolfman, *Judges! Stop Deferring to Class-Action Lawyers*, 2 U. Mich. J.L. Reform 80, 85 (2013) ("[A] court should never give weight to settling counsel's judgment about the wisdom of a class

---

".00000043%" when it is actually .043%, and asserting that the opt-out rate is ".00001035%" when it is actually .1035%).

9

settlement or rely on class counsel's reputation or experience in assessing a settlement's fairness or legality.").

## CONCLUSION

The Court should deny final approval of the proposed class action settlement.

Dated: October 2, 2019                    Respectfully submitted,


*s/ Donald A. Yarbrough*
Donald A. Yarbrough
Florida Bar No. 0158658
don@donyarbrough.com
Post Office Box 11842
Ft. Lauderdale, FL 33339
Telephone: 954-537-2000
Facsimile: 954-566-2235

*s/ Michael T. Kirkpatrick*
Michael T. Kirkpatrick
(admitted pro hac vice)
mkirkpatrick@citizen.org
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
202-588-7728

*Counsel for Objectors Douglas R. Ghiselin,
Tod Fitzpatrick, and Leslie G. Coulter*